UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 24-MD-03090-RAR

In re:

**FORTRA FILE TRANSFER SOFTWARE
DATA SECURITY BREACH
LITIGATION**

This Document Relates to:

**ARIANA SKURASKIS**, *et al.*, *on behalf of
themselves and all others similarly situated*,

    Plaintiffs,

v.

**NATIONSBENEFITS HOLDINGS, LLC,**
*et al.*,

    Defendants.

Case No. 23-cv-60830-RAR (and all
consolidated actions)

## DEFENDANTS' MOTION TO DISMISS
## CONSOLIDATED CLASS ACTION COMPLAINT

Defendants NATIONSBENEFITS, LLC and NATIONSBENEFITS HOLDINGS, LLC

(collectively, "NationsBenefits" or "Defendants") respectfully submit this Memorandum in

Support of their Motion to Dismiss the Consolidated Class Action Complaint ("Complaint" or

"Compl.") filed by Plaintiffs[1] pursuant to Fed. R. Civ. P. 12(b)(1) for lack of standing or,

alternatively, pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.  For the reasons set

forth herein, Defendants' motion should be granted.

## PRELIMINARY STATEMENT

This action concerns a data security incident perpetrated against Fortra, LLC ("Fortra"), a

---

[1] "Plaintiffs" is defined as, collectively, Plaintiffs Lenore Caliendo, Kimberly Dekenipp, T.E., Renee Fideleff, Leroy Fuss, Teresa Hassan, Jeffery King, Barbara Kosbab, Lawrence Kosbab, Mary Ann Landries, Pamela Lazaroff, Steven Lazaroff, Kevin McCoy, Sharon McCoy, Catherine Radke, Martin Radke, Dezarae Sanders, Arnisa Marie Shepherd, Ariana Skuraskis, Anthony Skuya, A.T., Michael Wasner, Edward Wilczynski, Sara Jean Williams, Wanda Wilson and Stephen Wolsey, individually and on behalf of all others similarly situated.

vendor of NationsBenefits (the "Incident").  While admitting that the Incident impacted Fortra's systems, Plaintiffs simultaneously allege that this action and the allegations against NationsBenefits arise from NationsBenefits' alleged failure to secure their personal identifiable information ("PII") and protected health information ("PHI") (collectively, "Private Information").  Plaintiffs allege that NationsBenefits' failures caused the Incident, which resulted in their Private Information being stolen and causing them to suffer injuries largely stemming from the future possibility of identity or medical theft.

Plaintiffs' allegations are woefully insufficient, and the Complaint must be dismissed for lack of standing.  Of note, most Plaintiffs do not allege any actual misuse of their Private Information, and those that do fail to allege facts that plausibly connect any alleged misuse to the Incident.  Thus, it is clear that these allegations, whether individually or as a whole, are insufficient to confer standing as a matter of law.

Moreover, the Complaint must also be dismissed for failure to state a claim.  As discussed below, Plaintiffs' allegations fail to meet the pleading requirements for each cause of action asserted in the Complaint.  Throughout the Complaint, Plaintiffs impermissibly "group plead" the allegations in an attempt to overstate the nature of the Incident, the injuries alleged, and the causes of action and relief which they purport to seek against NationsBenefits.  Taking the Complaint on its face, however, these allegations do not state a cognizable claim against NationsBenefits, which is unsurprising, given that the Incident originated with *Fortra* and not NationsBenefits.

## FACTUAL ALLEGATIONS

### A.    NationsBenefits

NationsBenefits provides supplemental benefits administration services to health insurance plans and employers across the country.  *See* Compl. ¶ 156.  Its services include an array of

supplemental healthcare solutions, including hearing benefits, benefits administration and an e-commerce platform for over-the-counter health items, benefits administration for purchasing healthy foods, companion care benefits, personal emergency response systems benefits, and connectivity devices for elderly members. *Id.* NationsBenefits also provides customer experience services to insurance plans to increase member engagement and satisfaction. *Id.* ¶ 157. NationsBenefits takes the security and integrity of all Private Information maintained by it very seriously, and has implemented extensive policies and procedures to ensure same. *Id.* ¶¶ 163-64.

Plaintiffs do not allege a direct relationship with NationsBenefits, nor can they based on the services provided by NationsBenefits. Rather, Plaintiffs claim relationships with NationsBenefits' alleged clients including Aetna[2], UAW Retiree Medical Benefits, Trust, Anthem Blue Cross Blue Shield[3], HAP/Medicare and Santa Clara Family Health Plan.[4] *See* Compl. § 2(A).

## B.    The Incident

In connection with the services it provides, NationsBenefits contracted with Fortra for use of Fortra's managed file transfer software: GoAnywhere MFT (the "Software"). Compl. ¶ 168. When agreeing to provide the Software to NationsBenefits, Fortra represented that the Software included "extensive security controls" and "automatic encryption," and that the Software "will provide a safe, audited method for automatically transferring information in and out of [NationsBenefits'] enterprise." *Id.* ¶ 169.

On or about January 29, 2023, Fortra discovered it had been the victim of a criminal attack on its systems. *Id.* ¶ 175; *see also Anderson et al. v. Fortra LLC*, Case No. 0:23-cv-00533-SRN-

---

[2] Certain Plaintiffs also have active claims against Aetna.

[3] Plaintiff Shepherd has active claims against Anthem.

[4] Plaintiff Skuraskis has active claims against Santa Clara Family Health Plan.

DTS ("Fortra Litigation"), ECF No. 50 ("Fortra Complaint") ¶ 38.[5]  The vulnerability exploited by the attackers in connection with the Incident was not previously known – indeed, the Complaint cites numerous articles that make clear that the Incident was a zero-day attack, meaning a "then-unknown vulnerability."  Compl. ¶¶ 178 n.24, 179 n.25, 179 n.26.  The Incident not only impacted NationsBenefits, but impacted over 130 other organizations.  *Id.* ¶ 176.  Despite the fact that the Incident impacted *Fortra's* systems, Plaintiffs make the striking assertion that NationsBenefits somehow failed to prevent the attack.  *Id.* ¶ 151.

NationsBenefits learned of the Incident on February 7, 2023.  *Id.* ¶¶ 186, 188; *see also Skuraskis et al. v. NationsBenefits Holdings, LLC, et al.*, Case No. 0:23-cv-60830-RAR, ECF No. 44, Exhibit A ("Notice Letter").[6]  NationsBenefits immediately took steps to secure its systems and launched an investigation, which was conducted by an experienced outside law firm and a leading cybersecurity firm.  *See* Notice Letter.  These investigation efforts included confirming that its own systems were not impacted in connection with the Incident (they were not), and analyzing the impacted data to determine whether any individual's Private Information was subject to unauthorized access or acquisition in connection with the Incident.  *Id.*  NationsBenefits thereafter determined that certain individuals' Private Information may have been accessed and/or

---

[5] Plaintiffs' Complaint here paints a strikingly different picture from the Fortra Complaint, and can only be described as a self-serving attempt to distinguish the claims against NationsBenefits here and the claims against Fortra in the Fortra Litigation.  *Compare* Compl. *with* Fortra Complaint.  Plaintiffs attempt to paint a picture that the Incident impacted NationsBenefits' systems, when the facts surrounding the Incident and the articles cited in the Complaint show that the Incident impacted *Fortra*, not NationsBenefits.  *See, e.g.*, Compl. ¶¶ 178 n.24, 179 n.25, 179 n.26 (articles discussing attack against Fortra).  Of note, interim co-lead counsel here (Morgan & Morgan Complex Litigation Group) is a signatory on the Fortra Complaint and the inconsistencies between the two Complaints calls into question the nature of the allegations and motivations for filing in each.

[6] The Consolidated Class Action Complaint previously filed by Plaintiffs in this litigation included Exhibit "A," which is a copy of the letter received by Plaintiff L Kosbab.  Excerpts of the Notice Letter are included in the Complaint at Paragraph 190.  While the substance of the letter for all individuals potentially impacted by the Incident was largely the same, as discussed in further detail below, the Private Information potentially impacted in connection with the Incident varied.  Moreover, Plaintiffs' allegation that NationsBenefits learned of the Incident on February 3, 2023 is clearly refuted by the notice letter attached to the Complaint.  *Compare* Compl. ¶ 186 *with* Notice Letter.

acquired in connection with the Incident and, beginning on April 13, 2023, provided all potentially impacted individuals with notification of the Incident in accordance with applicable law.  *Id.*; *see also id.* ¶¶ 189-90.

Contrary to Plaintiffs' assertions throughout the Complaint, NationsBenefits undertook appropriate action following notification of the Incident by Fortra on February 7, 2023.  *See* Notice Letter; Compl. ¶ 190.  NationsBenefits immediately stopped using Fortra's software, worked with experienced legal counsel and a leading cybersecurity firm to conduct a comprehensive investigation, and notified law enforcement authorities.  *See* Notice Letter.  NationsBenefits also implemented and is continuing to implement additional procedures to further strengthen the security of its systems.  *Id.*  Ignoring factual reality, Plaintiffs allege that the notification letter provided by NationsBenefits was somehow inadequate or incomplete.  Compl. ¶¶ 191-92.

## C.  Alleged Injuries

Plaintiffs allege that they have suffered injuries including "persistent and ongoing threats of identity theft crimes, fraud, scams, and other misuses of their Private Information; ongoing monetary loss and economic harm . . .; loss of value of privacy and confidentiality of [their] Private Information; illegal sales of [their] Private Information; mitigation expenses and time spent on credit monitoring; identity theft insurance costs; credit freezes/unfreezes; expense and time spent on initiating fraud alerts and contacting third parties; decreased credit scores; lost work time; and other injuries."  Compl. ¶ 17.  They also allege that they have lost the value of NationsBenefits' implicit promises of adequate data security, and unauthorized charges and loss of use of and access to their financial account funds and costs associated with same.  *Id.* ¶ 240.

As set forth in further detail below, these allegations of future injury cannot confer standing as a matter of law.  Taking Plaintiffs' allegations to their logical conclusion, the "harms" which

Plaintiffs allege to have suffered are nothing different than what every person suffers in today's digitized world.  *See, e.g.*, *id.* ¶¶ 197, 227 n.55 (article discussing the prevalence of data breaches and, in fact, discussing how identity theft as a result of data breaches is "limited").

Certain Plaintiffs also attempt to allege actual misuse of their Private Information as a result of the Incident.  Compl. ¶¶ 27, 37, 42, 47, 57, 62, 77, 107, 112, 117, 127, 137, 147, 152.  These allegations range from fraudulent health insurance claims, unauthorized charges to Plaintiffs' accounts, unauthorized vendor bills, increased spam calls, text messages, and emails, and lost time spent responding to same and mitigating the alleged effects (both historically and in the future) of the Incident.  *Id.*  However, these allegations of actual misuse are deficient.  *First,* these allegations have been squarely rejected by courts as insufficient to constitute a concrete injury-in-fact, and the same result is warranted here.  *Second*, these allegations lack sufficient factual allegations explaining  how the alleged misuse is plausibly connected to the Incident at issue or any alleged conduct by NationsBenefits.

Plaintiffs also fail to distinguish this action from the numerous other suits that they have brought which seek redress for the same injuries.  Although Plaintiffs claim that NationsBenefits was responsible for the disclosure of their Private Information, they do not disclose that numerous other class actions have also been filed on behalf of putative classes, in some instances by the very same Plaintiffs' counsel, that would include each of the Plaintiffs and putative class here.  These actions have been filed against other downstream entities that used the Fortra software platform, and most significantly, against Fortra itself—the entity the actually suffered the Data Breach.  Plaintiffs' attempt to "double dip" and pursue damages and attorneys' fees from multiple entities as a result of the *same* incident and *same* injuries should not be permitted.

## LEGAL ARGUMENT

## POINT I

## THE COMPLAINT MUST BE DISMISSED FOR LACK OF STANDING

On its face, the Complaint must be dismissed in its entirety pursuant to Fed. R. Civ. P. 12(b)(1) for lack of standing. Standing "is a threshold question that must be explored at the outset of any case." *Corbett v. Transp. Sec. Admin*, 930 F.3d 1225, 1232 (11th Cir. 2019). "It is not a 'mere pleading requirement but rather an indispensable part of the plaintiff's case[.]" *Josefsberg v. Uber Technologies, Inc.*, 2023 WL 5670301, at *2 (S.D. Fla. Aug. 31, 2023). Plaintiffs bear the burden of establishing the three elements for standing: (1) injury in fact; (2) traceability of the alleged injury to Defendant's alleged conduct; and (3) the redressability of the alleged injury. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).[7] These elements must be supported "with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Lastly, "standing is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim they press and for each form of relief that they seek (for example, injunctive relief and damages)." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021).

In the class action context, Article III requires two distinct inquiries to determine whether a class representative has "standing to represent a class." *Fox v. Ritz-Carlton Hotel Co., LLC*, 977 F.3d 1036, 1046 (11th Cir. 2020) (quoting *Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1307 (11th Cir. 2008)). A class representative must satisfy the individual standing prerequisites for each claim

---

[7] Defendants present a facial challenge to the allegations in the Complaint concerning standing. "In a facial challenge, a court is required only to determine if the plaintiff has 'sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for purposes of the motion.'" *Josefsberg*, 2023 WL 5670301, at *2 (quoting *McElmurray v. Consol Gov't*, 501 F.3d 1244, 1251 (11th Cir. 2007)).

he or she asserts and "must also be part of the class and possess the same interest and suffer the same injury as the class members." *Id.* Where a putative class action is brought on behalf of multiple plaintiffs seeking to represent the putative class, "only one named plaintiff for each proposed class needs to have standing for a particular claim to advance." *Wilding v. DNC Services Corp.*, 941 F.3d 1116, 1124-25 (11th Cir. 2019) (citations omitted).

The first element of standing is injury in fact. *Spokeo*, 578 U.S. at 338. "A plaintiff has suffered an injury in fact if he or she has suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *In re Mednax Services, Inc., Customer Data Security Breach Litig.*, 603 F.Supp.3d 1183, 1197 (S.D. Fla. 2022) (quoting *Spokeo*, 578 U.S. at 339) (internal quotations omitted). "Central to assessing concreteness is whether the assessed harm as a close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts—such as physical harm, monetary harm, or various intangible harms." *Id.* (quoting *TransUnion*, 141 S. Ct. at 2200) (internal quotations omitted); *see also Green-Cooper v. Brinker Int'l, Inc.*, 73 F.4th 883, 889 (11th Cir. 2023) ("For purposes of the concrete injury analysis under Article III, we have recognized three kinds of harm: 1) tangible harms, like 'physical or monetary harms'; 2) intangible harms, like 'injuries with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts'; and, finally, 3) a 'material risk of future harm' when a plaintiff is seeking injunctive relief.'") (quoting *TransUnion*, 141 S. Ct. at 2204, 2210).

Standing based on fear of future harm is reserved only for exceptional circumstances where a named plaintiff has experienced misuse of his data in some way. *See, e.g.*, *Tsao v. Captiva MVP Rest. Partners, LLC*, 986 F.3d 1332, 1343-44 (11th Cir. 2021); *see also Mednax*, 603 F. Supp. 3d at 1201-03; *Desue v. 20/20 Eye Care Network, Inc.*, 2022 WL 796367, at *5 (S.D. Fla. Mar. 15,

2022). The Supreme Court has held that it is not enough that a future injury might come to pass, or even that it is reasonably likely to happen, instead, the "threatened injury must be *certainly impending* to constitute an injury in fact." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (quotation omitted). A theory of standing that "relies on a highly attenuated chain of possibilities[] does not satisfy the requirement[.]" *Id.* at 410. The risk of future harm alone cannot confer standing "at least unless the exposure to the risk of future harm itself causes a separate concrete harm." *TransUnion*, 141 S. Ct. at 2210-11. In other words, Plaintiffs must allege that the anticipated harm *actually* materialized, or the risk of future harm itself caused some present harm. *See id.*; *see also Green-Cooper*, 73 F.4th at 889 (citing *Tsao*, 986 F.3d at 1343-44).

Following *TransUnion*, multiple courts have held that the threat of future harm alone cannot satisfy Article III standing in a lawsuit for monetary damages. *See Green-Cooper*, 74 F.4th at 888-90; *Ewing v. MED-1 Solutions, LLC*, 24 F.4th 1146, 1152 (7th Cir. 2022); *Bock v. Washington*, 33 F.4th 1139, 1145 (9th Cir. 2022). As to claims for injunctive relief relating to future harm, *TransUnion* and *Clapper* provide that "a person exposed to a risk of future harm may pursue forward-looking, injunctive relief to prevent the harm from occurring, at least so long as the risk of harm is sufficiently imminent and substantial." *TransUnion*, 141 S. Ct. at 2210 (citing *Clapper*, 568 U.S. at 414 n.5). And, to be "imminent," a "[t]hreatened injury must be *certainly impending*." *Clapper*, 568 U.S. at 409.

In addressing whether a risk of future harm qualifies as an injury-in-fact, the risk must be "substantial" or "certainly impending." *Mednax*, 603 F. Supp. 3d at 1201 (quoting *Tsao*, 986 F.3d at 1339) (internal quotations omitted); *see also Desue*, 2022 WL 796367, at *4 (same). In making this determination, *Tsao* requires that Plaintiffs have sufficiently alleged actual misuse of their data, thus satisfying the "substantial" or "certainly impending" requirement. *Mednax*, 603 F. Supp.

3d at 1201 (quotations omitted); *see also Desue*, 2022 WL 796367, at *4 (quotations omitted). "[I]f the threat of future harm does not meet that standard, a plaintiff cannot 'conjure standing by inflicting some direct harm on itself to mitigate a perceived risk.'" *Mednax*, 603 F. Supp. 3d at 1201 (quoting *Tsao*, 986 F.3d at 1339). "In other words, any steps plaintiffs take to monitor their credit or financial statements for fraudulent activity establish an injury in fact only if plaintiffs have shown that they face a substantial or certainly impending threat of future harm." *Id.* (citing *Tsao*, 986 F.3d at 1339). "In short, '[e]vidence of a mere data breach does not, standing alone, satisfy the requirements of Article III standing.'" *Id.* (quoting *Tsao*, 986 F.3d at 1344).

While "'general factual allegations of injury' can suffice . . . that is not a free pass—these general factual allegations must 'plausibly and clearly allege a concrete injury.'" *Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 924-25 (11th Cir. 2020) (quoting *Lujan*, 504 U.S. at 561 and *Thole v. U.S. Bank NA*, 140 S. Ct. 1615, 1621 (2020)) (additional citations omitted). Mere conclusory statements, much like what is set forth in the Complaint here, do not suffice, and Plaintiffs "must clearly and specifically set forth facts to satisfy the requirements of Article III." *Id.* (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)). The Court cannot "imagine or piece together an injury sufficient to give [Plaintiffs] standing when [they] have demonstrated none, and [is] powerless to create jurisdiction by embellishing a deficient allegation of injury." *Id.* (quoting *Miccosukee Tribe of Indians of Fla. v. Fla. State Athletic Comm'n*, 226 F.3d 1226, 1229-30 (11th Cir. 2000)).

As to the second element (traceability), "an injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560-61 (internal quotations omitted). While this does not require that Defendants' alleged conduct be the "most immediate cause, or even a proximate

cause of [P]laintiffs' injuries" (*Mednax*, 603 F.Supp.3d at 1197), this element nonetheless requires a "logical explanation" (*In re VTech Data Breach Litig.*, 2017 WL 2880102, at *4 (N.D. Ill. Jul. 5, 2017)) as to how the alleged injuries are fairly traceable to the alleged conduct of the defendant that does not require an "ingenious academic exercise in the conceivable." *Hutton v. Nat'l Bd. of Examiners in Optometry*, 892 F.3d 613, 623 (4th Cir. 2018); *see also Preisler v. Eastpoint Recovery Grp., Inc.*, 2021 WL 2110794, at *6 (S.D. Fla. May 25, 2021) ("The main inquiry is whether 'the line of causation between the illegal conduct and injury [is] to attenuated' to establish traceability.") (citations omitted).

Lastly, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 561 (quoting *Simon*, 426 U.S. at 38, 43) (internal quotations omitted). In order to satisfy this requirement, Plaintiffs "must plausibly allege that a decision in [their] favor would 'significantly increase the likelihood that [they] would obtain relief that directly redresses the injury suffered.'" *Garcia-Bengochea v. Carnival Corp.*, 57 F.4th 916, 927 (11th Cir. 2023) (quoting *Harrell v. Fla. Bar*, 608 F.3d 1241, 1260 n.8 (11th Cir. 2010)). Here, the injuries alleged by Plaintiffs are legally insufficient to constitute an injury-in-fact. Even if Plaintiffs did sufficiently allege an injury-in-fact, these injuries still fail to meet the second element of standing as Plaintiffs fail to allege that any of these injuries are fairly traceable to any alleged conduct by NationsBenefits. Thus, Plaintiffs lack standing to bring suit.

A.     **Plaintiffs Fail to Sufficiently Allege an Injury-In-Fact**

Plaintiffs' Complaint largely hinges on the prospect of future identity theft or financial harm occurring as a result of the Incident. *See, e.g.*, Compl. ¶ 17. However, Plaintiffs have failed to sufficiently allege that any alleged risk of future harm is "concrete and particularized[,]" much less "actual or imminent." Instead, the harms Plaintiffs alleged are nothing more than "conjectural

or hypothetical." *Mednax*, 603 F.Supp.3d at 1197.  While Plaintiffs purport to allege actual misuse of their data as a result of the Incident, for the reasons discussed in Point I(B), *infra*, these allegations fail to meet the requirement of traceability, and Plaintiffs may not rely on these allegations to support actual misuse to demonstrate that any purported risk of harm is "substantial" or "certainly impending." *Mednax*, 603 F. Supp. 3d at 1201 (quoting *Tsao*, 986 F.3d at 1339) (internal quotations omitted); *see also Desue*, 2022 WL 796367, at *4 (same).

Indeed, it is worth noting that, of the twenty-six (26) putative class representatives who have asserted claims in the Complaint, only eleven (11) allege that their Social Security numbers were potentially impacted in the Incident. *See generally* Compl.  Of these Plaintiffs, most do not allege any actual misuse of their Private Information as a result of the Incident, and those that do allege actual misuse fail to raise any allegation suggesting traceability of that misuse to the Incident.  On the facts alleged, Plaintiffs lack standing based on any alleged risk of future harm. *See, e.g.*, *Taylor v. UKG, Inc.*, 2023 WL 8291834, at *6 (D. Mass. Sept. 15, 2023) (holding that mere presence of Social Security numbers in data breach insufficient to allege injury-in-fact in the absence of actual misuse).

Moreover, Plaintiffs rely on a 2007 Government Accountability Office ("GAO") report to support their theory of injuries and future risk of harm as a result of the Incident.  Compl. at ¶ 13, n.1.  What Plaintiffs neglect to mention, however, is the fact that the Eleventh Circuit in *Tsao* expressly held that "the GAO report actually demonstrates why there is no 'substantial risk' of identity theft."  986 F.3d at 1343; *see also In re SuperValu, Inc. Customer Data Sec. Breach Litig.*, 870 F.3d 763, 771 (8th Cir. 2017) (citing findings from the same 2007 GAO report that "most breaches have not resulted in detected incidents of identity theft" and holding that the report did not plausibly allege a risk of future harm).  Here, when coupled with the absence of any alleged

actual misuse fairly traceable to the Incident, as discussed in further detail *infra*, this Court should follow the Eleventh Circuit's holding in *Tsao* and find that Plaintiffs have not alleged a substantial risk of future harm.  986 F.3d at 1343.

The Supreme Court's holding in *TransUnion* also supports the conclusion that any risk of future harm is insufficient to establish  Article III standing.  *See Mednax*, 603 F. Supp. 3d at 1203 (quoting *TransUnion*, 141 S. Ct. at 2210-11); *see also Green-Cooper*, 73 F.4th at 889 (quoting *TransUnion*, 141 S. Ct. at 2204, 2210).  As discussed above, *TransUnion* mandates that the risk of future harm alone cannot confer standing "at least unless the exposure to the risk of future harm itself causes a separate concrete harm."  *TransUnion*, 141 S. Ct. at 2210-11; *see also Green-Cooper*, 73 F.4th at 889 (citing *Tsao*, 986 F.3d at 1343-44).  Here, in addition to the alleged future risk of harm, Plaintiffs allege loss of privacy and confidentiality of their Private Information, loss of value of their Private Information, and increased time and costs spent in response to the Incident. Compl. ¶¶ 17, 27, 32, 37, 42, 47, 52, 57, 62, 67, 72, 77, 92, 102, 107, 112, 122, 127, 132, 137, 147. However, these allegations are insufficient to confer standing.

*First*, Plaintiffs' allegations regarding the alleged loss of privacy and confidentiality of their Private Information are insufficient because "allegations of loss of privacy from a data incident, without more, are not enough to establish an injury-in-fact." *Mednax*, 603 F. Supp. 3d at 1204-05 (citing *Khan v. Children's Nat'l Health Sys.*, 188 F. Supp. 3d 524, 533 (D. Md. 2016)). Unlike the plaintiffs in *Mednax*, Plaintiffs have not demonstrated that they are "under a substantial and imminent risk of future identity theft" and thus their claims of loss of privacy and confidentiality are insufficient.  *Id.* at 1205;  *see also In re Practicefirst Data Breach Litig.*, 2022 WL 354544, at *8 (W.D.N.Y. Feb. 2, 2022) (collecting cases "reject[ing] this theory of standing in the data breach context"); *Kim v. McDonald's USA, LLC*, 2022 WL 4482826, at *7 (N.D. Ill.

Sept. 27, 2022); *In re Illuminate Educ. Data Sec. Incident Litig.*, 2023 WL 3158954, at *5 (C.D. Cal. Apr. 19, 2023); *C.C. v. Med-Data Inc.*, 2022 WL 970862, at *9 (D. Kan. Mar. 31, 2022).

  *Second*, Plaintiffs' allegations regarding the loss of value of their Private Information are equally insufficient to confer standing. Plaintiffs provide no factual allegation to support this theory of injury. While "[P]laintiffs need not reduce their [Private Information] to terms of dollars and cents in some fictitious marketplace where they offer such information for sale to the highest bidder" (*Mednax*, 603 F. Supp. 3d at 1204 (collecting cases)), "Plaintiffs have not alleged that they have attempted to sell their [Private Information] or that, if they have the [Incident] forced them to accept a decreased price for that information." *Chambliss v. Carefirst, Inc.*, 189 F. Supp. 3d 564, 572 (D. Md. 2016); *see also Taylor*, 2023 WL 8291834, at *7 (collecting cases); *Blood v. Labette Cty. Med. Ctr.*, 2022 WL 11745549, at *6 (D. Kan. Oct. 20, 2022); *Legg v. Leaders Life Ins. Co.*, 574 F. Supp. 3d 985, 994 (W.D. Ok. 2021); *Illuminate Educ.*, 2023 WL 3158954, at *5; *Travis v. Assured Imaging LLC*, 2021 WL 1862446, at *9 (D. Ariz. May 10, 2021). Moreover, as discussed in further detail below, Plaintiffs do not allege any diminution in value to their Private Information in the marketplace where their Private Information is used or harm in the market of credit. *See Mednax*, 603 F. Supp. 3d at 1204 (quoting *In re Marriot Int'l, Inc. Customer Data Sec. Breach Litig.*, 440 F. Supp. 3d 447, 462 (D. Md. 2020)). This theory has been held to be nothing more than "gibberish" and insufficient to confer standing. *See Gubala v. Time Warner Cable, Inc.*, 846 F.3d 909, 912-13 (7th Cir. 2017); *see also Taylor*, 2023 WL 8291834, at *7 (collecting cases).

  *Third*, Plaintiffs' allegations of increased time and costs spent in response to the Incident also cannot confer standing as this, too, is insufficient and has been rejected by the Supreme Court. *See Clapper*, 568 U.S. at 416. In *Clapper*, the Supreme Court held that a plaintiff "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical

future harm that is not certainly impending." *Id.*  Such is the case here.  Even the Plaintiffs who do not allege any actual misuse of their Private Information as a result of the Incident claim that they spent time and money in response to the Incident.  *See, e.g.*, Compl. ¶¶ 32, 52, 67, 87. Plaintiffs cannot rely on these self-manufactured harms, which have been held to be steps that any reasonable person should take as a matter of course, to confer standing.  *See Tsao*, 968 F.3d 1332 at 1344-45; *see also State ex rel. Gabalac v. Firestone Bank*, 46 Ohio App.2d 124, 126 (1975); *Douglas Cos., Inc. v. Commercial Nat. Bank of Texarkana*, 419 F.3d 812, 818-19 (8th Cir. 2005).

Similarly, for those Plaintiffs who allege an increase in spam calls, text messages and emails as a result of the Incident as injuries that confer standing, these claims are also deficient. Compl. ¶¶ 27, 32, 42, 47, 52, 57, 72, 77, 82, 102, 107, 112, 117, 122, 127, 132, 137, 142, 147, 152. In addition to the fact that none of these Plaintiffs allege that their email addresses were potentially impacted in the Incident, allegations of this nature have been rejected by courts as nothing more than a mere inconvenience and certainly insufficient to confer standing.  *See Blood*, 2022 WL 11745549, at *6; *Travis*, 2021 WL 1862446, at *9; *Peters v. St. Joseph Servs. Corp.*, 74 F. Supp. 3d 847, 857 (S.D. Tex. 2015); *Practicefirst*, 2022 WL 354544, at *5, n.8 (collecting cases).  Even if it were sufficient to constitute a concrete injury, it is impossible to plausibly allege any element of traceability to the Incident or any alleged conduct by NationsBenefits, as nearly every individual receives spam calls, texts or emails on a daily basis.  *See McCombs v. Delta Grp. Elecs., Inc.*, 2023 WL 3934666, at *6 (D.N.M. Jun. 9, 2023) ("[s]pam calls, texts, and e-mails have become very common in this digitized world"); *Legg*, 574 F. Supp. 3d at 993 (receipt of phishing emails "does not plausibly suggest . . . misuse").

Lastly, a number of the Plaintiffs also allege that they have suffered emotional distress as a result of the Incident.  Compl. ¶¶ 27, 32, 37, 42, 47, 52, 57, 62, 67, 72, 77, 82, 87, 92, 97, 102,

107, 112, 117, 122, 127, 132, 137, 142, 147, 152.  However, these generalized and threadbare assertions largely stemming from the speculative risk of future harm are insufficient to confer standing.[8]  *See Kim*, 2022 WL 4482826, at *6 (if alleged "mental aggravation, anxiety, and emotional distress from the data breach . . . alone were sufficient to invoke the jurisdiction of federal courts, then everyone would have standing to litigate about everything");  *Beck v. McDonald*, 848 F.3d 262, 272-73 (4th Cir. 2017) ("bare assertions of emotional injury" including "emotional upset" and "fear [of] identity theft and financial fraud" resulting from data breach insufficient to confer standing);  *In re Science Applications Int'l Corp. (SAIC) Backup Tape Data Theft Litigation*, 45 F.Supp.3d 14, 32 (D.D.C. 2014) ("objectively reasonable likelihood is not enough to create standing, even if it is enough to engender some anxiety") (quoting *Clapper*, 568 U.S. at 410) (internal quotations omitted).  As succinctly stated by the court in *Kim*, these "emotional injuries constitute quintessential abstract harms that are beyond the Court's power to remedy."  *Kim*, 2022 WL 4482826, at *6 (internal quotations omitted).

**B.  Plaintiffs' Allegations of Actual Misuse Fail To Sufficiently Allege Traceability**

Plaintiffs also purport to allege actual misuse of their Private Information as a result of the Incident.  However, these allegations fail the second prong of the standing requirement: traceability of any alleged misuse of their Private Information to the Incident or any alleged conduct of NationsBenefits.  *See In re SAIC*, 45 F. Supp. 3d at 32 (denying standing on fairly traceable grounds for many named plaintiffs; "In a society where around 3.3% of the population will experience some form of identity theft – regardless of the source – it is not surprising that at least five people out of a group of 4.7 million happen to have experienced some form of credit or bank-

---

[8] To the extent Plaintiffs allege emotional distress as a result of alleged actual misuse of their information, this, too, is insufficient for the reasons discussed *infra*.

account fraud."); *In re Community Health Sys., Inc.*, 2016 WL 4732630, at *12-13 (N.D. Ala. Sept. 12, 2016).[9]

### 1.   The Information Potentially Impacted In The Incident Could Not Have Caused The Alleged Actual Misuse

Certain Plaintiffs allege that the incident resulted in fraudulent charges on their financial accounts, credit or debit cards, and other online accounts.  Compl. ¶¶ 37 (T.E, unauthorized charges on CashApp account and Direct Express federal benefits card); 47 (Fuss, contact from several banks, financial institutions and TransUnion regarding unauthorized accounts and fraudulent charges on debit card); 57 (King, unauthorized account inquiries and transactions attempted, and unauthorized transactions on CashApp and PayPal accounts); 77 (P Lazaroff, credit or debit card attempted to be opened); 107 (Sanders, fraudulent charges on credit card); 112 (Shepherd, unauthorized charges on debit card); 117 (Skuraskis, unauthorized charges on PayPal and Forever 21 accounts); 127 (A.T., fraudulent attempts to access Walmart account which is linked to debit cards); 137 (Wilczynski, two breaches of bank accounts); 147 (Wilson, unauthorized charges on debit card, numerous account inquiries which resulted in a decreased credit score); 152 (Wolsey, four fraudulent attempts of opening credit cards).

However, these Plaintiffs fail to allege how the information potentially impacted in the Incident could have plausibly caused the alleged actual misuse.  Indeed, with the exception of Plaintiffs Sanders and Shepherd, none of these Plaintiffs had any PII, such as Social Security

---

[9] A number of the Plaintiffs do not allege any actual misuse of their Private Information as a result of the Incident. *See* Compl. ¶¶ 32 (Dekenipp), 42 (Fideleff), 52 (Hassan), 67 (L Kosbab), 72 (Landries), 77 (Lazaroff), 87 (McCoy), 97 (C Radtke), 102 (M Radtke), 122 (Skuya), 132 (Wanser), 142 (Williams).  While they do allege that they have experienced increased spam calls, texts and emails and that they have incurred time and expenses as a result of the Incident, for the reasons discussed above, in the absence of allegations of actual misuse, injuries of this type cannot confer standing as a matter of law.  *See, e.g.*, *Mednax*, 603 F. Supp. 3d at 1205.  Thus, these Plaintiffs should be dismissed outright as they lack standing to bring suit.  *See* Point I(A), *supra*.  This section only addresses the remaining Plaintiffs.

numbers, financial account numbers, or credit or debit card numbers potentially impacted in connection with the Incident.  Compl. ¶¶ 35, 45, 55, 75, 115, 125, 135, 145, 150.  Rather, the information included PHI, such as name, address, telephone number, date of birth, gender, health plan subscriber ID number, Medicare number, Santa Clara Family Health Plan ID number, and Medi-Cal Index Number.  *Id.*  For Plaintiffs Sanders and Shepherd, while their Social Security numbers were potentially impacted in the Incident, they allege fraudulent charges on their credit and debit cards.  *Id.* ¶¶ 107, 112.  However, their credit or debit card information was not potentially impacted in the Incident.  *Id.* ¶¶ 105, 110.

Given the actual misuse alleged, it is simply inconceivable for Plaintiffs to suggest, much less plausibly allege, any traceability of the alleged actual misuse to the Incident or any alleged conduct of NationsBenefits.  *See In re VTech Data Breach Litig.*, 2017 WL 2880102, at *4; *see also Community Health Sys.*, 2016 WL 4732630, at *12 (unauthorized access to bank account not traceable to data breach that "did not include financial information such as bank account numbers"); *Blood*, 2022 WL 11745549, at *6 (plaintiffs "fail to plead facts suggesting the IRS problem is traceable to Defendant's actions").  In light of the patent insufficiency of these allegations, Plaintiffs may not rely on any alleged actual misuse as set forth herein to confer standing, and thus lack standing to bring suit.

### 2.    Allegations Of Attempted Misuse Do Not Constitute Actual Misuse

Plaintiffs King, P Lazaroff, A.T. and Wolsey also allege that there were attempts of misuse of their information as a result of the Incident.  Compl. ¶¶ 57 (King, attempted account inquiries and transactions); 77 (P. Lazaroff, attempts to open credit or debit card); 127 (A.T., attempts to access his Walmart account to which his debit cards are linked); 152 (Wolsey, attempts to open credit cards).  Although allegations of *actual* misuse can satisfy the injury-in-fact requirement,

allegations of *attempted* misuse have been rejected as insufficient. *Kim*, 2022 WL 4482826, at *5 (no standing where plaintiff alleged "only that he received notifications that an individual in Japan had '*attempted*' to log in to his email, but he does not allege that any of the log in attempts succeeded.") (emphasis in original). Thus, in addition to failing to satisfy the standing requirements for the reasons discussed in Point I(B)(1) above, these allegations fail to support an argument that Plaintiffs have standing to bring suit.

### 3.     Allegations Of The Presence Of Plaintiffs' Information On The Dark Web Do Not Constitute Actual Misuse

Plaintiffs B Kosbab and S McCoy also allege that they have been told that their information is available on the dark web. Complaint ¶¶ 62 (B Kosbab, "Additionally, one credit reporting agency has indicated that her Private Information was available on the dark web."); 92 (S McCoy, "Plaintiff Sharon McCoy has been informed that her confidential information is on the dark web.") However, these allegations fail because Plaintiffs do not allege whether their information was on the dark web before the Incident and whether they were "only notified later"; that this is the only data breach that they have been involved in; or whether Defendants were "the only place this information was available." *Blood*, 2022 WL 11745549, at *8. Stated differently, Plaintiffs do not claim an injury different than what every resident of the United States faces on a daily basis, and one that Plaintiffs would continue to face irrespective of the Incident or any alleged conduct by Defendants. *See In re SAIC*, 45 F.Supp.3d at 32; *see also Beck*, 848 F.3d at 275 (finding it speculative that "thieves [would] then select, from thousands of others, the personal information of the named plaintiffs").

### 5.     Allegations Of Actual Misuse Are Not Fairly Traceable

In *Resnick*, the Eleventh Circuit succinctly stated that "to prove that a data breach caused identity theft, the pleadings must include allegations of a nexus between the two instances beyond

allegations of time and sequence." *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1326 (11th Cir. 2012). While certain Plaintiffs (discussed *infra*) purport to allege actual misuse of their Private Information, these allegations fall woefully short of the standard proscribed by the Eleventh Circuit in *Resnick*, and indeed contain no allegation of time and sequence sufficient to support traceability, and thus Plaintiffs may not rely on this alleged actual misuse to confer standing. *See id.*

First, Caliendo alleges that she was a victim of medical identity theft, as she was contacted by her health insurance company in March 2023 regarding five suspicious charges for Covid tests between January and April 2023. Compl. ¶¶ 27. However, the Incident occurred on or around January 29, 2023, and thus these allegations fail to demonstrate that the alleged medical identity theft is fairly traceable to the Incident. *Id.* ¶ 186; Notice Letter. It is impossible that Caliendo health insurance information could have been used in connection with five suspicious charges for Covid tests beginning in January 2023 when the Incident did not occur until January 29, 2023. Stated differently, Caliendo's allegation concede that the charges occurred *before* the Incident, thus rebutting any argument of traceability.

Second, B Kosbab alleges that she was charged twelve times for COVID-19 test kits and catheters that she did not order or receive. Compl. ¶ 62. Shepherd also alleges that she has experienced several hard inquiries on her credit files, and that an AT&T account was opened in her name. *Id.* ¶ 112. However, B Kosbab and Shepherd do not even allege, much less suggest, any traceability of the alleged actual misuse to the Incident or NationsBenefits' alleged conduct, and nowhere in the Complaint is any "allegation[] of a nexus between the two instances" – not even "allegations of time and sequence." *Resnick*, 693 F.3d at 1326. These allegations are entirely insufficient and fly in the face of the most rudimentary pleading requirements.

At a minimum, Plaintiff's allegations "do not permit the court to infer more than the mere

possibility" that any alleged fraud is fairly traceable to NationsBenefits, which is insufficient to satisfy the pleading requirements here. *Aschroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *see also Resnick*, 693 F.3d at 1326. Indeed, Plaintiffs' own admissions in the Complaint regarding the omnipresent nature of data breaches rebuts any argument that Plaintiffs have suffered any actual misuse that is the result of the Incident and not some other data security incident impacting Plaintiffs' Private Information. *See, e.g.*, Compl. ¶¶ 197, 227 n.55 (article discussing the prevalence of data breaches and, in fact, discussing how identity theft as a result of data breaches is "limited"). Moreover, any allegation that any alleged conduct by NationsBenefits somehow cause these alleged injuries is entirely implausible given that the Incident impacted Fortra's systems and not NationsBenefits. In sum, these allegations of actual misuse are legally insufficient to constitute an injury-in-fact fairly traceable to any alleged conduct by NationsBenefits, and thus cannot support standing.

### C.     Plaintiffs Lack Standing To Pursue Injunctive Relief

The Complaint also seeks declaratory relief, requiring NationsBenefits to, *inter alia*, provide lifetime credit monitoring and identity theft insurance to Plaintiffs and implement and maintain reasonable security and monitoring measures. Compl. ¶ 334. Where a plaintiff fails to allege a sufficiently imminent and substantial risk of harm, as is the case here, a plaintiff also lacks standing to pursue injunctive relief. *See Green-Cooper*, 73 F.4th at 889 (quoting *TransUnion*, 141 S. Ct. at 2204, 2210); *see also TransUnion*, 141 S. Ct. at 2210 ("a person exposed to a risk of future harm may pursue forward-looking, injunctive relief to prevent the harm from occurring, at least so long as the risk of harm is sufficiently imminent and substantial.") (citations omitted). As discussed above, all Plaintiffs fail to demonstrate *any* future risk of harm, much less a sufficiently imminent and substantial risk, and thus lack standing to pursue injunctive relief.

Courts have also held that, in order to allege standing to pursue a claim for injunctive relief

in connection with a prior data security incident, a plaintiff must allege that a second breach of the defendant's computer systems is "imminent." *In re Pawn Am. Consumer Data Breach Litig.*, 2022 WL 3159874, at *8 (D. Minn. Aug. 8, 2022). An allegation that a plaintiff has an "interest" in ensuring that their information is protected is insufficient, as this is nothing more than the common interests of "every human being." *Id.* Here, the Complaint makes no allegation plausibly suggesting that a second data security incident impacting NationsBenefits is "imminent." Indeed, the very crux of the Complaint is a data security incident impacting *Fortra*, not NationsBenefits. Moreover, as set forth in the notification letter attached to the Complaint, following the Incident, NationsBenefits "immediately stopped using Fortra's software" and is "continuing to implement additional procedures to further strengthen the security of [its] IT system environments." Compl., Exhibit A. Thus, Plaintiffs lack standing to pursue injunctive relief.

## POINT II

## THE COMPLAINT FAILS TO STATE A CLAIM

Even if Plaintiffs had standing to bring suit against NationsBenefits, the Complaint should be dismissed for failure to state a claim. To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This requires a plaintiff to allege more than "a sheer possibility that a defendant has acted unlawfully." *Harding v. NCL (Bahamas) Ltd.*, 90 F. Supp. 3d 1305, 1307 (S.D. Fla. 2015) (quoting *Iqbal*, 556 U.S. at 678) (internal quotations omitted). While this does not require "detailed factual allegations, . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Iqbal*, 556 U.S. at 678) (internal quotations omitted). "Threadbare recitals of the elements of a cause of action" and labels and conclusory statements "do not suffice" and "will not survive dismissal." *Id.* (quoting *Iqbal*,

556 U.S. at 678 and *Twombly*, 550 U.S. at 555). Here, each cause of action asserted in the Complaint is insufficiently pled, thus necessitating dismissal.[10][11]

## A. Negligence

Plaintiff's first cause of action for negligence fails because Plaintiffs fail to plausibly allege that NationsBenefits breached its duty to safeguard their Private Information. *Mednax*, 603 F. Supp. 3d at 1222 (quoting *Resnick*, 693 F.3d at 1325) (internal quotations omitted). Plaintiffs claim that "[d]iscovery is necessary to fully understand the reasons for this failure, but it appears that in its quest for rapid growth over the last three years, NationsBenefits has failed to put adequate resources and emphasis on the need for data security." Compl. ¶ 267. However, Plaintiffs again ignore the fact that the Incident impacted *Fortra*, and not NationsBenefits. *See* Compl., Exhibit A; *see also* Fortra Complaint. Plaintiffs also allege that NationsBenefits breached its duty to notify Plaintiffs of the Incident, but as discussed *infra*, notification was provided timely and in accordance with applicable law and Plaintiffs allege no facts indicating otherwise. *See infra* Point II(I). Plaintiffs' negligence claim thus fails.

## B. Negligence *Per Se*

Plaintiffs' second cause of action for negligence *per se* based on alleged violations of

---

[10] For purposes of this motion only, NationsBenefits assumes that Plaintiff's tort-based claims against NationsBenefits are governed by Florida law. *See Mednax*, 603 F. Supp. 3d at 1198-99 (*quoting eCapital Comm. Fin. Corp. v. Hitachi Cap. Am. Corp.*, 519 F. Supp. 3d 1129, 1134 n.4). While Plaintiffs allege that the Incident impacted Fortra's systems, the claims against NationsBenefits favor the application of Florida law to Plaintiffs' common law claims. *See id.* at 1199-1200 ("Florida is where the data was maintained, multiple Defendants are domiciled, and Defendants' security protocols allegedly broke down.") (citations omitted).

[11] Each of Plaintiffs' claims (including tort-based and statutory claims) fail because Plaintiffs fail to allege a legally cognizable injury and the required causation for each of their claims. *See* Point I, *supra*. The standard for alleging facts sufficient to support a legally cognizable injury "is generally higher than that" for standing. *Attias v. CareFirst, Inc.*, 365 F. Supp. Ed 1, 13 (D.D.C. 2019); *see also Krottner v. Starbucks Corp.*, 406 F. App'x 129, 131 (9th Cir. 2010) (finding that the complaint alleged Article II standing "does not establish . . . damages for purposes of . . . state law claims"). The allegations in the Complaint are not only insufficient to meet the requirements under Article III, but also fail to state a claim. In the interest of brevity, NationsBenefits will not repeat this argument for each of the causes of action alleged in the Complaint.

HIPAA, the HIPAA Privacy Rule and Security Rule, HITECH, the FTC Act, and certain unidentified state statutes is also deficient. "Federal courts in Florida have held that a negligence *per se* claim cannot rest on a federal statute that does not provide a private right of action." *Mednax*, 608 F. Supp. 3d at 1225 (citing *In re Brinker Data Incident Litigation*, 2020 WL 691848, at *9 (M.D. Fla. Jan. 27, 2020)). HIPAA, HITECH and the FTC Act do not provide a private right of action, and the statutes themselves do not "evidence[] legislative intent to create a private right of action." *Mednax*, 608 F. Supp. 3d at 1216, 1225 (citing *In re Brinker*, 2020 WL 691848, at *9); *see also Weinberg v. Advanced Data Processing, Inc.*, 147 F. Supp. 3d 1359, 1365-66 (S.D. Fla. 2015).[12]

Moreover, while Plaintiffs also include "state data security and consumer protection statutes," the cause of action fails to properly put NationsBenefits on notice of which statutes Plaintiffs are relying upon in support of this cause of action to allow NationsBenefits to determine whether Plaintiffs may assert a negligence *per se* claim based upon same. Even if Plaintiffs had done so, for the reasons discussed *infra*, the Complaint in its entirety fails to plausibly allege that NationsBenefits violated any such statute, thus defeating any potentially cognizable negligence *per se* claim. Thus, for these reasons, this claim should be dismissed.

## C.     Breach of Third-Party Beneficiary Contract

Plaintiffs' allegations that "NationsBenefits entered into contracts" with its clients "expressly for the benefits of Plaintiffs" that included "the benefit of collection and protection of the Private Information belonging to Plaintiffs" as "the direct and primary objective of the contracting parties" are insufficient to state a claim for breach of third-party beneficiary contract.

---

[12] This claim also fails because Plaintiffs do not plausibly allege that NationsBenefits was negligent or violated the FTC Act or HIPAA – indeed, the opposite is true. *See* Point II(A), *supra*.

Compl. ¶¶ 289-90.

These allegations do not support the conclusion that Plaintiffs were the direct and primary beneficiaries of these contracts.  Indeed, the very nature of services provided by NationsBenefits suggests the exact opposite – that NationsBenefits provided its *clients*, not the Named Plaintiffs, with administration services.  Compl. ¶¶ 156-57.  Despite the fact that an "incidental or consequential benefit" is insufficient, Plaintiffs must still allege "facts showing that [NationsBenefits] and [its clients] clearly and specifically expressed their intent for the contract to benefit [Plaintiffs] or any other third parties."  *Fischer v. CentralSquare Technologies, LLC*, 2021 WL 10558134, at *4 (S.D. Fla. Sept. 16, 2021).  Accordingly, this claim is insufficiently pled.[13]

## D.     Breach of Implied Contract

Plaintiffs' allegations in support of their claim for breach of implied contract are equally insufficient.  Compl. ¶¶ 295-312.  Much like the plaintiffs in *Mednax*, Plaintiffs here "allege no invitation or solicitation by [NationsBenefits] indicating that [NationsBenefits] implicitly assented to secure their PHI and PII in exchange for renumeration."  *Mednax*, 608 F. Supp. 3d at 1220 (citing *Brush v. Miami Beach Healthcare Grp. Ltd.*, 238 F. Supp. 3d 1359, 1369 (S.D. Fla. 2017)).  The fact that Plaintiffs may have relied upon NationsBenefits' privacy notice (even though they do not allege it) does not alter this conclusion, as these notices are not contractual in nature.  *Id.* (citing *Brush*, 238 F. Supp. 3d at 1367).  "Because [NationsBenefits is] required by law to adhere to HIPAA without receiving any consideration from Plaintiffs or any other patient, these provisions cannot create contractual obligations" and "the Court cannot infer from Plaintiffs'

---

[13] For the reasons discussed herein, Plaintiffs also fail to allege that NationsBenefits breached its contracts with its clients by "fail[ing] to use reasonable data security measures[,]" as the Incident impacted Fortra and not NationsBenefits, or by "fail[ing] to timely notify Plaintiffs" of the Incident.  Compl. ¶ 292; *see also* Point II(A), *supra*; *In re MCG Health Data Sec. Issue Litigation*, 2023 WL 3057428, at *4-5 (W.D. Wash. Mar. 27, 2023).

allegations the mutual assent and meeting of the minds required to form an implied contract for data security services based on the parties' conduct." *Id.* (citing *Brush*, 238 F. Supp. 3d at 1367).

### E.      Unjust Enrichment

Plaintiffs' claim for unjust enrichment is belied by Plaintiffs' admission that NationsBenefits' clients provided their Private Information to NationsBenefits' clients who, in turn, provided that information to NationsBenefits. Compl. ¶¶ 313-327; *see also DeSue*, 2022 WL 796367, at *8 (quoting *In re Brinker*, 2020 WL 691848, at *10). Given the nature of the relationship among the parties (or lack thereof), Plaintiffs "did not affirmatively choose to use Defendants' services; they did not pay for Defendants' services nor provide their private information to Defendants," making Plaintiffs allegations underlying this claim insufficient. *Id.* (citing *Stephens v. Availity, LLC*, 2019 WL 13041330, at *1 (M.D. Fla. Oct. 1, 2019)) (additional citations omitted).

### F.      Declaratory Judgment Act

Plaintiffs' claim under the Declaratory Judgment Act fails because Plaintiffs have no reasonable expectation of future injury. *See CentralSquare*, 2021 WL 10558134, at *5-6. As discussed above, the allegations in the Complaint do not plausibly suggest that Plaintiffs are at *any* risk of further compromise of their Private Information, particularly where the Incident impacted Fortra's systems, not NationsBenefits, and NationsBenefits immediately stopped using Fortra's software after the Incident. Compl., Exhibit A; *see also supra* Point I(C). Even if Plaintiffs had plausibly alleged such an expectation, this claim would still fail as "superfluous" because the remaining claims for relief would "resolve all of the disputed issues before this Court." *Batchelor v. Wright Nat'l Flood Ins. Co.*, 2019 WL 8060184, at *3 (S.D. Fla. Aug. 19, 2019).

### G.     Arkansas Deceptive Trade Practices Act

A claim for violation of the Arkansas Deceptive Trade Practices Act ("ADTPA") requires Plaintiffs to allege that "the violations of public policy and the complained-of conduct must relate to, among other things, the improper application of economic leverage in a trade transaction." *Bellwether Cmty. Credit Union v. Chipotle Mexican Grill, Inc.*, 353 F. Supp. 3d 1070, 1091 (D. Col. 2018) (citing *Universal Cooperatives, Inc. v. AAC Flying Serv., Inc.*, 710 F.3d 790, 795-96 (8th Cir. 2013)).   Here, not only do Plaintiffs fail to allege any direct relationship with NationsBenefits, and thus cannot plausibly allege that NationsBenefits "improperly used economic leverage[,]" but the conclusory allegations that NationsBenefits "cut corners and saved money[]" are insufficient to sustain a claim under the ADTPA.  *Id.* (quoting *Universal Cooperatives*, 710 F.3d at 795 and *Apprentice Info.*, 544 S.W. 3d at 539).

### H.     California Consumer Privacy Act ("CCPA")

The CCPA does not apply to a business associate of a covered entity (like NationsBenefits). *See In re MCG*, 2023 WL 3057428, at *11 (citing *Mullinix v. US Fertility, LLC*, 2021 WL 4935975, at *5 (C.D. Cal. Apr. 21, 2021); *see also* Compl. ¶¶ 10, 203-04, 203 n.43, 216-20.  Even if the CCPA applied to NationsBenefits, this claim fails because Plaintiffs have not offered sufficient allegations supporting the conclusion that NationsBenefits failed to maintain reasonable security procedures given that the Data Breach affected Fortra, not NationsBenefits.[14]

### I.     California Customer Records Act ("CCRA")

The claim for violation of the CCRA fails because Plaintiffs do not allege that NationsBenefits did not maintain reasonable security practices or that NationsBenefits failed to

---

[14] Plaintiffs also allege that NationsBenefits did not respond to its purported CCPA statutory notice.  However, a response was provided by NationsBenefits on July 21, 2023, thus making any claim for statutory damages under the CCPA improper.

provided notice of the Incident as required by the CCRA. *Mednax*, 608 F. Supp. 3d at 1219 (citing Cal. Civ. Code §§ 1798.81-82). Plaintiffs are required to give "some indication of how [NationsBenefits'] cybersecurity was supposedly deficient." *Dugas v. Starwood Hotels & Resorts Worldwide, Inc.*, 2016 WL 6523428, at *10 (S.D. Cal. Nov. 3, 2016); *see also Kuhns v. Scottrade, Inc.*, 868 F.3d 711, 719 (8th Cir. 2017) (quoting *Iqbal*, 566 U.S. at 678). Here, Plaintiffs offer nothing more than speculation and conclusions regarding NationsBenefits' alleged deficient cybersecurity practices—which are irrelevant as the Incident impacted Fortra, not NationsBenefits.

Plaintiffs also fail to sufficiently allege deficient notice under the CCRA. As Plaintiffs concede, the timeline for providing notification of a data breach is governed by HIPAA, and NationsBenefits complied with this deadline; providing notice less than three months after the Data Breach. Compl. ¶¶ 189-90; *see also* 45 C.F.R. § 164.410. The fact that Plaintiffs claim that they should have been notified sooner does not equate to a violation of the CCRA. *Cf. In re Arthur J. Gallagher Data Breach Litigation*, 631 F. Supp. 3d 573, 589 (N.D. Ill. 2022) (longer nine-month delay sufficient to infer unreasonable delay); *In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.*, 613 F. Supp. 3d 1284, 1306-07 (S.D. Cal. 2020) (five-month delay).

## J.   California Unfair Competition Law ("CUCL")

Plaintiffs' claim under the CUCL fails because a plain reading of the Complaint makes clear that Plaintiffs do not "allege that [they] lack[] an adequate remedy at law." *Mednax*, 608 F. Supp. 3d at 1216 (citing *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 839 n.2 (9th Cir. 2020)) (additional citations omitted). Indeed, twenty-five (25) other causes of action in the Complaint seek injunctive relief and monetary damages.

This claim also fails because Plaintiffs fail to allege reliance on any alleged misrepresentations or omissions. *See Dimas v. JPMorgan Chase Bank, N.A.*, 2018 WL 809508,

at *8 (N.D. Cal. Feb. 9, 2018).  Plaintiffs plead no facts demonstrating actual reliance, nor can

they, as Plaintiffs did not have a direct relationship with NationsBenefits.  Compl. ¶¶ 156-57.

Moreover, this claim further fails because Plaintiffs fail to allege that NationsBenefits failed to

disclose information that NationsBenefits knew *at the time* of the relevant transaction(s).  *See In

re Nexus 6P Prod. Liab. Litig.*, 293 F. Supp. 3d 888, 927 (N.D. Cal. 2018).  Nor could they do so,

given the Complaint concedes that the Incident was the result of a *zero-day* vulnerability, *i.e.*, a

vulnerability that was *not previously known*.[15]

## K.     Florida Deceptive and Unfair Trade Practices Act ("FDUTPA")

Plaintiffs' claim for violation of FDUTPA fails because Plaintiffs do not allege diminution

in value of the goods and services that they received from NationsBenefits.  *See Mednax*, 603 F.

Supp. 3d at 1212-13 (collecting cases and rejecting the plaintiffs' argument regarding "diminished

value of their PHI and PII").  As discussed above, Plaintiffs' alleged damages throughout the

Complaint are insufficient to meet the standing requirements under Article III.  *See* Point I, *supra*.

Even if they did, however, the allegations would not be sufficient to demonstrate damages under

the FDUTPA.  *See Mednax*, 603 F. Supp. 3d at 1212-13 ("However, in the FDUTPA context, they

amount to merely other property that was damaged as a result of the use of Defendants' health care

services.  In other words, they are consequential damages insufficient to state a claim under the

FDUTPA.") (citations omitted).  FDUTPA does not apply to "a claim for damage to property other

than the property that is the subject of the consumer transaction." Fla. Stat. § 501.212(3). Courts

interpret this section to prohibit recovery for consequential damages. *See In re Brinker*, 2020 WL

691848, at *13.  Thus, this claim fails.  *See id.*; *see also Brinker*, 2020 WL 691848, at *13.

---

[15] This claim also fails because Plaintiffs fail to meet Rule 9(b)'s heightened pleading requirements.  *See Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018).  Plaintiffs' generalized and conclusory allegations are insufficient.  *See In re Galectin Therapeutics, Inc. Sec. Litig.*, 843 F.3d 1257, 1269 (11th Cir. 2016).

**L.      Illinois Personal Information Protection Act ("IPIPA")**

The IPIPA does not impose any duty beyond providing notice of a security breach.  *See Cmty. Bank of Trenton v. Scnuck Markets, Inc.*, 887 F.3d 803, 816 (8th Cir. 2018) (citations omitted).  NationsBenefits provided notice of the Incident in accordance with applicable law, and Plaintiffs allegations do not suggest a violation of the duty to provide notice of the Incident or a violation of the IPIPA.  *See* Point II(I), *supra*.

**M.      Illinois Consumer Fraud and Deceptive Business Practices Act   ("ICFA")**

The ICFA does not apply if the transaction occurs primarily out of state.  *See Irwin v. Jimmy John's Franchise, LLC*, 175 F. Supp. 3d 1064, 1069-70 (N.D. Ill. 2016) (citations omitted).  Here, the Complaint does not allege any connection to Illinois other than Plaintiffs' residence.  Any "transaction" between Plaintiffs and NationsBenefits could only occur "primarily out of state,"—defeating a claim for violation of the ICFA.  *Id.*  Moreover, Plaintiffs' generalized allegations that NationsBenefits failed to implement and maintain reasonable security and privacy measures is insufficient to sustain a claim under the ICFA.  *See Cmty. Bank of Trenton*, 877 F.3d at 823-24.  Further, because Plaintiffs have not sufficiently alleged a violation of IPIPA, as discussed above, their claim for violation of the ICFA also fails.  *See id.* at 824-26; *see also In re Equifax, Inc. Customer Data Sec. Breach Litig.*, 362 F. Supp. 3d 1295, 1337-38 (N.D. Ga. 2019).

**N.      Illinois Uniform Deceptive Trade Practices Act ("IUDTPA")**

The IUDTPA only allows for injunctive relief.  *See Fox v. Iowa Health Sys.*, 399 F. Supp. 3d 780, 799-800 (W.D. Wis. 2019).   Indeed, the IUDTPA "was enacted to prohibit unfair competition and was not intended to be a consumer protection statute." *Perdue v. Hy-Vee, Inc.*, 455 F. Supp. 3d 749, 773 (C.D. Ill. 2020) (citation omitted). Plaintiffs "have not alleged facts showing that [NationsBenefits'] misrepresentations are likely to cause future injury." *Fox, 399 F.*

*Supp. 3d.* at 798; *see also* Point I(C), *supra*.  In the data breach context, where plaintiffs claim a future risk of fraud and identity theft, these allegations are insufficient to warrant injunctive relief. *Perdue*, 455 F. Supp. 3d at 773.  While NationsBenefits' cybersecurity posture is irrelevant given the nature of the Incident, this also makes injunctive relief under the IUDTPA improper and unnecessary.  *See Fox*, 399 F. Supp. 3d at 799-800.

**O.     Indiana Deceptive Consumer Sales Act ("IDSCA")**

Plaintiffs' claim for violation of the IDCSA fails because there was no "consumer transaction" between Plaintiffs and NationsBenefits.  *See Mackey v. Belden, Inc.*, 2021 WL 336174, at *12-13 (E.D. Mo. Aug. 3, 2021); *see also* Ind. Code § 24-5-0.5-2(a)(1) (defining "consumer transaction").  Even if there were, this claim further fails because the IDCSA recognizes claims for "uncured and incurable deceptive acts."  *Id.* at *13 (quotations omitted).  Plaintiffs do not allege that they provided notice to NationsBenefits of any purported violation of the IDCSA (because they did not), and their conclusory and generalized statements regarding NationsBenefits' alleged acts are insufficient to sustain a claim under the IDCSA.  *See id.* at *13.[16]

**P.     Kansas Protection of Consumer Information Act ("KPCIA")**

While it is unclear whether the KPCIA provides a private right of action, it is clear that the KPCIA exempts entities regulated by HIPAA, such as NationsBenefits.  *See In re Am. Med. Collection Agency, Inc. Customer Data Sec. Breach Litig.*, 2023 WL 6216542, at *7 (D.N.J. Sept. 21, 2023).  Thus, this claim must be dismissed.

---

[16] Allegations of incurable acts under the IDCSA are also subject to heightened FRCP 9(b) pleading standards. *See SMC Corp. v. Peoplesoft USA, Inc.*, 1:00-CV-01095-LJM-VS, 2004 WL 2538641, at *4 (S.D. Ind. Oct. 12, 2004). Plaintiffs' threadbare allegations of conduct fail to plead this claim with the requisite specificity. Further, incurable acts require the additional element of "intent"—which is insufficiently pled here. *McKinney v. State*, 693 N.E.2d 65, 68 (Ind. 1998).

**Q.     Kansas Consumer Protection Act ("KCPA")**

Much like the IDCSA, the KCPA prohibits deceptive acts or practices in connection with a consumer transaction, and, here, there is no such transaction alleged. *See In re MCG*, 2023 WL 3057428, at *8-9. Even if there were a transaction alleged, Plaintiffs' conclusory allegations are insufficient to meet the pleading requirements under the KCPA. *See id.* at *9.

**R.     Michigan Consumer Protection Act ("MCPA")**

The MCPA requires Plaintiffs to allege "actual reliance on [NationsBenefits'] allegedly wrongful conduct to recover." *See In re Am. Med.*, 2023 WL 6216542, at *32 (citing *In re OnStar Cont. Litig.*, 278 F.R.D. 352, 376-78 (E.D. Mich. 2011)). Plaintiffs here fail to allege that they actually relied on any alleged misrepresentations or omissions by NationsBenefits, nor can they given the nature of the relationship between Plaintiffs and NationsBenefits. *See id.*

**S.     Missouri Merchandise Practices Act ("MMPA")**

Plaintiffs' MMPA claim fails because Plaintiffs do not allege any unlawful act in relation to any purchase of merchandise by Plaintiffs from NationsBenefits. *Mednax*, 603 F. Supp. 3d at 1215 (citing *Kuhns v. Scottrade, Inc.*, 868 F.3d 711, 719 (8th Cir. 2017)). Further, the elements of a MMPA claim must include alleging that (1) the unlawful act occurred in connection with sale or advertisement of merchandise in trade or commerce, (2) the unlawful act resulted in ascertainable loss of money or property, and (3) the loss must occur in relation to purchase or lease of merchandise. *See In re Geiler,* 398 B.R. 661, 671–72 (Bk. E.D. Mo. 2008). Plaintiffs have failed to sufficiently plead the elements of a MMPA claim. NationsBenefits provided supplemental benefits administration services, not data security services, and "[a]ny data security it provided to Plaintiffs was merely incidental—not in relation—to what it actually sold them." *Mednax*, 603 F. Supp. 3d at 1215. Moreover, Plaintiffs did not sell any services to Plaintiffs;

rather, it provided services to its clients who, in turn, provided services to Plaintiffs.

**T.      New Jersey Consumer Fraud Act ("NJCFA")**

The NJCFA "is not intended to cover every transaction that occurs in the marketplace, instead its applicability is limited to consumer transactions which are defined both by the status of the parties and the nature of the transaction itself." *In re Blackbaud, Inc., Cust. Data Breach Litig.*, 2021 WL 3568394, at *11 (D.S.C. Aug. 12, 2021) (internal quotations omitted).  Here, there was no consumer transaction between Plaintiffs and NationsBenefits.  *See id.* at *11-12.

**U.      New York General Business Law § 349 ("NYGBL")**

The claim for violation of NYGBL fails because the NYGBL does not apply extraterritorially.  *See Mednax*, 608 F. Supp. 3d at 1212 (quoting *Wright v. Publishers Clearing House, Inc.*, 439 F. Supp. 3d 102, 110 (E.D.N.Y. 2020)) (internal quotations omitted).  Here, unlike the defendant in Mednax, NationsBenefits is headquartered in *Florida*, "so to the extent it was responsible for overseeing or contributing to protocols for properly safeguarding Plaintiffs' and putative Class Members' [Private Information], it did so in [Florida,]" not New York.  *Id.* at 1212. Further, Plaintiffs fail to identify any specific deceptive statement NationsBenefits made, or the additional disclosures NationsBenefits should have made and, as a result, "have failed to 'give the defendant[s] fair notice of what the claim is and the grounds upon which it rests.'" *See Rider v. Uphold HQ Inc.*, 22CV1602 (DLC), 2023 WL 2163208, at *4 (S.D.N.Y. Feb. 22, 2023) (dismissing NYGB  claim where similar allegations of misrepresentations and omissions were made in a data breach context) (quoting *Browe v. CTC Corp.*, 15 F.4th 175, 202 (2d Cir. 2021)).

**V.      North Carolina Identity Theft Protection Act ("NCITPA")**

There is no private right of action under the NCITPA, and any claim alleging violation of the NCITPA must be brought under the NDUTPA (as defined below).  *See In re Am. Med.*, 2021

WL 59337742, at *35 (citing *Rogers v. Keffer, Inc.*, 243 F. Supp. 3d 650, 662 (E.D.N.C. 2017)). This claim is fatally deficient.

**W.     North Carolina Unfair Trade Practices Act ("NCUDTPA")**

In order to state a claim for violation of the NCUDTPA, "[P]laintiffs must show that [NationsBenefits] owed a duty to disclose before [NationsBenefits] can be held liable for alleged omissions." *Mednax*, 603 F. Supp. 3d at 1215-16.  Plaintiffs cannot allege that NationsBenefits owed a duty to disclose any deficiencies with respect to Fortra's data security practices, particularly where the Incident was the result of a zero-day vulnerability.[17]

**X.     Ohio Consumer Sales Practices Act ("OCSPA")**

The OCSPA, much like the IDCSA, KCPA and MMPA, applies to consumer transactions and requires Plaintiffs to allege that NationsBenefits' conduct was substantially similar to conduct that is established as deceptive by Ohio administrative rule or state court decision.  *See Foster v. Health Recovery Services, Inc.*, 493 F. Supp. 3d 622, 637 (S.D. Ohio 2020) (citations omitted). Here, not only does the Complaint fail to allege a consumer transaction, but Plaintiffs fail to allege deceptive conduct and corresponding Ohio administrative rule or state court decision relied upon.

**Y.     Ohio Deceptive Trade Practices Act ("OCTPA")**

Plaintiffs lack standing to pursue a claim under the ODTPA.  *See Smallman v. MGM Resorts Int'l*, 638 F. Supp. 3d 1175, 1206-07 (D. Nev. 2022) (citing *Hamilton v. Ulta Beauty*, 2018 WL 3093527, at *3 (N.D. Ohio Jun. 21, 2018)); *see also In re MCG*, 2023 WL 3057428, at *10 (collecting cases).  Even if they had standing, Plaintiffs fail to state a claim as they fail to allege reliance on any alleged misrepresentations by NationsBenefits.  *See First Choice Fed. Credit*

---

[17] This claim also fails because Plaintiffs fail to meet Rule 9(b)'s heightened pleading requirements.  *See Packrite, LLC v. Graphic Packaging Int'l, Inc.*, 2018 WL 4112827, at *7 (M.D.N.C. Aug. 29, 2018).

*Union v. Wendy's Co.*, 2017 WL 9487086, at *4 (W.D. Pa. Feb. 13, 2017) (citations omitted).

**Z.      Pennsylvania Unfair Trade Practices and Consumer Protection Law ("PUTPCPL")**

A claim under the PUTPCPL requires an allegation of ascertainable losses, which requires Plaintiffs "to point to money or property that [they] would have had but for [NationsBenefits'] fraudulent actions." *In re Rutter's Inc. Data Sec. Breach Litig.*, 511 F. Supp. 3d 514, 541 (M.D. Pa. 2021) (internal quotations omitted).  Here, even while Plaintiff Fuss purports to allege that he lost money as a result of the Incident, as discussed above, any alleged losses are not fairly traceable to the Incident, particularly whereas Fuss' debit card information was not potentially impacted in the Incident.  *See* Compl. ¶ 45.  Plaintiffs also fail to allege any justifiable reliance.  *See Rutters*, 511 F. Supp. 3d at 542.  This claim, too, must be dismissed.

**AA.     Texas Deceptive Trade Practices – Consumer Protection Act ("TDTPA")**

The TDTPA only applies to a consumer transaction, which are not alleged in the Complaint. To the extent Plaintiffs rely on some alleged omissions of NationsBenefits, this claim further fails for the reasons discussed *supra*.  *See* Point II(J); *see also Willowbrook Foods, Inc. v. Grimmell Corp.*, 147 S.W.3d 492, 506-07 (Tex. App. 2004).[18]

<u>**CONCLUSION**</u>

Plaintiffs Complaint is premised upon nothing more than Plaintiffs' receipt of a notification letter, not any cognizable damages suffered, and does not allege any facts that establish standing.  Further, Plaintiffs fail to allege legally cognizable damages or facts sufficient to give rise to a claim upon which relief can be granted.  For all the foregoing reasons, Defendants respectfully requests that Plaintiffs' Complaint be dismissed with prejudice.

---

[18] This claim also fails because Plaintiffs fail to meet Rule 9(b)'s heightened pleading requirements.  *See Berry v. Indianapolis Life Ins. Co.*, 608 F. Supp. 2d 785, 800 (N.D. Tex. 2009).

Dated:      April 10, 2024

Respectfully Submitted,

GORDON REES SCULLY
MANSUKHANI, LLP

*/s/ Joseph Salvo*
Joseph Salvo (*pro hac vice*)
Brian Middlebrook (*pro hac vice*)
John T. Mills (*pro hac vice*)
Thomas R. Fanizzi, Jr. (*pro hac vice*)
One Battery Park Plaza, 28th Floor
New York, New York 10004
Tel: (212) 269-5500
Fax: (212) 269-5505
jsalvo@grsm.com
bmiddlebrook@grsm.com
jtmills@grsm.com
tfanizzi@grsm.com

Joseph A. Sacher (FBN 174920)
Miami Tower, Suite 3900
100 SE Second Street
Miami, Florida 33131
Tel: (305) 428-5339
Fax: (877) 634-7245
jsacher@grsm.com

*Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 10, 2024, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notice of electronic filing to all counsel of record.

*/s/ John Mills*
John T. Mills (*pro hac vice*)
