UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 24-MD-03090-RAR

In re:

**FORTRA FILE TRANSFER SOFTWARE DATA SECURITY BREACH LITIGATION**

This Document Relates to:

**ARIANA SKURASKIS,** *et al.*, *on behalf of themselves and all others similarly situated*,

    Plaintiffs,

v.

**NATIONSBENEFITS HOLDINGS, LLC,** *et al.*,

    Defendants.

Case No. 23-cv-60830-RAR (and all consolidated actions)

**DEFENDANTS' REPLY IN FURTHER SUPPORT OF
MOTION TO DISMISS CONSOLIDATED CLASS ACTION COMPLAINT**

NationsBenefits[1] respectfully submits this Reply Memorandum in Support of its Motion to Dismiss the Complaint filed by Plaintiffs pursuant to Fed. R. Civ. P. 12(b)(1) or, alternatively, pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons more fully in the Opening Memorandum and herein, NationsBenefits' motion should be granted.

**PRELIMINARY STATEMENT**

Plaintiffs' Opposition misses the mark and fails to provide any basis for this Honorable Court to deny NationsBenefits' Motion to Dismiss and allow the Complaint to proceed. *See* ECF No. 71 ("Opposition"). On their face, Plaintiffs' boilerplate allegations of injuries largely

---

[1] Capitalized terms used herein shall have the same meaning ascribed to them as set forth in the Memorandum in Support of NationsBenefits' Motion to Dismiss, filed April 10, 2024 ("Opening Memorandum"). *See* ECF No. 138.

-1-

stemming from the prospect of future harm absent any alleged actual misuse are insufficient to confer standing as a matter of law. Compl. ¶ 17. And, those Plaintiffs that do purport to allege actual misuse fail to plausibly allege traceability of that misuse to the Incident or any alleged conduct of NationsBenefits. *See* Opening Memorandum at Argument, § 1(B). Plaintiffs' Opposition addresses NationsBenefits' standing argument in a generalized manner, ignoring NationsBenefits' extensive arguments regarding the apparent lack of traceability given the nature of the Private Information potentially impacted in the Incident. *See* Opposition at pp. 3-13. This is insufficient, and the Complaint is facially deficient due to lack of standing.

Plaintiffs' Opposition also fails to provide a basis to deny NationsBenefits' alternative motion under Fed. R. Civ. P. 12(b)(6). *See* Opposition at pp. 13-35. As set forth more fully in the Opening Memorandum, Plaintiffs impermissibly attempt to assert duplicative claims against NationsBenefits, claiming that NationsBenefits' alleged failures caused the Incident, despite the inescapable fact that the Incident impacted *Fortra*, and not NationsBenefits. *See* Opening Memroandum at pp. 2-5. Such facts do not give rise to cognizable claims against NationsBenefits as a matter of law. It is apparent that each and every cause of action asserted in the Complaint suffers from fatal pleading defects. Thus, if this Court does not dismiss the Complaint for lack of standing, it must alternatively dismiss the Complaint for failure to state a claim.

## LEGAL ARGUMENT

### POINT I

### THE COMPLAINT MUST BE DISMISSED FOR LACK OF STANDING

Plaintiffs' Opposition heavily relies upon this Court's holdings in *Desue* and *Mednax* to argue that the Complaint contains sufficient allegations to confer standing. *See* Opposition at pp. 3-13. However, these cases in fact support NationsBenefits argument herein – that standing based

on fear of future harm is reserved only for exceptional circumstances where a named plaintiff has experienced misuse of his data in some way. *See, e.g.*, *Tsao v. Captiva MVP Rest. Partners, LLC*, 986 F.3d 1332, 1343-44 (11th Cir. 2021); *see also In re Mednax Servs., Inc. Customer Data Sec. Breach Litig.*, 603 F. Supp. 3d 1183, 1201-03 (S.D. Fla. 2022); *Desue v. 20/20 Eye Care Network, Inc.*, 2022 WL 796367, at *5 (S.D. Fla. Mar. 15, 2022). As set forth more fully in the Opening Memorandum, Plaintiffs have not done so here, as the majority of Plaintiffs do not allege any actual misuse of their Private Information, and those that do fail to plausibly allege traceability. *See* Opening Memorandum at pp. 11-21.

In *Mednax* and *Desue*, the plaintiffs each alleged actual misuse and access of their personal data resulting from the data security incidents at issue. *See Desue*, 2022 WL 796367, at *5; *Mednax*, 603 F. Supp. 3d at 1201-03. Specifically, in *DeSue*, the defendants confirmed that "data was potentially removed from its systems and then deleted" *and* the plaintiffs "allege[d] actual misuse of their data, including unknown credit inquiries, the opening of fraudulent bank accounts, and fraudulent applications for personal loans and unemployment benefits. *Desue*, 2022 WL 796367, at *5. Likewise, in *Mednax*, this Court adopted its holding in *Desue* and reached a similar conclusion in the face of similar allegations. *See Mednax*, 603 F. Supp. 3d at 1203 ("Given that Plaintiffs allege actual access and misuse of their PHI and PII, they have established 'substantial risk' of future harm and, thus, injury in fact for purpose of Article III standing regarding their claim for injunctive relief."). Contrary to Plaintiffs' arguments in Opposition, Plaintiffs have not made such plausible allegations here.[2]

---

[2] The Middle District of Florida's holding in *21st Century Oncology*, which pre-dates the Supreme Court's holding in *TransUnion* and the Eleventh Circuit's holding in *Green-Cooper*, also relied upon by Plaintiffs, warrants a similar conclusion. *See In re 21st Century Oncology Customer Data Sec. Breach Litig.*, 380 F. Supp. 3d 1243, 1254-54 (M.D. Fla. 2019).

Moreover, Plaintiffs also ignore *Green-Cooper*, wherein the Eleventh Circuit reaffirmed the principle that Plaintiffs must allege that the anticipated future harm *actually* materialized, or the risk of future harm itself caused some present harm. *See Green-Cooper v. Brinker Int'l, Inc.*, 73 F.4th 883, 889 (11th Cir. 2023) (citing *TransUnion LLC v. Ramirez*, 141 S.Ct. 2190, 2210-11 (2021) and *Tsao*, 986 F.3d at 1343-44). While Plaintiffs purport to argue that *Green-Cooper* establishes that the alleged posting of their Private Information on the dark web is a concrete injury for purposes of Article III standing (*see* Opposition at pp. 5-6), here, Plaintiffs merely speculate that their Private Information is for sale on the dark web. *See* Compl. ¶ 4 ("As a result, Clop is ***believed*** to have sold that Private Information on the dark web.") (emphasis added). Such speculation is insufficient.

Plaintiffs also grossly overstate the nature of the Private Information potentially impacted in the Incident to further support their flawed arguments regarding standing. *See* Opposition at pp. 5-6. As set forth more fully in the Opening Memorandum, only eleven Plaintiffs allege that their Social Security numbers were potentially impacted in the Incident; the remaining Plaintiffs allege that their health insurance information was potentially impacted. *See* Opening Memorandum at p. 12; *see also generally* Compl. In *Mednax*, this Court expressly held: "[e]vidence of a mere data breach does not, standing alone, satisfy the requirements of Article III standing." *Mednax*, 603 F. Supp. 3d at 1201 (internal quotations omitted). That is exactly what Plaintiffs allege here, and their attempts to manufacture standing based upon a future risk of harm must be rejected.[3]

While certain Plaintiffs do purport to allege actual misuse of their Private Information, each of these allegations fails the second prong of the standing analysis – traceability. *See* Opening

---

[3] For similar reasons, Plaintiffs lack standing to pursue injunctive relief. *See* Opening Memorandum at pp. 21-22; *see also Green-Cooper*, 73 F.4th at 889 (quoting *TransUnion*, 141 S. Ct. at 2204, 2210).

Memorandum at pp. 16-21.  The traceability prong requires a "logical explanation" (*In re VTech Data Breach Litig.*, 2017 WL 2880102, at *4 (N.D. Ill. Jul. 5, 2017)) as to how the alleged injuries are fairly traceable to the alleged conduct of NationsBenefits that does not require an "ingenious academic exercise in the conceivable."  *Hutton v. Nat'l Bd. of Examiners in Optometry*, 892 F.3d 613, 623 (4th Cir. 2018); *see also Preisler v. Eastpoint Recovery Grp., Inc.*, 2021 WL 2110794, at *6 (S.D. Fla. May 25, 2021) ("The main inquiry is whether 'the line of causation between the illegal conduct and injury [is] to attenuated' to establish traceability.") (citations omitted).

The lack of traceability is apparent, and Plaintiffs' Opposition again generalizes the nature of Private Information potentially impacted in the Incident in order to encourage this Court to reach a contrary conclusion and defy long-standing precedent.  By way of example, while eleven (11) of the Plaintiffs allege that the Incident resulted in fraudulent charges on their financial accounts, credit or debit cards, and other online accounts, not one of these Plaintiffs had their credit or debit card information or financial/online account information potentially impacted in the Incident.  *See* Compl. ¶¶ 35, 37, 45, 47, 55, 57, 75, 77, 105, 107, 110, 112, 125, 127, 135, 137, 145, 147, 150, 152.  Contrary to Plaintiffs' argument, numerous courts (including courts within this Circuit) have held that allegations of misuse of information that was *not* potentially impacted in a data security incident – which is the case here – are insufficient to meet the traceability requirement.  *See In re VTech Data Breach Litig.*, 2017 WL 2880102, at *4 (N.D. Ill. Jul. 5, 2017); *In re Community Health Sys., Inc.*, 2016 WL 4732630, at *12 (N.D. Ala. Sept. 12, 2016); *Blood v. Labette Cty. Med. Ctr.*, 2022 WL 11745549, at *6 (D. Kan. Oct. 20, 2022).[4]

---

[4] Plaintiffs do not address NationsBenefits' argument that allegations of attempted misuse are insufficient to confer standing.  *See* Opening Memorandum at pp. 18-19.  As such, any claim that these allegations confer standing is abandoned.  *See Walinbay S.A. v. Fresh Results, LLC*, 2014 WL 1259901, at *4 (S.D. Fla. Feb. 19, 2014) (citing *Oshodi v. Lockheed Martin Corp.*, 452 F. App'x 889, 890 (11th Cir. 2012) (A party "who offers no substantive agreement on an issue in his brief abandons the issue.")).

Plaintiffs also passingly address NationsBenefits' extensive arguments regarding the alleged presence of Plaintiffs' information on the dark web and the traceability of the alleged actual misuse of Plaintiffs Caliendo, Kosbab and Shepherd's Private Information to the Incident. *See* Opposition at p. 12. Plaintiffs argue in a conclusory manner that NationsBenefits "ignore[s] the Complaint's well-pled facts and conflate[s] the merits with standing." *Id.* However, for the reasons set forth in the Opening Memorandum, it is clear that these allegations are insufficient to confer standing. *See* Opening Memorandum at p. 19. Indeed, the court in *Blood* expressly rejected Plaintiffs' argument regarding the alleged presence of Plaintiffs' Private Information on the dark web as insufficient to confer standing. *See Blood*, 2022 WL 11745549, at *8. Moreover, the allegations of actual misuse by Plaintiffs Caliendo, Kosbab and Shepherd contain no allegation of time and sequence sufficient to support traceability beyond mere conclusions, which is palpably insufficient. *See Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1326 (11th Cir. 2012). In sum, these allegations of actual misuse are legally insufficient to constitute an injury-in-fact fairly traceable to any alleged conduct by NationsBenefits, and thus cannot support standing.

Likewise, Plaintiffs' generalized allegations of loss of privacy and confidentiality, loss of value of their Private Information, lost time and expenses, and emotional distress are insufficient to constitute an injury-in-fact. *See* Opening Memorandum at pp. 13-16.[5] Plaintiffs' Opposition on this point is largely founded on the flawed conclusion that Plaintiffs have plausibly alleged a substantial risk of future harm, which is not the case as discussed *supra* and in the Opening Memorandum. The allegations of loss of privacy and confidentiality of Plaintiffs' Private

---

[5] Plaintiffs do not substantively address NationsBenefits' argument that the allegations of increased spam calls, emails and text messages does not constitute an injury-in-fact. *See* Opening Memorandum at p. 15. As such, any claim of concrete injury based on same is abandoned. *See Walinbay*, *supra* n. 4.

Information, lost time and expense and emotional distress all require a substantial and imminent risk of future harm, which has not been plausibly alleged here.  *See, e.g.*, *Mednax*, 603 F. Supp. 3d at 1205; *Tsao*, 968 F.3d 1332 at 1344-45.

As to the alleged lost value of Plaintiffs' Private Information, this theory, too, fails because Plaintiffs do not allege actual misuse of their Private Information that is fairly traceable to the Incident or any alleged conduct of NationsBenefits.  *See supra*; *see also* Opening Memorandum at pp. 16-21.  Moreover, Plaintiffs make no allegation other than sheer speculation and conclusory statements that the value of their Private Information has somehow been impacted by the Incident. Plaintiffs simply state that they have suffered a loss of value of their Private Information as a result of the Incident (*see, e.g.*, Compl. ¶ 17) – unlike *Mednax*, they do not allege any impact to their ability to purchase goods and services remotely or any impact whatsoever in the "marketplace of credit[.]"  *Mednax*, 603 F. Supp. 3d at 1204 (citing *In re Marriot Int'l, Inc. Customer Data Sec. Breach Litig.*, 440 F. Supp. 3d 447, 462 (D. Md. 2020)).  It is clear that any alleged loss of value of Plaintiff's Private Information is insufficient to constitute a concrete injury and confer standing.

In sum, for the reasons stated above and more fully in the Opening Memorandum, it is clear that Plaintiffs lack standing to bring suit against NationsBenefits.  Plaintiffs' arguments in Opposition conflate NationsBenefits' arguments and seek to over-generalize the allegations in the Complaint, and their attempts to confer standing must be rejected.

## POINT II

## THE COMPLAINT FAILS TO STATE A CLAIM

Even if Plaintiffs had standing to bring suit against NationsBenefits, the Complaint should be dismissed for failure to state a claim.  Much like Plaintiffs' arguments regarding lack of standing, Plaintiffs' Opposition also fails to remedy the deficiencies of each and every cause of

action alleged in the Complaint.[6] [7]

**A.    Negligence**

Plaintiffs claim that NationsBenefits somehow could have implemented measures to prevent against the Incident, while simultaneously alleging that the Incident impacted Fortra's systems and that it resulted from a zero-day (*i.e.*, previously unknown) vulnerability. *See* Opposition at pp. 13-14; *see also* Notice Letter; Fortra Compl. Plaintiffs cannot have it both ways, and the self-contradictory allegations in the Complaint do not support a negligence claim against NationsBenefits. As to the alleged delay in notification, notification was provided timely in accordance with applicable law, rules and regulations. Indeed, NationsBenefits, as business associate, complied with its obligations to provide notification of the Incident to the covered entities (its clients) and potentially impacted individuals (including Plaintiffs) well within the timeframe proscribed by HIPAA. Compl. ¶¶ 189-90; *see also* 45 C.F.R. § 164.410.[8] Plaintiffs' negligence claim thus fails.

**B.    Negligence *Per Se***

Plaintiffs ignore this Court's holding in *Mednax* which succinctly states that, as neither HIPAA nor the FTC Act provide a private right of action, these statutes cannot support a negligence *per se* claim under Florida law. *Mednax*, 603 F. Supp. 3d at 1216, 1225 (citations omitted). Plaintiffs' argument that the state law consumer protection statutes cited in the

---

[6] Plaintiffs do not dispute that their tort-based claims are governed by Florida law.

[7] For reasons similar to those stated above, each of Plaintiffs' claims (including tort-based and statutory claims) fail because Plaintiffs fail Plaintiffs have failed to allege a legally cognizable injury and the required causation for each of their claims. *See* Point I, *supra*; *see* Opening Memorandum, Point I.

[8] Plaintiffs also claim that state law required notification of the Incident with a specific time frame. However, this is inapplicable to NationsBenefits, as its obligations are governed by HIPAA. *See, e.g.*, Fla. Stat. § 501.171(4)(g).

-8-

Complaint also support their negligence *per se* claim is equally flawed. Not only do the passing references to the state law claims elsewhere in the Complaint fail to put NationsBenefits on notice of which state law statutes and sections Plaintiffs are claiming violations of, but, as set forth more fully in the Opening Memorandum and herein, Plaintiffs fail to allege violations of these statutes. Indeed, the case relied upon by Plaintiffs in opposition – *Deitrick v. Costa*, 2015 WL 1606714, at *9 (M.D. Pa. Apr. 9, 2015) (*see* Opposition at p. 15) – supports this conclusion, as Plaintiffs have failed to plead facts plausibly alleging that NationsBenefits violated these statutes.[9] *See also Liese v. Indian River Cty. Hosp. Dist.*, 701 F.3d 334, 353 (11th Cir. 2012) (quotations omitted). It is clear that the claim for negligence *per se* cannot survive.

### C. Breach of Third-Party Beneficiary Contract

Plaintiffs claim that they are not required to plead the alleged contractual provisions with specificity at this stage, and their conclusory allegations are sufficient. *See* Opposition at pp. 17-18. However, this argument is flawed, as the very nature of services provided by NationsBenefits suggests that Plaintiffs *were not* the direct and primary beneficiaries of the contracts – indeed, by providing its clients with NationsBenefits, the clients were the direct and primary beneficiaries, not Plaintiffs. *See* Compl. ¶¶ 156-57. This claim, too, must be dismissed.

### D. Breach of Implied Contract

Plaintiffs do not allege a direct relationship with NationsBenefits or that NationsBenefits "forced" them to provide anything, thus defeating their claim of breach of implied contract.

---

[9] Moreover, as set forth more fully in the Opening Memorandum and herein, a number of the state consumer protection statutes relied upon do not impose any affirmative obligations regarding data security and, indeed, are nothing more than general consumer protection statutes which are insufficient to sustain a claim for negligence *per se*. *See Liese*, 701 F.3d at 353 ("A negligence per se claim would be appropriate under Florida law when there is a violation of a 'statute which establishes a duty to take precautions to protect a *particular class of persons from a particular injury or type of injury.*'") (emphasis added/citations omitted).

Moreover, again, Plaintiffs ignore *Mednax*, where this Court held that no implied contract exists where there was no invitation or solicitation by the defendant indicating that the defendant agreed to secure the plaintiffs' private information. *Mednax*, 603 F. Supp. 3d at 1220. Plaintiffs make no such allegation here, nor can they, and, as it concluded in *Mednax*, this Court cannot transform any alleged information security requirements under HIPAA or other applicable law into a contractual obligation in the absence of mutual assent and a meeting of the minds. *See id.*

### E.  Unjust Enrichment

This Court's holding in *DeSue* mandates dismissal of the claim for unjust enrichment because Plaintiffs did not have any direct relationship with NationsBenefits. *See* Opening Memorandum at p. 26 (discussing *DeSue*, 2022 WL 796367, at *8). Contrary to Plaintiffs' argument in Opposition (*see* Opposition at pp. 18-19), this Court's analysis in *DeSue* did not turn on the lack of direct contact with the defendant, but rather the fact that the plaintiffs "did not affirmatively choose to use Defendants' services; they did not pay for Defendants' services nor provide their private information to Defendants." *DeSue*, 2022 WL 796367, at *8 (quotations/citations omitted). Such is the case here, and this claim must fail.

### F.  Declaratory Judgment Act

In addition to failing to plausibly allege a substantial risk of future harm, as discussed *supra*, Plaintiffs' conclusory claims that their Private Information is at risk of further compromise are insufficient, given that the Incident impacted Fortra's systems and NationsBenefits immediately stopped using Fortra's software after the Incident. *See Ficher v. CentralSquare*, 2021 WL 10558134, at *5-6 (S.D. Fla. Sept. 16, 2021); *see also* Notice Letter. As such, this claim must also be dismissed.

### G. State Law Statutory Claims

Despite Plaintiffs' argument to the contrary, each and every one of the twenty (20) state law statutory claims fail to state a claim. A number of the arguments are applicable to many of these claims and are addressed categorically and, to the extent applicable, individually, herein.[10]

#### i. No Consumer Transaction

Plaintiffs' claims for violations of the ADTPA, IDCSA, KCPA, MMPA, NJCFA, OCSPA, and TDTPA fail because there was no consumer transaction between Plaintiffs and NationsBenefits that would support any claim under these statutes. *See* Opening Memorandum at pp. 27, 31, 32-35. NationsBenefits provided services to its clients, not Plaintiffs, and Plaintiffs had no direct relationship with NationsBenefits. Moreover, the services provided were benefits administration, not goods or services to consumers. This is insufficient under each of these statutes. *See id.* (collecting cases); *see also* Ind. Code § 24-5-0.5-2(a); *In re Actiq Sales & Mktg. Pracs. Litig.*, 790 F. Supp. 2d 313, 326 (E.D. Pa. Mar. 23, 2011) (third-party payor of prescriptions purchased by embers and beneficiaries held to be consumer under IDCSA); *Martinez v. Hobbs Mech.*, 492 P.3d 506, at *6 (Kan. Ct. App. 2021) (citing *Ellibee v. Aramark Correctional Servs., Inc.*, 37 Kan. App. 2d 430 (2007) (no consumer transaction under KCPA where no direct relationship and the services provided by defendant was a byproduct of the defendant's contract with a third-party) and *Berry v. National Med. Servs., Inc.*, 41 Kan. App. 2d 612 (2009) (same)); *Mednax*, 603 F. Supp. 3d at 1215 (citations omitted).

#### ii. No Breach of Duty

Plaintiffs' claims for violations of the CCRA and IPIPA fail because Plaintiffs fail to

---

[10] Plaintiffs do not oppose dismissal of the California Consumer Privacy Act claim and, as such, this claim should be dismissed with prejudice. *See* Opposition at p. 21, n.8; *see also Walinbay*, 2014 WL 1259901, at *4.

establish that NationsBenefits breached its duty to safeguard Plaintiffs' Private Information and provide Plaintiffs with timely notification of the Incident. *See* Opening Memorandum at pp. 27-28, 30; Point II(A), *supra*.

### iii. Failure to Allege Unlawful Acts

Plaintiffs' claims for violation of the CUCL, ICFA, MCPA, NYGBL, and OCSPA fail because Plaintiffs have not and cannot allege any unfair, unlawful, or fraudulent act by NationsBenefits in violation of these statutes. *See* Opening Memorandum at pp. 28-30, 32-34 (collecting cases); *see also Krantz v. BT Visual Images*, 89 Cal. App. 4th 164, 178 (2001) (CUCL); *Cmty. Bank of Trenton v. Schnuck Markets, Inc.*, 877 F.3d 803, 821 ("the plaintiff must actually be deceived by a statement or omission that is made by the defendant; the plaintiff cannot rest on vague accusations about inadequate disclosures and resulting price effects in the marketplace.") (quotations omitted) (ICFDBPA); *Flynn v. FCA US LLC*, 327 F.R.D. 206, 219 (S.D. Ill. 2018) (MCPA claim requires reliance and identification of specific statements upon which the plaintiff allegedly relied) (citations omitted). Once again, Plaintiffs did not have any direct relationship with NationsBenefits and their conclusory allegations of reliance on NationsBenefits' alleged promises are entirely implausible in light of same. More importantly, the Incident impacted Fortra's systems and was the result of a zero-day (not previously known) vulnerability, further undermining Plaintiffs' attempts to allege any act sufficient to state a claim under these statutes.

### iv. Reliance

Plaintiffs' claims under the ODTPA, PUTPCPL, TDTPA[11] fail because their conclusory

---

[11] Plaintiffs' TDTPA claim also fails because Plaintiffs fail to meet Rule 9(b)'s heightened pleading requirements. *See Berry v. Indianapolis Life Ins. Co.*, 608 F. Supp. 2d 785, 800 (N.D. Tex. 2009). Despite Plaintiffs' argument to the contrary, it is apparent that Plaintiffs have failed to meet the requirements of Rule 9(b), as nowhere in the Complaint do Plaintiffs allege the "who, what, when, where, and how of the fraud alleged." Rule 9(b). While Plaintiffs rely on NationsBenefits' privacy policy, nowhere in the Complaint do they allege that they actually read this policy.

allegations of reliance are insufficient. *See* Opening Memorandum at pp. 34-35 (collecting cases).

### v. Injunctive Relief

Plaintiffs' claims for injunctive relief under the FDUTPA and IUDTPA fail because Plaintiffs have not alleged a substantial risk of future harm, as discussed *supra*. *See* Opening Memorandum at pp. 29-31 (collecting cases); *see also In re Mednax Servs., Inc. Customer Data Sec. Breach Litig.*, 2022 WL 3550045, at *1-3 (S.D. Fla. Aug. 18, 2022).

### vi. CUCL

Despite Plaintiffs' arguments to the contrary, *Mednax* necessitates dismissal of Plaintiffs' CUCL claim because Plaintiffs do not allege that they lack an adequate remedy at law. *Mednax*, 603 F. Supp. 3d at 1216 (citations omitted). Again, Plaintiffs ignore *Mednax*, which is not surprising given the outcome it yields.

### vii. FDUTPA

Plaintiffs' argument in Opposition as to dismissal of the FDUTPA claim is flawed, as their arguments regarding diminution in value of goods and services were expressly rejected in *Mednax*. *See* Opposition at pp. 23-24; *see also Mednax*, 603 F. Supp. 3d at 1212-13. The FDUTPA by its plain terms rejects the very argument that Plaintiffs assert here. Fla. Stat. § 501.212(3). Even if this were not the case, contrary to Plaintiffs' arguments in Opposition, Plaintiffs did not pay NationsBenefits for any services.

### viii. ICFA

The cases cited in the Opening Memorandum and Plaintiffs' Opposition establish that the ICFA does not apply if the transaction occurs primarily out of state. *See Irwin v. Jimmy John's Franchise, LLC*, 175 F. Supp. 3d 1064, 1069-70 (N.D. Ill. 2016) (citations omitted); *see also Moore v. Compass Grp. USA, Inc.*, 2019 WL 4723077, at *11 (E.D. Mo. Sept. 26, 2019). While

*Moore* ultimately held that the ICFA claim was sufficiently alleged, that case involved withdrawals from an in-state bank account related to out-of-state purchases. *Moore*, 2019 WL 4723077, at *11. Here, there is no connection to Illinois other than Plaintiffs' residence, which is insufficient. This claim must be dismissed.

### ix.     IDCSA

Plaintiffs concede that their IDCSA claim is premised upon incurable acts, yet fail to rebut the arguments that this fails to meet the requirements of Rule 9(b) and the Complaint fails to contain the necessary allegations of intent. *See* Opening Memorandum at p. 31, n. 16.

### x.      KPCIA

As an entity regulated by HIPAA, NationsBenefits is not subject to the provisions of the KPCIA, and any dispute of whether NationsBenefits complied with HIPAA is not subject to a private right of action (to the extent one exists) under the KPCIA. *See In re Am. Med. Collection Agency, Inc. Customer Data Sec. Breach Litig.*, 2023 WL 6216542, at *7 (D.N.J. Sept. 21, 2023).

### xi.     MMPA

Plaintiffs' MMPA claim further fails because data security is incidental to the administration services provided by NationsBenefits to its clients. Plaintiffs' attempt to argue that data security was "fundamental" is perplexing, as NationsBenefits did not provide services to Plaintiffs. *Mednax*, 603 F. Supp. 3d at 1215. Moreover, this case is unlike those cited in Plaintiffs' Opposition, where the defendants actually provided medical services to the plaintiffs who in turn provided their information. *See Sweet v. BJC Health Sys.*, 2021 WL 2661569, at *9 (S.D. Ill. Jun. 29, 2021); *K.A. v. Child's Mercy Hosp.*, 2019 WL 13207485, at *4 (W.D. Mo. May 17, 2019).

### xii.    NCITPA and NDUTPA

Plaintiffs fail to state a claim under the NCITPA or the NDUTPA. Plaintiffs may not

independently maintain a claim for violation of the NCITPA absent a plausible claim for violation of the NDUTPA, and Plaintiffs have failed to do so here. *See Curry v. Schletter Inc.*, 2018 WL 1472485, at *5 (W.D.N.C. Mar. 26, 2018). Here, whether based on misrepresentations or omissions, Plaintiffs' NDUTPA claim fails, because Plaintiffs have not and cannot allege any misrepresentations or omissions by NationsBenefits regarding Fortra's data security, which is central to the facts at issue and the Incident. *See* Point II(G)(iii), *supra*. As Plaintiffs' NDUTPA claim fails, so, too, must their NCITPA claim. *See In re Am. Med. Collection Agency Customer Data Sec. Breach Litig.*, 2021 WL 5937742, *35-36 (D.N.J. Dec. 16, 2021).[12]

### xiii. ODTPA

Plaintiffs acknowledge a "split of authority" on whether they have standing to pursue a claim under the ODTPA, but their arguments are unavailing. *See* Opposition at pp. 33-34.

### xiv. PUTPCPL

Plaintiffs' allegations of fraudulent use of Plaintiff Fuss' information as a result of the Incident fails to confer standing or state a claim under the PUTPCPL. *See* Point II, *supra*. This claim must fail.

### CONCLUSION

In sum, for all the foregoing reasons and those set forth more fully in the Opening Memorandum, Defendants respectfully requests that Plaintiffs' Complaint be dismissed with prejudice.[13]

---

[12] Plaintiffs fail to address NationsBenefits' argument that this claim also fails because Plaintiffs fail to meet Rule 9(b)'s heightened pleading requirements. *See Packrite, LLC v. Graphic Packaging Int'l, Inc.*, 2018 WL 4112827, at *7 (M.D.N.C. Aug. 29, 2018); *see also supra* n.11.

[13] The Court should also deny Plaintiffs' request for leave to amend. Given the arguments raised herein, it is clear that any amendments to the Complaint would be futile.

Dated: May 6, 2024

Respectfully Submitted,

GORDON REES SCULLY
MANSUKHANI, LLP

*/s/ Joseph Salvo*
Joseph Salvo (*pro hac vice*)
Brian Middlebrook (*pro hac vice*)
John T. Mills (*pro hac vice*)
Thomas R. Fanizzi, Jr. (*pro hac vice*)
One Battery Park Plaza, 28th Floor
New York, New York 10004
Tel: (212) 269-5500
Fax: (212) 269-5505
jsalvo@grsm.com
bmiddlebrook@grsm.com
jtmills@grsm.com
tfanizzi@grsm.com

Joseph A. Sacher (FBN 174920)
Miami Tower, Suite 3900
100 SE Second Street
Miami, Florida 33131
Tel: (305) 428-5339
Fax: (877) 634-7245
jsacher@grsm.com

*Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on May 6, 2024, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notice of electronic filing to all counsel of record.

                                      */s/ John Mills*
                                      John T. Mills (*pro hac vice*)