**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| **IN RE: FORTRA FILE TRANSFER SOFTWARE DATA SECURITY BREACH LITIGATION** | |
| | Case No. 24-md-03090-RAR |
| This Document Relates to: | |
| **TERRANCE ROSA, et al.,** on behalf of themselves and all others similarly situated, | |
| Plaintiffs, | |
| v. | |
| **BRIGHTLINE, INC.,** | |
| Defendant. | |

**PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMIMNARY APPROVAL
OF CLASS ACTION SETTLEMENT AND MEMORANDUM OF LAW**

Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs, Terrance Rosa, Ryan Watson, Donisha Jackson, Kyle Castro, on behalf of himself and his minor children, E.N.C., C.J.C., and E.J.C., Itaunya Milner, on behalf of herself and her minor child, B.G., and Anthony Ndifor, on behalf of themselves and the Settlement Class,[1] respectfully submit this Unopposed Motion for Preliminary Approval of the Class Action Settlement.

## I. INTRODUCTION

Brightline is a virtual behavioral health care company that offers therapy and coaching for minors. Fortra is in the business of offering cybersecurity and automation solutions. Brightline was one of Fortra's customers who used Fortra's GoAnywhere MFT file transfer application. In January of 2023, a Data Incident occurred wherein Fortra's computer systems were hacked due to a

---

[1] All capitalized terms used herein shall have the same meanings as those defined in Section II of the Settlement Agreement, attached as ***Exhibit A***.

vulnerability in Fortra's transfer application, which impacted highly sensitive personally identifiable information and health information belonging to millions of individuals, including over a million individuals whose information was stored in Brightline's instance of the GoAnywhere MFT at the time of the Data Incident. The Settlement Class members' impacted Personal Information included some combination of names, addresses, dates of birth, member identification numbers, start and end dates of health plan coverage, telephone numbers, Social Security numbers, and employer names that were being stored within Brightline's instance of the GoAnywhere MFT at the time of the Data Incident.

In or about April 2023, Plaintiffs and Settlement Class members began receiving notices of the unauthorized access to their Personal Information. Thereafter, lawsuits were filed against Brightline, which were consolidated and ultimately transferred with all the other Fortra-related lawsuits into MDL-3090. Following the formation of MDL-3090, and the filing of the Track 4 Consolidated Complaint, the Parties mediated and resolved the Action subject to Court approval.

To avoid the risk and expense of litigation, the Parties agreed to a settlement to resolve Plaintiffs' claims on a classwide basis. As demonstrated below, the Settlement provides significant relief for the Settlement Class, including a non-reversionary all cash $7,000,000.00 Settlement Fund and valuable injunctive relief.

The Court should find the Settlement is within the range of reasonableness necessary to grant Preliminary Approval under Rule 23(e) and enter an order: (i) granting Preliminary Approval of the Settlement; (ii) provisionally certifying the Settlement Class for settlement purposes; (iii) appointing the Plaintiffs as Class Representatives; (iv) appointing Jeff Ostrow, John Yanchunis, James Cecchi, and Marson Barney as Class Counsel for the Settlement Class; (v) approving the form of the Notices and the Notice Program; (vi) approving the Claim Form and the Claim process;

(vii) appointing Epiq Class Action & Claims Solutions, Inc. ("Epiq") as the Settlement Administrator; (viii) establishing procedures and deadlines for members of the Settlement Class to opt-out of or object to the Settlement; and (ix) scheduling a Final Approval Hearing at which time the Court will consider whether to grant Final Approval of the Settlement and Class Counsel's Application for Attorneys' Fees and Costs.

## II.   PROCEDURAL HISTORY

1.      On May 2, 2023, Plaintiffs, Terrance Rosa and Ryan Watson, filed a complaint against Brightline, in the United States District Court for the Northern District of California, seeking damages related to the Data Incident. *See* Joint Declaration of Class Counsel ("Joint Decl."), attached as ***Exhibit B***, ¶ 5.

2.      Thereafter, on May 11, 2023, May 22, 2023, and June 13, 2023, three additional complaints related to the Data Incident were filed against Brightline in the same district. *Id.* ¶ 6.

3.      On July 25, 2023, the district court consolidated the actions into the first-filed action. *Id.* ¶ 7.

4.      On October 20, 2023, pursuant to 28 U.S.C. § 1407, defendants NationsBenefits, LLC and NationsBenefits Holdings, LLC, two of the other parties defending lawsuits related to the Data Incident, filed a Motion for Transfer and Centralization of Related Actions to the District of Minnesota, where an action was already pending against Fortra.  *Id.* ¶ 8. The motion was filed with the Judicial Panel on Multidistrict Litigation requesting that all matters concerning the Fortra GoAnywhere MFT Data Incident, including the consolidated action against Brightline, be centralized for pretrial purposes.

5.      On October 23, 2023, Brightline filed a Motion to Dismiss in the Northern District of California, which was fully briefed by December 13, 2023. *Id.* ¶ 9.

6.      On December 18, 2023, Brightline and the Plaintiffs in the California consolidated action jointly moved to stay the Motion to Dismiss hearing date until after the conclusion of the JPML hearing, and that motion was granted by order of the Court on December 21, 2023. *Id.* ¶ 10.

7.      On or about February 5, 2024, the JPML ordered all matters concerning the Data Incident to be transferred to and centralized in the United States District Court for the Southern District of Florida, before the Honorable Rodolfo A. Ruiz II, including the consolidated action against Brightline. *Id.* ¶ 11.

8.      Following transfer and centralization of the cases, Judge Ruiz created distinct tracks for the cases: Track 1: NationsBenefits; Track 2: Fortra; Track 3: NationsBenefits Spokes: Aetna, Anthem, Elevance, and Santa Clara; and Track 4: Fortra Spokes: Brightline, Community, Intellihartx, and Imagine360. [DE# 129].

9.      On April 18, 2024, Plaintiffs filed their Track 4 Consolidated Complaint against all MDL-3090 Track 4 defendants, including Brightline, alleging causes of action for negligence, negligence per se, breach of fiduciary duty, breach of implied contract, breach of contract third party beneficiary, unjust enrichment, and violations of various states' consumer protection statutes. [DE# 153].

10.     On April 18, 2024, the Parties exchanged their Initial Disclosures. Joint Decl. ¶ 14.

11.     On April 22, 2024, the Court entered a Stipulated Confidentiality and Qualified Protective Order and Order Governing Production of Electronically Stored Information and Paper Documents. [DE# 154-155].

12.     Thereafter, the Parties began discussing resolution of the claims against Brightline and scheduled a mediation before experienced class action mediator Michael Ungar, Esq. for July 11, 2024. Joint Decl. ¶ 16.

13.     In advance of the mediation, Plaintiffs requested and Brightline produced extensive informal discovery, including, but not limited to, the number of individuals impacted by the Data Incident, as well as the categories of Private Information impacted by the Data Incident, and documents demonstrating that all data impacted had been removed from Clop's extortion portal. *Id*. ¶ 17.

14.     The Parties also exchanged detailed Mediation Statements outlining their positions with respect to liability, damages, and settlement. *Id*. ¶ 18.

15.     On July 11, 2024, the Parties participated in a full-day private mediation in Miami, Florida, concluding with the Parties agreeing to all material terms of the Settlement. *Id*. ¶ 21.

16.     The Parties filed a Notice of Settlement with the Court on July 12, 2024. [DE# 165].

17.     Over the next 60 days, the Parties worked diligently to finalize the terms of the Agreement and ancillary documents. Joint Decl. ¶ 23. The Agreement was executed on September 12, 2024. *Id*. ¶ 24. The Parties did not discuss attorneys' fees and costs until after they reached agreement on all material Settlement terms. *Id.* ¶ 25.

## III.     MATERIAL TERMS OF THE SETTLEMENT

A.     **Settlement Class -** Plaintiffs seek Preliminary Approval of the Settlement on behalf of the following Settlement Class:

> [A]ll indviduals residing in the United States who received notice of the Brightline Data Incident indicating that their Private Information may have been impacted in the Data Incident.

A subset of the Settlement Class is the California Settlement Class which includes "Settlement Class members residing in California as of January 30, 2023." Excluded from the Settlement Class are (a) all persons who are employees, directors, and agents of Brightline, and their respective subsidiaries and affiliated companies; (b) governmental entities; and (c) the Judge assigned to the

Action, that Judge's immediate family, and Court staff. Agreement ¶¶ 20, 66.

      **B.**      **Settlement Fund -** The Settlement provides for a non-reversionary $7,000,000 all cash Settlement Fund. *Id.* ¶ 69. The Settlement Fund will be partially funded by Brightline within 10 days of Preliminary Approval and fully funded within 10 days of the Effective Date. *Id.* ¶ 72. The Settlement Fund will be used to pay: (1) Settlement Class Member Benefits; (2) any attorneys' fees and costs awarded by the Court to Class Counsel; and (3) all Settlement Administration Costs. *Id*. ¶ 73. Once Brightline funds the Settlement Fund, Brightline will not be required to make any other payments under this Settlement. *Id*. ¶ 72.

      **C.**      **Settlement Class Member Benefits -** When submitting a Claim, Settlement Class members may elect to receive a Cash Payment and Credit Monitoring. *Id.* ¶ 76. California Settlement Subclass Members may also elect to receive an additional $100.00. *Id.* ¶ 76c. Settlement Class Member Cash Payments may be subject to a *pro rata* increase or decrease, depending on the number of Valid Claims and the value of all Cash Payments claimed. *Id.* ¶ 76. If a Settlement Class Member does not submit a Valid Claim, the Settlement Class Member will release his or her claims against without receiving a Settlement Class Member Benefit. *Id.* ¶ 112.

      **Cash Payments (A or B and California Statutory Award) -** Settlement Class Members may elect to receive either Cash Payment A or Cash Payment B, and a California Statutory Award (if applicable). *Id.*

      Settlement Class Members who elect Cash Payment A may receive compensation for reasonable documented losses up to $5,000. *Id.* ¶ 76a. To qualify for Cash Payment A, Settlement Class Members must provide supporting documentation supporting their losses. *Id*.

      As an alternative to Cash Payment A, Settlement Class Members may elect Cash Payment B and receive a flat cash payment in the amount of $100.00. *Id.* ¶ 76b.

In addition to Cash Payment A or Cash Payment B, all California Settlement Subclass Members may also elect to receive a $100.00 California Statutory Award. *Id.* ¶ 76c.

**Credit Monitoring -** In addition to a Cash Payment and a California Statutory Award (if applicable), Settlement Class Members who did not elect to receive a credit monitoring and identity theft protection product previously offered by Brightline in connection with the Data Incident notification letter, may elect to receive three years of Credit Monitoring. *Id.* ¶ 76d. Those Settlement Class Members that accepted Credit Monitoring and identity theft protection when it was initially offered, may elect to receive up to one more year. The Credit Monitoring is with three bureaus (Experian, Equifax, and TransUnion) and has a value of $90.00 per year per Settlement Class Member. *Id.*

**Injunctive Relief -** Prior to Final Approval, Brightline will provide Class Counsel with a security attestation as to the security measures it implemented following the Data Incident. The costs of any such security measures shall be fully borne by Brightline, and under no circumstances will such costs be deducted from the Settlement Fund. *Id.* ¶ 76e.

**D.    Settlement Class Notice –** The Parties have agreed on a comprehensive Notice Program, which includes an Email Notice, Long Form Notice, Postcard Notice, Settlement Website, and Settlement telephone line for frequently asked questions. *Id.* § VIII.

Within 10 days of Preliminary Approval, Brightline will provide the Settlement Administrator with a Settlement Class List containing the Settlement Class members' names, postal addresses, and email addresses (if available). *Id.* ¶ 82. Thereafter, the Settlement Administrator will send Email Notice to all Settlement Class members for which an email address has been provided by Brightline. *Id.* ¶ 83. Those Settlement Class Members whose Email Notice is undelivered or bounces back, as well as those Settlement Class members for which email

addresses are unknown, shall receive a Postcard Notice disseminated via U.S. Mail. *Id.* Notice shall also be published on the Settlement Website and available by mail in a Long Form Notice upon request of the Settlement Administrator. *Id.* ¶ 84.

Settlement Class members may review the Long Form Notice, key documents and dates on the Settlement Website, and get answers to frequently asked questions by calling a toll-free telephone number. *Id.*

The Notice, in forms similar to those attached to the Agreement as Exhibits 1-3, will inform the Settlement Class of the general terms of the Settlement, including a description of the Action, the identity of the Settlement Class, and what claims will be released. It shall include, among other information: a description of the material terms; how to submit a Claim Form; the Claim Form Deadline; the Opt-Out deadline; the Objection Deadline to object to the Settlement and/or Class Counsel's Application for Attorneys' Fees and Costs; the Final Approval Hearing date; and the Settlement Website address at which Settlement Class members may access the Agreement and other related documents and information. Additionally, opt-out procedures will be explained, as well as how Settlement Class Members may exercise their right to object to the proposed Settlement and/or Class Counsel's Application for Attorneys' Fees and Costs at the Final Approval Hearing. *Id.* ¶¶ 84, 86.

**E. Claim Submission Process -** To receive Settlement Class Member Benefits, Settlement Class Members must accurately and timely submit a Claim by the Claim Form Deadline. *Id.* § IX. A copy of the Claim Form is attached to the Agreement as Exhibit 4. Claim Forms may be submitted online through the Settlement Website or through U.S. Mail sent to the Settlement Administrator at the address designated on the Claim Form. *Id.* ¶ 92. The Settlement Administrator will review all Claim Forms to determine their validity, eligibility, and the type and

amount of the Cash Payment to which the Settlement Class Member may be entitled. *Id.* ¶ 93. The Settlement Administrator will provide Settlement Class Members who submitted Valid Claims with their Settlement Class Member Benefits no later than 75 days after Final Approval or 30 days after the Effective Date, whichever is later. *Id.* ¶ 101. Cash Payments will be made electronically or by paper check, and an email will be sent to Settlement Class Members electing Credit Monitoring with activation instructions. *Id.* ¶ 102. Greater detail on the Claims process is in Section IX of the Agreement.

      **F.**    **Disposition of Residual Funds –** Any funds remaining in the Settlement Fund 240 days after Settlement Class Members receive an email from the Settlement Administrator to select a form of payment, shall be distributed to a mutually agreeable *cy pres* recipient to be approved by the Court. *Id.* ¶ 109. The Parties will propose a recipient in the Motion for Final Approval.

      **G.**    **Settlement Administrator –** The proposed Settlement Administrator, Epiq, is a well-respected and reputable third-party administrator that has significant experience with data breach settlements. Joint Decl. ¶ 36. The Settlement Administrator shall effectuate the Notice Program, handle the Claims process, administer the Settlement Fund, and distribute the Settlement Class Member Benefits to Settlement Class Members. Agreement § VII.

      The Settlement Administrator's duties include, *inter alia*: (i) providing Class Action Fairness Act (CAFA) Notice; (ii) initiating and completing the Court-approved Notice Program; (iii) establishing and maintaining the Settlement Fund Escrow Account; (iv) establishing and maintaining a post office box to receive opt-out requests, objections, and Claim Forms; (v) establishing and maintaining the Settlement Website; (vi) establishing and maintaining an automated toll-free telephone line for Settlement Class members to call; (vii) responding to any mailed Settlement Class member inquiries; (viii) sending an email to Settlement Class Members

with Valid Claims asking what form of payment they prefer (electronic or paper check), along with details of how to active Credit Monitoring for all those who elected the benefit; (ix) processing all opt-out requests from the Settlement Class; (x) providing weekly reports to Class Counsel and Defendants' Counsel that summarize the number of Claims submitted, Claims approved and rejected, Notices of Deficiency sent, opt-out requests and objections received that week, the total number of opt-out requests and objections received to date, and other pertinent information; (xi) in advance of the Final Approval Hearing, preparing a declaration confirming the Notice Program was completed in accordance with the terms of the Agreement and the Preliminary Approval Order, describing how the Notice Program was completed, indicating the number of Claim Forms received and the amount of Valid Claims, providing the names of each Settlement Class member who timely and properly requested to opt-out from the Settlement Class, indicating the number of objections received, and other information as may be necessary to allow the Parties to seek and obtain Final Approval; (xii) distributing, out of the Settlement Fund, Cash Payments electronically or by paper check; (xiii) paying Court-approved attorneys' fees and costs out of the Settlement Fund; (xiv) paying Settlement Administration Costs out of the Settlement Fund following approval by Class Counsel; (xv) paying any residual funds to the Court-approved *cy pres* recipient; and (xvi) any other Settlement Administration function at the instruction of Class Counsel and Brightline including, but not limited to, verifying the Settlement Fund has been properly administered and the Cash Payments have been properly distributed. *Id.* ¶ 81.Class Counsel shall oversee the Settlement Administrator. *Id.* ¶ 79.

      **H.**    **Opt-Out and Objection Procedures -** Consistent with the Settlement's opt-out procedures, the Long Form Notice details that Settlement Class members who do not wish to participate in the Settlement may opt-out up to 30 days prior to the Final Approval Hearing. *Id.* ¶

52. During the Opt-Out Period, they may mail an opt-out request to the Settlement Administrator that includes the Settlement Class member's name, address, telephone number, and email address (if any), and a statement indicating a request to be excluded from the Settlement Class. *Id.* ¶ 86. Any Settlement Class member who does not timely request to opt-out shall be bound by the Agreement's terms even if that Settlement Class Member does not submit a Claim Form. *Id.*

The Agreement and Long Form Notice also specify how Settlement Class Members may object to the Settlement and/or the Application for Attorneys' Fees and Costs. *Id.* ¶ 87. Objections must be mailed to the Clerk of the Court, Class Counsel, Defendants' Counsel, and the Settlement Administrator. For an objection to be considered by the Court, the objection must be submitted no later than the last day of the Objection Period, as specified in the Notice. *Id*. It must also set forth: (a) the objector's full name, mailing address, telephone number, and email address (if any); (b) all grounds for the objection, accompanied by any legal support for the objection known to the objector or objector's counsel; (c) the number of times the objector has objected to a class action settlement within the five years preceding the date that the objector files the objection, the caption of each case in which the objector has made such objection, and a copy of any orders related to or ruling upon the objector's prior objections that were issued by the trial and appellate courts in each listed case; (d) the identity of all counsel who represent the objector, including any former or current counsel who may be entitled to compensation for any reason related to the objection to the Settlement and/or Application for Attorneys' Fees and Costs; (e) the number of times in which the objector's counsel and/or counsel's law firm have objected to a class action settlement within the five years preceding the date of the filed objection, the caption of each case in which counsel or the firm has made such objection and a copy of any orders related to or ruling upon counsel's or the counsel's law firm's prior objections that were issued by the trial and appellate courts in each

listed case in which the objector's counsel and/or counsel's law firm have objected to a class action settlement within the preceding five years; (f) any and all agreements that relate to the objection or the process of objecting—whether written or oral—between objector or objector's counsel and any other person or entity; (g) the identity of all counsel (if any) representing the objector who will appear at the Final Approval Hearing; (h) a list of all persons who will be called to testify at the Final Approval Hearing in support of the objection (if any); (i) a statement confirming whether the objector intends to personally appear and/or testify at the Final Approval Hearing; and (j) the objector's signature (an attorney's signature is not sufficient). Class Counsel and/or Defendants' Counsel may conduct limited discovery on any objector or objector's counsel. *Id.*

**I.     Release of Claims -** Plaintiffs and Settlement Class Members who do not timely and validly opt-out of the Settlement Class will be bound by the terms of the Settlement, including the Releases that discharge the Released Claims against the Released Parties. *Id.* § XIII. The Released Claims are narrowly tailored and are only claims arising out of or relating to the Data Incident. Joint Decl. ¶ 35.

**J.     Attorneys' Fees and Costs -** The amount of any attorneys' fees and costs shall be determined by the Court. Class Counsel shall apply to the Court for an award of attorneys' fees of up to 33.33% of the Settlement Fund, plus reimbursement of costs. Agreement ¶ 107. The attorneys' fees and costs will be formally sought in the Application for Attorneys' Fees and Costs filed as part of the Motion for Final Approval filed no less than 45 days before the original date set for the Final Approval Hearing.  The Settlement is not contingent on approval of the requests for attorneys' fees and costs, and if the Court grants amounts other than what was requested, the remaining provisions of the Agreement shall remain in force. *Id.* ¶ 108. The Notice will advise the Settlement Class of the amounts of attorneys' fees that Class Counsel intends to seek. *Id.* § VIII.

## V.   ARGUMENT

### A.   The Settlement Class Should Be Certified.

The Supreme Court has recognized the benefits of a proposed settlement of a class action can be realized only through the certification of a settlement class. *See Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997). To certify a class, the class representative must have standing to sue and the proposed class must be adequately defined and clearly ascertainable. *Prado–Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000). Plaintiffs must satisfy all Rule 23(a) (numerosity, commonality, typicality, and adequacy), and one of the requirements of Rule 23(b). Plaintiffs seek certification under Rule 23(b)(3), requiring common questions of law or fact to predominate over any individual issues and class treatment to be the superior method for efficiently handling the case. Fed. R. Civ. P. 23(b)(3). These requirements are met for settlement purposes.

1.   **Standing –** A plaintiff must demonstrate Article III standing to pursue each of the claims asserted in the complaint. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). Plaintiff must establish that he: "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Further, "[t]o have standing to represent a class, a party must not only satisfy the individual standing prerequisites, but must also 'be part of the class and possess the same interest and suffer the same injury as the class members.'" *Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1307 (11th Cir. 2008) (quoting *Prado–Steiman*, 221 F.3d at 1279). In *In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, 603 F. Supp. 3d 1183, 1200-1208 (S.D. Fla. 2022), this Court extensively addressed standing in data breach class actions, and subsequently relied on that analysis when preliminarily approving a class settlement in that case. *In re Mednax Serv., Customer Data Sec. Breach Litig.*, No. 21-MD-02994-RAR, 2024 WL

1554329, at *4 n.2 (S.D. Fla. Apr. 10, 2024) (citing *Green-Cooper v. Brinker Int'l, Inc.*, 73 F.4th 883 (11th Cir. 2023). Standing exists when a plaintiff's sensitive personal information is allegedly accessed and exfiltrated in a data breach. *Desue v. 20/20 Eye Care Network, Inc.*, No. 21-cv-61275, 2022 WL 796367, at *4 (S.D. Fla. Mar. 15, 2022); *see also Desue v. 20/20 Eye Care Network, Inc.*, No. 21-cv-61275, 2022 WL 17477004, at *5 (S.D. Fla. Dec. 5, 2022). There is no requirement that Article III standing be proved with evidentiary support at the settlement approval stage. *See In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1261 n.8 (11th Cir. 2021).

Here, all Plaintiffs have standing because, like the Plaintiffs in *Mednax* and *Desue*, their Personal Information was allegedly impacted in the Data Incident when an unauthorized third party gained access to Brightline's instance of Fortra's GoAnywhere MTF, which contained sensitive and confidential information. Because all Plaintiffs and Settlement Class members had their Personal Information impacted in the Data Incident, they have all suffered an injury in fact, that is fairly traceable to the Data Incident, and which could be redressed through an appropriate damages award if this case was litigated through trial. As in *Mednax* and *Desue*, the pursuit of damages and injunctive relief based on actual misuse and actual access to the Settlement Class' data is a plausible injury in fact – the substantial risk of future harm from identity theft and emotional injury; the diminution in the value of their Personal Information; and the loss of privacy. *Mednax*, 603 F. Supp. 3d at 1202-05.

The causal connection between the Data Incident and the Settlement Class' injuries, or traceability to the Data Incident, exists for Article III standing. The injuries must be "fairly traceable" to Brightline's actions, but that does not mean Plaintiffs are required to show proximate cause because harm flowing indirectly from the Data Incident are sufficient for standing. *Id.* at 1205. Brightline's actions need not be the very last step in causation chain. *Id.* Brightline's alleged

failure to protect the Personal Information, resulting in the Data Incident whereby unauthorized access was gained, preceded Plaintiffs' documented incidents of identity theft, economic losses, lost time, and emotional distress, and they are at substantial risk of future incidents of identity theft. *Id.* at 1206. What's important is not that the Data Incident provided all information necessary to inflict those harms; it is enough the Data Incident could give identity thieves information to aid those harms. *Id.*

2.      **Ascertainability -** Ascertainability is an implied prerequisite of Rule 23. *Cherry v. Dometic Corp.*, 986 F.3d 1296, 1302 (11th Cir. 2021). Before a district court can consider whether a potential class satisfies Rule 23(a), it must find the proposed class is "adequately defined and clearly ascertainable." *Id.* (citation omitted). Class definition and ascertainability typically involve one inquiry because, without an adequate definition for a proposed class, a district court cannot ascertain who belongs in the class. *Id.* For purposes of class certification, "a proposed class is ascertainable if it is adequately defined such that its membership is capable of determination." *Id.* at 1304. An adequately defined class thus should be defined by objective criteria with its members identifiable. *Id.* Here, the Settlement Class is adequately defined and clearly ascertainable because the Settlement Class definition contains sufficient objective criteria to allow an individual to determine whether he or she is a member of the Settlement Class—i.e., whether they were sent notification that their Personal Information was potentially compromised as a result of the Data Incident. Agreement. ¶ 51.

3.      **Rule 23(a) -** Under Rule 23(a), the Court must determine whether: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect

the interests of the class. Fed. R. Civ. P. 23(a). Each requirement is satisfied here.

**Numerosity -** Class sizes exceeding 40 are typically adequate for numerosity. *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986); *In re Mednax Serv., Customer Data Sec. Breach Litig.*, No. 21-MD-02994-RAR, 2024 WL 1554329, at *4 (S.D. Fla. Apr. 10, 2024) (Ruiz, II, J.). Here, the joinder of approximately one million Settlement Class members would certainly be impracticable, and thus numerosity is satisfied.

**Commonality -** This requirement is satisfied where the plaintiffs assert claims that "depend upon a common contention" that is "of such a nature that it is capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Courts in this Circuit have previously addressed this requirement in the context of data breach class actions and found it satisfied. *See, e.g., Mednax*, 2024 WL 1554329, at *4 (commonality satisfied because claims turn on adequacy of defendants' data security to protect PII and PHI); *Desue*, 2022 WL 17477004, at *4; *see also Equifax*, 999 F.3d at 1274-75, 1277 (affirming district court's certification of class, including finding of commonality). Here, as in the cases cited above, the claims turn on whether Brightline's security environment, including its use of the Fortra's GoAnywhere MFT file transfer application, was adequate to protect the Settlement Class' Personal Information. That inquiry can be fairly resolved because it revolves around evidence that does not vary between members—at least for purposes of settlement—for all Settlement Class members at once. Indeed, the Settlement Class members each had their Personal Information impacted in the Data Incident.

**Typicality -** The commonality and typicality analyses often overlap, as they are both focused on whether a sufficient nexus exists between the legal claims of the named class

representatives and those of individual class members to warrant class certification. *Mednax*, 2024 WL 17477004 at 4. "Here, the typicality requirement is satisfied because Plaintiffs' interests are aligned with the Settlement Class in that they all received a notice letter informing them their PHI/PII may have been compromised as a result of the Data Incident and was therefore impacted by the same purportedly inadequate data security that allegedly harmed the rest of the Settlement Class" *Id.* Their claims are based on the same legal theories and underlying event.

  **Adequacy of Representation –** Fed. R. Civ. P. 23(a)(4) requires "the representative parties . . . fairly and adequately protect the interests of the class."  "Adequacy relates to: (1) whether the proposed class representative has interests antagonistic to the class; and (2) whether the proposed class counsel has the competence to undertake this litigation. *Mednax*, 2024 WL 17477004 at 5. "The determinative factor 'is the forthrightness and vigor with which the representative party can be expected to assert and defend the interests of the members of the class.'" *Id.* (citation omitted). "Here, the Class Representatives have no conflicts with the Settlement Class and have demonstrated their adequacy by: (i) having a genuine personal interest in the outcome of the case; (ii) selecting well-qualified Class Counsel; (iii) producing information and documents to Class Counsel to permit investigation and development of the complaints; (iv) being available as needed throughout the litigation; and (v) monitoring the Litigation." *Id.*

  Like all Settlement Class members, Plaintiffs have claims against Brightline arising from the Data Incident that allegedly impacted their Personal Information. Plaintiffs were similarly injured by Brightline's allegedly wrongful acts. Proof of Plaintiffs' claims would necessarily involve adjudicating the same issues of law and fact as the claims of the Settlement Class as a whole. Thus, Plaintiffs and the Settlement Class they seek to represent have the same interests in recovering damages. Further, Plaintiffs have also diligently and adequately prosecuted this action

through Class Counsel by, among other things, reviewing filings, promptly providing documents and information to Class counsel, acting in the best interest of the Settlement Class, and accepting the classwide Settlement. Joint Decl. ¶ 31.

As for Class Counsel, they are highly qualified and have a great deal of experience litigating consumer class actions, including in the data privacy context. *See id*. ¶¶ 37, 39, Exs. 1– 4. Like counsel in *Mednax*, "Class Counsel are adequate because of their vast experience as vigorous data breach class action litigators." 2024 WL 17477004 at 5. Class Counsel have litigated this Action and against the other MDL-3090 defendants, including evaluating the claims, preparing comprehensive pleadings, serving informal discovery, consulting with data security experts, responding to the Track 1 Motion to Dismiss, complying with Court orders and requirements, and participating in a mediation that ultimately resulted in this Settlement. Joint Decl. ¶ 28. Accordingly, Plaintiffs and Class Counsel will adequately protect the Settlement Class.

**4. Rule 23(b)(3)** - Rule 23(b)(3) requires the court to find "questions of law or fact common to class members predominate over questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). When assessing predominance and superiority, the court may consider the class will be certified for settlement purposes only, and that a showing of manageability at trial is not required. *See Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, … for the proposal is that there be no trial.").

**Predominance –** "The predominance inquiry looks at 'the legal or factual questions that qualify each class member's case as a genuine controversy, questions that preexist any settlement.'" *Mednax*, 2024 WL 17477004 at *5 (quoting *Amchem*, 521 U.S. at 623).

> "[C]ommon issues of fact and law predominate if they have a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief." *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 985 (11th Cir. 2016). Further, "[i]t is not necessary that all questions of law or fact be common, but only that some questions are common and that they predominate over individual questions." *In re Takata Airbag Prod. Liability Litig.*, No. 2599, 2023 WL 4925368, at *6 (S.D. Fla. June 20, 2023). Here, as in other data breach cases, common questions predominate because all claims arise out of a common course of conduct by Defendant. *See In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 311–16 (N.D. Cal. 2018). The focus on a Defendants' security measures in a data breach class action "is the precise type of predominant question that makes class-wide adjudication worthwhile." *Id.* at 312.

*Id.* As in *Mednax*, all Settlement Class members had their Private Information compromised in the Data Incident and the security practices at issue did not vary from person to person. "Thus, because these common questions represent a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is a clear justification for handling the dispute on a representative rather than on an individual basis." *Id.* Thus, predominance is readily satisfied.

**Superiority –** "Certification of this suit as a class action is superior to other methods to fairly, adequately, and efficiently resolve the claims asserted." *Id.* To satisfy Fed. R. Civ. P. 23(b)(3) superiority, Plaintiffs must show "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." "'The focus of the superiority analysis is on the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to plaintiffs.'" *Mednax*, 2024 WL 17477004 at *5 (citation omitted). As In *Mednax*, adjudicating individual actions would be impractical. The amount in dispute for each Settlement Class member is too small, the technical issues too complex, and the expert testimony and document review too costly. *Id.* Further, individual claim prosecution would be prohibitively expensive, needlessly delay resolution, and may lead to inconsistent rulings. *Id.* Accordingly, a class action is the superior method of adjudicating this case. *Id.*; *see also* Joint Decl. ¶¶ 38, 45.

**B.      The Settlement Should be Preliminarily Approved.**

After determining settlement class certification is likely, the Court must determine whether the Settlement is worthy of preliminary approval and providing notice to the Settlement Class. The question is whether the Settlement is fair, adequate, and reasonable under Fed. R. Civ. P. 23(e)(2) and considering the "*Bennett*" factors. *Mednax*, 2024 WL 17477004 at *6.

> At this juncture, "the court's primary objective . . . is to establish whether to direct notice of the proposed settlement to the class, invite the class's reaction, and schedule a final fairness hearing." *Morris v. US Foods, Inc.*, No. 8:20-cv-105, 2021 WL 2954741, at *7 (M.D. Fla. May 17, 2021) (quoting William B. Rubenstein, 4 *Newberg on Class Actions* § 13:10 (5th ed. Supp. 2020)). "Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies, and the settlement falls within the range of reason." *Smith v. Wm. Wrigley Jr. Co.*, No. 09-60646, 2010 WL 2401149, at *2 (S.D. Fla. Jun. 15, 2010). Courts have substantial discretion in approving a settlement agreement . . . , and settlement negotiations that involve arm's-length, informed bargaining with the aid of experienced counsel support a preliminary finding of fairness*, see Manual for Compl. Lit.*, Third, § 30.42 (West 1995).

> The Rule 23(e)(2) factors are:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arms' length;
> (C) the relief provided for the class is adequate, taking into account:
>     (i) the costs, risks, and delay of trial and appeal;
>     (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>     (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>     (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

The *Bennett* factors: (1) the likelihood of success at trial; (2) the range of possible recoveries; (3) the point on or below the range of possible recoveries at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and degree of opposition to the settlement; and (6) the stage of the proceedings at which the settlement was achieved. *See Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). The Settlement

warrants Preliminary Approval under the factors set forth in Rule 23(e)(2) and *Bennett*.

        **1.**        **Rule 23(e)(2) is Satisfied.**

        **Adequacy of Representation (Rule 23(e)(2)(A))** - As this Court held in *Mednax*, "the first factor heavily weighs in favor of granting preliminary approval because both Class Counsel and the Class Representative have adequately represented the Class." *Mednax*, 2024 WL 17477004 at *6. Class Counsel have adequately represented the Settlement Class by fully investigating the facts and legal claims. While litigation in *Mednax* proceeded to a later stage than here before the parties agreed to the settlement in that case, Class Counsel's efforts to use informal discovery to learn what occurred to cause the Data Incident, stemming from Brightline's use of the *Fortra* software, and the Private Information impacted in the Data Incident, before attending a full-day mediation session with Mike Unger allowed for arm's length and good faith negotiations, without collusion. Joint Decl. ¶¶ 19–21, 26. Class Counsel used their experience in complex class action litigation, including similar data breach actions, and devoted substantial time and resources to vigorous litigation. *See id.*, ¶¶ 28, 32, 37. Also, the Class Representatives have demonstrated their adequacy by (i) having a genuine personal interest in the outcome of the case; (ii) selecting well-qualified Class Counsel; (iii) producing information and documents to Class Counsel to permit investigation and development of the complaints; (iv) being available as needed throughout the litigation; and (v) monitoring the Action. Joint Decl. ¶ 31. Plaintiffs' respective interests are coextensive and do not conflict with the interests of the Settlement Class. *Id.* ¶ 30. Plaintiffs have the same interest in the Settlement relief, and the absent Settlement Class members have no diverging interests. *Id.*

        **The Settlement Was Negotiated at Arm's Length (Rule 23(e)(2)(B))** – The Settlement was reached in the absence of collusion and is the result of good faith, informed, and arm's-length negotiations between experienced attorneys who are familiar with class action litigation and with

the legal and factual issues at stake. *Id.* ¶¶ 27, 26, 39. Class Counsel thoroughly investigated and analyzed Plaintiffs' claims, engaged in informal discovery, fully briefed motions to dismiss filed by Brightline and for Track 1 (which is similar to what they would have faced in Track 4), and consulted with data security experts, enabling them to gain an understanding of the evidence related to central questions in the Action and preparing them for well-informed settlement negotiations. *See id.* ¶¶ 9, 28; *see also Mednax*, 2024 WL 17477004 at *6. The Settlement was reached with the assistance of a well-respected and experienced mediator. *See* Joint Decl. ¶¶ 16, 21. "The fact that the Settlement was achieved through well-informed, arm's-length, and neutrally supervised negotiations weighs in favor of granting preliminary approval under Rule 23(e)(2)(B)." *Mednax*, 2024 WL 17477004 at *6. For these reasons and those discussed related to attorneys' fees below, there was no fraud or collusion in arriving at the Settlement. *Bennett*, 737 F.2d at 986.

**The Adequacy of the Settlement Relief (Rule 23(e)(2)(C))** - Although Plaintiffs believe the claims asserted in the Action are meritorious and the Settlement Class would ultimately prevail at trial, continued litigation against Brightline poses significant risks that make any recovery for the Settlement Class uncertain. This Court observed in *Mednax* that data breach class actions are risky. 2024 WL 17477004 at *7. The Settlement's fairness is underscored by consideration of the obstacles that the Settlement Class would face in ultimately succeeding on the merits, as well as the expense and likely duration of the litigation. *Id.* Despite the risks involved with further litigation, the Settlement provides outstanding benefits, including Cash Payments, Credit Monitoring, and injunctive relief for all Settlement Class Members. *See Equifax*, 999 F.3d at 1273 ("Settlements also save the bench and bar time, money, and headaches"). Also, the Claim Form submission process and distribution of Settlement Class Member Benefits is fair, convenient, and effective. Settlement Class Members will promptly receive Cash Payments by electronic means or

paper check issued by the Settlement Administrator and Credit Monitoring, if elected. The Settlement Administrator is highly qualified to manage the entire process. Joint Decl. ¶ 36. " Thus, through the Settlement, Plaintiffs and Settlement Class Members gain significant benefits without having to face further risk of not receiving any relief at all." *Mednax*, 2024 WL 17477004 at \*7.

**The Equitable Treatment of Settlement Class Members (Rule 23(e)(2)(C))** – As this Court found in *Mednax*, 2024 WL 17477004 at \*7, all Settlement Class Members are given an equal opportunity to claim Settlement Class Member Benefits. Specifically, each Settlement Class member has the option to be reimbursed for documented losses up to $5,000.00, or they may elect to receive a flat cash payment of $100.00. Additionally, all California Settlement Class Members are equally entitled to the same Californian Statutory Award of $100.00 and all Settlement Class Members may elect Credit Monitoring. Thus, "[t]he method of distributing the settlement benefits will be equitable and effective." *Id.* Furthermore, the attorneys' fees do not impact the other terms of the Settlement, as Class Counsel and Defendants negotiated and reached agreement regarding attorneys' fees and costs only after reaching agreement on all other material Settlement terms. The Settlement, including disbursement of the Settlement Class Member Benefits, is also not contingent on approval of the attorneys' fee or costs award to Class Counsel. Agreement ¶ 108. Finally, the Parties' agreements are all in the Agreement. Joint Decl. ¶ 26.

## 2.   The *Bennett* factors support Preliminary Approval.

Although typically a consideration at the final approval stage, here, the *Bennett* factors still support Preliminary Approval. First, the benefits of settlement outweigh the risk of trial given the substantial relief that Settlement Class members will be afforded, including guaranteed Cash Payments, Credit Monitoring, and injunctive relief.

Second and third, the Settlement is within the range of possible recoveries and is fair,

adequate, and reasonable. *See Burrows v. Purchasing Power, LLC*, No. 1:12-CV22800, 2013 WL 10167232, at *6 (S.D. Fla. Oct. 7, 2013). In determining whether a settlement is fair and reasonable, the court must also examine the range of possible damages Plaintiffs could recover at trial and combine this with an analysis of Plaintiffs' likely success at trial to determine if the settlements fall within the range of fair recoveries. *See, e.g., Equifax*, 999 F.3d at 1274 (affirming district court's decision that settlement was "fair, reasonable, and adequate because the settlement reflects relief the Court finds is in the high range of what could have been obtained had the parties continued to litigate."). Here, Settlement Class members may elect Cash Payment A for reimbursement of documented ordinary losses up to $5,000.00, or they may elect Cash Payment B for a flat cash payment of $100.00. Joint Decl. ¶ 29. Additionally, Settlement Class members may also elect Credit Monitoring, and California Settlement Class Members may receive an additional $100.00. *Id*.

Fourth, continued litigation would be lengthy and expensive. With *Mednax* as an example, Data breach litigation is often difficult and complex. *Id.* ¶ 43. Although the Parties entered into a Settlement relatively early in litigation, the Settlement negotiations were hard-fought, and the Parties expended significant time and energy on this Action. *Id*. ¶ 44.

Fifth, opposition to the Settlement, if any, is better considered at the Final Approval stage, after Notice to the Settlement Class. *Mednax*, 2024 WL 17477004 at *7.

Sixth, despite resolving at an early stage of litigation, Plaintiffs have sufficient information to evaluate the merits and negotiate a fair, adequate, and reasonable settlement. *See, e.g., Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 694 (S.D. Fla. 2014) (approving settlement where parties settled relatively early with experienced counsel who had sufficient information to evaluate merits of the case, engaged in full-day mediation, and engaged in post-mediation discovery). This

Action has been thoroughly investigated by counsel experienced in data breach litigation. Joint Decl. ¶¶ 17–20. Moreover, Class Counsel's informal exchange of discovery and mediation with an experienced mediator has ensured a fair, reasonable, and adequate Settlement. *Id.*

Accordingly, the Court should find the Settlement is fair, reasonable, and adequately protects the interests of the Settlement Class members.

**C.     The Court Should Appoint the Proposed Class Representatives, Class Counsel, and Settlement Administrator.**

Plaintiffs seek appointment as Class Representatives. Plaintiffs have cooperated with Class Counsel and assisted in the preparation of the complaints and in settlement of the Action. *Id*. ¶ 31. Moreover, Plaintiffs are committed to continuing to assist Class Counsel through Final Approval. *Id.* Because Plaintiffs are adequate, the Court should appoint them as Class Representatives. *See* § V(A)(3), *supra*.

For the same reasons discussed above for adequacy of representation, the Court should designate Jeff Ostrow, John Yanchunis, James Cecchi, and Mason Barney as Class Counsel. Federal Rule of Civil Procedure 23(g)(1)(A)'s four factors for appointing class counsel for a certified class are (1) "the work counsel has done in identifying or investigating potential claims in the action;" (2) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;" (3) "counsel's knowledge of the applicable law;" and (4) "the resources that counsel will commit to representing the class." The Court may also "consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class[.]" Fed. R. Civ. P. 23(g)(1)(B). Here, Plaintiffs and the Settlement Class are represented by qualified and competent Class Counsel who are leaders in the class action field with extensive experience prosecuting and resolving complex class actions. Before commencing litigation, they investigated the potential claims against Defendants, interviewed potential

plaintiffs, and gathered information regarding the Data Incident. Joint Decl. ¶ 4. Class Counsel has devoted substantial time and resources to this Action and will continue to do so. *Id.* ¶¶ 28, 32.

Finally, subject to Court approval, the Parties have agreed Epiq should be the Settlement Administrator. Epiq has a long history of successful class action administrations.

### D.     The Notice Program Contains the Best Notice Practicable.

Under Fed. R. Civ. P. 23(e)(1), the Court should "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement.. Notice of a proposed settlement must be the "best notice practicable." Fed. R. Civ. P. 23(c)(2)(B). "[B]est notice practicable" means "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). The best notice practicable is that which "is reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). Moreover, Fed. R. Civ. P. 23(h)(1) requires that "[n]otice of the motion [for attorneys' fees] must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner."

The Notice Program satisfies the foregoing criteria. The Parties negotiated the form of the Notices with the help of the Settlement Administrator. The Notice will be disseminated to all persons who fall within the Settlement Class definition and whose names and addresses can be identified with reasonable effort from Brightline's records, and through databases tracking nationwide addresses and address changes. In addition, Epiq will administer the Settlement Website containing relevant information about the Settlement. Further, the Notice includes, among other information: a description of the material terms of the Settlement; how to submit a Claim Form; the Claim Form Deadline; the last day of the Opt-Out Period for Settlement Class members

to opt-out of the Settlement Class; the last day of the Objection Period for Settlement Class Members to object to the Settlement and/or Application for Attorneys' fees and Costs; the Final Approval Hearing date; and the Settlement Website address at which Settlement Class members may access this Agreement and other related documents and information. Agreement ¶ 84. Finally, the Notice Program satisfies the requirements of Rule 23(h)(1), as it notifies the Settlement Class that Class Counsel may apply to the Court for an award of attorneys' fees of up to 33.33% of the Settlement Fund, plus reimbursement of costs. *Id.* ¶ 107. Thus, the Court should approve the Notice Program, including the form and content of the Notices. Agreement Exs. 1-3.

       **E.**      **Proposed Schedule of Post-Settlement Events**

      Plaintiffs respectfully propose the below schedule for the Court's review and approval. If the Court agrees, Plaintiffs request that the Court schedule the Final Approval Hearing for the week of January 20, 2025, or such later date available on the Court's calendar.

| | |
|---|---|
| Deadline to commence Notice Program | **Within 30 days of the Preliminary Approval Order** |
| Deadline to complete Notice Program | **45 days before the original Final Approval Hearing date** |
| Deadline for filing Motion for Final Approval, including Class Counsel's Application for Attorneys' Fees and Costs | **45 days before the original Final Approval Hearing date** |
| Opt-out Period Ends | **30 days before the original Final Approval Hearing date** |
| Objection Period Ends | **30 days before the original Final Approval Hearing date** |
| Final Approval Hearing | **The week of February 3, 2025 (or soon thereafter depending on the Court's availability).** |
| Claim Form Deadline | **15 days following the original Final Approval Hearing date** |

**IV.**    **CONCLUSION**

      For the foregoing reasons, Plaintiffs and Class Counsel respectfully request the Court: (1) preliminarily approve the Settlement; (2) certify the Settlement Class for settlement purposes only;

(3) approve the Notices and Notice Program, including the opt-out and objection procedures; (4) approve the Claim Form and Claims process; (5) appoint Plaintiffs as Class Representatives; (6) appoint Jeff Ostrow of Kopelowitz Ostrow P.A., John Yanchunis of Morgan & Morgan P.A., James Cecchi of Carella, Byrne, Cecchi, Brody, & Agnello P.C., and Mason Barney of Siri & Glimstad LLP as Class Counsel; (7) appoint Epiq Class Action & Claims Solutions, Inc. as the Settlement Administrator; and (8) enter the proposed Preliminary Approval Order, attached as Exhibit A-5.

## <u>CERTIFICATE OF LOCAL RULE 7.1(a)(3) CONFERRAL</u>

Plaintiffs' counsel certifies that Plaintiffs have conferred with Defendant regarding the relief requested in this Motion and Defendant does not oppose the relief requested.

Dated: September 13, 2024.

Respectfully submitted,

<u>/s/ *Jeff Ostrow*</u>
Jeff Ostrow FBN 121452
**KOPELOWITZ OSTROW P.A.**
1 West Las Olas Blvd., Ste. 500
Fort Lauderdale, FL 33301
Tel : 954.332.4200
ostrow@kolawyers.com

John Yanchunis FBN 324681
**MORGAN & MORGAN P.A.**
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tel: 813.275.5272
jyanchunis@forthepeople.com

*MDL Co-Lead Counsel*

James Cecchi (*pro hac vice*)
**CARELLA, BYRNE, CECCHI,**
**BRODY & AGNELLO P.C.**
5 Becker Farm Road
Roseland, NJ 07068
Tel : 973.994.1700
jcecchi@carellabyrne.com

*MDL Track Coordination and*
*Settlement Counsel*

Mason A. Barney (*pro hac vice*)
**SIRI & GLIMSTAD LLP**
745 Fifth Avenue, Suite 500
New York, NY 10151
Tel : 646.357.1732
mbarney@sirillp.com

*Track 4 Lead Counsel - Brightline*