**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 24-MD-03090-RAR**

In re:

**FORTRA FILE TRANSFER SOFTWARE**
**DATA SECURITY BREACH LITIGATION**
_____/

This Document Relates to Track 4 Cases:

24-cv-20611-RAR
24-cv-20615-RAR
24-cv-20617-RAR
24-cv-20620-RAR
_____/

**ORDER GRANTING PLAINTIFFS' UNOPPOSED MOTION FOR**
**PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

**THIS CAUSE** comes before the Court on Plaintiffs' Unopposed Motion for Preliminary

Approval[1] requesting entry of an order: (i) granting Preliminary Approval of the Settlement; (ii)

provisionally certifying the Settlement Class for settlement purposes; (iii) appointing Plaintiffs as

Class Representatives; (iv) appointing Class Counsel for the Settlement Class; (v) approving the

form of Notices and the Notice Program; (vi) approving the Claim Form and the Claim process;

(vii) appointing the Settlement Administrator; (viii) establishing procedures for members of the

Settlement Class to opt-out of or object to the Settlement; and (ix) scheduling a Final Approval

Hearing on whether to grant Final Approval of the Settlement and Class Counsel's Application for

Attorneys' Fees and Costs, [ECF No. 171].

Having carefully reviewed the proposed Settlement and its exhibits, all relevant filings,

and the record, the Court finds the proposed Settlement satisfies the criteria for preliminary

---

[1] All capitalized terms used herein have the same meanings as those defined in Section II of the Settlement
Agreement attached to the Motion for Preliminary Approval as ***Exhibit A***.

approval; the proposed Settlement Class should be preliminarily certified; the proposed Notice Program and Claim process should be approved; and Class Representatives, Class Counsel, and the Settlement Administrator should be appointed.  Accordingly, it is hereby

**ORDERED AND ADJUDGED** that the Motion is **GRANTED** as set forth herein.

## BACKGROUND

This Action is a putative class action that has been centralized with all other Fortra GoAnywhere MFT related cases into MDL-3090 before this Court.  On April 18, 2024, Plaintiffs filed their Track 4 Consolidated Complaint against all MDL-3090 Track 4 defendants, including Brightline, alleging Brightline failed to adequately protect Plaintiffs' and the Settlement Class's Private Information from unauthorized access and asserting multiple common law and statutory claims for relief.  [ECF No. 153].

Brightline is a virtual behavioral health care company offering therapy and coaching for minors.  *Id.* ¶ 225.  Fortra is in the business of offering cybersecurity and automation solutions. *Id.* ¶¶ 242–43.  Brightline was one of Fortra's customers who used Fortra's GoAnywhere MFT file transfer application in connection with its business.  *Id.* ¶ 242.  In January of 2023, a Data Incident occurred wherein a ransomware group hacked Fortra's computer systems due to a vulnerability in Fortra's transfer application, resulting in the exfiltration of highly sensitive Private Information belonging to millions of individuals, including over one million individuals whose information was stored on Brightline's GoAnywhere MFT instance.  *Id.* ¶ 249.  The impacted information included some combination of names, addresses, dates of birth, member identification numbers, start and end dates of health plan coverage, telephone numbers, Social Security numbers, and employer names, which was stored within Brightline's instance of the Fortra Go Anywhere MFT at the time of the Data Incident.  *Id.* ¶¶ 1, 265.  The ransomware group behind the Data Incident published the exfiltrated Private Information on its data leak site, where it was available

to download for at least 50 days, and two Plaintiffs have received alerts that their Private Information is now on the dark web. *Id.* ¶¶ 69, 127, 267, 269. Following the Data Incident, in or about May 2023, Brightline began notifying millions of impacted individuals, including Plaintiffs and Settlement Class members, of the unauthorized access to and exfiltration of their Private Information. *Id.* ¶ 266.

Prior to mediating and reaching a settlement, the Parties engaged in meaningful discovery. The Parties exchanged Initial Disclosures and negotiated a Stipulated Confidentiality and Qualified Protective Order and Order Governing Production of Electronically Stored Information and Paper Documents, which the Court entered on April 22, 2024. [ECF Nos. 154, 155]. Plaintiffs also requested pre-mediation informal discovery from Brightline, and in response Brightline produced extensive material relating to liability and damages, including but not limited to, the number of individuals and categories of Private Information impacted by the Data Incident, and documents demonstrating that all data impacted as part of the Data Incident—which would include all impacted Private Information—had been removed from Clop's extortion portal. The Parties also exchanged detailed mediation statements outlining their positions with respect to liability, damages, and settlement.

On July 11, 2024, the Parties participated in a full-day private mediation in Miami, Florida, before experienced class-action mediator Michael Ungar, Esq. The mediation concluded with the Parties agreeing to all material terms of the Settlement. The terms of the settlement reached are memorialized in the Agreement, which was negotiated at arm's length, in good faith, and without collusion by capable and experienced counsel with full knowledge of the facts, the law, and the inherent risks in the Action, and with the active involvement of Plaintiffs and Brightline.

The Parties filed a Notice of Settlement with the Court on July 12, 2024. [ECF No. 165]. Over the next couple of months, the Parties worked diligently to finalize the terms of the

Agreement and ancillary documents, and the Agreement was executed on September 12, 2024. The Parties did not discuss attorneys' fees and costs until after they reached agreement on all material Settlement terms.

Specifically, the Settlement provides monetary relief that includes a non-reversionary all-cash Settlement Fund of $7,000,000. The Settlement Fund will be partially funded by Brightline after Preliminary Approval with the remainder to be funded following Final Approval. The Settlement Fund will be used to pay: (i) Settlement Class Member Benefits; (ii) any attorneys' fees and costs awarded by the Court to Class Counsel; and (iii) all Settlement Administration Costs. Once Brightline funds the Settlement Fund, it will not be required to make any other payments to Settlement Class members under the Settlement. The Settlement also provides that prior to Final Approval, Brightline will provide Class Counsel with a security attestation as to the security measures it implemented following the Data Incident. The costs of any such security measures shall be fully borne by Brightline, and under no circumstances will such costs be deducted from the Settlement Fund.

Plaintiffs now seek Preliminary Approval of the Settlement on behalf of the proposed Settlement Class. Brightline does not oppose the relief sought in the Motion for Preliminary Approval and agrees the Court should grant Preliminary Approval of the Settlement and allow Notice to issue to the Settlement Class. As further discussed below, the Settlement falls within the range of judicial approval and includes a comprehensive Notice Program and Claims process. As such, Preliminary Approval of the proposed Settlement is warranted.

## **LEGAL STANDARD**

It is well established that "[a] class may be certified solely for purposes of settlement [if] a settlement is reached before a litigated determination of the class certification issue." *Borcea v. Carnival Corp.*, 238 F.R.D. 664, 671 (S.D. Fla. 2006) (cleaned up). "There is a strong judicial

policy in favor of settlement, in order to conserve scarce resources that would otherwise be devoted to protracted litigation." *Id*. In deciding whether to provisionally certify a settlement class, a court must consider the same factors that it would consider in connection with a proposed litigation class—*i.e.*, all Federal Rule of Civil Procedure 23(a) factors and at least one subsection of Federal Rule of Civil Procedure 23(b) must be satisfied—except that the Court need not consider the manageability of a potential trial, since the settlement, if approved, would obviate the need for a trial. *See id*. at 671–672; *see also Diakos v. HSS Sys., LLC*, 137 F. Supp. 3d 1300, 1306–07 (S.D. Fla. 2015) (explaining a court evaluates whether certification of a settlement class is appropriate under Rule 23(a) and (b)); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

Rule 23(a) requires: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. *See* FED. R. CIV. P. 23(a)(1)–(4). Rule 23(b)(3) requires that (1) "the questions of law or fact common to class members predominate over any questions affecting only individual members" and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3). The Eleventh Circuit also requires that the class representatives have standing to sue and that the proposed class is adequately defined and clearly ascertainable. *See Prado-Steiman ex rel Prado v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000) ("[I]t is well-settled that prior to the certification of a class, and technically speaking before undertaking any formal typicality or commonality review, the district court must determine that at least one named class representative has Article III standing to raise each class subclaim."); *Little v. T-Mobile USA, Inc*., 691 F.3d 1302, 1304 (11th Cir. 2012) ("Before a district court may grant a motion for class certification, a plaintiff seeking to represent a proposed class must establish that the proposed class is adequately defined and clearly ascertainable." (internal citations omitted)).

Before addressing any Rule 23 factor, however, the Court must ensure that standing under Article III is met. *See Griffin v. Dugger*, 823 F.2d 1476, 1482 (11th Cir. 1987) ("[A]ny analysis

of class certification must begin with the issue of standing . . . .").  To satisfy Article III standing, a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

If certification of a settlement class is appropriate, a court then determines if the proposal is "fair, reasonable, and adequate."  FED. R. CIV. P. 23(e)(2).  To do so, the Court considers whether the following factors are met:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

*Id.*  Further, the Eleventh Circuit "instruct[s] district courts to consider several additional factors called the *Bennett* factors."  *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1273 (11th Cir. 2021) (citing *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984)).  These additional factors are:

> [(a)] there was no fraud or collusion in arriving at the settlement, and [(b)] the settlement was fair, adequate and reasonable, considering (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.

*Bennett*, 737 F.2d at 986 ("*Bennett* factors").

Courts have discretion in approving a settlement agreement, *Bennett*, 737 F.2d at 986, and settlement negotiations that involve arm's-length, informed bargaining with the aid of experienced

counsel support a preliminary finding of fairness.  *See* Manual for Compl. Lit., Third, § 30.42 (West 1995) ("A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." (cleaned up)).  "Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason." *Smith v. Wm. Wrigley Jr. Co*., No. 09-60646, 2010 WL 2401149, at \*2 (S.D. Fla. June 15, 2010) (cleaned up).

## <u>ANALYSIS</u>

The Court finds, for settlement purposes only, that the Rule 23 factors are satisfied, and certification of the proposed Settlement Class is appropriate under Rule 23.  The Court further finds that the Article III standing requirement is met here.[2]  The Court therefore provisionally certifies the following Settlement Class:

> All living individuals residing in the United States who received notice of the Brightline Data Incident indicating that their Private Information may have been impacted in the Data Incident.

A subset of the Settlement Class is the California Settlement Class of "Settlement Class members residing in California as of January 30, 2023."[3]

The Court further finds, for settlement purposes only and conditioned on final certification of the proposed Settlement Class and entry of a Final Approval Order, that the Settlement Class and proposed Settlement satisfy the requirements of Rule 23(a), 23(b)(3), and 23(e), as well as the *Bennett* factors.  The Court will address each Rule 23(a) and 23(b)(3) factor in turn.

---

[2]  This Court recently granted in part and denied in part the Motion to Dismiss, [ECF No. 138], for Track 1 Plaintiffs, and in so doing, ruled on those Plaintiffs' standing to sue stemming from the same Data Incident. *See* [ECF No. 172].

[3]  Excluded from the Settlement Class are (a) all persons who are employees, directors, and agents of Brightline, and their respective subsidiaries and affiliated companies; (b) governmental entities; and (c) the undersigned, the undersigned's immediate family, and Court staff.

### A.   The Rule 23(a) Factors Are Satisfied.

#### (i)   Rule 23(a)(1)–Numerosity

Rule 23(a)(1) requires that the "class is so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1).  The numerosity requirement is a "generally low hurdle" and, as a baseline, "less than twenty-one is inadequate . . . [and] more than forty is adequate[.]" *Vega v. T-Mobile USA, Inc*., 564 F.3d 1256, 1267 (11th Cir. 2009) (cleaned up).  Here, the numerosity requirement of Rule 23(a)(1) is satisfied because the Settlement Class includes approximately one million individuals.  *See Cox v. Am. Cast Iron Pipe Co*., 784 F.2d 1546, 1553 (11th Cir. 1986) (numerosity generally satisfied where there are more than 40 class members); *In re Mednax Serv., Customer Data Sec. Breach Litig.*, No. 21-MD-02994, 2024 WL 1554329, at *4 (S.D. Fla. Apr. 10, 2024) (finding numerosity satisfied in data breach class action where class included nearly three million individuals).  The joinder of approximately one million Settlement Class members would certainly be impracticable, and thus numerosity is satisfied.

#### (ii)   Rule 23(a)(2)–Commonality

Rule 23(a)(2) requires that there must be "questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2).  "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury," and the plaintiff's common contention "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349–50 (2011) (cleaned up).  The commonality requirement is a "low hurdle."  *See Williams v. Mohawk Indus., Inc*., 568 F.3d 1350, 1356 (11th Cir. 2009).  Courts in this Circuit have previously addressed this requirement in the context of data breach class actions and found it satisfied.  *See, e.g., Mednax*, 2024 WL 1554329, at *4 (finding commonality satisfied because claims turn on adequacy of defendants' data security to protect PII

and PHI); *Desue v. 20/20 Eye Care Network, Inc.*, No. 21-cv-61275, 2022 WL 17477004, at *4 (S.D. Fla. Dec. 5, 2022); *see also In re Equifax*, 999 F.3d at 1274–75, 1277 (affirming district court's certification of class, including finding of commonality).

Here, Plaintiffs and Settlement Class members all had their Private Information impacted by the Data Incident. Plaintiffs' claims turn on whether Brightline's data security environment, including the use of the Fotra GoAnywhere Transfer application, was adequate to protect Plaintiffs' and the Settlement Class' Private Information. These issues are common to the Settlement Class, are alleged to have injured all Settlement Class members in the same way and would generate common answers central to the viability of all claims were this case to proceed to trial. In other words, evidence to resolve said claims does not vary among Settlement Class members and can therefore be fairly resolved, for purposes of settlement, for all Settlement Class members at once. Thus, commonality is satisfied.

### (iii) Rule 23(a)(3)–Typicality

Under Rule 23(a)(3), a class representative's claims must also be typical of the putative class they seek to represent. *See* FED. R. CIV. P. 23(a)(3). Typicality under Rule 23(a)(3) "measures whether a significant nexus exists between the claims of the named representative and those of the class at large." *Hines v. Widnall*, 334 F.3d 1253, 1256 (11th Cir. 2003); *see also Kornberg v. Carnival Cruise Lines, Inc*., 741 F.2d 1332, 1337 (11th Cir. 1984) (typicality satisfied where claims "arise from the same event or pattern or practice and are based on the same legal theory"). "Neither the typicality nor the commonality requirement mandates that all putative class members share identical claims, and [] factual differences among the claims of the putative members do not defeat certification." *Cooper v. S. Co*., 390 F.3d 695, 714 (11th Cir. 2004), *overruled on other grounds by Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 457–58 (2006) (cleaned up); *see also Ault v. Walt Disney World Co*., 692 F.3d 1212, 1216 (11th Cir. 2012). When the

same course of conduct is directed at the named plaintiff and the members of the proposed class, typicality is satisfied. *See Kennedy v. Tallant*, 710 F.2d 711, 717–18 (11th Cir. 1983).

Here, Plaintiffs' interests are aligned with the Settlement Class in that they all were sent a notice letter indicating their Private Information may have been impacted in the Data Incident and were therefore all affected by the same purportedly inadequate security that allegedly harmed Settlement Class members. Their claims are based on the same legal theories and underlying event. Thus, the typicality requirement is satisfied. *See Hines*, 334 F.3d at 1256; *Mednax*, 2024 WL 1554329, at *4.

### *(iv) Rule 23(a)(4)–Adequacy*

Adequacy under Rule 23(a)(4) requires that "the representative parties . . . fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). Adequacy relates to (i) whether the proposed class representative has interests antagonistic to the class, and (ii) whether the proposed class counsel has the competence to undertake this litigation. *Fabricant v. Sears Roebuck*, 202 F.R.D. 310, 314 (S.D. Fla. 2001). The determinative factor "is the forthrightness and vigor with which the representative party can be expected to assert and defend the interests of the members of the class." *Lyons v. Georgia-Pacific Corp. Salaried Emps. Ret. Plan*, 221 F.3d 1235, 1253 (11th Cir. 2000) (internal citations omitted); *Mednax*, 2024 WL 17477004, at *5.

Here, like all Settlement Class members, Plaintiffs have claims against Brightline arising from the Data Incident that allegedly impacted their Private Information. Plaintiffs were similarly injured by Brightline's allegedly wrongful acts. Proof of Plaintiffs' claims would necessarily involve adjudicating the same issues of law and fact as the claims of the Settlement Class as a whole. Thus, Plaintiffs and the Settlement Class they seek to represent have the same interests in recovering damages and other relief. Further, Plaintiffs have also diligently and adequately prosecuted this action through Class Counsel by, among other things, reviewing filings, promptly

providing documents and information to Class Counsel, acting in the best interest of the Settlement Class, and accepting the class-wide Settlement.  Plaintiffs are committed to continuing to assist Class Counsel through Final Approval.

As for Class Counsel, they are highly qualified and have a great deal of experience litigating consumer class actions, including in the data privacy context, demonstrating their adequacy.  *See Mednax*, 2024 WL 17477004, at *5 ("Class Counsel are adequate because of their vast experience as vigorous data breach class action litigators.").  Class Counsel have litigated this Action and against the other MDL-3090 defendants, including evaluating the claims, preparing comprehensive pleadings, serving informal discovery, consulting with data security experts, responding to the Track 1 Motion to Dismiss 1 (which is similar to what they would have faced in Track 4), complying with Court orders and requirements, and participating in a mediation that ultimately resulted in this Settlement.

Accordingly, Plaintiffs have no conflicts with the Settlement Class and have demonstrated their adequacy as Class Representatives by "(i) having a genuine personal interest in the outcome of the case; (ii) selecting well-qualified Class Counsel; (iii) producing information and documents to Class Counsel to permit investigation and development of the complaints; (iv) being available as needed throughout the litigation; and (v) monitoring the Litigation."  *See Mednax*, 2024 WL 17477004, at *5.  The adequacy requirement is therefore met.

**B.  The Rule 23(b) Factors Are Satisfied.**

Having found that all Rule 23(a) factors are satisfied, the Court proceeds to address at least one subsection of Rule 23(b)—namely, Rule 23(b)(3)—to ascertain whether "questions of law or fact common to class members predominate over any questions affecting only individual members," and to ensure "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  FED. R. CIV. P. 23(b)(3).  When assessing predominance

and superiority, the court may consider the class will be certified for settlement purposes only, and that a showing of manageability at trial is not required.  *See Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, . . . for the proposal is that there be no trial.").

### (i) Predominance

The predominance inquiry looks at "the legal or factual questions that qualify each class member's case as a genuine controversy, questions that preexist any settlement."  *Id.* at 623. "Common issues of fact and law predominate if they have a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief."  *Carriuolo v. Gen. Motors Co*., 823 F.3d 977, 985 (11th Cir. 2016) (internal citations omitted).  Further, "[i]t is not necessary that all questions of law or fact be common, but only that some questions are common and that they predominate over individual questions."  *In re Takata Airbag Prod. Liab. Litig.*, 677 F. Supp. 3d 1311, 1324 (S.D. Fla. 2023), *modified*, No. 15-MD-02599, 2023 WL 5625652 (S.D. Fla. Aug. 24, 2023).  The focus on a defendant's security measures in a data breach class action "is the precise type of predominant question that makes class-wide adjudication worthwhile."  *In re Anthem, Inc. Data Breach Litig*., 327 F.R.D. 299, 312 (N.D. Cal. 2018).

Here, as in other data breach cases, common questions predominate because all claims arise out of a common course of conduct by Brightline.  *See id*. at 312; *Mednax*, 2024 WL 17477004, at *5.  All Settlement Class members had their Private Information compromised in the Data Incident and the security practices at issue did not vary from person to person.  "Thus, because these common questions represent a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is a clear justification for handling the dispute

on a representative rather than on an individual basis." *See Mednax*, 2024 WL 17477004, at \*5. The predominance requirement is therefore satisfied.

### *(ii) Superiority*

To satisfy the superiority requirement of Rule 23(b)(3), a movant must show that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3). "The focus of the superiority analysis is on the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to plaintiffs." *Mohamed v. Am. Motor Co.*, 320 F.R.D. 301, 316 (S.D. Fla. 2017) (cleaned up); *see also Mednax*, 2024 WL 17477004, at \*5. Here, adjudicating individual actions would be impractical. The amount in dispute for individual class members is too small, the technical issues involved too complex, and the expert testimony and document review too costly. Further, individual claim prosecution would be prohibitively expensive, needlessly delay resolution, and may lead to inconsistent rulings. Accordingly, certification of this suit as a class action is superior to other methods to fairly, adequately, and efficiently resolve the claims asserted.

### C. The Article III Standing Requirement Is Met.

To demonstrate Article III standing, Plaintiffs must establish that they each "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 578 U.S. at 338. Further, "[t]o have standing to represent a class, a party must not only satisfy the individual standing prerequisites, but must also 'be part of the class and possess the same interest and suffer the same injury as the class members.'" *Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1307 (11th Cir. 2008) (quoting *Prado-Steiman ex rel Prado*, 221 F.3d at 1279). There is no requirement that Article III standing be proved with evidentiary support at the settlement approval stage. *Cf. Equifax*, 999 F.3d at 1261 n.8.

Standing exists when a plaintiff's sensitive personal information is allegedly accessed and exfiltrated in a data breach. *Desue v. 20/20 Eye Care Network, Inc.*, No. 21-cv-61275, 2022 WL 796367, at *4–5 (S.D. Fla. Mar. 15, 2022); *see also Desue v. 20/20 Eye Care Network, Inc.*, No. 21-cv-61275, 2022 WL 17477004, at *5 (S.D. Fla. Dec. 5, 2022).   In a similar data breach class action, this Court extensively addressed standing in data breach class actions, and subsequently relied on that analysis when preliminarily approving a class settlement in that case. *See In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, 603 F. Supp. 3d 1183, 1200–08 (S.D. Fla. 2022) (denying motion to dismiss for lack of standing, after applying *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021)); *Mednax*, 2024 WL 1554329, at *4 n.2 (citing *Green-Cooper v. Brinker Int'l, Inc.*, 73 F.4th 883 (11th Cir. 2023) (citing standing analysis from motion to dismiss opinion and preliminarily approving class settlement)).

To establish an imminent threat of identity theft based on a data breach, plaintiffs must show that "*some* misuse of class members' data" has already occurred. *Green-Cooper*, 73 F.4th at 889 (quoting *Tsao v. Captiva MVP Rest. Partners, LLC*, 986 F.3d 1332, 1344 (11th Cir. 2021)). Plaintiffs' allegations that a criminal ransomware group accessed their Private Information and published it to its data leak site, and that two Plaintiffs' Private Information is now on the dark web, supports that misuse. *See Green-Cooper*, 73 F.4th at 890 (posting of Private Information on the dark web "establishes both a present injury . . . and a substantial risk of future injury"). Therefore, the actual misuse of and actual access to the Settlement Class's data are injuries-in-fact that plausibly give rise to a substantial risk of future harm from identity theft; emotional injury; the diminution in the value of Plaintiffs' and Settlement Class members' Private Information; and the loss of privacy. *Mednax*, 603 F. Supp. 3d at 1202–05.

Traceability—the causal connection between the Data Incident and the Settlement Class's injuries—also exists for Article III standing.   Plaintiffs' and Settlement Class members' injuries

must be "fairly traceable" to Brightline's actions, but that does not mean they are required to show proximate cause, as "harms that flow indirectly from the action in question can be said to be 'fairly traceable' to that action for standing purposes." *Id.* at 1205 (quoting *Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1125 (11th Cir. 2019)).  In the data breach context, the Eleventh Circuit has found that injuries stemming from a data breach are fairly traceable when a plaintiff alleges that they interacted with the defendant during the period of the data breach.  *Green-Cooper*, 73 F.4th at 890 n.10.  Plaintiffs here easily meet this requirement, as each Plaintiff received notice they had been involved in the breach as a result of Brightline possessing their data.  [ECF No. 153] ¶¶ 67–68, 76–77, 85, 98, 112, 125–26.  Brightline's alleged failure to protect the Private Information, resulting in the Data Incident whereby unauthorized access was gained, preceded Plaintiffs' documented incidents of identity theft, economic losses, lost time, and emotional distress, and put them at a substantial risk of future incidents of identity theft as well.  *Mednax*, 603 F. Supp. 3d at 1206.  The Data Incident need not have provided all information necessary to inflict those harms; it is enough that the Data Incident could assist identity thieves in perpetrating such harms.  *Id.*

Thus, like in *Mednax* and *Desue*, because all Plaintiffs and Settlement Class members had their Private Information impacted in the Data Incident, they have all suffered injuries in fact that are fairly traceable to the Data Incident and would likely be redressed by a favorable judgment if this case was litigated through trial, demonstrating Article III standing.  The Court therefore provisionally certifies the Settlement Class.

### D.  The Rule 23(e) Factors and the Bennett Factors are Satisfied.

Next, the Court must preliminarily determine whether the Settlement is fair, adequate, and reasonable under Rule 23(e)(2) while also considering the *Bennett* factors.  At this juncture, "the court's primary objective . . . is to establish whether to direct notice of the proposed settlement to the class, invite the class's reaction, and schedule a final fairness hearing."  *Morris v. US Foods,*

*Inc*., No. 8:20-cv-105, 2021 WL 2954741, at *7 (M.D. Fla. May 17, 2021) (quoting William B. Rubenstein, 4 Newberg on Class Actions § 13:10 (5th ed. Supp. 2020)). "Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason." *Smith*, 2010 WL 2401149, at *2.

The Court finds the Settlement satisfies the requirements of Rule 23(e) as well as the *Bennett* factors. The Court will address each factor in turn.

### (i)   Rule 23(e)(2)(A)–Adequacy of Representation

For the same reasons that led the Court to find Class Counsel adequate for purposes of preliminary Settlement Class certification, *supra* Part A.IV, Class Counsel have adequately represented the Settlement Class's interests for purposes of Preliminary Approval of the Settlement. Additionally, as the Court has found for purposes of preliminary certification, Plaintiffs' respective interests are coextensive and do not conflict with the interests of the Settlement Class, demonstrating their adequacy. Plaintiffs have the same interest in the Settlement relief as do Settlement Class members, and the absent Settlement Class members have no diverging interests.

Accordingly, the first Rule 23(e)(2) factor weighs heavily in favor of granting Preliminary Approval because both Class Counsel and the Class Representative have adequately represented the Settlement Class. *See Mednax*, 2024 WL 1554329, at *6.

### (ii)   Rule 23(e)(2)(B)–The Settlement was Negotiated at Arm's Length

The Court finds that the Settlement was reached in the absence of collusion and is the result of good faith, informed, and arm's-length negotiations between experienced attorneys who are familiar with class action litigation and with the legal and factual issues at stake. *Mednax*, 2024 WL 1554329, at *6. Before discussing a potential resolution, the Parties conducted a thorough

factual and legal investigation including significant pre-mediation discovery, allowing them to fully understand the claims, defenses, and risks of continued litigation.  The Settlement was reached after extensive legal and factual investigation by the Parties, a full-day mediation assisted by a well-respected and experienced mediator, and weeks of additional negotiations to finalize the terms of the Agreement and ancillary documents.  The Parties did not discuss attorneys' fees and costs until after they had agreed on all material Settlement terms.

For these reasons and those related to attorneys' fees as discussed below, there was no fraud or collusion in arriving at the Settlement.  *See Bennett*, 737 F.2d at 986.  Accordingly, "[t]he fact that the Settlement was achieved through well-informed, arm's-length, and neutrally supervised negotiations weighs in favor of granting preliminary approval under Rule 23(e)(2)(B)." *Mednax*, 2024 WL 1554329, at *6.

### (iii)  Rule 23(e)(2)(C)–Adequacy of Settlement Relief

When considering the likelihood of success at trial, as well as the complexity, expense, and duration of the litigation, the relief provided here is reasonable.  While Plaintiffs believe the claims asserted in the Action are meritorious and the Settlement Class would ultimately prevail at trial, continued litigation against Brightline poses significant risks that make any recovery for the Settlement Class uncertain.  "[D]ata breach class actions are risky cases." *Mednax*, 2024 WL 1554329 at *7; *see also Fox v. Iowa Health Sys*., No. 3:18-cv00327, 2021 WL 826741, at *5 (W.D. Wis. Mar. 4, 2021) ("Data breach litigation is evolving; there is no guarantee of the ultimate result . . . [they] are particularly risky, expensive, and complex."); *Fulton-Green v. Accolade, Inc*., No. 18-274, 2019 WL 4677954, at *8 (E.D. Pa. Sept. 24, 2019) (noting data breach class actions are "a risky field of litigation because [they] are uncertain and class certification is rare").  And given the complexity of the claims and arguments here, a lengthy trial would likely be required before Settlement Class members could recover.  Maintaining class certification through trial "is

another over-arching risk" as well. *Mednax*, 2024 WL 1554329, at *7. "Thus, through the Settlement, Plaintiffs and Settlement Class Members gain significant benefits without having to face further risk of not receiving any relief at all"—all of which weighs heavily in favor of preliminary approval. *See id*.

Despite the risks involved with further litigation, the Settlement provides outstanding benefits, including Cash Payments, Credit Monitoring, and injunctive relief for all Settlement Class members. *See Equifax*, 999 F.3d at 1273 ("Settlements also save the bench and bar time, money, and headaches."). All Settlement Class members are given an equal opportunity to claim Settlement Class Member Benefits. Specifically, each Settlement Class member has the option to be reimbursed for documented losses up to $5,000.00, or they may elect to receive a flat cash payment of $100.00. Additionally, all California Settlement Class members are equally entitled to the same Californian Statutory Award of $100.00. Further, all Settlement Class members may elect three years of Credit Monitoring.

The Court further finds the Claim Form submission process and distribution of Settlement Class Member Benefits to be fair, convenient, and effective. Settlement Class Members will promptly receive Cash Payments by electronic means or paper check issued by the Settlement Administrator and Credit Monitoring, if elected. The Settlement Administrator is highly qualified to manage the entire process. Thus, "[t]he method of distributing the settlement benefits will be equitable and effective." *Mednax*, 2024 WL 1554329, at *7.

Furthermore, the attorneys' fees do not impact the other terms of the Settlement. Class Counsel intend to request up to 33.33% of the Settlement Fund in attorneys' fees, plus reimbursement of costs, to be paid from the Settlement Fund, subject to this Court's approval. Class Counsel and Brightline negotiated and reached agreement regarding attorneys' fees and costs only after reaching agreement on all other material Settlement terms. The Settlement, including

disbursement of the Settlement Class Member Benefits, is not contingent on approval of the attorneys' fee or costs award to Class Counsel. Finally, the Parties' agreements are all in the Agreement.

The Court therefore finds Rule 23(e)(2)(C)'s requirements are met.

### *(iv)* **Bennett** *Factors*

The Court further finds the relevant *Bennett* factors[4] are satisfied. First, the benefits of settlement outweigh the risk of trial given the substantial relief that Settlement Class members will be afforded, including guaranteed Cash Payments, Credit Monitoring, and injunctive relief. Second and third, the Settlement is within the range of possible recoveries and is fair, adequate, and reasonable. *See Burrows v. Purchasing Power, LLC*, No. 12-22800, 2013 WL 10167232, at *6 (S.D. Fla. Oct. 7, 2013) (considering the second and third *Bennett* factors together). Given the likelihood of Plaintiffs' success at trial and the range of possible damages that could be recovered, the Settlement provides fair recoveries. *See Equifax*, 999 F.3d at 1274.

Fourth, continued litigation would be lengthy and expensive. As noted above, data breach litigation is often difficult and complex. Although the Parties reached a Settlement relatively early in litigation, the Settlement negotiations were hard-fought, and the Parties expended significant time and energy on this Action, allowing Plaintiffs to have sufficient information to evaluate the merits and negotiate a fair, adequate, and reasonable settlement. *See, e.g.*, *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 694 (S.D. Fla. 2014) (approving settlement where parties settled relatively early with experienced counsel who had sufficient information to evaluate merits of the case, engaged in full-day mediation, and engaged in post-mediation discovery).

---

[4] The fifth *Bennett* factor—opposition to the Settlement, if any— cannot be discerned at this time because Notice has not yet been given to the Settlement Class. *See Mednax*, 2024 WL 1554329, at *7.

Accordingly, the Court finds that the Settlement is fair, reasonable, and adequately protects the interests of the Settlement Class members.

### E.  Appointment of Class Representatives and Class Counsel Is Appropriate.

For the reasons discussed above, the Court finds Plaintiffs have adequately represented the Settlement Class throughout this Action.  The Court therefore designates and appoints Plaintiffs Terrance Rosa, Ryan Watson, Donisha Jackson, Kyle Castro, on behalf of himself and his minor children, E.N.C., C.J.C., and E.J.C., Itaunya Milner, on behalf of herself and her minor child, B.G., and Anthony Ndifor as Class Representatives.

Rule 23(g)(1)(A)'s four factors for appointing class counsel for a certified class are: (1) "the work counsel has done in identifying or investigating potential claims in the action;" (2) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;" (3) "counsel's knowledge of the applicable law;" and (4) "the resources that counsel will commit to representing the class."  FED. R. CIV. P. 23(g)(1)(A).  The Court may also "consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class."

The Court finds proposed Class Counsel have expended a reasonable amount of time, effort, and expense investigating the Data Incident and in litigating this Action and the actions in MDL-3090.  Further, it is clear from their track record of success, as outlined in their resumes, that Class Counsel are highly skilled and knowledgeable concerning class action practice.  Therefore, for purposes of the Settlement only, and pursuant to Rule 23(g)(1), the Court appoints Jeff Ostrow, John Yanchunis, James Cecchi, and Mason Barney as Class Counsel to act on behalf of the Settlement Class with respect to the Settlement.  They are experienced and competent counsel and will adequately protect the interests of the Settlement Class.

### F.  The Notice Program Is Sufficient.

Notice of a proposed settlement must be the "best notice practicable."  FED. R. CIV. P. 23(c)(2)(B).  The best notice practicable is that which "is reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

The Court finds the form, content, and method of giving notice to the Settlement Class as described in the Notice Program, including the forms of Email Notice, Long Form Notice, Postcard Notice, Settlement Website, Settlement telephone line for frequently asked questions, and Claim Form (a) constitutes the best practicable notice to the Settlement Class; (b) is reasonably calculated, under the circumstances, to apprise Settlement Class members of the pendency of the Action, the terms of the Settlement, the effect of the proposed Settlement (including the Releases contained therein), and their rights under the proposed Settlement, including the right to opt out of or to object to the proposed Settlement and appear at the Final Approval Hearing; (c) is reasonable and constitutes due, adequate, and sufficient notice to those persons entitled to receive notice; and (d) is written in plain language, uses simple terminology, and is designed to be readily understandable by Settlement Class members.

Rule 23(h)(1) further requires that "[n]otice of the motion [for attorneys' fees] must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner."  The Notice Program satisfies the requirements of Rule 23(h)(1), as it notifies the Settlement Class that Class Counsel will apply to the Court for an award of attorneys' fees of up to 33.33% of the Settlement Fund, plus reimbursement of costs.

Accordingly, the Notice Program satisfies the requirements of Federal Rule of Civil Procedure 23(c)(2)(B) and due process, and is thus approved.

**PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT**

Upon preliminary review, the Court finds the proposed Settlement is fair, reasonable, and adequate; the Settlement Class should be certified for Settlement purposes; and the Notice Program satisfies the requirements of Rule 23 and due process.  Accordingly, the Settlement is preliminarily approved.

### I.      Final Approval Hearing

The Court will hold a Final Approval Hearing on **February 10, 2025, at 10:00 A.M.**  The Final Approval Hearing will be conducted for the following purposes: (a) to determine whether the proposed Settlement, on the terms and conditions provided for in the Settlement, is fair, reasonable, and adequate, and should be approved by the Court; (b) to determine whether an order of Final Judgment should be entered dismissing the Action on the merits and with prejudice; (c) to determine whether the proposed plan of allocation and distribution of the Settlement Fund is fair and reasonable, and should be approved; (d) to determine whether the requested award of attorneys' fees and costs should be approved; and (e) to consider any other matters that may properly be brought before the Court in connection with the Settlement.  The Court may elect to hold the Final Approval Hearing virtually by Zoom or some other virtual application, and if it does, the instructions on how to attend shall be posted by the Settlement Administrator on the Settlement Website.

The Court will defer ruling on attorneys' fees and costs until the Final Approval Hearing when considering Class Counsel's Application for Attorneys' Fees and Costs.  Plaintiffs shall file their Motion for Final Approval no later than 45 days before the original Final Approval Hearing date.  At the Final Approval Hearing, the Court will hear argument from the Parties, and in the Court's discretion, will also hear from any Settlement Class Members (or their counsel) who timely object to the Settlement or to the Application for Attorneys' Fees and Costs.

## II.     Appointment of Settlement Administrator

As agreed by the Parties, the Court appoints Epiq Class Action & Claims Solutions, Inc. as the Settlement Administrator to supervise and administer the Notice Program and Claims process, as well as to administer the Settlement should the Court grant Final Approval.   All Settlement Administration Costs will be paid out of the Settlement Fund.

## III.     Approval of Settlement Class Notice Program and Notice Forms

The Court approves, as to form and content, the Notice Program, including the Email Notice, Postcard Notice, and Long Form Notice, substantially in the forms attached as Exhibits 1-3 to the Agreement.   Non-material modifications to these exhibits may be made without further order of the Court.   The Settlement Administrator is directed to carry out the Notice Program and to perform all other tasks that the Settlement requires.   The date and time of the Final Approval Hearing shall be posted on the Settlement Website and included in the Email Notice, Postcard Notice, and Long Form Notice, respectively, before they are emailed, mailed, or published.

## IV.     Approval of Claim Form and Claims Process

The Court approves the Claim Form and the Claims process to be implemented by the Settlement Administrator.   The Claim Form, attached to the Agreement as Exhibit 4, is straightforward and easy to complete, allowing each Settlement Class Member to elect their desired Settlement Class Member Benefits.   Settlement Class Members who qualify for and wish to submit a Claim Form shall do so in accordance with the requirements and procedures specified in the Settlement, including the Claim Form.   Should the Court grant Final Approval to the Settlement, Settlement Class Members shall be bound by its terms even if they do not submit Claims.

The Court directs the Settlement Administrator to disseminate the Notices and Claim Form as approved herein.   Class Counsel and Brightline's Counsel are hereby authorized to use all

reasonable procedures in connection with approval and administration of the Settlement that are not materially inconsistent with this order or the Settlement, including making, without the Court's further approval, minor form or content changes to the Notices and Claim Form they jointly agree are reasonable or necessary.

### V.      Opt-Outs from the Settlement Class

The Notice shall provide that any member of the Settlement Class who wishes to opt out of the Settlement must request exclusion in writing within the time and manner set forth in the Notice.   The Notices shall provide that opt-out requests must be sent to the Settlement Administrator and be postmarked no later than 30 days before the original date set for the Final Approval Hearing (the last day of the Opt-Out Period).   The opt-out request must be personally signed by the Settlement Class member and contain the Settlement Class member's name, postal address, email address (if any), and telephone number; the name of this Action (*In Re: Fortra File Transfer Software Data Security Breach Litigation (Brightline)*); a brief statement identifying membership in the Settlement Class; and a statement that indicates a desire to be excluded from the Settlement Class.   The letter can simply say, "I hereby elect to opt out of the Settlement in *In Re: Fortra File Transfer Software Data Security Breach Litigation (Brightline)* class action."   If submitted by mail, an opt-out request shall be deemed to have been submitted when posted if received with a postmark date indicated on the envelope, if mailed first-class postage prepaid and addressed in accordance with these instructions.   If submitted by private courier (e.g., Federal Express), an opt-out request shall be deemed to have been submitted on the shipping date reflected on the shipping label.

Any Settlement Class member who timely and validly opts-out from the Settlement Class shall, provided the Court grants Final Approval: (a) be excluded from the Settlement Class by Order of the Court; (b) not be a Settlement Class Member; (c) not be bound by the terms of the

Settlement; and (d) have no right to the Settlement Class Member Benefits.  Any Settlement Class member who does not timely and validly request to opt-out shall be bound by the terms of this Settlement, including all releases and covenants therein, as well as all subsequent proceedings, orders, and judgments applicable to the Settlement Class.

### VI.    Objections to the Settlement

The Notice shall also provide that any Settlement Class Member who do not opt out from the Settlement Class may object to the Settlement and/or the Application for Attorneys' Fees and Costs. Objections must be filed with the Clerk of the Court and mailed to the Settlement Administrator.  For an objection to be considered by the Court, the objection must be submitted on behalf of a Settlement Class Member no later than 30 days before the original date set for the Final Approval Hearing (the last day of the Objection Period).  When submitted by mail, an objection shall be deemed to have been submitted when posted if received with a postmark date indicated on the envelope if mailed first-class postage prepaid and addressed in accordance with the instructions.  If submitted by private courier (e.g., Federal Express), an objection shall be deemed to have been submitted on the shipping date reflected on the shipping label.

For an objection to be considered by the Court, the objection must also set forth:

a.   the objector's full name, address, email address (if any), and telephone number;

b.   all grounds for the objection, accompanied by any legal support for the objection known to the objector or objector's counsel;

c.   the number of times the objector has objected to a class action settlement within the five years preceding the date that the objector files the objection, the caption of each case in which the objector has made such objection, and a copy of any orders related to or ruling on the objector's prior objections that were issued by the trial and appellate courts in each listed case;

d.   the identity of all counsel who represent the objector, including any former or current counsel who may be entitled to compensation for any reason related to the objection to the Settlement or Class Counsel's Application for Attorneys' Fees and Costs;

e.   the number of times in which the objector's counsel and/or counsel's law firm have objected to a class action settlement within the five years preceding the date of the filed objection, the caption of each case in which counsel or the firm has made such objection, and a copy of any orders related to or ruling on counsel's or the counsel's law firm's prior objections that were issued by the trial and appellate courts in each listed case in which the objector's counsel and/or counsel's law firm have objected to a class action settlement within the preceding 5 years;

f.   any and all agreements that relate to the objection or the process of objecting—whether written or oral—between objector or objector's counsel and any other person or entity;

g.   the identity of all counsel (if any) representing the objector who will appear at the Final Approval Hearing;

h.   a list of all persons who will be called to testify at the Final Approval Hearing in support of the objection;

i.   a statement confirming whether the objector intends to personally appear and/or testify at the Final Approval Hearing; and

j.   the objector's signature (an attorney's signature is not sufficient).

Class Counsel and/or Brightline's Counsel may conduct limited discovery on any objector consistent with the Federal Rules of Civil Procedure and respond in writing to the objections prior to the Final Approval Hearing.

Any Settlement Class Member who does not make an objection in the manner provided herein shall be deemed to have waived the right to object to any aspect of the Settlement and/or to

the Application for Attorneys' Fees and Costs and, if Final Judgment is entered, shall forever be barred and foreclosed from raising such objections in this or any other proceeding and from challenging or opposing, or seeking to reverse, vacate, or modify, the Final Judgment or any aspect thereof.

**VII.    Termination of the Settlement and Use of this Order**

If the Settlement is not finally approved by the Court, or is terminated, canceled, or fails to become effective for any reason, or the Effective Date does not occur, this order shall become null and void and shall be without prejudice to the rights of Plaintiffs, the Settlement Class members, and Brightline, all of whom shall be restored to their respective positions in the Action as provided in the Agreement.

**VIII.   Bar from Continued Claims**

Upon the entry of this Order, with the exception of Class Counsel, Brightline's Counsel, Brightline, and the Class Representatives' implementation of the Settlement and the approval process in this Action, all members of the Settlement Class shall be provisionally enjoined and barred from asserting any claims or continuing any litigation against Brightline and the Released Parties arising out of, relating to, or in connection with the Released Claims prior to the Court's decision as to whether to grant Final Approval of the Settlement.

**IX.    Jurisdiction**

For the benefit of the Settlement Class and to protect this Court's jurisdiction, the Court retains continuing jurisdiction over the Settlement proceedings to ensure effectuation thereof in accordance with the Settlement preliminarily approved herein and the related orders of this Court.

**X.    Schedule**

The Court hereby sets the following schedule of events in connection with the Settlement's administration and Final Approval Hearing:

| Event | Date |
|---|---|
| **Notice Program Begins** | October 24, 2024 |
| **Notice Program Complete** | December 24, 2024 |
| **Deadline to File Motion for Final Approval, and Application for Attorneys' Fees and Costs** | December 24, 2024 |
| **Opt-Out Deadline** | January 9, 2025 |
| **Objection Deadline** | January 9, 2025 |
| **Final Approval Hearing** | **February 10, 2025 at 10:00 A.M.** |
| **Deadline to Submit Claim Forms** | February 26, 2025 |

**DONE AND ORDERED** in Miami, Florida this 24th day of September, 2024.

_____

**RODOLFO A. RUIZ II**
**UNITED STATES DISTRICT JUDGE**