**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| IN RE: FORTRA FILE TRANSFER SOFTWARE DATA SECURITY BREACH LITIGATION | Case No. 24-md-03090-RAR |
| This Document Relates to:<br><br>**TERRANCE ROSA, et al.,** on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br>v.<br><br>**BRIGHTLINE, INC.,**<br><br>    Defendant. | |

**PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPLICATION FOR ATTORNEYS' FEES AND COSTS**

Pursuant to Fed. R. Civ. P. 23, Plaintiffs[1] respectfully submit this Unopposed Motion for Final Approval of Class Action Settlement and Application for Attorneys' Fees and Costs, supported by the Joint Declaration of Class Counsel ("Joint Decl."), attached as ***Exhibit B***, and the Declaration of Cameron R. Azari, Esq. Regarding Implementation and Adequacy of Notice Program ("Admin. Decl."), attached as ***Exhibit C***.

On September 24, 2024, this Court preliminarily approved the Settlement, which provides for substantial Settlement Class Member Benefits, including: (1) a non-reversionary, all cash $7,000,000.00 Settlement Fund, from which Settlement Class members may elect to receive Cash Payments and Credit Monitoring; and (2) non-monetary relief consisting of comprehensive cybersecurity improvements. The Settlement Fund will be used to pay Settlement Class Member

---

[1] All capitalized terms used herein shall have the same meanings as those defined in Section II of the Settlement Agreement, attached as ***Exhibit A***.

Benefits, all Settlement Administration Costs, and any Court-awarded attorneys' fees and costs.

Plaintiffs and Class Counsel now move the Court for Final Approval and apply for an award of attorneys' fees and costs. The Settlement satisfies all the criteria for Final Approval. Currently, there are no objections and only 19 Settlement Class members have opted-out. This overwhelmingly positive response affirms the Court's initial conclusion that the Settlement is fair, reasonable, and adequate. Class Counsel has fully evaluated the strengths, weaknesses, and equities of the Parties' respective positions and believe the proposed Settlement fairly resolves their respective differences. For all the reasons set forth herein, the Court should grant Final Approval of the Settlement and Class Counsel's Application for Attorneys' Fees and Costs.

## I.     INTRODUCTION AND PROCEDURAL HISTORY

Brightline is a virtual behavioral health care company that offers therapy and coaching for minors. Joint Decl. ¶ 2. Fortra is in the business of offering cybersecurity and automation solutions. *Id*. Brightline was one of Fortra's customers who used Fortra's GoAnywhere MFT file transfer application. *Id*. In January of 2023, an incident occurred wherein Fortra's computer systems were hacked due to a vulnerability in Fortra's transfer application, which impacted highly sensitive personally identifiable information and health information belonging to millions of individuals, including over a million individuals whose information was stored in Brightline's instance of the GoAnywhere MFT. *Id*. The Settlement Class members' impacted Private Information included some combination of names, addresses, dates of birth, member identification numbers, start and end dates of health plan coverage, telephone numbers, Social Security numbers, and employer names stored within Brightline's instance of the GoAnywhere MFT at the time of the incident. *Id*.

In or about April 2023, Plaintiffs and Settlement Class members began receiving notices regarding the unauthorized access to their Private Information. *Id*. ¶ 3. On May 2, 2023, Plaintiffs,

Terrance Rosa and Ryan Watson, filed a complaint against Brightline, in the United States District Court for the Northern District of California, seeking damages related to the Data Incident. *Id*. ¶ 5. Thereafter, on May 11, 2023, May 22, 2023, and June 13, 2023, three additional complaints related to the Data Incident were filed against Brightline in the same district. *Id*. ¶ 6. On July 25, 2023, the district court consolidated the actions into the first-filed action. *Id*. ¶ 7.

On October 20, 2023, pursuant to 28 U.S.C. § 1407, NationsBenefits, LLC and NationsBenefits Holdings, LLC, two of the other parties defending lawsuits related to the Data Incident, filed a Motion for Transfer and Centralization of Related Actions to the District of Minnesota, where an action was already pending against Fortra. *Id*. ¶ 8. The motion was filed with the Judicial Panel on Multidistrict Litigation requesting that all matters concerning the Fortra GoAnywhere MFT Data Incident, including the consolidated action against Brightline, be centralized for pretrial purposes. *Id*.

On October 23, 2023, Brightline filed a motion to dismiss in the Northern District of California, which was fully briefed by December 13, 2023. On December 18, 2023, the parties in the California consolidated action jointly moved to stay the motion to dismiss hearing date until after the JPML hearing, and that motion was granted on December 21, 2023. *Id*. ¶ 9.

On or about February 5, 2024, the JPML ordered all matters concerning the Data Incident to be transferred to and centralized in this Court, including the consolidated action against Brightline. Following transfer and centralization of the cases, this Action was included in Track 4: Fortra Spokes: Brightline, Community, Intellihartx, and Imagine360. [DE# 128].

On April 18, 2024, Plaintiffs filed their Track 4 Consolidated Complaint against all MDL-3090 Track 4 defendants, including Brightline, alleging negligence, negligence per se, breach of fiduciary duty, breach of implied contract, breach of contract third party beneficiary, unjust

enrichment, and violations of various states' consumer protection statutes. [DE# 153]. On April 18, 2024, the Parties exchanged their Initial Disclosures. On April 22, 2024, the Court entered a Stipulated Confidentiality and Qualified Protective Order and Order Governing Production of Electronically Stored Information and Paper Documents. [DE# 154-155].

Thereafter, the Parties began discussing resolution of the claims against Brightline and scheduled a mediation before experienced class action mediator Michael Ungar, Esq. Joint Decl. ¶ 16. Before mediation, Plaintiffs requested and Brightline produced extensive informal discovery, including, but not limited to, documents related to the number of individuals affected, the categories of Private Information impacted, and the removal of all exfiltrated data from Clop's extortion portal. *Id*. The Parties also exchanged detailed Mediation Statements outlining their positions with respect to liability, damages, and settlement. *Id*. ¶ 17.

On July 11, 2024, the Parties participated in a full-day private mediation in Miami, Florida, concluding with the Parties agreeing to all material Settlement terms. *Id*. ¶ 19. The Parties filed a Notice of Settlement on July 12, 2024. [DE# 165]. Over the next 60 days, the Parties worked diligently to draft and finalize the terms of the Agreement and ancillary documents. Joint Decl. ¶ 21. The Agreement was executed on September 12, 2024. *Id*. ¶ 22. The Parties did not discuss attorneys' fees and costs until after they agreed on all material Settlement terms. *Id*. ¶ 23.

Plaintiffs filed their Motion for Preliminary Approval on September 13, 2024, and the Court granted the motion on September 24, 2024. [DE# 171, 176]. The Notice Program has been completed in compliance with the Agreement and the Preliminary Approval Order, and the Claims process is ongoing. *See generally* Admin. Decl.; Joint Decl. ¶ 27.

## II.     SUMMARY OF THE SETTLEMENT

A.     **Settlement Class -** Plaintiffs seek Final Approval on behalf of the following

Settlement Class:

> [A]ll indviduals residing in the United States who received notice of the Brightline Data Incident indicating that their Private Information may have been impacted in the Data Incident.

A subset of the Settlement Class is the California Settlement Class which includes "Settlement Class members residing in California as of January 30, 2023." Excluded from the Settlement Class are (a) all persons who are employees, directors, and agents of Brightline, and their respective subsidiaries and affiliated companies; (b) governmental entities; and (c) the Judge assigned to the Action, that Judge's immediate family, and Court staff. Agreement ¶¶ 20, 66.

**B.     Settlement Fund –** If approved, the Settlement requires Brightline to create a non-reversionary, all cash $7,000,000 Settlement Fund. *Id.* ¶ 69. The Settlement Fund was partially funded within 10 days of Preliminary Approval and the remainder will be funded within 10 days of the Effective Date. *Id.* ¶ 72. The Settlement Fund will be used to pay: (1) Settlement Class Member Benefits; (2) any attorneys' fees and costs awarded by the Court to Class Counsel; and (3) all Settlement Administration Costs. *Id*. ¶ 73. Once Brightline fully funds the Settlement Fund, Brightline will not be required to make any other payments under this Settlement. *Id*. ¶ 72.

**C.     Settlement Class Member Benefits -** When submitting a Claim, Settlement Class members may elect to receive a Cash Payment and Credit Monitoring. *Id.* ¶ 76. California Settlement Subclass members may also elect to receive an additional estimated $100.00. *Id*. ¶ 76c. Settlement Class Member Cash Payments may be subject to a *pro rata* increase or decrease, depending on the total value of all Valid Claims reaceieved. *Id.* ¶ 76. If a Settlement Class Member does not submit a Valid Claim, the Settlement Class Member will release his or her claims against Brightline without receiving Settlement Class Member Benefits. *Id.* ¶ 112.

***Cash Payments (A or B and California Statutory Award) -*** Settlement Class members may

elect to receive either Cash Payment A or Cash Payment B, and a California Statutory Award (if applicable). *Id.* Settlement Class members who elect Cash Payment A may receive compensation for reasonable documented losses up to $5,000. *Id.* ¶ 76a. As an alternative to Cash Payment A, Settlement Class members may elect Cash Payment B and receive a flat cash payment in an estimated amount of $100.00. *Id.* ¶ 76b. In addition to Cash Payment A or Cash Payment B, all California Settlement Subclass members may also elect to receive an estimated $100.00 California Statutory Award. *Id.* ¶ 76c.

*Credit Monitoring* **-** In addition to a Cash Payment and a California Statutory Award (if applicable), Settlement Class members who did not elect to receive a credit monitoring and identity theft protection product previously offered by Brightline at the time of the Data Incident notification letter, may elect to receive three years of Credit Monitoring. *Id.* ¶ 76d. Those Settlement Class members that accepted Credit Monitoring and identity theft protection when it was initially offered, may elect to receive one more year. The Credit Monitoring product is with three bureaus (Experian, Equifax, and TransUnion) and has an estimated value of $90.00 per year per Settlement Class member. *Id*.

*Injunctive Relief* **-** Brightline has provided Class Counsel with a security attestation confirming comprehensive modifications and enhancements implemented following the Data Incident to help protect against future cybersecurity breaches. Joint Decl. ¶ 32.  All costs were paid by Brightline separate from the Settlement Fund. Agreement ¶ 76e.

D.      **Release** - In exchange for the Settlement Class Member Benefits, Plaintiffs and Settlement Class Members agree to release the Released Parties from any claims arising out of or relating to actual or alleged facts, transactions, events, matters, occurrences, acts, disclosures, statements, representations, omissions or failures to act relating to the Data Incident. For the

avoidance of doubt, Released Claims includes any claims Settlement Class members could or may have for damages attributed to Brightline in any subsequent proceeding against any other defendant in the Fotra File Transfer Software Data Security Breach Litigation MDL-3090. *Id.* ¶ 61. The detailed Release language is found in Section XIII of the Agreement.

 **E.**   **Disposition of Residual Funds -** Any funds remaining in the Settlement Fund 240 days after Settlement Class Members receive an email from the Settlement Administrator to select a form of payment, shall be distributed to a mutually agreeable *cy pres* recipient to be approved by the Court. *Id.* ¶ 109. The Parties propose the Electronic Privacy Information Center (www.epic.org) as the *cy pres* recipient. That non-profit organization matches the goals of this Action to redress and protect the privacy rights of consumers.

 **F.**   **Attorneys' Fees and Costs -** Pursuant to the Agreement, Plaintiffs request an attorneys' fee award of 33.33% of the Settlement Fund ($2,333,333.33) and $39,237.40 for reimbursement of costs. Joint Decl. ¶¶ 41. The Notices advised the Settlement Class of the amount of attorneys' fees Class Counsel intended to request at Final Approval, and currently no Settlement Class Member has objected to the amount requested. Joint Decl. ¶ 49.

## III. NOTICE PROGRAM, CLAIMS, OPT-OUTS AND OJECTIONS

 **Notice Program -** The Settlement Administrator sent the CAFA Notices required by 28 U.S.C. § 1715. Admin. Decl. ¶ 20. The Settlement Administrator implemented the Notice Program, which consisted of Postcard Notice to all Settlement Class members for whom a physical mailing address was available and a Long Form Notice, which is available on the Settlement Website and which the Settlement Administrator mailed to any Settlement Class member who requested it. *Id.* ¶ 22. The Settlement Administrator's Declaration details the process followed to mail double sided Postcard Notices with Claim Form via first class mail to 1,176,392 Settlement Class members. *Id*.

The Postcard Notices clearly and concisely summarized the Settlement and the legal rights of the Settlement Class members and directed Settlement Class members to visit the Settlement Website for additional information. *Id*. Postcard Notices returned as undeliverable were re-mailed to any new address available through USPS information or to better addresses that were found using a third-party address lookup service. *Id.* ¶ 26. Upon successfully locating better addresses, Postcard Notices were promptly remailed to 10,011 Settlement Class members. *Id.* As of December 20, 2024, individual notice efforts have reached approximately 98.6% of the identified Settlement Class members. *Id.* ¶ 28.

Additionally, a Long Form Notice and Claim Form were mailed on request via the toll-free telephone number or other means. *Id.* ¶ 27. As of December 20, 2024, Epiq mailed 444 Claim packages with the Long Form Notice and Claim Form to Settlement Class members. *Id.*

On October 24, 2024, the Settlement Administrator established a dedicated Settlement Website (www.BrightlineDataSecuritySettlement.com) for Settlement Class members to obtain detailed information about the Action and review important documents, including the Complaint, Long Form Notice, Settlement Agreement, Motion for Preliminary Approval, Preliminary Approval Order, and Claim Form. *Id.* ¶ 29. This Motion for Final Approval will be posted upon filing. It also includes relevant dates, answers to frequently asked questions, opt-out and objection instructions, contact information for the Settlement Administrator, and how to obtain other case-related information. *Id.* As of December 20, 2024, there have been 57,097 unique visitor sessions to the Settlement Website, and 372,286 web pages have been presented. *Id.*

Also on October 24, 2024, the Settlement Administrator established a toll-free telephone number for Settlement Class members to call for Settlement information and/or to request a Long Form Notice and Claim Form. *Id.* ¶ 30. As of December 20, 2024, there have been 3,726 calls to

the toll-free telephone number representing 11,915 minutes of use. *Id.*

A postal mailing address and email address were established and are available to contact the Settlement Administrator to request additional information or ask questions. *Id.* ¶ 31.

**Claim Submission Process -** The timing of the Claim submission process was structured to ensure that all Settlement Class members had adequate time to review the Settlement terms, compile documents supporting their Claim, and decide whether to submit a Claim, opt-out of, or object to, the Settlement. Settlement Class members may continue to submit Claim Forms online or by mail prior to the Claim Form Deadline. *Id.* ¶ 33. Settlement Class Members have the option of requesting a digital cash payment or a traditional paper check on the Claim Form. *Id.*

The Claim Form Deadline is February 26, 2025. *Id.* ¶ 34. As of December 20, 2024, Epiq has received 110,497 Claim Forms (57,301 online and 53,196 paper). *Id.* These numbers are preliminary. *Id.* Claim Forms are still subject to final audits, including full assessment of each Claim's validity and a review for duplicate submissions. *Id.* Class Counsel will update the Court at the Final Approval Hearing as to the number of Claims.

**Opt-Outs and Objections -** The Objection and Opt-Out Periods end on January 9, 2025. *Id.* ¶ 32. As of December 23, 2024, the Settlement Administrator has received only 19 opt-out requests. Joint Dec. ¶ 49. The Parties are not aware of any objections. *Id*.

## IV.   ARGUMENT

### A.   The Settlement Class Should Be Certified, and the Appointments of Class Representatives, Class Counsel, and the Settlement Administrator Should Be Affirmed.

The Motion for Preliminary Approval detailed the bases for certifying the Settlement Class pursuant to Fed. R. Civ. P. 23(a) and (b)(3). In compliance with Fed. R. Civ. P. 23(e), the Court's Preliminary Approval Order details its findings for why it would be likely to certify the Settlement

Class at the Final Approval stage, finding the following requirements were all met: standing, ascertainability, numerosity, commonality, typicality, adequacy of representation, predominance, and superiority. DE# 176 at 7-15. Nothing has changed since Preliminary Approval was granted and the Settlement Class was provisionally certified. Therefore, for brevity's sake, Plaintiffs do not repeat their arguments in support of Settlement Class certification and instead incorporate their arguments from the Motion for Preliminary Approval by reference. [DE #171 at 13-19].

Plaintiffs' appointment as the Class Representatives should be affirmed as they remain adequate representatives. For the same reasons the Court found them adequate under Fed. R. Civ. P. 23(a)(4), the Court should also affirm the designation of Jeff Ostrow, John Yanchunis, James Cecchi, and Mason Barney as Class Counsel. Federal Rule of Civil Procedure 23(g)(1)(A)'s four factors for appointing class counsel for a certified class are (1) "the work counsel has done in identifying or investigating potential claims in the action;" (2) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;" (3) "counsel's knowledge of the applicable law;" and (4) "the resources that counsel will commit to representing the class." The Court may also "consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class[.]" Fed. R. Civ. P. 23(g)(1)(B). Here, Class Counsel are qualified and competent leaders in the field with extensive experience prosecuting and resolving complex class actions, including data breach class actions. Before commencing litigation, they investigated the claims against Defendant, interviewed potential plaintiffs, and gathered information regarding the Data Incident. Joint Decl. ¶ 4. Class Counsel has devoted substantial time and resources to this Action and will continue to do so. *Id.* ¶ 30.

Finally, the Court should confirm its appointment of Epiq as the Settlement Administrator.

**B.     The Settlement Should be Finally Approved.**

The Preliminary Approval Order found the Court would be likely to finally approve the Settlement after considering and finding the Settlement is fair, adequate, and reasonable under Fed. R. Civ. P. 23(e)(2) and the "*Bennett*" factors. [DE# 176 at 15-19].  Now, the Court should grant Final Approval considering those same factors, being able to now judge the Settlement Class' positive reaction to the Settlement with no objections and over 110,000 Claims to date (the Claim Form Deadline is not until February 26, 2025).

The Rule 23(e)(2) factors are:

(A) the class representatives and class counsel adequately represented the class;
(B) the proposal was negotiated at arms' length;
(C) the relief provided for the class is adequate, taking into account:
    (i) the costs, risks, and delay of trial and appeal;
    (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
    (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
    (iv) any agreement required to be identified under Rule 23(e)(3); and
(D) the proposal treats class members equitably relative to each other.

The *Bennett* factors include the following: (1) the likelihood of success at trial; (2) the range of possible recoveries; (3) the point on or below the range of possible recoveries at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and degree of opposition to the settlement; and (6) the stage of the proceedings at which the settlement was achieved. *See Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984).

**Adequacy of Representation (Rule 23(e)(2)(A))** - As this Court held in *In re Mednax Services, Inc., Customer Data Sec. Breach Litig.*, "the first factor heavily weighs in favor of granting preliminary approval because both Class Counsel and the Class Representative have adequately represented the Class." No. 21-MD-02994-RAR, 2024 WL 1554329, at *6 (S.D. Fla. Apr. 10, 2024). While litigation in *Mednax* proceeded to a later stage than here before the parties

agreed to settlement, Class Counsel thoroughly investigated and analyzed Plaintiffs' claims, and the fully briefed motions to dismiss filed by Brightline before MDL transfer and for Track 1 (which is similar to what they would have faced in Track 4). Even before the MDL was created, Class Counsel fully briefed a motion to dismiss filed by Defendant in the Northern District of California. They also consulted data security experts, enabling them to gain an understanding of the evidence related to central questions in the Action and prepared them for well-informed settlement negotiations. *See id.* ¶¶ 9, 30; *see also Mednax*, 2024 WL 1554329 at *6. Class Counsel's used informal discovery to learn what caused the Data Incident, stemming from Brightline's use of the Fortra software, and the Private Information impacted in the Data Incident, before attending a full-day mediation session. Joint Decl. ¶¶ 16–18. Class Counsel used their experience in complex class action litigation, including similar data breach actions, and devoted substantial time and resources to vigorous litigation. *See id.*, ¶¶ 30, 38.

Also, the Class Representatives have demonstrated their adequacy by (i) having a genuine personal interest in the outcome of the case; (ii) selecting well-qualified Class Counsel; (iii) producing information and documents to Class Counsel to permit investigation and development of the complaints; (iv) being available as needed throughout the litigation; and (v) monitoring the Action. Joint Decl. ¶ 52. Plaintiffs' respective interests are coextensive and do not conflict with the interests of the Settlement Class. *Id.* ¶ 39. Plaintiffs have the same interest in the Settlement relief, and the absent Settlement Class members have no diverging interests. *Id.*

**The Settlement Was Negotiated at Arm's Length (Rule 23(e)(2)(B) and *Bennett* Factors 5-6)** - The Settlement is without collusion and the result of good faith, informed, and arm's-length negotiations between experienced attorneys who are familiar with class action litigation and with the legal and factual issues at stake, and with the assistance of mediator, Michael

Ungar, Esq. *Id.* ¶¶ 16, 19, 23-24. "The fact that the Settlement was achieved through well-informed, arm's-length, and neutrally supervised negotiations weighs in favor of granting preliminary approval under Rule 23(e)(2)(B)." *Mednax*, 2024 WL 1554329 at *6. Though the Settlement was reached at any early stage, the record reflects that this Action has been thoroughly investigated by counsel experienced in data breach litigation. Moreover, Class Counsel's informal exchange of discovery and mediation with an experienced mediator has ensured a fair, reasonable, and adequate Settlement. *Id. See, e.g., Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 694 (S.D. Fla. 2014) (approving settlement where parties settled relatively early with experienced counsel who had sufficient information to evaluate merits of the case, engaged in full-day mediation, and engaged in post-mediation discovery).

Currently there is no opposition to the Settlement and only 19 opt-outs. Class Counsel will respond to objections before the Final Approval Hearing if any are submitted.

**The Adequacy of the Settlement Relief (Rule 23(e)(2)(C) and *Bennett* Factors 1-4)** - Although Plaintiffs believe the claims asserted are meritorious and the Settlement Class would ultimately prevail at trial, continued, complex, and expensive litigation against Brightline poses significant risks that make any recovery for the Settlement Class uncertain. Data breach class actions are risky. *Mednax*, 2024 WL 1554329 at *7. The Settlement's fairness is underscored by the obstacles the Settlement Class would face in ultimately succeeding on the merits, as well as the litigation's expense and likely duration. *Id.* Given those risks, the Settlement provides outstanding benefits. *See In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1273 (11th Cir. 2021) ("Settlements also save the bench and bar time, money, and headaches"). *FultonGreen v. Accolade, Inc.*, No. 18-274, 2019 WL 4677954, at *8 (E.D. Pa. Sept. 24, 2019) (noting that data breach class actions are "a risky field of litigation because [they] are uncertain

and class certification is rare")

The Settlement is within the range of possible recoveries and is fair, adequate, and reasonable. *See Burrows v. Purchasing Power, LLC*, No. 1:12-CV22800, 2013 WL 10167232, at *6 (S.D. Fla. Oct. 7, 2013). In determining whether a settlement is fair and reasonable, the court must also examine the range of possible damages Plaintiffs could recover at trial and combine this with an analysis of Plaintiffs' likely success at trial to determine if the settlements fall within the range of fair recoveries. *See, e.g., Equifax*, 999 F.3d at 1274 (affirming district court's decision that settlement was "fair, reasonable, and adequate because the settlement reflects relief the Court finds is in the high range of what could have been obtained had the parties continued to litigate."). Here, Settlement Class members may elect Cash Payment A for reimbursement of documented losses up to $5,000.00, or they may elect Cash Payment B for an estimated $100.00 flat cash payment. Joint Decl. ¶ 32. Also, Settlement Class members may elect Credit Monitoring, and California Settlement Class Members may receive an additional estimated $100.00. *Id.*

A few recent examples of approved data breach settlements from around the country, which demonstrate how the instant Settlement compares very favorably to other similar common fund data breach settlements, include: *Mednax* ($6,000,000 settlement for 2.7 million class members); *Summers v. Sea Mar 16 Comm. College*, No. 22-2-0073-7 SEA (Super. Ct. Wash.) ($4,400,000 settlement for 1.2 million class members); *Owens v. U.S. Radiology Specialists, Inc., et al.*, No. 22 CVS 17797 (Mecklenburg Cty., NC) ($5,050,000 settlement for 1.3 million class members); *In re Wright & Filippis, LLC Data Sec. Breach*, No. 2:22-cv-12908-SFC (E.D. Mich.) ($2,900,000 for 877,584 class members); and *In re Sonic Corp. Customer Data Sec. Breach Litig.*, No. 1:17- md-2807 (N.D. Ohio) ($4,325,000 settlement for 1.5 million class members). *Id.* ¶ 34.

Also, the Claim Form submission process and distribution of Settlement Class Member

Benefits is fair, convenient, and effective. *Id.* ¶ 51.  Settlement Class Members will promptly receive Cash Payments by electronic means or paper check and Credit Monitoring, if elected. The Settlement Administrator is highly qualified to manage the entire process. *Id.* "Thus, through the Settlement, Plaintiffs and Settlement Class Members gain significant benefits without having to face further risk of not receiving any relief at all." *Mednax*, 2024 WL 1554329 at *7.

Finally, the Parties' agreements are all in the Agreement. Joint Decl. ¶ 24.

**The Equitable Treatment of Settlement Class Members (Rule 23(e)(2)(D))** - As this Court found in *Mednax*, 2024 WL 1554329 at *7, all Settlement Class members are given an equal opportunity to claim Settlement Class Member Benefits. Thus, "[t]he method of distributing the settlement benefits will be equitable and effective." *Id.* Further, the attorneys' fees do not impact the other Settlement terms, as Class Counsel and Defendants negotiated and reached agreement regarding attorneys' fees and costs only after agreeing on all other material Settlement terms. The Settlement, including disbursement of the Settlement Class Member Benefits, is not contingent on approval of the attorneys' fee and costs award. Agreement ¶ 108.

Accordingly, the Court should find the Settlement is fair, reasonable, and adequately protects the interests of the Settlement Class members.

**C.    Notice Was Adequate and Satisfies Rule 23 and Due Process Requirements.**

The Court-approved Notice Program carried out by the Settlement Administrator conforms with the procedural and substantive requirements of due process and Rule 23. Settlement Class members received Notice of the settlement and have the opportunity to be heard and participate in the Action. See Fed. R. Civ. P. 23(c)(2)(B). The Court exercised its discretion to approve a reasonable Notice Program. As the Court held when granting Preliminary Approval, the Postcard Notice and Long Form Notice posted on the Settlement Website is the best notice practicable under

the circumstances and constitutes due and sufficient notice of the Settlement to all Class Members. [DE# 176 at 21]. The best notice practicable is that which "is reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). The Notices included, among other information: a description of the material terms of the Settlement; how to submit a Claim Form; the Claim Form Deadline; the last day to opt-out of the Settlement Class; the last day to object to the Settlement and/or Application for Attorneys' fees and Costs; the Final Approval Hearing date; and the Settlement Website address at which Settlement Class members may access this Agreement and other related documents and information. Admin. Decl., Attachments. The Notice Program also included a toll-free number to ask Settlement-related questions and the Settlement Website containing relevant Settlement Information. Finally, the Notice Program satisfies the requirements of Rule 23(h)(1), as it notifies the Settlement Class that Class Counsel may apply to the Court for an award of attorneys' fees of up to 33.33% of the Settlement Fund, plus reimbursement of costs. *Id.* ¶ 107.

## V.      APPLICATION FOR ATTORNEYS' FEES AND COSTS

Pursuant to the Settlement and the Notices, and consistent with recognized class action practice and procedure, Class Counsel respectfully request an award of attorneys' fees of $2,333,333.33, which is equal to 33.33% of the $7,000,000.00 Settlement Fund, and $39,237.40 to reimburse them for litigation costs. Joint Decl. ¶ 41.  The requested attorneys' fee award is within the range of reason under the factors listed in *Camden I Condo. Ass'n. v. Dunkle*, 946 F.2d 768 (11th Cir. 1991).

### A.      The Law Awards Class Counsel Fees from the Common Fund Created Through Their Efforts.

It is well established that when a representative party has conferred a substantial benefit

upon a class, counsel is entitled to attorneys' fees based upon the benefit obtained. *Camden I*, 946 F.2d at 771; *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). The common benefit doctrine is an exception to the general rule that each party must bear its own litigation costs. "The doctrine serves the 'twin goals of removing a potential financial obstacle to a plaintiff's pursuit of a claim on behalf of a class and of equitably distributing the fees and costs of successful litigation among all who gained from the named plaintiff's efforts.'" *Gevaerts v. TD Bank, N.A.*, No. 11:14-cv-20744, 2015 WL 6751061, at *10 (S.D. Fla. Nov. 5, 2015) (citation omitted). "The common benefit doctrine stems from the premise that those who receive the benefit of a lawsuit without contributing to its costs are 'unjustly enriched' at the expense of the successful litigant." *Id.* (citing *Van Gemert*, 444 U.S. at 478). "As a result, the Supreme Court, the Eleventh Circuit, and courts in this District have all recognized that '[a] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as whole.'" *Id.* (citations omitted); *see also Camden I*, 946 F.2d at 771 ("Attorneys in a class action in which a common fund is created are entitled to compensation for their services from the common fund, but the amount is subject to court approval."). Courts have also recognized that appropriate fee awards in cases such as this encourage redress for wrongs caused to entire classes of persons and deter future misconduct of a similar nature. *See Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338-39 (1980). Adequate compensation promotes the availability of counsel for aggrieved persons.

In the Eleventh Circuit, class counsel are awarded a percentage of the funds obtained through a settlement. In *Camden I* – the controlling authority regarding attorneys' fees in common-fund class actions – the Eleventh Circuit held that "the percentage of the fund approach [as opposed to the lodestar approach] is the better reasoned in a common fund case. Henceforth in this circuit,

attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class." 946 F.2d at 774.

The Court has discretion in determining the appropriate fee percentage. "There is no hard and fast rule mandating a certain percentage of a common fund which may be awarded as a fee because the amount of any fee must be determined upon the facts of each case." *Sunbeam*, 176 F. Supp. 2d at 1333 (quoting *Camden I*, 946 F.2d at 774). Nonetheless, "[t]he majority of common fund fee awards fall between 20 percent to 30 percent of the fund" – though "an upper limit of 50 percent of the fund may be stated as a general rule." *Sunbeam*, 176 F. Supp. 2d at 1333 (quoting *Camden I*, 946 F.2d at 774-75); *see also Waters v. Int'l Precious Metals Corp*., 190 F.3d 1291 (11th Cir. 1999), *cert. denied*, 530 U.S. 1289 (2000) (approving fee award where the district court determined that the benchmark should be 30 percent and then adjusted the fee award higher in view of the circumstances of the case). Class Counsel's fee request falls within this accepted range.

**B.    Application of the *Camden I* Factors Supports the Requested Fee.**

The Eleventh Circuit has provided a set of factors the Court should use to determine a reasonable percentage to award as an attorney's fee to class counsel in class actions:

(1)    the time and labor required;
(2)    the novelty and difficulty of the relevant questions;
(3)    the skill required to properly carry out the legal services;
(4)    the preclusion of other employment by the attorney as a result of his acceptance of the case;
(5)    the customary fee;
(6)    whether the fee is fixed or contingent;
(7)    time limitations imposed by the clients or the circumstances;
(8)    the results obtained, including the amount recovered for the clients;
(9)    the experience, reputation, and ability of the attorneys;
(10)   the "undesirability" of the case;
(11)   the nature and the length of the professional relationship with the clients; and
(12)   fee awards in similar cases.

*Camden I*, 946 F.2d at 772 n.3.[2] These twelve factors are guidelines and are not exclusive. "Other pertinent factors are the time required to reach a settlement, whether there are any substantial objections by class members or other parties to the settlement terms or the fees requested by counsel, any non-monetary benefits conferred upon the class by the settlement, and the economics involved in prosecuting a class action." *Sunbeam*, 176 F. Supp. 2d at 1333 (quoting *Camden I*, 946 F.2d at 775). In addition, the Eleventh Circuit has "encouraged the lower courts to consider additional factors unique to the particular case." *Camden I*, 946 F.2d at 775.

### 1.   *The Claims Against Brightline Required Substantial Time and Labor.*

Prosecuting and settling these claims demanded considerable time and labor, making this fee request reasonable. Joint Decl. ¶ 45. The organization of Class Counsel ensured the work was coordinated to maximize efficiency and minimize duplication of effort. *Id.* Class Counsel devoted substantial time to investigating the claims. *Id.* Class Counsel also expended resources researching and developing the legal claims at issue. *Id.* Substantial time and resources were also dedicated to working with experts, exchanging informal discovery, consolidating and organizing the related actions, and preparing for and attending a successful mediation. *Id.* Significant time was then devoted to negotiating and drafting the Agreement, the Preliminary Approval process, and to all actions required thereafter by the Agreement and the Preliminary Approval Order. *Id.* Class Counsel has spent substantial time leading up to the filing of this Motion for Final Approval, addressing the Notice Program, Claims process, and preparing this Motion for Final Approval. *Id.* Time will also be spent preparing for and attending the Final Approval Hearing. *Id.* Finally, Class Counsel will devote substantial time to Settlement administration should Final Approval be

---

[2] The seventh and eleventh factors are relatively neutral, though it has certainly been important to Class Counsel to efficiently obtain the Settlement benefits for the Settlement Class impacted by the Data Incident.

granted to ensure Valid Claims are paid and the Settlement if fully implemented. *Id.*

Class Counsel's coordinated work paid dividends for the Settlement Class. *Id.* ¶ 46. Each of the above-described efforts was essential to achieving the Settlement. *Id.* Class Counsel's time and resources devoted to prosecuting and settling this Action justify the requested fee. *Id.*

## 2. The Novelty and Difficulty of the Relevant Questions Required Skilled and Experienced Counsel.

This Court has witnessed the quality of Class Counsel's legal work, which conferred a substantial benefit on the Settlement Class in the face of significant litigation obstacles. *Id.* ¶ 47. This factor weighs heavily in support of the requested attorneys' fee award. In fact, courts routinely recognize the novelty and difficulty of the questions present in a case as a "significant factor to be considered in making a fee award." *Francisco v. Numismatic Guaranty Corp. of America*, No. 06-61677-CIV, 2008 WL 649124, at *15 (S.D. Fla. Jan. 31, 2008). Data breach class actions are notoriously risky and complex cases that present novel issues of law and fact as data security continues to develop and evolve. *See In re Sonic Corp. Customer Data Sec. Breach Litig.*, No. l:17-md-2807, 2019 WL 3773737, at *7 (N.D. Ohio Aug. 12, 2019) (recognizing that "[data breach litigation is complex and risky. This unsettled area of law often presents novel questions for courts. And of course, juries are not always predictable."); *Fox v. Iowa Health Sys.*, No. 3:18-cv-00327, 2021 WL 826741, at *5 (W.D. Wis. Mar. 4, 2021) ("Data breach litigation is evolving; there is no guarantee of the ultimate result . . . [they] are particularly risky, expensive, and complex.").

In evaluating the quality of representation by Class Counsel, the Court should also consider opposing counsel. *See Camden I*, 946 F.2d at 772 n.3. Brightline is represented by extremely capable counsel who are worthy, highly competent adversaries. Joint Decl. ¶ 55; *Walco Invs. v. Thenen*, 975 F. Supp. 1468, 1472 (S.D. Fla. 1997).

### 3.     Class Counsel Achieved a Successful Result.

Given the significant litigation risks Class Counsel faced, the Settlement represents a successful result, with $7,000,000.00 recovered for the Settlement Class, affording them meaningful Settlement benefits designed to meet the typical repercussions faced by consumers following a data breach. The risk involved is emphasized by the fact that, historically, data breach class actions face substantial hurdles in surviving the class certification stage. *See, e.g.*, *In re Blackbaud, Inc., Customer Data Breach Litig.*, No.: 3:20-mn-02972-JFA, 2024 WL 2155221 (D.S.C. May 14, 2024) (denying motion for class certification); *FultonGreen,* 2019 WL 4677954 at *8 (noting that data breach class actions are "a risky field of litigation because [they] are uncertain and class certification is rare"); *In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21 (D. Me. 2013). Further, maintaining class certification through trial is another overarching risk. Joint Decl. ¶ 37. Considering Brightline has compelling defenses, continuing to pursue this case posed a significant risk for Plaintiffs and the Settlement Class. *Id.* Therefore, Class Counsel's risks weigh in favor of Class Counsel's requested attorneys' fee.

### 4.     Class Counsel Assumed Considerable Risk to Pursue This Action on a Pure Contingency Basis and Lost Opportunity for Other Employment.

In undertaking to prosecute this case entirely on a contingent fee basis, Class Counsel assumed a significant risk of nonpayment or underpayment, while foregoing the opportunity to work on other cases. *Id.* ¶¶ 44-46. That risk warrants an appropriate fee. Indeed, "[a] contingency fee arrangement often justifies an increase in the award of attorney's fees." *Sunbeam*, 176 F. Supp. 2d at 1335 (quoting *Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 548 (S.D. Fla. 1988)). Class Counsel remains completely uncompensated for the time invested in the Action, in addition to the substantial costs they have advanced. Joint Decl. ¶¶ 44-45. Public policy concerns—ensuring the continued availability of experienced and capable counsel to represent classes of injured

plaintiffs holding small individual claims—also support the requested attorneys' fee. Joint Decl. ¶

44. In the court's words:

> Generally, the contingency retainment must be promoted to assure representation
> when a person could not otherwise afford the services of a lawyer. . . . A
> contingency fee arrangement often justifies an increase in the award of attorney's
> fees. This rule helps assure that the contingency fee arrangement endures. If this
> "bonus" methodology did not exist, very few lawyers could take on the
> representation of a class client given the investment of substantial time, effort, and
> money, especially in light of the risks of recovering nothing.

*Behrens*, 118 F.R.D. at 548.

### 5. The Requested Fee Comports with Fee Awards in Similar Cases.

The attorneys' fee award sought here is within the range of fees typically awarded in similar

cases in the Eleventh Circuit and in the Southern District. *See Mednax*, 2024 WL 4415214, at *5

(noting district courts in the Eleventh Circuit routinely approve fee awards of one-third of the

common fund settlement). *See also, e.g.*, *In re Checking Account Overdraft Litig.*, No. 1:09-MD-

02036-JLK, 2020 WL 4586398, at *16 (S.D. Fla. Aug. 10, 2020) (awarding 35%); *Morgan v.

Public Storage*, 301 F. Supp. 3d 1237, 1257-58 (S.D. Fla. 2016) (awarding 33.33%); *Wolff v. Cash

4 Titles*, No. 03-22778-CIV, 2012 WL 5290155, at *5-6 (S.D. Fla. Sept. 26, 2012) ("The average

percentage award in the Eleventh Circuit mirrors that of awards nationwide—roughly one-third.")

(citing Circuit case law and listing Southern and Middle District of Florida attorneys' fees awards);

*Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291 (11th Cir. 1999) (affirming fee award of

33.33 % of settlement).

Examples of attorneys' fee awards of 33.33% or higher in data breach cases include: *Garza

v. HealthAlliance, Inc.*, No. 72450/2023 (NY Sup. Ct., Weschester Cty.) (approving 35% of the

settlement fund); *In re Planet Home Lending, LLC Data Breach*, No. 3:24-cv-127 (KAD) (D.

Conn.), DE# 48 (approving 33.33% of the settlement fund); *In re CorrectCare Data Breach Litig.*,

No. 5:22-319-DCR, 2024 WL 4211480, at *4 (E.D. Ky. Sept. 14, 2024) (approving one-third of the settlement fund); *Kondo, et al. v. Creative Services, Inc.,* No. 1:22-cv-10438-DJC, DE# 39 (D. Mass. Sept. 7, 2023) (same); *In re Sovos Compliance Data Security Incident Litigation*, No. 1:23-cv-12100 (D. Mass.), DE# 12 (same); *Alliance Ophthalmology, PLLC v. ECL Group, LLC*, Nos. 1:22-CV-296, 1:22-CV-468, 2024 WL 3203226, at *14-16 (M.D.N.C. June 27, 2024); *Abrams, et al. v. The Savannah College of Art and Design Inc.*, No. 1:22-cv-04297-LMM, DE# 29 (N.D. Ga. Sept. 23, 2023) (same); *Phelps, et al. v. Toyotetsu North America*, No. 6:22-cv-00106-CHB-HA, DE# 47 (E.D. Ky. Oct. 25, 2023) (same); *In re: Forefront Data Breach Litigation*, No. 1:21-cv-000887-LA, 2023 WL 6215366, at *9 (E.D. Wis. Mar. 22, 2023) (same); and *Davidson v. Healthgrades Operating Company, Inc*., No. 1:21-cv-01250-RBJ, DE# 50 (D. Colo. Aug. 22, 2022) (same).

Class Counsel's request is also reasonable considering the market rate in the private marketplace "where attorneys typically negotiate percentage fee arrangements with their clients." *Pinto* v. *Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334, 1341 (S.D. Fla. 2007). As such, "attorneys regularly contract for contingent fees between 30% and 40% directly with their clients." *Id.* Indeed, this Court has recognized a fee of 33.33% "is at the market rate of what the Class could have negotiated with counsel...as a traditional contingency fee arrangement at the outset of the case." *Morgan v. Public Storage*, 301 F. Supp. 3d 1237, 1255 (S.D. Fla. 2016); *see also In re Checking Account Overdraft Litig.,* 830 F.Supp.2d 1330, 1366 (S.D. Fla. 2011) (acknowledging class counsel's requested fee of 30% "falls on the low end of the average in the private marketplace" where contingency fees of up to 40% are customary in the private marketplace).

### 6.    *The Litigation Costs Are Reasonable.*

Class Counsel request reimbursement of $39,237.40 for litigation costs that Class Counsel

incurred and paid in connection with the prosecution of the Action and the Settlement. The costs include fees related to filing, service, *pro hac vice* applications, document retrieval, experts, mediation, and travel for JPML proceedings and mediation. Joint Decl. ¶ 48. Ordinary law firm overhead costs, including postage and legal research, are not included. Plaintiffs' attorneys are entitled to reimbursement of reasonable and necessary out-of-pocket expenses incurred in the course of activities that benefitted the class. *Morgan*, 301 F. Supp. 3d at 1258. Further, pursuant to Fed. R. Civ. P. 23(h), a trial court may award nontaxable costs that are authorized by law or the parties' agreement. *See also Behrens*, 118 F.R.D. at 549 (noting plaintiffs' counsel is entitled to be reimbursed from the class fund for reasonable expenses incurred).

## V.      CONCLUSION

Plaintiffs and Class Counsel respectfully request this Court enter an Order: (1) granting Final Approval to the Settlement; (2) affirming certification of the Settlement Class for settlement purposes, pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3); (3) confirming the appointment of Plaintiffs as Class Representatives; (4) confirming the appointments of Jeff Ostrow, John Yanchunis, James Cecchi, and Mason Barney as Class Counsel; (5) awarding Class Counsel $2,333,333.33 for attorneys' fees and $39,237.40 for litigation costs; (6) approving payment of the Settlement Administration Costs; (7) overruling timely objections, if any; and (8) entering final judgment dismissing the Action with prejudice and reserving jurisdiction over Settlement implementation. Plaintiffs attach a proposed Final Approval Order as ***Exhibit D***.

## <u>CERTIFICATE OF LOCAL RULE 7.1(a)(3) CONFERRAL</u>

Plaintiffs' counsel certifies that Plaintiffs have conferred with Defendant regarding the

relief requested herein and Defendant does not oppose the relief requested.

December 24, 2024.

Respectfully submitted,

<u>/s/ *Jeff Ostrow*</u>
Jeff Ostrow FBN 121452
**KOPELOWITZ OSTROW P.A.**
1 West Las Olas Blvd., Ste. 500
Fort Lauderdale, FL 33301
Tel : 954.332.4200
ostrow@kolawyers.com

John Yanchunis FBN 324681
**MORGAN & MORGAN P.A.**
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tel: 813.275.5272
jyanchunis@forthepeople.com

*MDL Co-Lead Counsel*

James Cecchi (*pro hac vice*)
**CARELLA, BYRNE, CECCHI,**
**BRODY & AGNELLO P.C.**
5 Becker Farm Road
Roseland, NJ 07068
Tel: 973.994.1700
jcecchi@carellabyrne.com

*MDL Track Coordination and*
*Settlement Counsel*

Mason A. Barney (*pro hac vice*)
**SIRI & GLIMSTAD LLP**
745 Fifth Avenue, Suite 500
New York, NY 10151
Tel: 646.357.1732
mbarney@sirillp.com

*Track 4 Lead Counsel - Brightline*