**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| **IN RE: FORTRA FILE TRANSFER SOFTWARE DATA SECURITY BREACH LITIGATION** | Case No. 24-md-03090-RAR |
| This Document Relates to:<br><br>Defendants Fortra, LLC, NationsBenefits LLC, NationsBenefits Holdings LLC, Aetna Inc. Aetna Life Insurance Company, Anthem Insurance Companies, Brightline, Inc., Elevance Health, Inc., Santa Clara Family Health Plan, Community Health Systems, CHSPSC, Intellihartx, LLC, and Imagine360, LLC. | |

**PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMIMNARY APPROVAL**
**OF GLOBAL SETTLEMENT AGREEMENT AND MEMORANDUM OF LAW**

Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs,[1] individually, and on behalf of the Settlement Class, respectfully submit this Unopposed Motion for Preliminary Approval of the Global Settlement, supported by the Joint Declaration of Lead Counsel ("Joint Decl."), attached as ***Exhibit B***.

## I.    INTRODUCTION, BACKGROUND AND RELEVANT PROCEDURAL HISTORY

Defendants NationsBenefits, Aetna, Brightline, Elevance Health, Santa Clara, Community Health, Intellihartx, and Imagine360 are all in the healthcare business. *See* Complaints [ECF Nos. 133, 150-152]. Defendant Fortra is in the business of offering cybersecurity and automation solutions. *Id*. NationsBenefits, Community Health, Intellihartx, and Imagine360 are Fortra's customers who directly used Fortra's GoAnywhere MFT file transfer application in connection with their businesses. *See* Tracks 1-2, 4 Complaints. Aetna, Elevance Health, and Santa Clara are

---

[1] All capitalized terms used herein shall have the same meanings as those defined in Section II of the Global Settlement Agreement, attached as ***Exhibit A***.

all business associates of NationsBenefits and did not have a direct relationship with Defendant Fortra, but their customers' Private Information was stored in NationsBenefits' GoAnywhere environment at the time of the Data Incident. *See* Tracks 1-4 Complaints.

In January of 2023, a Data Incident occurred, which involved a criminal attack by a Russian-linked ransomware group, involving a previously unknown, zero-day "remote code execution exploit" that affected certain instances of Fortra's GoAnywhere MFT, and that may have resulted in the unauthorized access to or acquisition of approximately five million individuals' Private Information. *See* Complaints. The impacted information included some combination of names, addresses, dates of birth, member identification numbers, start and end dates of health plan coverage, telephone numbers, Social Security numbers, and employer names, which was being stored within the Defendants' respective instances of the Fortra Go Anywhere MFT platform. *Id*.

In or about April, 2023, Defendants began notifying approximately the impacted individuals, including Plaintiffs and Settlement Class members, of the unauthorized access to and exfiltration of their Private Information. Joint Decl. ¶ 3. Thereafter, lawsuits were filed against the Defendants in various jurisdictions around the country. *Id*. ¶ 4. On October 20, 2023, after the Defendant-specific cases were organized and the respective parties began litigating, pursuant to 28 U.S.C. § 1407, NationsBenefits, filed a Motion for Transfer and Centralization of Related Actions to the District of Minnesota, where the Fortra consolidated action was pending, requesting that all matters concerning the Data Incident be centralized for pretrial purposes. *Id*. On February 5, 2024, the Judicial Panel on Multidistrict Litigation granted the motion and ordered all matters concerning the Data Incident be transferred to and centralized in this Court. *Id*.

Following transfer and centralization of the cases, the Court created distinct tracks for the cases: Track 1: NationsBenefits; Track 2: Fortra; Track 3: NationsBenefits Spokes: Aetna, Anthem,

Elevance Health, and Santa Clara; and Track 4: Fortra Spokes: Brightline, Community, Intellihartx, and Imagine360. [ECF No. 129].

Following the filing of the Track 1-4 Complaints [ECF Nos. 133, 150-152], and responding to motions to dismiss the Complaints in Tracks 1 and 2 [ECF Nos. 138, 158, 195, 203], the Parties decided to focus their resources on globally resolving the entire Action through negotiation with Elevance Health and a global mediation with the remainder of the Parties. Joint Decl. ¶ 6.[2]

Prior to mediating and reaching a settlement, the Parties engaged in meaningful discovery. *Id.* ¶ 7. The Parties exchanged Initial Disclosures and negotiated a Stipulated Confidentiality and Qualified Protective Order and Order Governing Production of Electronically Stored Information and Paper Documents, which the Court entered on April 22, 2024. [ECF Nos. 154, 155]. Plaintiffs also requested pre-mediation informal discovery from the Defendants, and in response Defendants produced extensive material relating to liability and damages, including, but not limited to, the number of individuals and categories of Private Information impacted by the Data Incident. Joint Decl. ¶ 8. The Parties also exchanged detailed mediation statements outlining their positions with respect to liability, damages, and settlement. *Id.* ¶ 9.

On February 4-5, 2025, the Parties participated in a two-day private mediation[3] in Hollywood, Florida, before experienced class action mediator Michael Ungar, Esq. *Id.* ¶ 11. Although the Parties made progress at mediation, no settlement was reached at the conclusion of

---

[2] Before the Parties agreed to discuss a global resolution for the entire Action, the parties in the Brightline action had already entered into a settlement agreement related to Brightline only with the settlement class receiving benefits in consideration for releasing Defendant Brightline. Joint Decl. ¶ 12. However, as part of any global resolution of the Action, Defendant Fortra required resolution of any remaining claims that the Brightline Settlement Subclass could have against Defendant Fortra. *Id.*

[3] Elevance Health did not participate in the mediation because it had reached a settlement in principle with Plaintiffs prior to the mediation. Joint Decl. ¶ 11 n.3. However, after the mediation, Elevance Health joined as a party to the global settlement. *Id.*

the second day. *Id*. However, with the mediator's assistance, the Parties continued to negotiate for the next several days, eventually agreeing to the material terms of this Settlement on February 9, 2025. *Id.*

The Settlement includes a global resolution of all claims on a classwide basis with significant relief for approximately five million people. *Id*. ¶ 13. The benefits, more fully described below, include an all cash non-reversionary $20,000,000.00 Settlement Fund, Dark Web Monitoring, and valuable injunctive relief. *Id*. The terms were negotiated at arm's length, in good faith, and without collusion by capable and experienced counsel with full knowledge of the facts, the law, and the inherent risks in the Action, and with the Plaintiffs' and Defendants' active involvement. *Id*. ¶ 14.

The Parties filed a Notice of Global Settlement with the Court on February 10, 2025. [ECF No. 213]. *See also* Joint Decl. ¶ 15. Over the next two months, the Parties worked diligently to finalize the terms of the Agreement and ancillary documents, and the Agreement was executed on April 10, 2025. *Id*. ¶ 16. The Parties did not discuss attorneys' fees and costs until after they reached agreement on all material Settlement terms. *Id*. ¶ 17.

The Court should find the Settlement is within the range of reasonableness necessary to grant Preliminary Approval under Rule 23(e) and enter an order: (i) granting Preliminary Approval of the Settlement; (ii) provisionally certifying the Settlement Class for settlement purposes; (iii) appointing Plaintiffs as Class Representatives; (iv) appointing Jeff Ostrow, John Yanchunis, and James Cecchi as Lead Counsel and Class Counsel, and Bryan Bleichner, Brian Gudmundson, Ben Barnow, Sabita Soneji, Stuart Davidson, Ian Sloss, Maureen Brady, Benjamin Johns, Mason Barney, William Federman, and Nicholas Colella as Class Counsel for the Settlement Class; (v) approving the form of the Notices and the Notice Program; (vi) approving the Claim Form and the

Claim Process; (vii) appointing Epiq Class Action & Claims Solutions, Inc. as the Settlement Administrator; (viii) establishing procedures and deadlines for members of the Settlement Class to opt-out of or object to the Settlement; and (ix) scheduling a Final Approval Hearing at which time the Court will consider whether to grant Final Approval of the Settlement and Class Counsel's Application for Attorneys' Fees and Costs.

## II.    MATERIAL TERMS OF THE SETTLEMENT

A.    <u>**Settlement Class**</u> – Plaintiffs seek Preliminary Approval of the Settlement on behalf of the following Settlement Class and Settlement Subclasses:

> **Settlement Class**: All living individuals residing in the United States who were sent a notice of the Data Incident indicating their Private Information may have been impacted in the Data Incident. [4]

> **Aetna Settlement Subclass**: All living individuals residing in the United States who were sent a notice of the Data Incident from, or on behalf of, Defendant Aetna indicating their Private Information may have been impacted in the Data Incident.

> **Brightline Settlement Subclass:** All living individuals residing in the United States whose were sent a notice of the Data Incident from, or on behalf of, Defendant Brightline indicating their Private Information may have been impacted in the Data Incident.

> **Community Health Settlement Subclass**: All living individuals residing in the United States who were sent a notice of the Data Incident from, or on behalf of, Defendant Community Health indicating their Private Information may have been impacted in the Data Incident.

> **Elevance Health Settlement Subclass**: All living individuals residing in the United States who were sent a notice of the Data Incident from, or on behalf of, Defendant Elevance Health indicating their Private Information may have been impacted in the Data Incident.

> **Fortra Settlement Subclass**: All living individuals residing in the United States

---

[4] Excluded from the Settlement Class are (a) all persons who are directors and officers of Defendants, their respective subsidiaries and affiliated companies; (b) governmental entities; (c) the Judge assigned to the Action, that Judge's immediate family, and Court staff; and (d) all Settlement Class Members who submit a Valid Request for Exclusion prior to the Opt-Out Deadline. Agreement ¶ 103.

who were sent a notice of the Data Incident indicating their Private Information may have been impacted in the Data Incident. The Fortra Settlement Subclass is comprised of all members of the Settlement Class, including the NationsBenefits Settlement Subclass, the Aetna Settlement Subclass, Brightline Settlement Subclass, Community Health Settlement Subclass, Elevance Health Settlement Subclass, Imagine360 Settlement Subclass, Intellihartx Settlement Subclass, Santa Clara Settlement Subclass, and Hatch Bank Settlement Subclass.

**Hatch Bank Settlement Subclass**: All living individuals residing in the United States who were sent a notice of the Data Incident from, or on behalf of, Hatch Bank indicating their Private Information may have been impacted in the Data Incident.

**Imagine360 Settlement Subclass**: All living individuals residing in the United States who were sent a notice of the Data Incident from, or on behalf of, Defendant Imagine360 indicating their Private Information may have been impacted in the Data Incident.

**Intellihartx Settlement Subclass**: All living individuals residing in the United States who were sent a notice of the Data Incident from, or on behalf of, Defendant Intellihartx indicating their Private Information may have been impacted in the Data Incident.

**NationsBenefits Settlement Subclass**: All living individuals residing in the United States who were sent a notice of the Data Incident from, or on behalf of, Defendant NationsBenefits indicating their Private Information may have been impacted in the Data Incident.

**Santa Clara Settlement Subclass**: All living individuals residing in the United States who were sent a notice of the Data Incident from, or on behalf of, Defendant Santa Clara indicating their Private Information may have been impacted in the Data Incident.

Agreement ¶¶ 103 a-j.

B.   <u>Settlement Fund</u> – The Settlement provides for a non-reversionary $20,000,000 all cash common Settlement Fund. *Id.* ¶ 107. The Settlement Fund will be partially funded by Defendants within 15 days of Preliminary Approval and fully funded within 15 days of the Effective Date. *Id.* ¶ 113. It will be used to pay: (1) Settlement Class Member Benefits; (2) all Settlement Administration Costs; and (3) any attorneys' fees and costs awarded by the Court to Lead Counsel. *Id.* ¶¶ 81, 160, 164. Once the Defendants fully fund the Settlement Fund,

Defendants will not be required to make any other payments under this Settlement. *Id.* ¶ 115.

     **C.**     <u>**Settlement Class Member Benefits**</u>

**For All Settlement Class Members Except for Brightline Settlement Subclass Members**

All Settlement Class Members (except Brightline Settlement Subclass Members) may elect to receive a Cash Payment and one year of Dark Web Monitoring. *Id.* ¶ 123.  Cash Payment B – Alternative Cash Payments may be subject to a *pro rata* increase or decrease, depending on the value of all Valid Claims. *Id.* If a Settlement Class Member does not submit a Valid Claim, the Settlement Class Member will release his or her claims without receiving a Settlement Class Member Benefit. *Id.*

     **1.**     ***Cash Payments*** – Settlement Class Members may elect to receive either Cash Payment A – Documented Losses or Cash Payment B – Alternative Cash Payment. Settlement Class Members who elect Cash Payment A – Documented Losses may receive compensation for Documented Losses up to $5,000.00. *Id.* ¶ 123a. To qualify for Cash Payment A – Documented Losses, Settlement Class Members must provide supporting documentation supporting their losses. *Id.*  As an alternative to Cash Payment A – Documented Losses, Settlement Class Members may elect Cash Payment B – Alternative Cash Payment and receive a cash payment in the estimated amount of $85.00. *Id.*

     **2.**     ***Dark Web Monitoring*** – In addition to a Cash Payment, all Settlement Class members may elect one year of Dark Web Monitoring. *Id.* ¶ 123c.  The Dark Web Monitoring will be the CyEx Identity Defense Plus product and will include: (i) real time authentication alerts; (ii) dark web scanning; (iii) high risk monitoring; (iv) wallet protection; (v) victim assistance; and (vi) customer support. *Id.*

     **3.**     ***Injunctive Relief*** – Prior to Final Approval, Defendants, Fortra,

NationsBenefits, Intellihartx, Imagine360, and Community Health, will provide Class Counsel with attestations as to the security measures it implemented following the Data Incident. The costs of any such security measures shall be fully borne by Defendants, and under no circumstances will such costs be deducted from the Settlement Fund. *Id*. ¶ 127.

### For Brightline Settlement Subclass Members Only

In light of the Brightline Settlement, and to avoid impermissible double recovery for injuries alleged by members of the Brightline Settlement Subclass, Brightline Settlement Subclass Members have the opportunity to elect Settlement Class Member Benefits under Section VI only, to the extent that they have not been fully compensated for their injuries under the Brightline Settlement. Brightline Settlement Subclass Members who submitted claims in the Brightline Settlement will not be deemed to have been fully compensated, and will be eligible to make a claim for Settlement Class Member Benefits in this Action, as provided by Section VI, if they: (1) did not make a claim under the Brightline Settlement; (2) opted-out of the Brightline Settlement; (3) elected to receive documented losses under Cash Payment A of the Brightline Settlement, and the documented losses exceeded the amount of compensation received under the Brightline Settlement; or (4) elected to receive Cash Payment B (flat payment) under the Brightline Settlement, but have incurred documented losses after the date their claim was filed under the Brightline Settlement. Brightline Settlement Class Members who elected to receive Cash Payment B under the Brightline Settlement and do not have documented losses that occurred after the date that their Brightline Settlement Claim Form was filed, are deemed to have been fully compensated for their losses and are not eligible to receive additional compensation under this Agreement. *Id*. ¶ 125.

Eligible Brightline Settlement Subclass Members may elect the following Settlement Class

Member Benefits:

      1.     ***Cash Payment A – Documented Losses for Excess Documented Losses*** –
Brightline Settlement Subclass Members may submit a claim for an Excess Documented Loss
Payment under this section for up to $5,000.00 per Brightline Settlement Subclass Member upon
presentment of Documented Losses related to the Data Incident that are in excess of the amounts
received under Cash Payment A (documented losses) from the Brightline Settlement. *Id.* ¶ 126a.
Brightline Settlement Subclass Members who elected a Cash Payment B (flat cash) under the
Brightline Settlement, may only submit a claim for Documented Losses up to $5,000 per Brightline
Settlement Subclass Member related to the Data Incident for Documented Losses incurred after
the date that their Brightline Settlement Claim was filed. *Id.*

      2.     ***Cash Payment B – Alternative Cash Payment*** – Only Brightline Settlement
Subclass Members who did not submit a Claim under the Brightline Settlement may file a Claim
for Cash Payment B – Alternative Cash Payment. *Id.* ¶ 126b.

      3.     ***Dark Web Monitoring*** – In addition to Cash Payment A – Documented
Losses for Excess Documented Losses or Cash Payment B – Alternative Cash Payment, as
applicable, Brightline Settlement Class Members who did not make a claim for Credit Monitoring
(as defined in the Brightline Settlement Agreement), may make a Claim for one year of Dark Web
Monitoring. *Id.* ¶ 126c.

      D.     <u>**Settlement Class Notice**</u> – The Parties have agreed on a comprehensive Notice
Program, which includes Email Notice, Postcard Notice, Long Form Notice, a Settlement Website,
and Settlement telephone line for frequently asked questions. *Id.* § X.

      Within 10 days of Preliminary Approval, Defendants with Class Lists and non-defendant
Hatch Bank will provide the Settlement Administrator with their respective Class Lists containing

the Settlement Class members' names, postal addresses, and email addresses (if available). *Id.* ¶ 133. Thereafter, the Settlement Administrator will send Email Notice to all Settlement Class members for which an email address has been provided by Defendants. *Id.* ¶ 134.  Those Settlement Class Members whose Email Notice is undelivered or bounces back, as well as those Settlement Class members for which email addresses are unknown, shall receive a Postcard Notice disseminated via U.S. Mail. *Id.* Notice shall also be published on the Settlement Website and available by mail in a Long Form Notice upon request to the Settlement Administrator. *Id.* ¶ 135.

Settlement Class members may review the Long Form Notice, key documents and dates on the Settlement Website, and get answers to frequently asked questions by calling a toll-free telephone number. *Id.*

The Notice, in forms similar to those attached to the Agreement as Exhibits 1-3 and 5-6, will inform the Settlement Class of the general terms of the Settlement, including a description of the Action, the identity of the Settlement Class, and what claims will be released. It shall include, among other information: a description of the material terms; how to submit a Claim Form; the Claim Form Deadline; the opt-out deadline; the deadline to object to the Settlement and/or Class Counsel's Application for Attorneys' Fees and Costs; the Final Approval Hearing date; and the Settlement Website address at which Settlement Class members may access the Agreement and other related documents and information. Additionally, opt-out procedures will be explained, as well as how Settlement Class Members may exercise their right to object to the proposed Settlement and/or Class Counsel's Application for Attorneys' Fees and Costs at the Final Approval Hearing. *Id.* ¶¶ 137, 138.

**E.**    **Claim Process** – To receive Settlement Class Member Benefits, Settlement Class Members must accurately and timely submit a Claim by the Claim Form Deadline. *Id.* § IX.  A

copy of the Claim Form is attached to the Agreement as Exhibits 4 and 7. Claim Forms may be submitted online through the Settlement Website or through U.S. Mail sent to the Settlement Administrator at the address designated on the Claim Form. *Id.* ¶ 144. The Settlement Administrator will review all Claim Forms to determine their validity, eligibility, and the type and amount of the Cash Payment to which the Settlement Class Member may be entitled. *Id.* ¶ 145. The Settlement Administrator will provide Settlement Class Members who submitted Valid Claims with their Settlement Class Member Benefits no later than 75 days after Final Approval or 30 days after the Effective Date, whichever is later. *Id.* ¶ 156. Cash Payments will be made electronically or by paper check, and an email will be sent to Settlement Class Members electing Dark Web Monitoring with activation instructions. *Id.* ¶ 157. Greater detail on the Claim Process is in Section XI of the Agreement.

       **F.**    <u>**Disposition of Residual Funds**</u> – Any funds remaining in the Settlement Fund 240 days after Settlement Class Members receive an email from the Settlement Administrator to select a form of payment, shall be distributed, upon Court approval, to Non-Profit Residual Recipient, Electronic Privacy Information Center, or another non-profit organization approved by the Court. *Id.* ¶ 158. The Parties will formally seek approval of a recipient in the Motion for Final Approval.

       **G.**    <u>**Settlement Administrator**</u> – The proposed Settlement Administrator, Epiq, is a well-respected and reputable third-party administrator that has significant experience with data breach settlements. Joint Decl. ¶ 38. The Settlement Administrator shall effectuate the Notice Program, handle the Claims Process, administer the Settlement Fund, and distribute the Settlement Class Member Benefits to Settlement Class Members. Agreement § IX. The Parties shall oversee the Settlement Administrator. *Id.* ¶ 130.

       The Settlement Administrator's duties include, *inter alia*:

11

a.      providing Class Action Fairness Act (CAFA) Notice;

b.      initiating and completing the Court-approved Notice Program;

c.      establishing and maintaining the Settlement Fund in the Escrow Account;

d.      establishing and maintaining a post office box to receive opt-out requests, objections, and Claim Forms;

e.      establishing and maintaining the Settlement Website;

f.      establishing and maintaining an automated toll-free telephone line for Settlement Class members to call;

g.      responding to any mailed Settlement Class member inquiries;

h.      processing all opt-out requests from the Settlement Class;

i.      providing weekly reports to Lead Counsel and Defendants' Counsel that summarize the number of Claims submitted, Claims approved and rejected, Notices of Deficiency sent, opt-out requests and objections received that week, the total number of opt-out requests and objections received to date, and other pertinent information;

j.      in advance of the Final Approval Hearing, preparing a declaration confirming the Notice Program was completed in accordance with the terms of the Agreement and the Preliminary Approval Order, describing how the Notice Program was completed, indicating the number of Claim Forms received and the amount of Valid Claims, providing the names of each Settlement Class member who timely and properly requested to opt-out from the Settlement Class, indicating the number of objections received, and other information as may be necessary to allow the Parties to seek and obtain Final Approval;

k.      distributing, out of the Settlement Fund, Cash Payments electronically or by paper check;

l.      sending an email to Settlement Class Members with Valid Claims asking what form of payment they prefer (electronic or paper check), along with details of how to activate Dark Web Monitoring for all those who elected the benefit;

m.      paying the Court-approved Fee Award and Costs out of the Settlement Fund;

n.      paying Settlement Administration Costs out of the Settlement Fund following approval by Class Counsel;

o.      paying any residual funds to the Court-approved Non-Profit Residual Recipient;

and

p.   any other Settlement administration function at the instruction of Lead Counsel and Defendants including, but not limited to, verifying the Settlement Fund has been properly administered and the Cash Payments have been properly distributed.

*Id.* ¶ 132.

   **H.**   **Opt-Out and Objection Procedures** – Consistent with the Settlement's opt-out procedures, the Long Form Notice details that Settlement Class members who do not wish to participate in the Settlement may opt-out up to 30 days prior to the initial date set for the Final Approval Hearing. *Id.* ¶ 88. During the Opt-Out Period, they may mail an opt-out request to the Settlement Administrator that includes the Settlement Class member's name, address, telephone number, and email address (if any), and a statement indicating a request to be excluded from the Settlement Class. *Id.* ¶ 137. Any Settlement Class member who does not timely request to opt-out shall be bound by the Agreement's terms even if that Settlement Class Member does not submit a Claim Form. *Id.*

   The Agreement and Long Form Notice also specify how Settlement Class Members may object to the Settlement and/or the Application for Attorneys' Fees and Costs. *Id.* ¶ 138. Objections must be sent by U.S. Mail to the Settlement Administrator, Lead Counsel, and Defendants' Counsel. For an objection to be considered by the Court, the objection must be submitted no later than the last day of the Objection Period, as specified in the Notice. *Id.* It must also set forth: (a) the objector's full name, mailing address, telephone number, and email address (if any); (b) all grounds for the objection, accompanied by any legal support for the objection known to the objector or objector's counsel; (c) the number of times the objector has objected to a class action settlement within the five years preceding the date that the objector files the objection, the caption of each case in which the objector has made such objection, and a copy of any orders related to or ruling upon the objector's prior objections that were issued by the trial and appellate courts in each listed

case; (d) the identity of all counsel who represent the objector, including any former or current counsel who may be entitled to compensation for any reason related to the objection to the Settlement and/or Application for Attorneys' Fees and Costs; (e) the number of times in which the objector's counsel and/or counsel's law firm have objected to a class action settlement within the five years preceding the date of the filed objection, the caption of each case in which counsel or the firm has made such objection and a copy of any orders related to or ruling upon counsel's or the counsel's law firm's prior objections that were issued by the trial and appellate courts in each listed case in which the objector's counsel and/or counsel's law firm have objected to a class action settlement within the preceding five years; (f) the identity of all counsel (if any) representing the objector who will appear at the Final Approval Hearing; (g) a list of all persons who will be called to testify at the Final Approval Hearing in support of the objection (if any); (h) a statement confirming whether the objector intends to personally appear and/or testify at the Final Approval Hearing; and (i) the objector's signature (an attorney's signature is not sufficient). *Id.* Class Counsel and/or Defendants' Counsel may conduct limited discovery on any objector or objector's counsel. *Id.*

  **I.**  <u>**Release of Claims**</u> – Plaintiffs and Settlement Class Members who do not timely and validly opt-out of the Settlement Class will be bound by the terms of the Settlement, including the Releases that discharge the Released Claims against the Released Parties. *Id.* § XIV. The Released Claims are narrowly tailored and are only claims arising out of or relating to the Data Incident. *Id.* ¶ 96; Joint Decl. ¶ 37.

  **J.**  <u>**Attorneys' Fees and Costs**</u> – The amount of any attorneys' fees and costs shall be determined by the Court. Class Counsel shall apply to the Court for an award of attorneys' fees of up to one-third of the Settlement Fund, plus reimbursement of costs. Agreement ¶ 164. The

attorneys' fees and costs will be formally sought in the Application for Attorneys' Fees and Costs filed as part of the Motion for Final Approval filed no less than 45 days before the initial date set for the Final Approval Hearing.  The Settlement is not contingent on approval of the requests for attorneys' fees and costs, and if the Court grants amounts other than what was requested, the remaining provisions of the Agreement shall remain in force. *Id.* ¶ 165. The Notice will advise the Settlement Class of the amount of attorneys' fees that Class Counsel intends to seek. *Id.* § XIII.

## III.    ARGUMENT

### A.    <u>The Settlement Class Should Be Certified.</u>

The Supreme Court has recognized the benefits of a proposed settlement of a class action can be realized only through the certification of a settlement class. *See Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997). To certify a class, the class representative must have standing to sue and the proposed class must be adequately defined and clearly ascertainable. *Prado–Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000). Plaintiffs must satisfy all Rule 23(a) (numerosity, commonality, typicality, and adequacy), and one of the requirements of Rule 23(b). Plaintiffs seek certification under Fed. R. Civ P. 23(b)(3), requiring common questions of law or fact to predominate over any individual issues and class treatment to be the superior method for efficiently handling the case. These requirements are met for settlement purposes.

1.    **Standing** – A plaintiff must demonstrate Article III standing to pursue each of the claims asserted in the complaint. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). Plaintiff must establish that he: "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Further, "[t]o have standing to represent a class, a party must not only satisfy the individual standing prerequisites, but must also 'be part of the

class and possess the same interest and suffer the same injury as the class members.'" *Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1307 (11th Cir. 2008) (quoting *Prado–Steiman*, 221 F.3d at 1279). There is no requirement that Article III standing be proved with evidentiary support at the settlement approval stage. *See In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1261 n.8 (11th Cir. 2021).

"Standing exists when a plaintiff's sensitive personal information is allegedly accessed and exfiltrated in a data breach." *In re Fortra File Transfer Software Data Security Breach Litig.*, No. 24-MD-03090-RAR, 2025 WL 457896, at *6 (S.D. Fla. Feb. 11, 2025) (citing *Desue v. 20/20 Eye Care Network, Inc.*, No. 21-cv-61275, 2022 WL 796367, at *4 (S.D. Fla. Mar. 15, 2022); *see also Desue v. 20/20 Eye Care Network, Inc.*, No. 21-cv-61275, 2022 WL 17477004, at *5 (S.D. Fla. Dec. 5, 2022)). In *In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, 603 F. Supp. 3d 1183, 1200-1208 (S.D. Fla. 2022), this Court extensively addressed standing in data breach class actions, and subsequently relied on that analysis when preliminarily approving a class settlement in that case. *See In re Mednax Serv., Customer Data Sec. Breach Litig.*, No. 21-MD-02994-RAR, 2024 WL 1554329, at *4 n.2 (S.D. Fla. Apr. 10, 2024) (citing *Green-Cooper v. Brinker Int'l, Inc.*, 73 F.4th 883 (11th Cir. 2023)); *In re Fortra File Transfer Software Data Security Breach Litig.*, No. 24-MD-03090-RAR, 2024 WL 4547212, at *3-7 ((S.D. Fla. Feb. 11, 2025) (denying motion to dismiss for lack of standing).

Here, all Plaintiffs have standing because, like the Plaintiffs in *Fortra*, *Mednax* and *Desue*, their Private Information was allegedly impacted in the Data Incident when an unauthorized third party gained access to Fortra's GoAnywhere MTF, which contained sensitive and confidential Private Information. Because all Plaintiffs and Settlement Class members had their Private Information impacted in the Data Incident, they have all suffered an injury in fact, that is fairly

traceable to the Data Incident, and which could be redressed through an appropriate damages award if this case was litigated through trial. As in *Fortra*, *Mednax* and *Desue*, the pursuit of damages and injunctive relief based on actual misuse and actual access to the Settlement Class' data is a plausible injury in fact – the substantial risk of future harm from identity theft and emotional injury; the diminution in the value of their Private Information; and the loss of privacy. *Mednax*, 603 F. Supp. 3d at 1202-1205; *Fortra*, 2025 WL 457896, at *7.

The causal connection between the Data Incident and the Settlement Class' injuries, or traceability to the Data Incident, exists for Article III standing. The injuries must be "fairly traceable" to Defendants' actions, but that does not mean Plaintiffs are required to show proximate cause because harm flowing indirectly from the Data Incident are sufficient for standing. *Fortra*, 2024 WL 4547212, at *6-7; *Mednax*, 603 F. Supp. 3d at 1205. Defendants' actions need not be the very last step in causation chain. *Mednax*, 603 F. Supp. 3d at 1205. Defendants' alleged failure to protect the Private Information, resulting in the Data Incident whereby unauthorized access was gained, preceded Plaintiffs' documented incidents of identity theft, economic losses, lost time, and emotional distress, and they are at substantial risk of future incidents of identity theft. *See Fortra*, 2025 WL 457896, at *7; *Mednax*, 603 F. Supp. 3d at 1206. What's important is not that the Data Incident provided all information necessary to inflict those harms; it is enough the Data Incident could give identity thieves information to aid those harms. *Id.*

    **2.**    **Ascertainability –** Ascertainability is an implied prerequisite of Rule 23. *Cherry v. Dometic Corp.*, 986 F.3d 1296, 1302 (11th Cir. 2021). Before a district court can consider whether a potential class satisfies Rule 23(a), it must find the proposed class is "adequately defined and clearly ascertainable." *Id.* (citation omitted). Class definition and ascertainability typically involve one inquiry because, without an adequate definition for a proposed class, a district court cannot

ascertain who belongs in the class. *Id.* For purposes of class certification, "a proposed class is ascertainable if it is adequately defined such that its membership is capable of determination." *Id.* at 1304. An adequately defined class thus should be defined by objective criteria with its members identifiable. *Id.* Here, the Settlement Class is adequately defined and clearly ascertainable because the Settlement Class definition contains sufficient objective criteria to allow an individual to determine whether he or she is a member of the Settlement Class—i.e., whether they were sent notification that their Private Information was potentially compromised as a result of the Data Incident. Agreement. ¶ 103.

      **3.**      **Rule 23(a)** – Under Rule 23(a), the Court must determine whether: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). Each requirement is satisfied here.

      ***Numerosity*** – Class sizes exceeding 40 are typically adequate for numerosity. *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986); *Fortra*, 2025 WL 457896, at *4; *Mednax*, 2024 WL 1554329, at *4. Here, the joinder of millions of Settlement Class members would certainly be impracticable, and thus numerosity is satisfied.

      ***Commonality*** – This requirement is satisfied where the plaintiffs assert claims that "depend upon a common contention" that is "of such a nature that it is capable of class-wide resolution— which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Courts in this Circuit have previously addressed this requirement in the context of data breach class actions and found it satisfied. *See, e.g.*, *Fortra*, 2025 WL 457896, at *4; *Mednax*,

2024 WL 1554329, at *4 (commonality satisfied because claims turn on adequacy of defendants' data security to protect PII and PHI); *Desue*, 2022 WL 17477004, at *4; *see also Equifax*, 999 F.3d at 1274-75, 1277 (affirming district court's certification of class, including finding of commonality). Here, as in the cases cited above, the claims turn on whether Defendants' security environments were adequate to protect the Settlement Class' Private Information. That inquiry can be fairly resolved because it revolves around evidence that does not vary between members—at least for purposes of settlement—for all Settlement Class members at once. Indeed, the Settlement Class members each had their Private Information impacted in the Data Incident. *See Fortra*, 2025 WL 457896, at *4.

*Typicality* – The commonality and typicality analyses often overlap, as they are both focused on whether a sufficient nexus exists between the legal claims of the named class representatives and those of individual class members to warrant class certification. *Mednax*, 2024 WL 1554329, at *4. "Here, the typicality requirement is satisfied because Plaintiffs' interests are aligned with the Settlement Class in that they all received a notice letter informing them their PHI/PII may have been compromised as a result of the Data Incident and was therefore impacted by the same purportedly inadequate data security that allegedly harmed the rest of the Settlement Class" *Id.* Their claims are based on the same legal theories and underlying event. *Fortra*, 2025 WL 457896, at *5.

*Adequacy of Representation* – Fed. R. Civ. P. 23(a)(4) requires "the representative parties . . . fairly and adequately protect the interests of the class." "Adequacy relates to: (1) whether the proposed class representative has interests antagonistic to the class; and (2) whether the proposed class counsel has the competence to undertake this litigation. *Mednax*, 2024 WL 1554329, at *5. "The determinative factor 'is the forthrightness and vigor with which the representative party can

be expected to assert and defend the interests of the members of the class.'" *Id.* (citation omitted); *Fortra*, 2025 WL 457896, at *5. "Here, the Class Representatives have no conflicts with the Settlement Class and have demonstrated their adequacy by: (i) having a genuine personal interest in the outcome of the case; (ii) selecting well-qualified Class Counsel; (iii) producing information and documents to Class Counsel to permit investigation and development of the complaints; (iv) being available as needed throughout the litigation; and (v) monitoring the Litigation." *Mednax*, 2024 WL 1554329, at *5.

Like all Settlement Class members, Plaintiffs have claims against Defendants arising from the Data Incident that allegedly impacted their Private Information. Joint Decl. ¶ 30. Plaintiffs were similarly injured by Defendants' allegedly wrongful acts. Proof of Plaintiffs' claims would necessarily involve adjudicating the same issues of law and fact as the claims of the Settlement Class as a whole. *Id.* Thus, Plaintiffs and the Settlement Class they seek to represent have the same interests in recovering damages. *Id.* Further, Plaintiffs have also diligently and adequately prosecuted this action through Class Counsel by, among other things, reviewing filings, promptly providing documents and information to Class counsel, acting in the best interest of the Settlement Class, and accepting the classwide Settlement. *Id.* ¶ 31.

Lead Counsel and the other Class Counsel "are highly qualified and have a great deal of experience litigating consumer class actions, including in the data privacy context." *Fortra*, 2025 WL 457896, at *5 (citing *Mednax*, 2024 WL 1554329, at *5); *see also* Joint Decl. ¶ 19. Like counsel in *Mednax* and *Fortra*, "Class Counsel are adequate because of their vast experience as vigorous data breach class action litigators." 2024 WL 1554329, at *5; *Fortra*, 2025 WL 457896, at *5. Class Counsel have litigated this Action against all the MDL-3090 Defendants, including evaluating the claims, preparing comprehensive pleadings, serving informal discovery, consulting

with data security experts, responding to the Track 1 and 2 Motions to Dismiss, complying with Court orders and requirements, and participating in a two-day mediation and subsequent arm's length negotiations that ultimately resulted in this Settlement. Joint Decl. ¶ 21. Accordingly, Plaintiffs and Class Counsel will adequately protect the Settlement Class.

4.   **Rule 23(b)(3)** - Rule 23(b)(3) requires the court to find "questions of law or fact common to class members predominate over questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). When assessing predominance and superiority, the court may consider that the class will be certified for settlement purposes only, and that a showing of manageability at trial is not required. *See Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, … for the proposal is that there be no trial.").

*Predominance* – "The predominance inquiry looks at 'the legal or factual questions that qualify each class member's case as a genuine controversy, questions that preexist any settlement.'" *Mednax*, 2024 WL 1554329, at *5 (quoting *Amchem*, 521 U.S. at 623).

> "[C]ommon issues of fact and law predominate if they have a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief." *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 985 (11th Cir. 2016). Further, "[i]t is not necessary that all questions of law or fact be common, but only that some questions are common and that they predominate over individual questions." *In re Takata Airbag Prod. Liability Litig.*, No. 2599, 2023 WL 4925368, at *6 (S.D. Fla. June 20, 2023). Here, as in other data breach cases, common questions predominate because all claims arise out of a common course of conduct by Defendant. *See In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 311–16 (N.D. Cal. 2018). The focus on a Defendants' security measures in a data breach class action "is the precise type of predominant question that makes class-wide adjudication worthwhile." *Id.* at 312.

*Id.* As in *Mednax*, all Settlement Class members had their Private Information compromised in the Data Incident and the security practices at issue did not vary from person to person. "Thus, because

these common questions represent a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is a clear justification for handling the dispute on a representative rather than on an individual basis." *Fortra*, 2025 WL 457896, at \*6 (quoting *Mednax*, 2024 WL 1554329, at \*5)*.* Thus, predominance is readily satisfied.

> **Superiority** – "Certification of this suit as a class action is superior to other methods to fairly, adequately, and efficiently resolve the claims asserted." *Id.* To satisfy Fed. R. Civ. P. 23(b)(3) superiority, Plaintiffs must show "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Id.* "'The focus of the superiority analysis is on the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to plaintiffs.'" *See Fortra*, 2025 WL 457896, at \*6 (citing *Mednax*, 2024 WL 1554329, at \*5) (citation omitted). Here, as in *Mednax*:

> [A]djudicating individual actions would be impractical. The amount in dispute for each Settlement Class member is too small, the technical issues too complex, and the expert testimony and document review too costly. Further, individual claim prosecution would be prohibitively expensive, needlessly delay resolution, and may lead to inconsistent rulings.

2024 WL 1554329, at \*5. Accordingly, a class action is the superior method of adjudicating this case. *See Fortra*, 2025 WL 457896, at \*6; *see also* Joint Decl. ¶ 34.

### B.      The Settlement Should be Preliminarily Approved.

After determining settlement class certification is likely, the Court must determine whether the Settlement is worthy of preliminary approval and providing notice to the Settlement Class. The question is whether the Settlement is fair, adequate, and reasonable under Fed. R. Civ. P. 23(e)(2) and considering the "*Bennett*" factors. As the Court stated in *Mednax*, 2024 WL 1554329, at \*6:

> At this juncture, "the court's primary objective . . . is to establish whether to direct notice of the proposed settlement to the class, invite the class's reaction, and schedule a final fairness hearing." *Morris v. US Foods, Inc.*, No. 8:20-cv-105, 2021 WL 2954741, at \*7 (M.D. Fla. May 17, 2021) (quoting William B. Rubenstein, 4

*Newberg on Class Actions* § 13:10 (5th ed. Supp. 2020)). "Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies, and the settlement falls within the range of reason." *Smith v. Wm. Wrigley Jr. Co.*, No. 09-60646, 2010 WL 2401149, at *2 (S.D. Fla. Jun. 15, 2010). Courts have substantial discretion in approving a settlement agreement . . . , and settlement negotiations that involve arm's-length, informed bargaining with the aid of experienced counsel support a preliminary finding of fairness*, see Manual for Compl. Lit.*, Third, § 30.42 (West 1995).

The Rule 23(e)(2) factors are:

(A)   the class representatives and class counsel have adequately represented the class;
(B)   the proposal was negotiated at arms' length;
(C)   the relief provided for the class is adequate, taking into account:
    (i)     the costs, risks, and delay of trial and appeal;
    (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
    (iii)   the terms of any proposed award of attorney's fees, including timing of payment; and
    (iv)    any agreement required to be identified under Rule 23(e)(3); and
(D)   the proposal treats class members equitably relative to each other.

The *Bennett* factors: (1) the likelihood of success at trial; (2) the range of possible recoveries; (3) the point on or below the range of possible recoveries at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and degree of opposition to the settlement; and (6) the stage of the proceedings at which the settlement was achieved. *See Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). The Settlement warrants Preliminary Approval under the factors set forth in Rule 23(e)(2) and *Bennett*.

    **1.       Rule 23(e)(2) is Satisfied.**

    ***Adequacy of Representation (Rule 23(e)(2)(A))*** – As this Court held in *Mednax*, "the first factor heavily weighs in favor of granting preliminary approval because both Class Counsel and the Class Representative have adequately represented the Class." *Mednax*, 2024 WL 1554329, at *6; *see also Fortra*, 2025 WL 457896, at *8. Class Counsel have adequately represented the Settlement Class by fully investigating the facts and legal claims. While litigation in *Mednax*

proceeded to a later stage than here before the parties agreed to the settlement in that case, Class Counsel's efforts to use informal discovery to learn what occurred to cause the Data Incident and the Private Information impacted in the Data Incident, before attending a two-day mediation session with Mike Unger allowed for arm's length and good faith negotiations, without collusion. Joint Decl. ¶¶ 11, 21. Class Counsel used their experience in complex class action litigation, including similar data breach actions, and devoted substantial time and resources to vigorous litigation. *See id.*, ¶¶ 19-21. Also, the Class Representatives have demonstrated their adequacy by (i) having a genuine personal interest in the outcome of the case; (ii) selecting well-qualified Class Counsel; (iii) producing information and documents to Class Counsel to permit investigation and development of the complaints; (iv) being available as needed throughout the litigation; and (v) monitoring the Action. *Id.* ¶ 33. Plaintiffs' respective interests are coextensive and do not conflict with the interests of the Settlement Class. *Id.* ¶ 30. Plaintiffs have the same interest in the Settlement relief, and the absent Settlement Class members have no diverging interests. *Id.*

**The Settlement Was Negotiated at Arm's Length (Rule 23(e)(2)(B))** – The Settlement was reached in the absence of collusion and is the result of good faith, informed, and arm's-length negotiations between experienced attorneys who are familiar with class action litigation and with the legal and factual issues at stake. *Id.* ¶¶ 14, 21. Class Counsel thoroughly investigated and analyzed Plaintiffs' claims, engaged in informal discovery, fully briefed motions to dismiss for Tracks 1 and 2, and consulted with data security experts, enabling them to gain an understanding of the evidence related to central questions in the Action and preparing them for well-informed settlement negotiations. *Id.* ¶ 21; *see also Fortra*, 2025 WL 457896, at *8; *Mednax*, 2024 WL 1554329, at *6. The Settlement was reached with the assistance of a well-respected and experienced mediator. *See* Joint Decl. ¶ 11. "The fact that the Settlement was achieved through

well-informed, arm's-length, and neutrally supervised negotiations weighs in favor of granting preliminary approval under Rule 23(e)(2)(B)." *Fortra*, 2025 WL 457896, at *8 (quoting *Mednax*, 2024 WL 1554329, at *6). For these reasons and those discussed related to attorneys' fees below, there was no fraud or collusion in arriving at the Settlement. *Bennett*, 737 F.2d at 986.

   ***The Adequacy of the Settlement Relief (Rule 23(e)(2)(C))*** – Although Plaintiffs believe the claims asserted in the Action are meritorious and the Settlement Class would ultimately prevail at trial, continued litigation against Defendants pose significant risks that make any recovery uncertain. This Court observed in *Fortra* and *Mednax* that "data breach class actions are risky cases." *Fortra*, 2025 WL 457896, at *8 (quoting *Mednax*, 2024 WL 1554329, at *7). The Settlement's fairness is underscored by considering the obstacles that the Settlement Class would face in ultimately succeeding on the merits, as well as the expense and likely duration of the litigation. *Id.* Despite the risks involved with further litigation, the Settlement provides outstanding benefits, including Cash Payments, Dark Web Monitoring, and injunctive relief for all Settlement Class Members. *See Equifax*, 999 F.3d at 1273 ("Settlements also save the bench and bar time, money, and headaches"). Also, the Claim Form submission process and distribution of Settlement Class Member Benefits is fair, convenient, and effective. Settlement Class Members will promptly receive Cash Payments by electronic means or paper check issued by the Settlement Administrator and Dark Web Monitoring, if elected. The Settlement Administrator is highly qualified to manage the entire process. Joint Decl. ¶ 38. "Thus, through the Settlement, Plaintiffs and Settlement Class Members gain significant benefits without having to face further risk of not receiving any relief at all." *Fortra*, 2025 WL 457896, at *9 (quoting *Mednax*, 2024 WL 1554329, at *7).

   ***The Equitable Treatment of Settlement Class Members (Rule 23(e)(2)(D))*** – As this Court found in *Fortra* and *Mednax*, all Settlement Class Members are given an equal opportunity to

claim Settlement Class Member Benefits. *See Fortra*, 2025 WL 457896, at *9; *Mednax*, 2024 WL 457896, at *7. Specifically, each Settlement Class member has the option to claim similar benefits, with the Parties equitably addressing the rights of Brightline Settlement Subclass Members who also had their rights to seek the benefits made available under the approved Brightline Settlement. Thus, "[t]he method of distributing the settlement benefits will be equitable and effective." *Fortra*, 2025 WL 457896, at *9 (quoting *Mednax*, 2024 WL 457896, at *7). Further, the attorneys' fees do not impact the other Settlement terms, as Class Counsel and Defendants negotiated and reached agreement regarding attorneys' fees and costs only after reaching agreement on all other material Settlement terms. The Settlement, including disbursement of the Settlement Class Member Benefits, is also not contingent on approval of the attorneys' fee or costs award to Class Counsel. Agreement ¶ 165. Finally, the Parties' agreements are all in the Agreement, except for the confidential agreement referenced in paragraph 176 of the Agreement. Joint Decl. ¶ 18.

2. **The *Bennett* factors support Preliminary Approval.**

Although typically a consideration at the final approval stage, here, the *Bennett* factors still support Preliminary Approval. First, the benefits of settlement outweigh the risk of trial given the substantial relief that Settlement Class members will be afforded, including guaranteed Cash Payments, Dark Web Monitoring, and injunctive relief.

Second and third, the Settlement is within the range of possible recoveries and is fair, adequate, and reasonable. *See Burrows v. Purchasing Power, LLC*, No. 1:12-CV22800, 2013 WL 10167232, at *6 (S.D. Fla. Oct. 7, 2013). In determining whether a settlement is fair and reasonable, the court must also examine the range of possible damages Plaintiffs could recover at trial and combine this with an analysis of Plaintiffs' likely success at trial to determine if the settlements fall within the range of fair recoveries. *See, e.g., Equifax*, 999 F.3d at 1274 (affirming

district court's decision that settlement was "fair, reasonable, and adequate because the settlement reflects relief the Court finds is in the high range of what could have been obtained had the parties continued to litigate."). Here, Settlement Class Members may elect Cash Payment A – Documented Losses for reimbursement of documented ordinary losses up to $5,000.00, or they may elect Cash Payment B – Alternative Cash Payment for a cash payment in the estimated amount of $85.00, and Dark Web Monitoring.[5] Joint Decl. ¶ 22.

Fourth, continued litigation would be lengthy and expensive. With *Mednax* as an example, Data breach litigation is often difficult and complex. *Id.* ¶ 28. Although the Parties entered into a Settlement relatively early in litigation, the Settlement negotiations were hard-fought, and the Parties expended significant time and energy on this Action. *Id.* ¶ 29.

Fifth, opposition to the Settlement, if any, is better considered at the Final Approval stage, after Notice to the Settlement Class. *Mednax*, 2024 WL 1554329, at *7.

Sixth, despite settling at an early stage of litigation, Plaintiffs have sufficient information to evaluate the merits and negotiate a fair, adequate, and reasonable settlement. *See, e.g., Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 694 (S.D. Fla. 2014) (approving settlement where parties settled relatively early with experienced counsel who had sufficient information to evaluate merits of the case, engaged in full-day mediation, and engaged in post-mediation discovery). This Action has been thoroughly investigated by counsel experienced in data breach litigation. Joint Decl. ¶ 21. Moreover, Class Counsel's informal exchange of discovery and mediation with an experienced mediator has ensured a fair, reasonable, and adequate Settlement. *Id.*

Accordingly, the Court should find the Settlement is fair, reasonable, and adequately

---

[5] Brightline Settlement Subclass Members are entitled to submit a Claim for an Excess Documented Loss Payment, Cash Payment B, and Dark Web Monitoring, consistent with the terms described above. Joint Decl. ¶ 23.

protects the interests of the Settlement Class members. *See In re Fortra File Transfer Software Data Security Breach Litig.*, No. 24-MD-03090-RAR, 2024 WL 5362098, at *9-10 (S.D. Fla. Sept. 24, 2024) ("The Court finds the relevant *Bennett* factors are satisfied.").

### C.   The Court Should Appoint the Proposed Class Representatives, Class Counsel, and Settlement Administrator.

Plaintiffs seek appointment as Class Representatives. Plaintiffs have cooperated with Class Counsel and assisted in the preparation of the complaints and in settlement of the Action. Joint Decl. ¶ 31. Moreover, Plaintiffs are committed to continuing to assist Class Counsel through Final Approval. *Id.* Because Plaintiffs are adequate, the Court should appoint them as Class Representatives. *See* § III.A.3., *supra*.

For the same reasons discussed above for adequacy of representation, the Court should designate Jeff Ostrow, John Yanchunis, and James E. Cecchi as Lead Counsel and Class Counsel and Bryan Bleichner, Brian Gudmundson, Ben Barnow, Sabita Soneji, Stuart Davidson, Ian Sloss, Maureen Brady, Benjamin Johns, Mason Barney, William Federman, and Nicholas Colella as Class Counsel. Federal Rule of Civil Procedure 23(g)(1)(A)'s four factors for appointing class counsel for a certified class are (1) "the work counsel has done in identifying or investigating potential claims in the action;" (2) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;" (3) "counsel's knowledge of the applicable law;" and (4) "the resources that counsel will commit to representing the class." The Court may also "consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class[.]" Fed. R. Civ. P. 23(g)(1)(B). Here, Plaintiffs and the Settlement Class are represented by qualified and competent Class Counsel who are leaders in the class action field with extensive experience prosecuting and resolving complex class actions. *See Fortra*, 2025 WL 457896, at *10. Before commencing litigation, they investigated the potential

claims against Defendants, interviewed potential plaintiffs, and gathered information regarding the Data Incident. Joint Decl. ¶ 4. Class Counsel has devoted substantial time and resources to this Action and will continue to do so. *Id.* ¶ 21.

Finally, subject to Court approval, the Parties have agreed Epiq should be the Settlement Administrator. Epiq is a well-respected and reputable third-party administrator that was mutually selected by the Parties and has long history of successful class action administrations, including for data breach class action settlements. Epiq has a long history of successful class action administrations. *Id.* ¶ 38.

### D.   **The Notice Program Contains the Best Notice Practicable.**

Under Fed. R. Civ. P. 23(e)(1), the Court should "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. *Id.* Notice of a proposed settlement must be the "best notice practicable." Fed. R. Civ. P. 23(c)(2)(B). "[B]est notice practicable" means "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). The best notice practicable is that which "is reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). Moreover, Fed. R. Civ. P. 23(h)(1) requires that "[n]otice of the motion [for attorneys' fees] must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner."

The Notice Program satisfies the foregoing criteria. The Parties negotiated the form of the Notices and Claim Forms with the help of the Settlement Administrator. Joint Decl. ¶ 21. The Notice will be disseminated to all persons who fall within the Settlement Class definition and whose names and addresses can be identified with reasonable effort from Defendants' records, and

through databases tracking nationwide addresses and address changes. In addition, Epiq will administer the Settlement Website containing relevant information about the Settlement. Further, the Notice includes, among other information: a description of the material terms of the Settlement; how to submit a Claim Form; the Claim Form Deadline; the last day of the Opt-Out Period for Settlement Class members to opt-out of the Settlement Class; the last day of the Objection Period for Settlement Class Members to object to the Settlement and/or Application for Attorneys' fees and Costs; the Final Approval Hearing date; and the Settlement Website address at which Settlement Class members may access this Agreement and other related documents and information. Agreement ¶ 135. Finally, the Notice Program satisfies the requirements of Rule 23(h)(1), as it notifies the Settlement Class that Lead Counsel may apply to the Court for an award of attorneys' fees of up to one-third of the Settlement Fund, plus reimbursement of costs. *Id*. Thus, the Court should approve the Notice Program, including the form and content of the Notices. Agreement Exs. 1-3, 5-6. *See Fortra*, 2024 WL 5362098, at *10-11 (approving substantially similar notice program).

####    E.    Proposed Schedule of Post-Settlement Events

Plaintiffs respectfully propose the below schedule for the Court's review and approval. If the Court agrees, Plaintiffs request that the Court schedule the Final Approval Hearing for the week of **September 8, 2025**, or such later date available on the Court's calendar.

| | |
|---|---|
| Deadline to commence Notice Program | Within 30 days of the Preliminary Approval Order |
| Deadline to complete Notice Program | 45 days before the initial scheduled Final Approval Hearing date |
| Deadline for filing Motion for Final Approval, including Class Counsel's Application for Attorneys' Fees and Costs | 45 days before the initial scheduled Final Approval Hearing date |
| Opt-out Period Ends | 30 days before the initial scheduled Final Approval Hearing date |

| Objection Period Ends | 30 days before the initial scheduled Final Approval Hearing date |
|---|---|
| Claim Form Deadline | 15 days before the initial scheduled Final Approval Hearing |
| Final Approval Hearing | **The week of <u>September 8, 2025</u> (or soon thereafter depending on the Court's availability)** |

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs and Class Counsel respectfully request the Court: (1) preliminarily approve the Settlement; (2) certify the Settlement Class for settlement purposes only; (3) approve the Notices and Notice Program, including the opt-out and objection procedures; (4) approve the Claim Form and Claims Process; (5) appoint the Plaintiffs as Class Representatives; (6) appoint Jeff Ostrow, John Yanchunis and James Cecchi as Lead Counsel and Class Counsel and Bryan Bleichner, Brian Gudmundson, Ben Barnow, Sabita Soneji, Stuart Davidson, Ian Sloss, Maureen Brady, Benjamin Johns, Mason Barney, William Federman, and Nicholas Colella as Class Counsel for the Settlement Class; (7) appoint Epiq Class Action & Claims Solutions, Inc. as the Settlement Administrator; and (8) enter the proposed Preliminary Approval Order, attached as *Exhibit A-8*.

### <u>CERTIFICATE OF LOCAL RULE 7.1(a)(3) CONFERRAL</u>

Plaintiffs' counsel certifies that Plaintiffs have conferred with Defendants regarding the relief requested in this Motion and Defendants do not oppose the relief requested.

Dated: April 10, 2025.                                    Respectfully submitted,

/s/ *Jeff Ostrow*
Jeff Ostrow FBN121452
**KOPELOWITZ OSTROW P.A.**
1 West Las Olas Blvd., Ste. 500
Fort Lauderdale, FL 33301
Tel: 954.332.4200
ostrow@kolawyers.com

John Yanchunis FBN 324681
**MORGAN & MORGAN P.A.**
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tel: 813.275.5272
jyanchunis@forthepeople.com

*MDL Co-Lead Counsel*

James E. Cecchi (*pro hac vice*)
**CARELLA, BYRNE, CECCHI,
BRODY & AGNELLO P.C.**
5 Becker Farm Road
Roseland, NJ 07068
Tel: 973.994.1700
jcecchi@carellabyrne.com

*MDL Track Coordination and
Settlement Counsel*