# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| **IN RE: FORTRA FILE TRANSFER SOFTWARE DATA SECURITY BREACH LITIGATION** | Case No. 24-md-03090-RAR |
| This Settlement Relates to Defendants, Fortra, LLC, NationsBenefits LLC, NationsBenefits Holdings LLC, Aetna Inc. Aetna Life Insurance Company, Anthem Insurance Companies, Brightline, Inc., Elevance Health, Inc., Santa Clara Family Health Plan, Community Health Systems, CHSPSC, Intellihartx, LLC, and Imagine360, LLC. | |

<u>**SETTLEMENT AGREEMENT**</u>

This Settlement Agreement[1] is entered into between Plaintiffs, individually, and on behalf of the Settlement Class, and Defendants, as of the date last signed below. The Parties hereby agree to the following terms in full settlement of the Released Claims as set forth herein, subject to a Final Approval Order entered by the Court.

**I.     <u>Procedural History</u>**

1.     On or about February 1, 2023, Fortra disclosed to its customers that a previously unknown, zero-day "remote code execution exploit" affected certain instances of its GoAnywhere managed file transfer (MFT) software. The hackers—the Russia-linked ransomware group, "Clop"—used "remote code execution exploits" to remotely execute malicious code on certain customers' computer systems.

2.     Thereafter, some Spoke-Defendants began notifying potentially impacted individuals, including Plaintiffs and Settlement Class members, that their Private Information that

_____

[1] All capitalized terms herein shall have the same meanings as those defined in Section II below.

was being stored in those Spoke-Defendants' respective instances of the Fortra GoAnywhere MFT at the time of the Data Incident was or may have been subject to unauthorized access.

3.      Lawsuits were subsequently filed against Defendants in a number of United States District Courts around the country.

4.      Thereafter, all Fortra GoAnywhere MFT related actions were transferred and centralized, by order of the JPML, to the United States District Court for the Southern District of Florida before Judge Rodolfo A. Ruiz II.

5.      Following transfer and centralization of the cases, Judge Ruiz created distinct tracks for each of the cases: Track 1: NationsBenefits; Track 2: Fortra; Track 3: NationsBenefits Spokes: Aetna, Anthem/Elevance Health, and Santa Clara; and Track 4: Fortra Spokes: Brightline, Community, Intellihartx, and Imagine360. [ECF No.129].

6.      Judge Ruiz also appointed Jeff Ostrow and John Yanchunis as Co-Lead Counsel, James Cecchi as Track Coordination and Settlement Counsel, and Ben Barnow, Sabita Soneji, Bryan Bleichner, Brian Gudmundson, Stuart Davidson, Ian Sloss, Maureen Brady, Mason Barney, Benjamin Johns, William Federman, and Nicholas Colella as Track Leads for the track actions. *Id*.

7.      Plaintiffs filed their track Consolidated Complaints against Defendants, alleging causes of action for: negligence, negligence per se, breach of fiduciary duty, breach of implied contract, breach of contract third party beneficiary, unjust enrichment, and violations of various states' consumer protection statutes. [ECF Nos. 133, 150-151, 152].

8.      Thereafter, the Parties exchanged their Initial Disclosures.

9.      On April 22, 2024, the Court entered a Stipulated Confidentiality and Qualified Protective Order and Order Governing Production of Electronically Stored Information and Paper Documents. [ECF No. 154].

10.    On April 11, 2024, NationsBenefits filed a Motion to Dismiss. [ECF No. 138]. On April 25, 2024, the NationsBenefits Plaintiffs filed a Response in Opposition [ECF No. 158], to which NationsBenefits filed its reply on May 6, 2024. [ECF No. 162]. On September 18, 2024, the Court denied in part and granted in part the Motion to Dismiss. [ECF No. 172].

11.    On October 21, 2024, the Court entered an Order Adopting Joint Stipulation and Briefing Schedule, which modified the operative Complaints in the respective tracks and set a deadline for NationsBenefits to file its Answer to the Complaint, and for the remaining Defendants to move to dismiss the Complaints in the remaining tracks. [ECF No. 185].

12.    On November 4, 2024, NationsBenefits filed its Answer. [ECF No. 186].

13.    Thereafter, the Parties began discussing a global resolution of the Action and the Released Claims as set forth herein and scheduled a mediation before experienced class action mediator Michael Ungar for February 4-5, 2025.

14.    In advance of the mediation, the Parties requested and certain parties produced extensive informal discovery, including, but not limited to, the number of individuals impacted by the Data Incident, as well as the categories of Private Information impacted by the Data Incident, documents demonstrating that all data impacted as part of the Data Incident—which would include all impacted Private Information—had been removed from Clop's extortion portal, and documents relating to the injuries and damages alleged by Plaintiffs.

15.    The Parties also exchanged detailed mediation statements outlining their positions with respect to liability, damages, and settlement.

16.    On November 15, 2024, the Parties filed a Joint Notice of Global Mediation and Request to Extend Track 4 Briefing Deadlines pending the outcome of the mediation [ECF No. 188], which the Court granted on November 15, 2024. [ECF No. 189].

17.     NationsBenefits filed a Third-Party Complaint against Fortra on November 18, 2024. [ECF Nos. 190, 192].

18.     Fortra filed a Motion to Dismiss the Fortra Plaintiffs' Consolidated Complaint on December 13, 2024. [ECF No. 195]. On January 10, 2025, Fortra Plaintiffs filed a Response in Opposition. [ECF No. 203].

19.     Community Health filed a Motion to Dismiss on January 6, 2025. [ECF No. 199].

20.     On January 10, 2025, the Parties filed a Request to Extend Track 3 Briefing Deadlines pending the outcome of the mediation [ECF No. 200], which the Court granted on January 10, 2025. [ECF No. 202].

21.     On January 10, 2025, Elevance Health Plaintiffs and Elevance Health filed a Joint Notice of Settlement and Request for Stay Pending Settlement Approval [ECF No. 201], which the Court granted on January 15, 2025. [ECF No. 205].

22.     On February 4 and 5, 2025, the Parties participated in a two-day private mediation. The Parties did not reach a resolution that day; however, they continued negotiations over the next few days, ultimately agreeing on the material terms of the Settlement on February 9, 2025.

23.     On February 10, 2025, the Parties filed a Notice of Settlement and Joint Motion to Stay All Deadlines Pending Approval of the Settlement. [ECF No. 213]. The Court granted the motion on February 11, 2025 [ECF No. 218], ordering the Parties to file the Motion for Preliminary Approval of the Settlement within 45 days of the order. [ECF No. 218].

24.     The Parties now agree to settle this matter in its entirety, without any admission by Defendants of liability or wrongdoing, with respect to all Released Claims of the Releasing Parties.

25.     Defendants have entered into this Agreement to resolve all controversies and disputes arising out of or relating to the allegations made in the Complaints and the Data Incident

as it relates to them and their impacted Customers and Fortra Customers, and to avoid the litigation costs and expenses, distractions, burden, expense, and disruption to their business operations associated with further litigation. Defendants do not in any way acknowledge, admit to, or concede any of the allegations made in the Complaints, and expressly disclaim and deny any fault or liability, or any charges of wrongdoing that have been or could have been asserted in the Complaints. Nothing contained in this Agreement shall be used or construed as an admission of liability, and this Agreement shall not be offered or received in evidence in any action or proceeding in any court or other forum as an admission or concession of liability or wrongdoing of any nature or for any other purpose other than to enforce the terms of this Agreement.

26.     Plaintiffs enter into this Agreement to recover on the claims asserted in the Complaints, and to avoid the risk, delay, and uncertainty of continued litigation. Plaintiffs do not in any way concede that the claims alleged in the Complaints lack merit or are subject to any defenses. The Parties intend this Agreement to bind Plaintiffs, Defendants, and all Settlement Class Members.

**NOW, THEREFORE,** in light of the foregoing, for good and valuable consideration, the receipt and sufficiency of which is hereby mutually acknowledged, the Parties agree, subject to approval by the Court, as follows.

**II.      <u>Definitions</u>**

27.     "**Action**" means the above-captioned action, *In Re: Fortra File Transfer Software Data Security Breach Litigation*, Case No. 24-md-03090-RAR (S.D. Florida).

28.     "**Application for Attorneys' Fees and Costs**" means the application made with the Motion for Final Approval seeking the payment of attorneys' fees and reimbursement for costs to Class Counsel from the Settlement Fund.

29.     "**Brightline Settlement**" means the Class Action Settlement in Track 4 of the above-captioned matter for Defendant Brightline which was granted Final Approval by the Court on February 11, 2025. [ECF No. 217.]

30.     "**CAFA Notice**" means the Class Action Fairness Act Notice which the Settlement Administrator shall serve upon the appropriate state and federal officials, providing notice of the proposed Settlement. The Settlement Administrator shall provide a declaration attesting to compliance with 28 U.S.C. § 1715(b), which will be filed with the Motion for Final Approval.

31.     "**Cash Payment**" means a payment paid to Settlement Class Members who submit a Valid Claim for a Cash Payment A – Documented Losses or Cash Payment B – Alternative Cash Payment.

32.     "**Cash Payment A – Documented Losses**" means the cash compensation that Settlement Class Members with Documented Losses may elect under the Settlement.

33.     "**Cash Payment B – Alternative Cash Payment**" means the alternate cash compensation that Settlement Class Members may elect under the Settlement.

34.     "**Claim**" means the submission of a Claim Form by a Claimant for Settlement Class Member Benefits.

35.     "**Claimant**" means a Settlement Class member or other individual who submits a Claim Form.

36.     "**Claim Form**" means the proof of claim, substantially in the forms attached hereto as *Exhibit 4* and *7*, which may be modified as necessary, subject to the Parties' approval.

37.     "**Claim Form Deadline**" shall be 15 days before the initial scheduled Final Approval Hearing and is the last day by which a Claim Form may be submitted to the Settlement

Administrator for a Settlement Class Member to be eligible for a Settlement Class Member Benefit.

38.     "**Claim Process**" means the process by which Claimants submit Claims to the Settlement Administrator and the Settlement Administrator determines which Claims are Valid Claims.

39.     "**Class Counsel**" means: Jeff Ostrow, John Yanchunis, James Cecchi, Ben Barnow, Sabita Soneji, Bryan Bleichner, Brian Gudmundson, Stuart Davidson, Ian Sloss, Maureen Brady, Benjamin Johns, Mason Barney, William Federman, and Nicholas Colella.

40.     "**Class List(s)**" means, individually or collectively, the Class List(s) provided by Defendants Community Health, Imagine360, Intellihartx, Brightline, NationsBenefits, and non-defendant Hatch Bank, to the Settlement Administrator. The Class List is a list of the Settlement Class members' names and email addresses and/or postal addresses.

41.     "**Class Representatives**" means the Plaintiffs.

42.     "**Complaints**" means all complaints in any jurisdiction filed against any of Defendant(s) and/or the Released Parties and "**Consolidated Complaints**" means the consolidated class actions filed in the Tracks 1-4 in this Action.

43.     "**Court**" means the United States District Court for the Southern District of Florida and the Judge(s) assigned to the Action.

44.     "**Customer**" or "**Customers**" means each and every entity that directly or indirectly provided Settlement Class members' Private Information to a Defendant or a Fortra Customer that was subject to unauthorized access or acquisition as a result of the Data Incident.

45.     "**Dark Web Monitoring**" means the CyEx Identity Defense Plus monitoring product that all Settlement Class Members, excluding Brightline Settlement Subclass Members

7

who elected to receive credit monitoring under the terms of the Brightline Settlement, may elect as a Settlement Class Member Benefit under the Settlement. Dark Web Monitoring will include: (i) real time authentication alerts; (ii) dark web scanning; (iii) high risk transaction monitoring; (iv) wallet protection; (v) victim assistance;  and (vi) customer support.

46.    "**Data Incident**" means the unauthorized access to or acquisition of the Private Information that took place on or about January 30, 2023, as a result of the unauthorized access to Fortra's GoAnywhere MFT platform.

47.    "**Defendant Aetna**" means Aetna Inc., Aetna Life Insurance Company, Aetna Corporate Services LLC, Aetna International LLC, Aetna Health Inc., Aetna Health Management, Inc., and Aetna Resources LLC, collectively.

48.    "**Defendant Aetna's Counsel**" means John T. Mills and Joseph Salvo of Gordon Rees Scully Mansukhani, LLP.

49.    "**Defendant Brightline**" means Brightline, Inc.

50.    "**Defendant Brightline's Counsel**" means Charles Spalding, Jr. and Elizabeth Adler of King & Spalding LLP.

51.    "**Defendant Community Health**" means Community Health Systems, Inc. and CHSPSC, LLC, collectively.

52.    "**Defendant Community Health's Counsel**" means Jonathan Harris of Jackson Lewis P.C.

53.    "**Defendant Elevance Health**" means Elevance Health, Inc. and Anthem Insurance Companies, Inc. collectively.

54.    "**Defendant Elevance Health's Counsel**" means Darren Craig and Kandi Hidde of Frost Brown Todd LLP.

55.     "**Defendant Fortra**" means Fortra, LLC.

56.     "**Defendant Fortra's Counsel**" means Lisa Ghannoum and Gilbert Keteltas of Baker & Hosteler LLP.

57.     "**Defendant Imagine360**" means Imagine360, LLC.

58.     "**Defendant Imagine360's Counsel**" means Richard Haggerty of Mullen Coughlin LLC.

59.     "**Defendant Intellihartx**" means IntelliHARTx, LLC.

60.     "**Defendant Intellihartx's Counsel**" means John T. Mills and Joseph Salvo of Gordon Rees Scully Mansukhani, LLP.

61.     "**Defendant NationsBenefits**" means NationsBenefits LLC and NationsBenefits Holdings LLC, collectively.

62.     "**Defendant NationsBenefits' Counsel**" mean John T. Mills and Joseph Salvo of Gordon Rees Scully Mansukhani, LLP.

63.     "**Defendant Santa Clara**" means Santa Clara County Health Authority d/b/a Santa Clara Family Health Plan.

64.     "**Defendant Santa Clara's Counsel**" means Jennifer McLoone of Shook Hardy & Bacon, LLP, and John T. Mills and Joseph Salvo of Gordon Rees Scully Mansukhani, LLP, collectively.

65.     "**Defendants**" means Defendant Aetna, Defendant Brightline, Defendant Community Health, Defendant Elevance Health, Defendant Fortra, Defendant Imagine360, Defendant Intellihartx, Defendant NationsBenefits, and Defendant Santa Clara, collectively.

66.     "**Documented Losses**" means the documented out-of-pocket costs or expenditures that a Settlement Class Member actually incurred that are fairly traceable to the Data Incident, and

that have not already been reimbursed by a third party, that Settlement Class Members may elect under this Settlement, up to $5,000.00.

67. "**Effective Date**" means the day after the entry of the Final Approval Order, provided no objections are made to the Settlement. If there are objections to the Settlement, then the Effective Date shall be the later of: (a) 30 days after entry of the Final Approval Order if objections are filed and overruled and no appeals are taken from the Final Approval Order; or (b) if appeals are taken from the Final Approval Order, then the earlier of 30 days after the last appellate court ruling affirming the Final Approval Order or 30 days after the entry of a dismissal of the appeal.

68. "**Email Notice**" means the email form of Notice of the Settlement, substantially in the form attached hereto as *Exhibits 1* and *5*, distributed to Settlement Class members for which email addresses are provided by Defendants.

69. "**Escrow Account**" means the interest-bearing account to be established by the Settlement Administrator consistent with the terms and conditions described herein.

70. "**Fee and Costs Award**" means the amount of attorneys' fees and reimbursement of Litigation Costs and Expenses awarded by the Court to Class Counsel.

71. "**Final Approval**" means the final approval of the Settlement, which occurs when the Court enters the Final Approval Order, substantially in the form attached to the Motion for Final Approval.

72. "**Final Approval Hearing**" means the hearing held before the Court during which the Court will consider granting Final Approval of the Settlement and the Application for Attorneys' Fees and Costs.

73.     "**Final Approval Order**" means the final order the Court enters granting Final Approval of the Settlement. The Final Approval Order also includes the orders, which may be entered separately, determining the amount of attorneys' fees and costs awarded. The Final Approval Order shall be substantially in the form attached hereto as ***Exhibit 9***.

74.     "**Fortra Customer(s)**" means every entity that used Fortra's GoAnywhere software and their GoAnywhere instance was subject to unauthorized access or acquisition as a result of the Data Incident.

75.     "**Hatch Bank**" means non-defendant Hatch Bank, the San Marcos, California based state chartered financial institution, that was a Fortra Customer and had some of its Customers' information impacted in the Data Incident.

76.     "**Lead Counsel**" means Jeff Ostrow, John Yanchunis, and James Cecchi.

77.     "**Litigation Costs and Expenses**" means costs and expenses incurred by Class Counsel in connection with commencing, prosecuting and settling the Action.

78.     "**Long Form Notice**" means the long form notice of the Settlement, substantially in the form attached hereto as ***Exhibit 3***, that shall be posted on the Settlement Website and shall be available to Settlement Class members by mail upon request to the Settlement Administrator.

79.     "**Motion for Final Approval**" means the unopposed motion that Plaintiffs and Class Counsel shall file with the Court seeking Final Approval of the Settlement.

80.     "**Motion for Preliminary Approval**" means the motion that Plaintiffs shall file with the Court seeking Preliminary Approval of the Settlement.

81.     "**Net Settlement Fund**" means the amount of the funds that remain in the Settlement Fund after funds are paid from or allocated for payment from the Settlement Fund for

the following: (i) Settlement Administration Costs; (ii) Taxes and Tax-Related Expenses; and (iii) Fee and Costs Award as approved by the Court.

82.    "**Non-Profit Residual Recipient**" means Electronic Privacy Information Center, or another non-profit organization(s) as approved by the Court.

83.    "**Notice**" means the Email Notice, Postcard Notice, and Long Form Notice, attached as Exhibits 1-3, 5-6, that Plaintiffs will ask the Court to approve in connection with the Motion for Preliminary Approval.

84.    "**Notice Deadline**" means the last day by which Notice must issue to the Settlement Class Members, which will occur 45 days before the initial scheduled Final Approval Hearing.

85.    "**Notice Program**" means the methods provided for in this Agreement for giving Notice to the Settlement Class and consists of the Email Notice, Postcard Notice, and Long Form Notice.

86.    "**Notice of Deficiency**" means the notice sent by the Settlement Administrator to a Settlement Class member who has submitted an invalid Claim.

87.    "**Objection Period**" means the period that begins the day after the earliest day on which the Notice is first distributed, and that ends no later than 30 days before the initial scheduled Final Approval Hearing.

88.    "**Opt-Out Period**" means the period that begins the day after the earliest day on which the Notice is first distributed, and that ends no later than 30 days before the initial scheduled Final Approval Hearing.

89.    "**Party**" means each of the Plaintiffs and Defendants, and "Parties" means Plaintiffs and Defendants, collectively.

90.    "**Plaintiffs**" means the Aetna Plaintiffs, Brightline Plaintiffs, Community Health Plaintiffs, Elevance Health Plaintiffs, Fortra Plaintiffs, Imagine360 Plaintiff, Intellihartx Plaintiffs, NationsBenefits Plaintiffs, and the Santa Clara Plaintiffs.

a.      "**Aetna Plaintiffs**" means Cindy Rougeau, Beverly Banks, Mark Brewer, Randall Llynn Carter, Tammy Felica Eddie, Nigel Keep, Vincentina Luciano, David Mueller, Jeanne Peffley-Wilson, Roberta Platt, Michelle Ronne, Anthony Tetreault, Gordon Titcomb, Roderick Veazey, Nicholas Venezia, Valaria Venezia, Donna Vogel, and John Vogel.

b.      "**Brightline Plaintiffs**" means Terrance Rosa, Ryan Watson, Donisha Jackson, Kyle Castro, on behalf of himself and his minor children, E.N.C., C.J.C., and E.J.C., Itaunya Milner, on behalf of herself and her minor child, B.G., and Anthony Ndifor.

c.      "**Community Health Plaintiffs**" means Sandra Kuffrey, Angela Martin, Lola Tatum, Glenda G. Corn, Brandy McGowen, Kelly Kern, and Timothy Ferguson.

d.      "**Elevance Health Plaintiffs**" means Arnisha Shepherd and Shontay Marshall.

e.      "**Fortra Plaintiffs**" means Valerie Anderson, Danielle Adams, Theresa Brewerton, Joseph Cardenas, Linda Caudill, Chassidy Holland, Mariana Sanchez Lopez, Jennifer Marino, Melissa Morales, Tara Hartzel Vancosky, and Muhammad Zahid.

f.      "**Imagine360 Plaintiff**" means Dawn McGee.

g.      "**Intellihartx Plaintiffs**" means Lauren Perrone, Victoria Evans, Thomas Kelly, Jose Cabrales, Nicholas Timmons, Kristi McDavitt, Robert Terwilliger, and Edwin Rodriguez.

h.      "**NationsBenefits Plaintiffs**" means Leonore Caliendo, Kimberly Dekenipp, T.E., Renee Fideleff, Leroy Fuss, Teresa Hassan, Jeffery King, Barbara Kosbab,

Lawrence Kosbab, Mary Ann Landries, Pamela Lazaroff, Steven Lazaroff, Kevin McCoy, Sharon McCoy, Catherine Radke, Martin Radke, Dezarae Sanders, Arnisha Marie Shepherd, Ariana Skurauskis, Anthony Skuya, A.T., Michael Wanser, Edward Wilczynski, Sara Jean Williams, Wanda Wilson, and Stephen Wolsey.

       i.     "**Santa Clara Plaintiffs**" means Ariana Skurauskis, Renee Rogers, and Noah Rogers.

91.    "**Private Information**" means for purposes of this Agreement some combination of Settlement Class members' names, addresses, dates of birth, member identification numbers, start and end dates of health plan coverage, health insurance information, Social Security numbers, telephone numbers, employer names, and any other information alleged as being private information in Complaints, that was stored by Fortra Customers within the Fortra GoAnywhere MFT at the time of the Data Incident.

92.    "**Postcard Notice**" means the postcard notice of the Settlement, substantially in the form attached hereto as *Exhibits 2* and *6* that the Settlement Administrator shall disseminate to Settlement Class members by mail.

93.    "**Preliminary Approval**" means the preliminary approval of the Settlement, which occurs when the Court enters the Preliminary Approval Order, substantially in the form submitted with the Motion for Preliminary Approval.

94.    "**Preliminary Approval Order**" means the order preliminarily approving the Settlement and proposed Notice Program, substantially in the form attached hereto as *Exhibit 8*.

95.    "**Releases**" means the releases and waiver set forth in Section XIV of this Agreement.

96.     "**Released Claims**" means any and all actual, potential, filed or unfiled, known or unknown, fixed or contingent, claimed or unclaimed, asserted or unasserted, liquidated or unliquidated, existing or potential, suspected or unsuspected claims, demands, liabilities, rights, suits, causes of action, obligations, damages, punitive, exemplary or multiplied damages, expenses, costs, losses, attorneys' fees and/or obligations, and remedies of any kind or description, whether in law or in equity, accrued or unaccrued, direct, individual or representative, joint or several, of every nature and description whatsoever, based on any federal, state, local, statutory or common law or any other law, against the Released Parties, or any of them, arising out of or relating to actual or alleged facts, transactions, events, matters, occurrences, acts, disclosures, statements, representations, omissions or failures to act that the Releasing Parties had or have, that have been or could have been asserted in the Complaints, or that otherwise relate to or arise from the Data Incident, the operative facts alleged in the Complaints, the alleged access, disclosure and/or acquisition of Settlement Class Members' Private Information in the Data Incident, Fortra Customers' provision of notice to Settlement Class members, Defendants', Defendants' Customers' (as applicable), and/or Fortra's Customers' information security policies and practices as they relate to or arise from the Data Incident, and Defendants', Defendants' Customers' (as applicable), and/or Fortra's Customers' maintenance or storage of Private Information as they relate to or arise from the Data Incident.

97.     "**Released Parties**" means Defendants, Customers, and Fortra's Customers and each and every of their respective past, present, and future direct and indirect heirs, assigns, associates, corporations, investors, owners, parents, subsidiaries, affiliates, divisions, departments, officers, directors, shareholders, members, agents, employees, attorneys, insurers, reinsurers, benefit plans, predecessors, successors, vendors, managers, administrators, executors, and trustees.

a.      "**Aetna Released Parties**" means Aetna and Aetna's Customers and each and every of their respective past, present, and future direct and indirect heirs, assigns, associates, corporations, investors, owners, parents, subsidiaries, affiliates, divisions, departments, officers, directors, shareholders, members, agents, employees, attorneys, insurers, reinsurers, benefit plans, predecessors, successors, vendors, managers, administrators, executors, and trustees.

b.      "**Community Health Released Parties**" means Community Health and Community Health's Customers and each and every of their respective past, present, and future direct and indirect heirs, assigns, associates, corporations, investors, owners, parents, subsidiaries, affiliates, divisions, departments, officers, directors, shareholders, members, agents, employees, attorneys, insurers, reinsurers, benefit plans, predecessors, successors, vendors, managers, administrators, executors, and trustees.

c.      "**Elevance Health Released Parties**" means Elevance Health and Elevance Health's Customers and each and every of their respective past, present, and future direct and indirect heirs, assigns, associates, corporations, investors, owners, parents, subsidiaries, affiliates, divisions, departments, officers, directors, shareholders, members, agents, employees, attorneys, insurers, reinsurers, benefit plans, predecessors, successors, vendors, managers, administrators, executors, and trustees.

d.      "**Fortra Released Parties**" means Fortra and Fortra's Customers and each and every of their respective past, present, and future direct and indirect heirs, assigns, associates, corporations, investors, owners, parents, subsidiaries, affiliates, divisions, officers, directors, shareholders, members, agents, employees, attorneys, insurers, reinsurers, benefit plans, predecessors, successors, vendors, managers, administrators, executors, and trustees.

e.      "**Imagine360 Released Parties**" means Imagine360 and Imagine360's Customers and each and every of their respective past, present, and future direct and indirect heirs, assigns, associates, corporations, investors, owners, parents, subsidiaries, affiliates, divisions, departments, officers, directors, shareholders, members, agents, employees, attorneys, insurers, reinsurers, benefit plans, predecessors, successors, vendors, managers, administrators, executors, and trustees.

f.      "**Intellihartx Released Parties**" means Intellihartx and Intellihartx's Customers and each and every of their respective past, present, and future direct and indirect heirs, assigns, associates, corporations, investors, owners, parents, subsidiaries, affiliates, divisions, departments, officers, directors, shareholders, members, agents, employees, attorneys, insurers, reinsurers, benefit plans, predecessors, successors, vendors, managers, administrators, executors, and trustees.

g.      "**NationsBenefits Released Parties**" means NationsBenefits and NationsBenefits' Customers and each and every of their respective past, present, and future direct and indirect heirs, assigns, associates, corporations, investors, owners, parents, subsidiaries, affiliates, divisions, departments, officers, directors, shareholders, members, agents, employees, attorneys, insurers, reinsurers, benefit plans, predecessors, successors, vendors, managers, administrators, executors, and trustees.

h.      "**Santa Clara Released Parties**" means Santa Clara and the County of Santa Clara and each and every of their respective past, present, and future direct and indirect heirs, assigns, associates, corporations, investors, owners, parents, subsidiaries, affiliates, divisions, departments, officers, directors, shareholders, members, agents, employees, attorneys, insurers,

reinsurers, benefit plans, predecessors, successors, vendors, managers, administrators, executors, and trustees.

98.     "**Releasing Parties**" means Plaintiffs and Settlement Class Members and each and every of their respective past, present, and future heirs, beneficiaries, conservators, executors, estates, administrators, assigns, agents, accountants, financial and other advisors, and any other representatives of any of these persons and entities. Releasing Parties includes each of the defendant-specific Releasing Parties defined as:

a.     "**Aetna Releasing Parties**" means Aetna Plaintiffs and Aetna Settlement Subclass Members and each and every of their respective past, present, and future heirs, beneficiaries, conservators, executors, estates, administrators, assigns, agents, accountants, financial and other advisors, and any other representatives of any of these persons and entities.

b.     "**Brightline Releasing Parties**" means Brightline Plaintiffs and Brightline Settlement Subclass Members and each and every of their respective past, present, and future heirs, beneficiaries, conservators, executors, estates, administrators, assigns, agents, accountants, financial and other advisors, and any other representatives of any of these persons and entities.

c.     "**Community Health Releasing Parties**" means Community Health Plaintiffs and Community Health Settlement Subclass Members and each and every of their respective past, present, and future heirs, beneficiaries, conservators, executors, estates, administrators, assigns, agents, accountants, financial and other advisors, and any other representatives of any of these persons and entities.

d.     "**Elevance Health Releasing Parties**" means Elevance Health Plaintiffs and Elevance Health Settlement Subclass Members and each and every of their respective past, present, and future heirs, beneficiaries, conservators, executors, estates, administrators, assigns,

agents, accountants, financial and other advisors, and any other representatives of any of these persons and entities.

e.       "**Fortra Releasing Parties**" means Fortra Plaintiffs and all Settlement Class Members and each and every of their respective past, present, and future heirs, beneficiaries, conservators, executors, estates, administrators, assigns, agents, accountants, financial and other advisors, and any other representatives of any of these persons and entities.

f.       "**Hatch Releasing Parties**" means Hatch Settlement Subclass Members and each and every of their respective past, present, and future heirs, beneficiaries, conservators, executors, estates, administrators, assigns, agents, accountants, financial and other advisors, and any other representatives of any of these persons and entities.

g.       "**Imagine360 Releasing Parties**" means Imagine360 Plaintiffs and Imagine360 Settlement Subclass Members and each and every of their respective past, present, and future heirs, beneficiaries, conservators, executors, estates, administrators, assigns, agents, accountants, financial and other advisors, and any other representatives of any of these persons and entities.

h.       "**Intellihartx Releasing Parties**" means Intellihartx Plaintiffs and Intellihartx Settlement Subclass Members and each and every of their respective past, present, and future heirs, beneficiaries, conservators, executors, estates, administrators, assigns, agents, accountants, financial and other advisors, and any other representatives of any of these persons and entities.

i.       "**NationsBenefits Releasing Parties**" means NationsBenefits Plaintiffs and NationsBenefits Settlement Subclass Members and each and every of their respective past, present, and future heirs, beneficiaries, conservators, executors, estates, administrators, assigns, agents,

accountants, financial and other advisors, and any other representatives of any of these persons and entities.

        j.     "**Santa Clara Releasing Parties**" means Santa Clara Plaintiffs and Santa Clara Settlement Subclass Members and each and every of their respective past, present, and future heirs, beneficiaries, conservators, executors, estates, administrators, assigns, agents, accountants, financial and other advisors, and any other representatives of any of these persons and entities.

99.    "**Request for Exclusion**" means a written communication by or on behalf of a Settlement Class member in which he or she requests to be excluded from the Settlement Class in the form and manner provided for in the Notice.

100.    "**Residual Settlement Fund**" means any funds that remain in the Net Settlement Fund after Cash Payments have been distributed and the time for cashing and/or redeeming Cash Payments has expired. The Residual Settlement Fund will be sent to one or more Non-Profit Residual Recipient(s).

101.    "**Settlement Administrator**" means Epiq Class Action & Claims Solutions, Inc. or Epiq.

102.    "**Settlement Administration Costs**" means all costs and fees of the Settlement Administrator incurred in the administration of this Settlement, including, without limitation, all expenses or costs associated with providing Notice to the Settlement Class, locating Settlement Class members, performing National Change of Address search(es) and/or skip tracing, processing claims, determining the eligibility of any person to be a Settlement Class member, and administering, calculating and distributing the Settlement Fund to Settlement Class Members. Settlement Administration Costs also includes all reasonably third-party fees and expenses incurred by the Settlement Administrator in administering the terms of this Agreement.

103.    "**Settlement Class**" means all living individuals residing in the United States who were sent a notice of the Data Incident indicating their Private Information may have been impacted in the Data Incident. Excluded from the Settlement Class are: (1) all persons who are directors and officers of Defendants, or their respective subsidiaries and affiliated companies; (2) governmental entities; (3) the Judge assigned to the Action, that Judge's immediate family, and Court staff; and (4) all Settlement Class Members who submit a valid Request for Exclusion prior to the Opt-Out Deadline. All members of the Settlement Class are also members of the Fortra Settlement Subclass. The Settlement Class includes all of the following Settlement Subclasses:

a.    "**Aetna Settlement Subclass**" means all living individuals residing in the United States who were sent a notice of the Data Incident from, or on behalf of, Defendant Aetna indicating their Private Information may have been impacted in the Data Incident.

b.    "**Brightline Settlement Subclass**" means all living individuals residing in the United States whose were sent a notice of the Data Incident from, or on behalf of, Defendant Brightline indicating their Private Information may have been impacted in the Data Incident.

c.    "**Community Health Settlement Subclass**" means all living individuals residing in the United States who were sent a notice of the Data Incident from, or on behalf of, Defendant Community Health indicating their Private Information may have been impacted in the Data Incident.

d.    "**Elevance Health Settlement Subclass**" means all living individuals residing in the United States who were sent a notice of the Data Incident from, or on behalf of, Defendant Elevance Health indicating their Private Information may have been impacted in the Data Incident.

e.      "**Fortra Settlement Subclass**" means all living individuals residing in the United States who were sent a notice of the Data Incident indicating their Private Information may have been impacted in the Data Incident. The Fortra Settlement Subclass is comprised of all members of the Settlement Class, including the NationsBenefits Settlement Subclass, the Aetna Settlement Subclass, the Brightline Settlement Subclass, Community Health Settlement Subclass, Elevance Health Settlement Subclass, Imagine360 Settlement Subclass, Intellihartx Settlement Subclass, Santa Clara Settlement Subclass, and Hatch Bank Settlement Subclass.

f.      "**Hatch Bank Settlement Subclass**" means all living individuals residing in the United States who were sent a notice of the Data Incident from, or on behalf of, Hatch Bank indicating their Private Information may have been impacted in the Data Incident.

g.      "**Imagine360 Settlement Subclass**" means all living individuals residing in the United States who were sent a notice of the Data Incident from, or on behalf of, Defendant Imagine360 indicating their Private Information may have been impacted in the Data Incident.

h.      "**Intellihartx Settlement Subclass**" means all living individuals residing in the United States who were sent a notice of the Data Incident from, or on behalf of, Defendant Intellihartx indicating their Private Information may have been impacted in the Data Incident.

i.      "**NationsBenefits Settlement Subclass**" means all living individuals residing in the United States who were sent a notice of the Data Incident from, or on behalf of, Defendant NationsBenefits indicating their Private Information may have been impacted in the Data Incident.

j.      "**Santa Clara Settlement Subclass**" means all living individuals residing in the United States who were sent a notice of the Data Incident from, or on behalf of, Defendant Santa Clara indicating their Private Information may have been impacted in the Data Incident.

104.   "**Settlement Class Member**" means any member of the Settlement Class who has not opted-out of the Settlement.

105.   "**Settlement Class member**" means all members of the Settlement Class.

106.   "**Settlement Class Member Benefit**" means the Cash Payment and/or Dark Web Monitoring made available for Settlement Class members to Claim in the Settlement.

107.   "**Settlement Fund**" means the non-reversionary sum of $20,000,000.00 to be paid by or on behalf of Defendants pursuant to Section V and VI herein, including any interest accrued thereon after payment. This payment is the limit and extent of the monetary obligations of Defendants and each entity which is controlled by, controlling, or under common control with Defendants and each and every of their respective past, present, and future direct and indirect heirs, assigns, associates, corporations, investors, owners, parents, subsidiaries, affiliates, divisions, departments, officers, directors, shareholders, members, agents, servants, employees, partners, attorneys, insurers, reinsurers, benefit plans, predecessors, successors, vendors, managers, administrators, executors, and trustees, with respect to this Agreement and the settlement of this matter.

108.   "**Settlement Subclasses**" means the Aetna Settlement Subclass, Brightline Settlement Subclass, Community Health Settlement Subclass, Elevance Health Settlement Subclass, Fortra Settlement Subclass, Hatch Bank Settlement Subclass, Imagine360 Settlement Subclass, Intellihartx Settlement Subclass, NationsBenefits Settlement Subclass, and Santa Clara Settlement Subclass, collectively.

109.   "**Settlement Website**" means the website the Settlement Administrator will establish as a means for Settlement Class members to submit Claim Forms and obtain notice and information about the Settlement, including hyperlinked access to this Agreement, the Preliminary

Approval Order, Long Form Notice, Claim Form, Motion for Final Approval, Application for Attorneys' Fees and Costs, and Final Approval Order, as well as other documents as the Parties agree to post or the Court orders posted. The Settlement Website shall remain online and operable for at least six months after Final Approval.

110.   "**Spoke-Defendants**" means Defendants NationsBenefits, Aetna, Community Health, Elevance Health, Brightline, Imagine260, Intellihartx, and Santa Clara.

111.   "**Taxes and Tax-Related Expenses**" means any and all applicable taxes, duties, and similar charges imposed by a government authority (including any estimated taxes, interest or penalties) arising in any jurisdiction, if any, with respect to the income or gains earned by or in respect of the Settlement Fund, including, without limitation, any taxes that may be imposed upon Defendants with respect to any income or gains earned by or in respect of the Settlement Fund for any period while it is held in the Settlement Fund.

112.   "**Valid Claim**" means a Claim Form submitted by a Settlement Class Member that is: (a) submitted in accordance with the provisions of the Settlement; (b) accurately, fully, and truthfully completed and executed, with all of the information requested in the Claim Form, by a Settlement Class Member; (c) signed physically or by e-signature by a Settlement Class Member personally, subject to the penalty of perjury; (d) returned via mail and postmarked by the Claim Form Deadline, or, if submitted online, submitted by 11:59 p.m. Eastern time on the Claim Form Deadline; and (e) determined to be valid by the Settlement Administrator. The Settlement Administrator may require additional information from the Claimant to validate the Claim, including, but not limited to, answers related to questions regarding the validity or legitimacy of the physical or e-signature. Failure to respond to the Settlement Administrator's Notice of Deficiency may result in a determination that the Claim is not a Valid Claim.

III.     **Settlement Fund**

113.    Within 15 days of entry of the Preliminary Approval Order, Defendants shall fund or cause to be funded the initial portion of the Settlement Fund as follows: (1) Defendant Fortra shall pay or cause to be paid the initial sum of $2,450,000.00; (2) Defendant NationsBenefits shall pay or cause to be paid the initial sum of $1,450,000.00; (3) Defendant Community Health shall pay or cause to be paid the initial sum of $712,500.00; (4) Defendant Intellihartx shall pay or cause to be paid the initial sum of $237,500.00; (5) Defendant Imagine360 shall pay or cause to be paid the initial sum of $100,000.00; and (6) Defendant Elevance Health shall pay or cause to be paid the initial sum of $50,000.00.

114.    Within 15 days of the Effective Date, Defendants shall fund or cause to be funded the remaining amount of the Settlement Fund as follows: (1) Defendant Fortra shall pay or cause to be paid the additional sum of $7,350,000.00; (2) Defendant NationsBenefits shall pay or cause to be paid the additional sum of $4,350,000.00; (3) Defendant Community Health shall pay or cause to be paid the additional sum of $2,137,500.00; (4) Defendant Intellihartx shall pay or cause to be paid the additional sum of $712,500.00; (5) Defendant Imagine360 shall pay or cause to be paid the additional sum of $300,000.00; and (6) Defendant Elevance Health shall pay or cause to be paid the additional sum of $150,000.00.

115.    The respective payment amounts above are the limit and extent of the monetary obligations of Defendants and each entity which is controlled by, controlling or under common control with Defendants and each and every of their respective past, present, and future direct and indirect heirs, assigns, associates, corporations, investors, owners, parents, subsidiaries, affiliates, divisions, departments, officers, directors, shareholders, members, agents, servants, employees, partners, attorneys, insurers, reinsurers, benefit plans, predecessors, successors, managers,

administrators, executors, and trustees, with respect to this Agreement and the settlement of this matter.

116.    The funds in the Escrow Account shall be deemed a "qualified settlement fund" within the meaning of United States Treasury Reg. § 1.468B-l at all times since creation of the Escrow Account. The Settlement Administrator, within the meaning of United States Treasury Reg. § 1.468B-l, shall be responsible for filing tax returns and any other tax reporting for or in respect of the Settlement Fund and paying from the Settlement Fund any Taxes and Tax-Related Expenses owed with respect to the Settlement Fund. Defendants, Defendants' insurers and reinsurers, Defendants' Counsel, Plaintiffs, and Class Counsel shall have no liability or responsibility for any of the Taxes or Tax-Related Expenses. The Escrow Account shall indemnify and hold Defendants, Defendants' insurers and reinsurers, Defendants' Counsel, Plaintiffs, and Class Counsel harmless for all taxes (including, without limitation, taxes payable by reason of any such indemnification).

117.    The Settlement Fund shall be in an interest-bearing account. All interest earned on the Settlement Fund shall be for the benefit of the Settlement Class.

118.    The Settlement Fund shall be deemed to be in the custody of the Court and shall remain subject to the jurisdiction of the Court until such time as the entirety of the Settlement Fund is distributed pursuant to this Agreement or, in the event this Agreement is terminated in accordance with its terms, the balance returned to those who paid the Settlement Fund.

119.    Any amount remaining in the Residual Settlement Fund shall be paid to the Non-Profit Residual Recipient in accordance with the terms of the Agreement. No amounts may be withdrawn from the Settlement Fund unless expressly authorized by this Agreement or approved by the Court.

120.    The Parties and their respective counsel have made no representation or warranty

with respect to the tax treatment by Plaintiffs or any Settlement Class member of any payment or transfer made pursuant to this Agreement or derived from or made pursuant to the Settlement Fund. Plaintiffs and Settlement Class Members shall be solely responsible for the federal, state, and local tax consequences to him, her or it of the receipt of funds from the Settlement Fund pursuant to this Agreement.

**IV.    Certification of the Settlement Class**

121.    In the Motion for Preliminary Approval, Plaintiffs shall propose and request to the Court that the Settlement Class, inclusive of each Settlement subclass, be certified for Settlement purposes only. Defendants agree solely for purposes of the Settlement provided for in this Agreement, and the implementation of such Settlement, that this case shall proceed as a class action; provided however, that if a Final Approval Order is not issued, then any certification shall be null and void and, for the avoidance of doubt, Defendants shall retain all rights to object to any future requests to certify a class. Plaintiffs and Class Counsel shall not reference this Agreement in support of any subsequent motion for class certification of any class in the Action.

**V.    Settlement Class Member Benefits (Excluding the Brightline Settlement Subclass)**

122.    To avoid double recovery of Brightline Settlement Subclass members who will receive compensation for harm alleged to be caused by the Data Incident, the Settlement Member Benefit provisions of Section V do not apply to the Brightline Settlement Subclass, whose available Settlement Class Member Benefits are discussed in Section VI.

123.    When submitting a Valid Claim, Settlement Class Members, excluding Brightline Settlement Subclass Members, must choose either Cash Payment A - Documented Losses or Cash Payment – Alternative Cash Payment. Additionally, all Settlement Class Members, excluding the Brightline Settlement Subclass, may also elect to receive one year of Dark Web Monitoring in

accordance with the terms of this Paragraph. Cash Payment B – Alternative Cash Payments will be subject to a *pro rata* (a) increase from the Net Settlement Fund if the value of all Valid Claims is insufficient to exhaust the entire Net Settlement Fund or (b) decrease from the Net Settlement Fund if the value of all Valid Claims exhausts the amount of the Net Settlement Fund. For purposes of calculating the *pro rata* increase or decrease, the Settlement Administrator must distribute the funds in the Net Settlement Fund first for payment of Dark Web Monitoring, then for Cash Payment A – Documented Losses, and then for Cash Payment B – Alternative Cash Payments. Any *pro rata* increases or decreases to Cash Payment B – Alternative Cash Payments will be on an equal percentage basis. If a Settlement Class Member does not submit a Valid Claim, the Settlement Class Member will release his or her claims without receiving a Settlement Class Member Benefit.

### a.      Cash Payment A – Documented Losses

Settlement Class Members, excluding the Brightline Settlement Subclass, may submit a claim for reimbursement of upon presentment of Documented Losses arising from the Data Incident, up to a maximum of $5,000.00. Documented Losses are unreimbursed costs or expenditures incurred by a Settlement Class Member that are fairly traceable to the Data Incident including, without limitation, the following: (i) unreimbursed costs, expenses, losses or charges incurred a result of identity theft or identity fraud, falsified tax returns, or other misuse of a Settlement Class Member's personal information; (ii) costs incurred on or after January 30, 2023, associated with purchasing or extending additional credit monitoring or identity theft protection services and/or accessing or freezing/unfreezing credit reports with any credit reporting agency; and (iii) other miscellaneous expenses incurred related to any Documented Losses such as notary, fax, postage, copying, mileage, and long-distance telephone charges.

Settlement Class Members who elect to submit a claim for reimbursement for Documented Losses must provide to the Settlement Administrator the information required to evaluate the Claim, including: (1) the Settlement Class Member's name and current address; (2) documentation supporting their claim; (3) a brief description of the documentation describing the nature of the loss, if the nature of the loss is not apparent from the documentation alone; and (4) whether the Settlement Class Member has been reimbursed for the loss by another source. Documentation supporting Documented Losses can include receipts or other documentation not "self-prepared" by the Settlement Class Member that documents the costs incurred. "Self-prepared" documents such as handwritten receipts are, by themselves, insufficient to receive reimbursement, but can be considered to add clarity to or support other submitted documentation. Settlement Class Members shall not be reimbursed for Documented Losses if they have already been reimbursed for the same out-of-pocket losses by another source, including compensation provided in connection with the identity protection and credit monitoring services offered as part of the notification letter provided by Defendant(s) or otherwise.

The Settlement Administrator shall verify that each person who submits a Claim is a Settlement Class member. The Settlement Administrator shall have the sole discretion and authority to determine whether and to what extent documentation for Documented Losses reflects valid Documented Losses actually incurred that are fairly traceable to the Data Incident, but may consult with Class Counsel and Defendants' Counsel in making individual determinations. In assessing what qualifies as "fairly traceable," the Parties agree to instruct the Settlement Administrator to consider (i) whether the timing of the loss occurred on or after January 30, 2023; and/or (ii) whether the Private Information used to commit identity theft or fraud consisted of the same type of Private Information that was potentially impacted as a result of the Data Incident as

to the Defendant with which the Settlement Class Member was affiliated. The Settlement Administrator is authorized to contact any Settlement Class Member (by e-mail, telephone, or U.S. mail) to seek clarification regarding a submitted claim prior to making a determination as to its validity.

### b.      Cash Payment B – Alternative Cash Payment

In lieu of a Claim for Cash Payment A - Documented Losses above, all Settlement Class Members, excluding Brightline Settlement Subclass Members, may submit a claim for Cash Payment B – Alternative Cash Payment, which is a cash payment in the estimated amount of $85.00.

### c.      Dark Web Monitoring

In addition to a claim for Cash Payment A - Documented Losses or Cash Payment B – Alternative Cash Payment, all Settlement Class Members, excluding the Brightline Settlement Subclass, may make a Claim for one year of Dark Web Monitoring.

## VI.      Settlement Class Member Benefits for Brightline Settlement Subclass Members Only

124.      In light of the Brightline Settlement, and to avoid impermissible double recovery for injuries alleged by members of the Brightline Settlement Subclass, Brightline Settlement Subclass Members have the opportunity to receive Settlement Class Member Benefits under Section VI only to the extent that they have not been fully compensated for their injuries under the Brightline Settlement. Some eligible Brightline Settlement Subclass Members may only elect Cash Payment A – Documented Losses (to the extent described herein), while others may elect Cash Payment A – Documented Losses or Cash Payment B – Alternative Cash Payment. Cash Payment B – Alternative Cash Payments will be subject to the same *pro rata* adjustments as described in Section V. Additionally, some eligible Brightline Settlement Subclass Class Members may also

elect one year of Dark Web Monitoring.

125.    Brightline Settlement Subclass Members will not be deemed to have been fully compensated by the Brightline Settlement, and will be eligible to make a Claim for Settlement Class Member Benefits as provided by this section, if they: (1) did not make a claim under the Brightline Settlement; (2) opted-out of the Brightline Settlement; (3) elected to receive documented losses under Cash Payment A of the Brightline Settlement, and the documented losses exceeded the amount of compensation received under the Brightline Settlement; or (4) elected to receive Cash Payment B (flat payment) under the Brightline Settlement, but have incurred documented losses after the date their claim was filed under the Brightline Settlement. Brightline Settlement Class Members who elected to receive Cash Payment B under the Brightline Settlement and do not have documented losses that occurred after the date that their Brightline Settlement Claim Form was filed, are deemed to have been fully compensated for their losses and are not eligible to receive additional compensation under this Agreement.

126.    Eligible Brightline Settlement Subclass Members may elect the following Settlement Class Member Benefits:

a.    **Cash Payment A – Documented Losses for Excess Documented Losses**

Brightline Settlement Subclass Members may submit a claim for a Documented Losses under this section for up to $5,000.00 per Brightline Settlement Subclass Member upon presentment of Documented Losses related to the Data Incident that are in excess of the amounts received under Cash Payment A (documented losses) from the Brightline Settlement ("Excess Documented Loss Payment"). Brightline Settlement Subclass Members who elected a Cash Payment B under the Brightline Settlement, may only submit a claim for a Cash Payment under this section upon presentment of Documented Losses up to $5,000 per Brightline Settlement

Subclass Member related to the Data Incident for Documented Losses incurred after the date that their Brightline Settlement Claim was filed. To receive an Excess Documented Loss Payment, a Brightline Subclass Member must elect Cash Payment A - Documented Losses on the Claim Form attesting under penalty of perjury to incurring Documented Losses in excess of compensation received under the Brightline Settlement.

Brightline Settlement Subclass Members will be required to submit reasonable documentation demonstrating the compensation received under the Brightline Settlement, and documentation supporting the excess losses, which means documentation contemporaneously generated or prepared by a third party for the Brightline Settlement Subclass Member supporting a claim for expenses paid. Non-exhaustive examples of reasonable documentation include telephone records, correspondence including emails, or receipts. Except as expressly provided herein, personal certifications, declarations, or affidavits from the Brightline Settlement Subclass Member do not constitute reasonable documentation but may be included to provide clarification, context, or support for other submitted reasonable documentation. Brightline Settlement Subclass Members shall not be reimbursed for expenses if they have been reimbursed for the same expenses by another source, including compensation provided in connection with the credit monitoring and identity theft protection product offered as part of the notification letter provided by Defendants or otherwise. If a Brightline Settlement Class Member does not submit reasonable documentation supporting excess loss, or if their Claim is rejected by the Settlement Administrator for any reason, and the Settlement Class Member fails to cure his or her Claim, the Claim will be rejected and the Brightline Settlement Subclass Member's Claim will be rejected and no additional compensation will be received.

  b.  **Cash Payment B – Alternative Cash Payment**

In lieu of a Claim for Cash Payment A – Documented Losses, only Brightline Settlement Subclass Members who did not submit a claim under the Brightline Settlement may file a Claim for Cash Payment B – Alternative Cash Payment, which is an cash payment in the estimated amount of $85.00.

  c.  **Dark Web Monitoring**

In addition to Cash Payment A – Documented Losses for Excess Documented Losses or Cash Payment B – Alternative Cash Payment, as applicable, Brightline Settlement Class Members who did not make a claim for Credit Monitoring (as defined in the Brightline Settlement Agreement), may make a Claim for one year of Dark Web Monitoring.

## VII. <u>Confirmatory Discovery</u>

127. Prior to Final Approval, Defendants Fortra, NationsBenefits, Intellihartx, Imagine360, and Community Health will each provide Class Counsel with an attestation regarding the security measures that they each implemented following the Data Incident. The costs of any such security measures on the part of Defendants shall be fully borne by them, and under no circumstances will such costs be deducted from the Settlement Fund. The declarations provided by Defendants shall be treated as confidential and cannot be used for any purpose other than enforcement of this Settlement Agreement. Nothing about this Section VII shall create any rights to any present or future contractual or equitable remedy(ies) requiring any Defendant(s) to make or maintain any particular security processes or procedures in the future.

## VIII. <u>Settlement Approval</u>

128. Plaintiffs will file their Motion for Preliminary Approval no later than April 10, 2025. The Motion for Preliminary Approval shall, among other things, request the Court: (1)

preliminarily approve the terms of the Settlement as being within the range of fair, adequate, and reasonable; (2) provisionally certify the Settlement Class for settlement purposes only; (3) approve the Notice Program set forth herein and approve the form and content of the Notices of the Settlement; (4) approve the Claim Form and Claim Process; (5) approve the procedures for Settlement Class members to opt-out of the Settlement or for Settlement Class Members to object to the Settlement; (6) appoint Epiq as the Settlement Administrator; (7) appoint Jeff Ostrow, John Yanchunis, and James Cecchi as Lead Counsel and Class Counsel and Ben Barnow, Sabita Soneji, Bryan Bleichner, Brian Gudmundson, Stuart Davidson, Ian Sloss Maureen Brady, Benjamin Johns, Mason Barney, William Federman, and Nicholas Colella as Class Counsel for Settlement purposes; (8) stay the Action pending Final Approval of the Settlement; and (9) schedule a Final Approval Hearing for a time and date mutually convenient for the Court, the Parties, Class Counsel, and Defendants' Counsel.

129.    Class Counsel shall provide Defendants' counsel with a draft of the Motion for Preliminary Approval within a reasonable time frame prior to filing same to ensure that there are no requested revisions from Defendants.

**IX.    <u>Settlement Administrator</u>**

130.    The Parties agree that, subject to Court approval, Epiq shall be the Settlement Administrator. The Parties shall jointly oversee the Settlement Administrator. The Settlement Administrator shall fulfill the requirements set forth in this Agreement and the Preliminary Approval Order and the Agreement and comply with all applicable laws, including, but not limited to, the Due Process Clause of the United States Constitution.

131.    The Settlement Administrator shall administer various aspects of the Settlement as described in the next paragraph and perform such other functions as are specified for the Settlement

Administrator elsewhere in this Agreement, including, but not limited to, effectuating the Notice Program, handling the Claim Process, administering the Settlement Fund, and distributing the payments for Documented Losses and/or Cash Payments, and issuing Dark Web Monitoring activation codes to Settlement Class Members who submit Valid Claims.

132.    The Settlement Administrator's duties include the following:

a.    Provide CAFA Notice;

b.    Complete the Court-approved Notice Program by noticing the Settlement Class by Email Notice and/or Postcard Notice and sending out Long Form Notices and paper Claim Forms upon request from Settlement Class members, reviewing Claim Forms, notifying Claimants of deficient Claim Forms using the Notice of Deficiency, and sending Settlement Class Member Benefits to Settlement Class Members who submit a Valid Claim;

c.    Establish and maintain the Settlement Fund and the Escrow Account;

d.    Establish and maintain a post office box to receive opt-out requests from the Settlement Class, objections from Settlement Class members, and Claim Forms;

e.    Establish and maintain the Settlement Website to provide important information and to receive electronic Claim Forms;

f.    Establish and maintain an automated toll-free telephone line for Settlement Class members to call with Settlement-related inquiries, and answer the frequently asked questions of Settlement Class members who call with or otherwise communicate such inquiries;

g.    Respond to any mailed Settlement Class member inquiries;

h.    Process all opt-out requests from the Settlement Class;

i.    Provide weekly reports to Class Counsel and Defendants' Counsel that summarize the number of Claims submitted, Claims approved and rejected, Notice of Deficiency

sent, opt-out requests and objections received that week, the total number of opt-out requests and objections received to date, and other pertinent information;

        j.      In advance of the Final Approval Hearing, prepare a declaration confirming the Notice Program was completed in accordance with the terms of this Agreement and the Preliminary Approval Order, describing how the Notice Program was completed, indicating the number of Claim Forms received, providing the names of each Settlement Class member who timely and properly requested to opt-out from the Settlement Class, indicating the number of objections received, and other information as may be necessary to allow the Parties to seek and obtain Final Approval;

        k.      Distribute, out of the Settlement Fund, Cash Payments by electronic means or by paper check;

        l.      Email Dark Web Monitoring activation codes to all Settlement Class Members who elect Dark Web Monitoring;

        m.      Pay Fee Award and Costs to Lead Counsel, as approved by the Court, out of the Settlement Fund;

        n.      Pay Settlement Administration Costs out of the Settlement Fund following approval by Lead Counsel;

        o.      Pay any Residual Funds to the Court-approved Non-Profit Residual Recipient; and

        p.      Any other Settlement administration function at the instruction of Lead Counsel and Defendants' Counsel, including, but not limited to, verifying that the Settlement Fund has been properly administered and that the benefits to the Settlement Class Members who submit Valid Claims have been properly distributed.

X.      **Notice to the Settlement Class, Opt-Out Procedures, and Objection Procedures**

133.    Defendants with Class Lists and non-defendant Hatch Bank will provide the Settlement Administrator with their Class Lists no later than 10 days after entry of the Preliminary Approval Order. To the extent necessary, Defendants with Class Lists and non-defendant Hatch Bank will cooperate with updating their Class Lists to accomplish the Notice Program and otherwise administer the Settlement.

134.    Within 30 days following entry of the Preliminary Approval Order, the Settlement Administrator shall commence the Notice Program provided herein, using the forms of Notice approved by the Court. Where email addresses are available or have been provided for Settlement Class members, Email Notice shall be sent. Where physical addresses have been provided for Settlement Class members, Postcard Notices shall be sent. Settlement Class members whose email addresses are undelivered or bounce back shall be sent a Postcard Notice.

135.    The Email Notice and Postcard Notice shall include, among other information: (a) a description of the material terms of the Settlement; (b) identification of the applicable Settlement Subclass(es) and applicable Released Parties for each Settlement Class Member; (c) how to submit a Claim Form; (d) the Claim Form Deadline; (e) the last day of the Opt-Out Period for Settlement Class Members to opt-out of the Settlement Class; (f) the last day of the Objection Period for Settlement Class Members to object to the Settlement and/or Application for Attorneys' Fees and Costs; (g) the Final Approval Hearing date; and (h) the Settlement Website address at which Settlement Class members may access this Agreement and other related documents and information. The Settlement Administrator shall insert the correct dates and deadlines in the Notices before the Notice Program commences, based upon those dates and deadlines set by the Court in the Preliminary Approval Order. If the date or time for the Final Approval Hearing

changes, the Settlement Administrator shall update the Settlement Website to reflect the new date. No additional notice to the Settlement Class is required if the date or time for the Final Approval Hearing changes.

136.    The Settlement Administrator shall establish the Settlement Website no later than the day before Notice is first initiated. The Settlement Administrator shall ensure the Settlement Website makes available the Court-approved online Claim Form that can be submitted online directly on the Settlement Website or in printable version that can be sent by U.S. Mail to the Settlement Administrator.

137.    The Long Form Notice shall also include a procedure for Settlement Class Members to opt-out of the Settlement Class, and the Email Notice and Postcard Notice shall direct Settlement Class members to review the Long Form Notice to obtain the opt-out instructions. A Settlement Class Member may opt-out of the Settlement Class at any time during the Opt-Out Period by mailing a Request for Exclusion to the Settlement Administrator postmarked no later than the last day of the Opt-Out Period. The Request for Exclusion must be personally signed by the Settlement Class Member and contain the requestor's name, address, telephone number, and email address (if any), and include a statement indicating a request to opt-out of the Settlement Class. Any Settlement Class Member who does not submit a timely and valid Request for Exclusion shall be bound by the terms of this Agreement even if that Settlement Class Member does not submit a Valid Claim.

138.    The Long Form Notice shall also include a procedure for Settlement Class Members to object to the Settlement and/or Application for Attorneys' Fees and Costs, and the Email Notice and Postcard Notice shall direct Settlement Class members to review the Long Form Notice to obtain the objection instructions. Objections must be filed with the Court and sent by

U.S. Mail to the Settlement Administrator, Defendants' Counsel, and Lead Counsel. For an objection to be considered by the Court, the objection must be submitted no later than the last day of the Objection Period, as specified in the Notice, and the Settlement Class Member must not have opted-out of the Settlement Class. If submitted by mail, an objection shall be deemed to have been submitted when posted if received with a postmark date indicated on the envelope if mailed first-class postage prepaid and addressed in accordance with the instructions. If submitted by private courier (e.g., Federal Express), an objection shall be deemed to have been submitted on the shipping date reflected on the shipping label.

139.    For an objection to be valid, the objection must also set forth:

a.    the name of the proceedings;

b.    the objector's full name, mailing address, telephone number, and email address (if any);

c.    all grounds for the objection, accompanied by any legal support for the objection known to the objector or objector's counsel;

d.    a statement of whether the objection applies only to the objector, to a specific subset of the class, or to the entire class;

e.    the identity of all counsel who represent the objector, including any former or current counsel who may be entitled to compensation for any reason related to the objection to the Settlement and/or Application for Attorneys' Fees and Costs;

f.    a statement of whether the objector and/or his/her attorney(s) intend to appear at the Final Approval Hearing;

g.    a statement confirming whether the objector intends to personally appear and/or testify at the Final Approval Hearing;

h.      a list of all persons who will be called to testify at the Final Approval Hearing in support of the objection (if any);

i.      the number of times the objector, the objector's counsel and/or counsel's law firm has objected to a class action settlement within the five years preceding the date of the objection, the caption of each case in which the objection was made, and a copy of any orders related to or ruling upon the prior objections that were issued by the trial and appellate courts in each listed case; and

j.      the objector's signature (an attorney's signature is not sufficient).

Class Counsel and/or Defendants' Counsel may conduct limited discovery on any objector or objector's counsel.

140.    Within seven days after the deadline for opt-out as set forth in this Paragraph and as approved by the Court, the Settlement Administrator shall furnish to counsel for the Parties a complete list of all timely and valid request for exclusions.

141.    The Settlement Administrator shall perform reasonable address traces for those Email Notices or Postcard Notices returned as undeliverable. By way of example, a reasonable tracing procedure would be to run addresses of returned postcards through the Lexis/Nexis database that can be utilized for such purpose. To the extent better addresses are found, the Settlement Administrator should attempt to remail the Postcard Notice.

142.    The Notice Program shall be completed in its entirety no later than 45 days before the initial scheduled Final Approval Hearing.

**XI.    Claim Process and Disbursement of Cash Payments**

143.    The Notice and the Settlement Website will explain to Settlement Class members that they may be entitled to Settlement Class Member Benefits and how to submit a Claim Form.

144.    Claim Forms may be submitted online through the Settlement Website or through U.S. Mail by sending them to the Settlement Administrator at the address designated on the Claim Form.

145.    The Settlement Administrator shall collect, review, and address each Claim Form received to determine whether the Claim Form meets the requirements set forth in this Settlement and is thus a Valid Claim. The Settlement Administrator shall examine the Claim Form before designating the Claim as a Valid Claim to determine that the information on the Claim Form is reasonably complete. The Settlement Administrator shall have the sole authority to determine whether a Claim by any Claimant is a Valid Claim.

146.    To determine the validity of any Claim made by any Claimant for the Brightline Settlement Subclass, the Settlement Administrator shall determine whether the Claimant made a claim under the Brightline Settlement, and if so, shall determine the benefits elected under the Brightline Settlement to determine whether the Brightline Settlement Subclass Claimant's Claim Form meets the requirements set forth in this Settlement and is thus a Valid Claim. The Settlement Administrator shall use all reasonable efforts and means to identify and reject claims from Brightline Settlement Subclass Claimants which are duplicative of claims made under the Brightline Settlement.

147.    The Settlement Administrator shall use all reasonable efforts and means to identify and reject duplicate claims. No Settlement Class Member may submit more than one Claim Form. The Settlement Administrator shall identify any Claim Forms that appear to seek relief on behalf of the same Settlement Class Member. The Settlement Administrator shall use its best efforts to determine whether there is any duplication of Claims, and if there is, contact the Settlement Class Member in an effort to determine which Claim Form is the appropriate one for consideration.

148.    The Settlement Administrator shall exercise, in its discretion, all usual and customary steps to prevent fraud and abuse and take any reasonable steps to prevent fraud and abuse in the Claim Process. The Settlement Administrator may, in its discretion, deny in whole or in part any Claim Form to prevent actual or possible fraud or abuse. By agreement, the Parties can instruct the Settlement Administrator to take whatever steps it deems appropriate if the Settlement Administrator identifies actual or possible fraud or abuse relating to the submission of Claims, including, but not limited to, denying in whole or in part any Claim to prevent actual or possible fraud or abuse. If any fraud is detected or reasonably suspected, the Settlement Administrator and Parties may require information from Claimants or deny Claims, subject to the supervision of the Parties and ultimate oversight by the Court.

149.    Claim Forms that do not meet the terms and conditions of this Settlement shall be promptly rejected by the Settlement Administrator and the Settlement Administrator shall advise the Settlement Class Member of the reason(s) why the Claim Form was rejected. However, if the Claim Form is rejected for containing incomplete or inaccurate information, and/or omitting required information, the Settlement Administrator may send a Notice of Deficiency explaining what information is missing or inaccurate and needed to validate the Claim and have it submitted for consideration. The Settlement Administrator shall notify the Settlement Class Member using the contact information provided in the Claim Form. The additional information and/or documentation can include, for example, answers to questions regarding the validity of the physical or e-signature. A Settlement Class Member shall have until the Claim Form Deadline, or 15 days after the date the Notice of Deficiency is sent via mail and postmarked or via email, whichever is later, to reply to the Notice of Deficiency and provide the required information. If the Settlement Class Member timely and adequately provides the requested information and/or

documentation, the Claim shall be deemed a Valid Claim and processed by the Settlement Administrator. If the Settlement Class Member does not timely and completely provide the requested information and/or documentation, the Settlement Administrator shall reduce or deny the Claim unless Defendants and Class Counsel otherwise agree.

150.    Where a good faith basis exists, the Settlement Administrator may reduce or reject a Claim for, among other reasons, the following:

a.      Failure to fully complete and/or sign the Claim Form;

b.      Illegible Claim Form;

c.      The Claim Form is fraudulent;

d.      The Claim Form is duplicative of another Claim Form;

e.      The Claimant is not a Settlement Class Member;

f.      The Claimant submitted a timely and valid request to opt-out of the Settlement Class.

g.      The person submitting the Claim Form requests that payment be made to a person or entity other than the Claimant for whom the Claim Form is submitted;

h.      Failure to submit a Claim Form by the Claim Form Deadline; and/or

i.      The Claim Form otherwise does not comply with the requirements of this Settlement.

151.    The Settlement Administrator's reduction or denial of a Claim is final, subject to the following dispute resolution procedures:

a.      The Settlement Administrator shall have 30 days from the Claim Form Deadline to approve or reject Claims based on findings of fraud or duplication;

b.      A request for additional information by sending a Notice of Deficiency shall

not be considered a denial for purposes of this Paragraph;

c.     If a Claim is rejected for fraud or duplication, the Settlement Administrator shall notify the Claimant using the contact information provided in the Claim Form. Class Counsel and Defendants' Counsel shall be provided with copies of all such notifications to Claimants; and

d.     The Settlement Administrator's determination as to whether to approve, deny, or reduce a Claim shall be final and binding.

152.    The Settlement Administrator shall provide all information gathered in investigating Claims, including, but not limited to, copies of all correspondence and email and all notes of the Settlement Administrator, the decision reached, and all reasons supporting the decision, if requested by Lead Counsel or Defendants' Counsel. Additionally, Lead Counsel and Defendants' Counsel shall have the right to inspect the Claim Forms and supporting documentation received by the Settlement Administrator at any time upon reasonable notice.

153.    The Parties, Class Counsel, Defendants' Counsel and Defendants' insurers and reinsurers, shall not have any liability whatsoever with respect to (i) any act, omission or determination of the Settlement Administrator, or any of its respective designees or agents, in connection with the administration of the Settlement or otherwise; (ii) the management, investment or distribution of the Settlement Fund; (iii) the formulation, design or terms of the disbursement of the Settlement Fund; (iv) the determination, administration, calculation or payment of any claims asserted against the Settlement Fund; (v) any losses suffered by or fluctuations in the value of the Settlement Fund; or (vi) the payment or withholding of any Taxes and Tax-Related Expenses.

154.    The Settlement Administrator shall indemnify and hold harmless the Parties, Class Counsel, Defendants' Counsel, and Defendants' insurers and reinsurers for (i) any act or omission or determination of the Settlement Administrator, or any of Settlement Administrator's designees

or agents, in connection with the Notice Plan and the administration of the Settlement; (ii) the management, investment or distribution of the Settlement Fund; (iii) the formulation, design or terms of the disbursement of the Settlement Fund; (iv) the determination, administration, calculation or payment of any claims asserted against the Settlement Fund; (v) any losses suffered by, or fluctuations in the value of the Settlement Fund; or (vi) the payment or withholding of any Taxes and Tax-Related Expenses.

155.    No person or entity shall have any claim against Defendants, Defendants' Counsel, Plaintiffs, the Settlement Class, Class Counsel, and/or the Settlement Administrator based on any eligibility determinations, distributions, or awards made in accordance with this Settlement.

156.    No later than 75 days after Final Approval or 30 days after the Effective Date, whichever is later, the Settlement Administrator shall distribute the Settlement Class Member Benefits.

157.    Cash Payments to Settlement Class Members will be made by electronic payment or by paper check. Following Final Approval, the Settlement Administrator will send Settlement Class Members an email to select a form of electronic payment or to receive payment by paper check. In the event a Settlement Class Member does not make an election or there is a problem with issuance of an electronic payment, a paper check will be sent to the Settlement Class Member's last known address. Settlement Class Members shall have 90 days to select their form of payment. Paper checks must be negotiated within 90 days of issuance. In the event the Settlement Administrator is unable to distribute funds to the Settlement Class Members entitled to receive them due to incorrect or incomplete information provided to the Settlement Administrator, the funds shall become residual funds, and such Settlement Class Members shall forfeit their entitlement right to the funds.

158.    In the event there are funds remaining in the Settlement Fund 240 days following the date Settlement Class members are sent an email to select their form of payment, said funds attributable to unclaimed and undeliverable funds shall be treated as residual funds as described in this Section XI.

159.    The Settlement Administrator will send an email to Settlement Class Members with Valid Claims that include an election for Dark Web Monitoring with information on how to enroll in the Dark Web Monitoring, including the activation code.

160.    The Settlement Administrator must first use the funds available in the Settlement Fund (after payment of Settlement Administration Costs and Taxes and Tax-Related Expenses) to make payments for Fee Award and Costs, followed by Valid Claims for Dark Web Monitoring, and followed by Valid Claims for Cash Payments.

161.    No portion of Settlement Fund shall revert or be repaid to Defendants after the Effective Date. To the extent any monies remain in the Residual Settlement Fund more than 150 days after the distribution of Settlement payments to the Settlement Class Members, or 30 days after all reissued Settlement Checks are no longer negotiable, whichever occurs later or as otherwise agreed to by the Parties, any remaining monies shall be distributed as required by state law or to the Non-Profit Residual Recipient.

## XII.   Final Approval Order and Final Judgment

162.    Plaintiffs shall file their Motion for Final Approval of the Settlement, inclusive of the Application for Attorneys' Fees and Costs, no later than 45 days before the initial date set for the Final Approval Hearing. At the Final Approval Hearing, the Court will hear argument on Plaintiffs' Motion for Final Approval of the Settlement including Class Counsel's Application for Attorneys' Fees and Costs. In the Court's discretion, the Court will also hear argument at the Final

Approval Hearing from any Settlement Class Members (or their counsel) who object to the Settlement and/or to the Application for Attorneys' Fees and Costs, provided the objectors submitted timely objections that meet all of the requirements listed in this Agreement.

163.    At or following the Final Approval Hearing, the Court will determine whether to enter the Final Approval Order and final judgment thereon, and whether to grant the Application for Attorneys' Fees and Costs. Such proposed Final Approval Order shall, among other things:

      a.    Determine that the Settlement is fair, adequate and reasonable;

      b.    Finally certify the Settlement Class for settlement purposes only;

      c.    Determine the completed Notice Program satisfies Due Process requirements;

      d.    Bar and enjoin all Releasing Parties from asserting or otherwise pursuing any of the Released Claims at any time and in any jurisdiction, including during any appeal from the Final Approval Order; and retain jurisdiction over the enforcement of the Court's injunctions;

      e.    Release Defendants and the Released Parties from the Released Claims, as specified in Section XIV below; and

      f.    Reserve the Court's continuing and exclusive jurisdiction over the Parties to this Agreement, including Defendants, Plaintiffs, all Settlement Class Members, and all objectors, to administer, supervise, construe, and enforce this Agreement.

## XIII.   Attorneys' Fees and Costs

164.    Lead Counsel shall apply to the Court for an award of attorneys' fees of up to 33.33% of the Settlement Fund, plus reimbursement of costs and expenses. The Fee and Costs Award approved by the Court shall be paid by the Settlement Administrator out of the Settlement Fund by wire transfer to an account designated by Lead Counsel within 20 days of the Effective

Date. Lead Counsel will determine the allocation of Fee and Costs Award between Class Counsel and all other Plaintiffs' Counsel.

165.     This Settlement is not contingent on approval of the request for attorneys' fees, costs, and expenses, and if the Court denies the request or grants amounts less than what was requested, the remaining provisions of the Agreement shall remain in full force and effect.

166.     To the extent applicable, and unless otherwise ordered by the Court, Lead Counsel shall have the sole and absolute discretion to allocate any approved Fee and Costs Award amongst Class Counsel and all other Plaintiffs' counsel and any other attorneys representing Plaintiffs. Defendants and their insurers and reinsurers shall have no liability or other responsibility for allocation of any such attorneys' fees, costs, and expenses.

## XIV.  Releases

167.     Upon the Effective Date, and in consideration of the Settlement relief and other consideration described herein, the Releasing Parties shall be deemed to have, and by operation of the Final Approval Order shall have, fully, finally, and forever released, acquitted, relinquished, and completely discharged Fortra, Fortra's Customers, and one or more of the Customers applicable to the Settlement Class Member, from any and all Released Claims. For avoidance of doubt, the Settlement Class Members' releases shall be as follows:

a.      The Aetna Settlement Subclass shall release the Aetna Released Parties, the NationsBenefits Released Parties, and the Fortra Released Parties.

b.      The Brightline Settlement Subclass shall release the Fortra Released Parties.

c.      The Elevance Health Settlement Subclass shall release the Elevance Health Released Parties, the NationsBenefits Released Parties, and the Fortra Released Parties.

d.      The Community Health Settlement Subclass shall release the Community

Health Released Parties and the Fortra Released Parties.

    e. The Hatch Bank Settlement Subclass shall release the Fortra Released Parties.

    f. The Imagine360 Settlement Subclass shall release the Imagine360 Released Parties and the Fortra Released Parties.

    g. The Intellihartx Settlement Subclass shall release the Intellihartx Released Parties and the Fortra Released Parties.

    h. The NationsBenefits Settlement Subclass shall release the NationsBenefits Released Parties and the Fortra Released Parties.

    i. The Santa Clara Settlement Subclass shall release the Santa Clara Released Parties, the NationsBenefits Released Parties, and the Fortra Released Parties.

  168. The Released Claims include the Release of Unknown Claims. "Unknown Claims" means claims that could have been raised in the Action and/or related to the Released Claims and that Plaintiffs, any Settlement Class Member or any Releasing Party, do not know or suspect to exist which, if known by him, her or it, might affect his, her or its agreement to release the Released Parties or the Released Claims or might affect his, her or its decision to agree, object or not to object to the Settlement. Upon the Effective Date, Plaintiffs, the Settlement Class Members, and any Releasing Party shall be deemed to have, and shall have, expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights and benefits of Section 1542 of the California Civil Code, which provides:

    A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR

OR RELEASED PARTY.

Upon the Effective Date, each of the Releasing Parties shall also be deemed to have, and shall have, waived any and all provisions, rights and benefits conferred by any law(s) of any state, the District of Columbia, or territory of the United States, by federal law(s), or principle of common law, or the law of any jurisdiction outside of the United States, which is/are similar, comparable or equivalent to California Civil Code section 1542 (including, without limitation, California Civil Code § 1798.80, et seq., Montana Code Ann. § 28- 1-1602; North Dakota Cent. Code § 9-13-02; and South Dakota Codified Laws § 20-7-11). The Releasing Parties acknowledge that they may discover facts in addition to or different from those that they now know or believe to be true with respect to the subject matter of the Release, but that it is their intention to fully, finally and forever settle and release the Released Claims, including but not limited to any Unknown Claims that they may have, as that term is defined in this Paragraph.

169.    The Releasing Parties agree that, once this Agreement is executed, they will not, directly or indirectly, individually or in concert with another, maintain, cause to be maintained, or voluntarily assist in maintaining any further demand, action, claim, lawsuit, arbitration, or similar proceeding, in any capacity whatsoever, based on any of the Released Claims. It is further agreed that the Settlement may be pleaded as a complete defense to any proceeding subject to this section.

170.    To identify the Released Parties applicable to each Settlement Class Member, the Settlement Administrator shall use the information provided in the Class Lists to identify the name of each of the applicable Released Parties for that Settlement Class Member based on his or her membership in the Settlement Class and one or more applicable Settlement Subclass. Following the Effective Date, the Settlement Administrator shall maintain a list of applicable Settlement Class Members with Released Claims against each Defendant and will provide each Defendant with a

copy of their respective list of Settlement Class Members. Each list shall be conclusive evidence of the Settlement Class Members that have Released Claims for each Defendant.

171.    Upon the Effective Date: (a) this Settlement shall be the exclusive remedy for any and all Released Claims of Plaintiffs and Settlement Class Members; and (b) Plaintiffs and Settlement Class Members stipulate to be and shall be permanently barred and enjoined by Court order from initiating, asserting, or prosecuting all Released Claim, whether on behalf of Plaintiffs, any Settlement Class Member or others, in any jurisdiction, including in any federal, state, or local court or tribunal.

172.    The power to enforce any term of this Settlement is not affected by the releases in this section.

## XV.    **Modification/Termination of Settlement**

173.    The terms and provisions of this Agreement may be amended, modified, or expanded by written agreement of the Parties and approval of the Court; provided, however, that, after entry of the Preliminary Approval Order, the Parties may, by written agreement, effect such amendments, modifications, or expansions of this Agreement and its implementing documents (including all exhibits hereto) without further notice to the Settlement Class or approval by the Court if such changes are consistent with the Preliminary Approval Order and do not materially alter, reduce, or limit the rights of Settlement Class Members under this Agreement.

174.    This Agreement shall be subject to and is expressly conditioned on the occurrence of all of the following events:

a.    Court approval of the Settlement consideration set forth in Section V and VI and the Releases set forth in Section XIV of this Agreement;

b.    The Court has entered the Preliminary Approval Order;

      c.     The Court has entered the Final Approval Order, and all objections, if any, are overruled, and all appeals taken from the Final Approval Order are resolved in favor of Final Approval; and

      d.     The Effective Date has occurred.

175.    If any of the conditions specified in the preceding paragraph are not met, or if the Court otherwise imposes any modification to or condition of approval of the Settlement to which the Parties do not consent, then this Agreement shall be cancelled and terminated.

176.    Additionally, Defendants shall have the sole option to terminate this Agreement if a specified number of Settlement Class members opt-out of the Settlement. The Parties have agreed to that number in a confidential separate agreement. Defendants shall notify Class Counsel and the Court of its intent to terminate this Agreement pursuant to this Paragraph within 10 days after the end of the Opt-Out Period and receipt of the list of Requests for Exclusion from the Settlement Administrator, or the option to terminate shall be considered waived.

177.    In the event this Agreement is terminated or fails to become effective, then this Agreement shall be considered null and void; all of Plaintiffs', Class Counsel's, Defendants, and Defendants' Counsel's obligations under the Settlement shall cease to be of any force and effect; and the Parties shall return to the *status quo ante* in the Action as if the Parties had not entered into this Agreement. The Parties shall further jointly file a status report in the Court seeking to reopen the Action and all papers filed. In such event, all of the Parties' respective pre-Settlement rights, claims, and defenses will be retained and preserved; any discussions, offers, or negotiations associated with this Settlement shall not be discoverable or offered into evidence or used in the Action or any other action or proceeding for any purposes; and the terms and provisions of this Agreement shall not be used in this Action or in any other action or proceeding for any other

purpose, and any order entered by this Court in accordance with the terms of this Agreement shall be treated as vacated, *nunc pro tunc*.

178.    In the event this Agreement is terminated or fails to become effective, all funds in the Settlement Fund shall be promptly returned to Defendants consistent with their respective contributions as described hereinabove. However, Defendants shall have no right to seek from Plaintiffs, Class Counsel, or the Settlement Administrator the Settlement Administration Costs paid or incurred.

## XVI.    No Admission of Liability

179.    This Agreement reflects the Parties' compromise and settlement of disputed claims. This Agreement shall not be construed as or deemed to be evidence of an admission or concession of any point of fact or law. Defendants have denied and continue to deny each of the claims and contentions alleged in the Complaint. Defendants do not admit any liability or wrongdoing of any kind, by this Agreement or otherwise. Defendants have agreed to enter into this Agreement to avoid the further expense, inconvenience, and distraction of burdensome and protracted litigation, and to be completely free of any further claims that were asserted or could possibly have been asserted in the Action and/or related to the Released Claims.

180.    Class Counsel believe the claims asserted in the Action have merit, and they have examined and considered the benefits to be obtained under the proposed Settlement set forth in this Agreement, the risks associated with the continued prosecution of this complex, costly, and time-consuming litigation, and the likelihood of success on the merits of the Action. Class Counsel fully investigated the facts and law relevant to the merits of the claims, conducted discovery, and conducted independent investigation of the alleged claims. Class Counsel concluded that the proposed Settlement set forth in this Agreement is fair, adequate, reasonable, and in the best

interests of the Settlement Class.

181.    This Agreement constitutes a compromise and settlement of disputed claims. No action taken by the Parties in connection with the negotiations of this Agreement shall be deemed or construed to be an admission of the truth or falsity of any claims or defenses heretofore made, or an acknowledgment or admission by any party of any fault, liability, or wrongdoing of any kind whatsoever.

182.    Neither the Settlement, nor any act performed or document executed pursuant to or in furtherance of the Settlement (a) is or may be deemed to be, or may be used as, an admission of, or evidence of, the validity of any claim made by the Plaintiffs or Settlement Class Members, or of any wrongdoing or liability of the Released Parties; or (b) is or may be deemed to be, or may be used as, an admission of, or evidence of, any fault or omission of any of the Released Parties, in the Action or in any proceeding in any court, administrative agency, or other tribunal.

183.    In addition to any other defenses Defendants or the Released Parties may have at law, in equity, or otherwise, to the extent permitted by law, this Agreement may be pleaded as a full and complete defense to and may be used as the basis for an injunction against, any action, suit, or other proceeding that may be instituted, prosecuted, or attempted in breach of this Agreement or the Releases contained herein.

## XVII.  **Miscellaneous Provisions**

184.    ***Confidentiality***. To the extent permitted by ethics rules, the Parties and their counsel shall keep confidential all settlement communications, including communications regarding the negotiation and drafting of this Agreement. This paragraph shall not be construed to limit or impede the Notice requirements contained in this Agreement, nor shall this paragraph be construed to prevent Class Counsel or Defendants' Counsel from notifying or explaining that the Action has

settled or limit the representations that the Parties or their counsel may make to the Court to assist in the Court's evaluation of the Settlement, Preliminary Approval, Final Approval, and any objection to the Settlement's terms. Defendants may also provide information about the Agreement to their Customers, attorneys, members, partners, insurers, brokers, agents, and other persons or entities as required by securities laws, other applicable laws and regulations, and as necessary to effect the Settlement.

185.     *Deadlines*. If any of the dates or deadlines specified herein falls on a weekend or legal holiday, the applicable date or deadline shall fall on the next business day. All reference(s) to "days" in this Agreement shall refer to calendar days unless otherwise specified.

186.     *Gender and Plurals*. As used in this Agreement, the masculine, feminine, or neuter gender, and the singular or plural number, shall each be deemed to include the others whenever the context so indicates.

187.     *Headings*. The headings contained in this Agreement are for reference purposes only and shall not in any way affect the meaning or interpretation of this Agreement.

188.     *Binding Effect*. This Agreement shall be binding upon, and inure to and for the benefit of, the successors and assigns of the Releasing Parties and the Released Parties.

189.     *Cooperation of Parties*. The Parties to this Agreement agree to cooperate in good faith to prepare and execute all documents, seek Court approval, uphold Court approval, and do all things reasonably necessary to complete and effectuate the Settlement described in this Agreement.

190.     *Obligation to Meet and Confer*. Before filing any motion in the Court raising a dispute arising out of or related to this Agreement, the Parties shall consult with each other and certify to the Court that they have met and conferred in an attempt to resolve the dispute.

191.    ***Integration and No Reliance***. This Agreement constitutes a single, integrated written contract expressing the entire agreement of the Parties relative to the subject matter hereof. This Agreement is executed without reliance on any covenant, agreement, representation, or warranty by any Party or any Party's representative other than those expressly set forth in this Agreement. No covenants, agreements, representations, or warranties of any kind whatsoever have been made by any Party hereto, except as provided for herein.

192.    ***No Conflict Intended***. Any inconsistency between the headings used in this Agreement and the text of the paragraphs of this Agreement shall be resolved in favor of the text.

193.    ***Governing Law***. Except as otherwise provided herein, the Agreement shall be construed in accordance with, and be governed by, the laws of the state of Florida, without regard to the principles thereof regarding choice of law.

194.    ***Counterparts***. This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument, even though all Parties do not sign the same counterparts. Original signatures are not required. Any signature submitted through email of a PDF or AdobeSign shall be an original.

195.    ***Jurisdiction***. The Court shall retain jurisdiction over the implementation, enforcement, and performance of this Agreement, and shall have exclusive jurisdiction over any suit, action, proceeding, or dispute arising out of or relating to this Agreement that cannot be resolved by negotiation and agreement by counsel for the Parties. The Court shall also retain jurisdiction over all questions and/or disputes related to the Notice Program, Claims Process, and the Settlement Administrator. As part of the agreement to render services in connection with this Settlement, the Settlement Administrator shall consent to the jurisdiction of the Court for this purpose. The Court shall retain jurisdiction over the enforcement of the Court's injunction barring

and enjoining all Releasing Parties from asserting any of the Released Claims and from pursuing any Released Claims against the Released Parties at any time and in any jurisdiction, including during any appeal from the Final Approval Order.

196.    *Notices*. All notices provided for herein shall be sent by email with a hard copy sent by overnight mail to:

**If to Plaintiffs or Class Counsel**:

Jeff Ostrow
**Kopelowitz Ostrow P.A.**
1 West Las Olas Blvd., Ste. 500
Fort Lauderdale, FL 33301
ostrow@kolawyers.com

John Yanchunis
**Morgan & Morgan P.A.**
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
jyanchunis@forthepeople.com

James Cecchi
**Carella, Byrne, Cecchi,**
**Brody & Agnello, P.C.**
5 Becker Farm Road
Roseland, NJ 07068
jcecchi@carellabyrne.com

**If to Defendants or Defendants' Counsel**:

Lisa Ghannoum
Gilbert Keteltas
**Baker & Hostetler LLP**
127 Public Square, Ste. 2000
Cleveland, OH 44114
lghannoum@bakerlaw.com
gketeltas@bakerlaw.com

*Counsel for Defendant Fortra*

John T. Mills
Joseph Salvo
**Gordon Rees Scully Mansukhani. LLP**

One Battery Park Plaza, 28th Floor
New York, New York 10004
jtmills@grsm.com
jsalvo@grsm.com

*Counsel for Defendants NationBenefits,*
*Aetna, Santa Clara Family Health Plan and Intellihartx*

Jonathan O. Harris
**Jackson Lewis P.C.**
611 Commerce Street
City Space, Ste. 2803
Nashville, Tennessee 37203
Jonathan.harris@jacksonlewis.com

*Counsel for Defendant Community Health*

Richard Haggerty
**Mullen & Coughlin**
309 Fellowship Rd. Ste. 200
Mt. Laurel, New Jersey 08054
rhaggerty@mullen.com

*Counsel for Defendant Imagine360*

The notice recipients and addresses designated above may be changed by written notice. Upon the request of any of the Parties, the Parties agree to promptly provide each other with copies of objections, requests for exclusion, or other filings received as a result of the Notice Program.

197. ***Modification and Amendment***. This Agreement may not be amended or modified, except by a written instrument signed by Lead Counsel and Defendants' Counsel and, if the Settlement has been approved preliminarily by the Court, approved by the Court.

198. ***No Waiver***. The waiver by any Party of any breach of this Agreement by another Party shall not be deemed or construed as a waiver of any other breach, whether prior, subsequent, or contemporaneous, of this Agreement.

199. ***Authority***. Any person executing this Agreement in a representative capacity represents and warrants that he or she is fully authorized to do so and to bind the Party on whose

behalf he or she signs this Agreement to all of the terms and provisions of this Agreement.

200.   ***Agreement Mutually Prepared***. Neither Plaintiffs nor Defendants shall be considered to be the drafter of this Agreement or any of its provisions for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter of this Agreement.

201.   ***Independent Investigation and Decision to Settle***. The Parties understand and acknowledge they: (a) have performed an independent investigation of the allegations of fact and law made in connection with this Action and the Released Claims; and (b) that even if they may hereafter discover facts in addition to, or different from, those that they now know or believe to be true with respect to the subject matter of the Action and the Released Claims as reflected in this Agreement, that will not affect or in any respect limit the binding nature of this Agreement. All Parties recognize and acknowledge they reviewed and analyzed data that they and their experts used to make certain determinations, arguments, and settlement positions. The Parties agree this Settlement is fair, reasonable, and adequate, and will not attempt to renegotiate or otherwise void or invalidate or terminate the Settlement irrespective of what any unexamined data later shows. It is the Parties' intention to resolve their disputes in connection with this Action and the Released Claims pursuant to the terms of this Agreement now and thus, in furtherance of their intentions, the Agreement shall remain in full force and effect notwithstanding the discovery of any additional facts or law, or changes in law, and this Agreement shall not be subject to rescission or modification by reason of any changes or differences in facts or law, subsequently occurring or otherwise.

202.   ***Receipt of Advice of Counsel***. Each Party acknowledges, agrees, and specifically warrants that he, she, or it has fully read this Agreement and the Releases contained herein, received independent legal advice with respect to the advisability of entering into this Agreement

and the Releases, and the legal effects of this Agreement and the Releases, and fully understands the effect of this Agreement and the Releases.

*Signature Pages to Follow*

## SIGNATURES OF THE PARTIES

### *LEAD COUNSEL (for Plaintiffs and the Settlement Class)*

**KOPELOWITZ OSTROW P.A.**

*Jeffrey Ostrow*
Jeffrey Ostrow (Apr 9, 2025 12:16 EDT)

Jeff Ostrow, Esq.

Dated: Apr 9, 2025

**MORGAN & MORGAN**

*John Yanchunis*
John Yanchunis (Apr 9, 2025 12:26 EDT)

John Yanchunis, Esq.

Dated: Apr 9, 2025

**CARELLA, BYRNE, CECCHI, BRODY & AGNELLO, P.C.**

*James*
James Cecchi (Apr 9, 2025 12:25 EDT)

James Cecchi, Esq.

Dated: Apr 9, 2025

## *DEFENDANTS*

**Aetna Inc.**

Signed by:
*Jennifer Corvo*

By: Jennifer Corvo

Title: Managing Senior Counsel

Dated: April 9, 2025 | 2:26 PM PDT

**Aetna Life Insurance Company**

Signed by:
*Jennifer Corvo*

By: Jennifer Corvo

Title: Managing Senior Counsel

Dated: April 9, 2025 | 2:26 PM PDT

**Community Health Systems**

By: _____

Title: _____

Dated: _____

**CHSPSC, LLC**

By: _____

Title: _____

Dated: _____

**Elevance Health, Inc.**

By: _____

Title: _____

Dated: _____

**Anthem Insurance Companies**

By: _____

Title: _____

Dated: _____

**Fortra, LLC**

Kyle Hofmann (Apr 10, 2025 13:36 PDT)

By: Kyle Hofmann

Title: Chief Legal Officer

Dated: Apr 10, 2025

**Imagine360, LLC**

By: _____

Title: _____

Dated: _____

### *DEFENDANTS*

**Aetna Inc.**

**Aetna Life Insurance Company**

By: _____

By: _____

Title: _____

Title: _____

Dated: _____

Dated: _____

**Community Health Systems**

**CHSPSC, LLC**

By: _____

By: _____

Title: _____

Title: _____

Dated: _____

Dated: _____

**Elevance Health, Inc.**

**Anthem Insurance Companies**

*John B. Nicholson*
John B. Nicholson (Apr 10, 2025 13:08 EDT)

*John B. Nicholson*
John B. Nicholson (Apr 10, 2025 13:49 EDT)

By: John B. Nicholson

By: John B. Nicholson

Title: Managing Senior Associate General Counsel

Title: Managing Senior Associate General Counsel

Dated: Apr 10, 2025

Dated: Apr 10, 2025

**Fortra, LLC**

**Imagine360, LLC**

By: _____

By: Troy D Sisum

Title: _____

Title: Chief Legal Officer

Dated: _____

Dated: Apr 9, 2025

62

**Intellihartx, LLC**

DocuSigned by:

*Ray Dziubla*

By: Ray Dziubla

Title: CEO

Dated: April 10, 2025 | 10:16 AM PDT


**NationsBenefits LLC**

By: _____

Title: _____

Dated: _____


**NationsBenefits Holdings, LLC**

By: _____

Title: _____

Dated: _____


**Santa Clara Family Health Plan**

By: _____

Title: _____

Dated: _____

**Intellihartx, LLC**

By: _____

Title: _____

Dated: _____

**NationsBenefits LLC**

Signed by:

*Glenn Parker*

D3082D26FC7340F...

By: Glenn Parker
_____

Title: CEO
_____

Dated: April 9, 2025 | 1:11 PM PDT
_____

**NationsBenefits Holdings, LLC**

Signed by:

*Glenn Parker*

D3082D26FC7340F...

By: Glenn Parker
_____

Title: CEO
_____

Dated: April 9, 2025 | 1:11 PM PDT
_____

**Santa Clara Family Health Plan**

By: _____

Title: _____

Dated: _____

## DEFENDANTS' COUNSEL (as to form only)

**BAKER & HOSTETLER LLP**
*Counsel for Defendant Fortra*

Lisa Ghannoum (Apr 10, 2025 16:22 EDT)

Lisa Ghannoum, Esq.

Dated: Apr 10, 2025

**GORDON REES SCULLY MANSUKHANI, LLP**
*Counsel for Defendants Aetna, NationsBenefits, Santa Clara and Intellihartx*

John Mills (Apr 10, 2025 12:27 EDT)

John Mills, Esq.

Dated: Apr 10, 2025

**JACKSON LEWIS P.C.**
*Counsel for Defendant Community Health*

jonathan harris (Apr 9, 2025 15:19 CDT)

Jonathan Harris, Esq.

Dated: Apr 9, 2025

**MULLEN COUGHLIN LLC**
*Counsel for Defendant Imagine360*

Richard Haggerty (Apr 9, 2025 17:32 EDT)

Richard Haggerty, Esq.

Dated: Apr 9, 2025

**SHOOK HARDY & BACON LLC**
*Counsel for Defendant Santa Clara*

Jennifer McLoone (Apr 10, 2025 10:50 EDT)

Jennifer McLoone, Esq.

Dated: Apr 10, 2025

**FROST BROWN TODD LLP**
*Counsel for Defendant Elevance Health*

Kandi K. Hidde (Apr 9, 2025 17:38 EDT)

Kandi Hidde, Esq.

Dated: Apr 9, 2025

64

# EXHIBIT 1
# (EMAIL NOTICE)

FROM: EMAIL ADDRESS

TO: EMAIL ADDRESS

RE: IN RE FORTRA COURT ORDERED NOTICE OF CLASS ACTION SETTLEMENT

<<Unique ID>>

United States District Court for the Southern District of Florida
*In re Fortra File Transfer Software Data Security Breach Litigation*
Case No. 24-md-03090-RAR

# If your Private Information was impacted in the Fortra Data Incident in January of 2023, you may be entitled to Settlement Class Member Benefits from a Settlement.

*A Court authorized this Notice. This is <u>not</u> a solicitation from a lawyer.*

**You can learn more at: www.XXXXXXXXXXXX.com**

A $20 million settlement has been reached in a class action lawsuit involving Aetna, Brightline, Community Health, Elevance, Fortra, Imagine360, Intellihartx, NationsBenefits, and Santa Clara ("Defendants") related to a Data Incident involving Fortra's GoAnywhere managed file transfer ("MFT") software that occurred in January of 2023. The Defendants and Hatch Bank (who is not a Defendant), all used, directly or indirectly, Fortra's MFT software. The Data Incident involved a criminal attack that may have resulted in the unauthorized access to or acquisition of approximately five million individuals' Private Information, which includes some combination of names, addresses, dates of birth, telephone numbers, member identification numbers, employer names, Social Security numbers, start and end dates of health plan coverage, and health insurance information that were being stored within Defendants' respective instances of the Fortra GoAnywhere MFT at the time of the Data Incident. The impacted individuals are called "Settlement Class members."

The purpose of this Notice is to inform you of the class action and the settlement so you may decide whether to file a Claim Form, opt-out, object, or do nothing.

**Who's Included?** The Settlement Class includes: All living individuals residing in the United States who were sent notice of the Data Incident indicating their Private Information may have been impacted in the Data Incident. You may have received notice of the Data Incident around May 2023.

**Records indicate that you are a Settlement Class member** because your Private Information that was provided to <<INSERT SUBCLASS DEF NAME>> (who was a customer of Fortra, directly or indirectly, and used its file transfer services) was impacted by the Data Incident. This means you are a member of the INSERT SUBCLASS NAME >>.

**What Does the Settlement Provide?** If you are a Settlement Class member, you can file a Claim Form here for the following Settlement Class Member Benefits:

- **<u>Cash Payment A – Documented Losses:</u>** You may submit a Claim Form and provide

reasonable documentation for losses related to the Data Incident for up to $5,000 per Settlement Class Member; **OR**

- **Cash Payment B – Alternative Cash Payment:** Instead of Cash Payment A, without providing documentation, you may submit a Claim Form to receive an alternative cash payment in the estimated amount of $85; **AND**

- **Dark Web Monitoring:** In addition to Cash Payment A *or* Cash Payment B, you may also submit a Claim Form to receive one year of Dark Web Monitoring.

**Injunctive Relief:** Defendants have or will implement additional security measures following the Data Incident.

Cash Payment B – Alternative Cash Payments may be subject to a *pro rata* (a legal term meaning equal share) adjustment increase from the Settlement Fund if the amount of timely and valid Claim Forms does not use the entire Net Settlement Fund. Alternatively, if the amount of timely and valid Claim Forms exceeds the amount of the Net Settlement Fund, the Cash Payment B – Alternative Cash Payment may be subject to a *pro rata* reduction.

You must submit your Claim Form here or by mail postmarked by **MONTH DD, 2025**.

**Other Options.** If you do not want to be legally bound by the Settlement, you must opt-out of the Settlement by sending a request to opt-out by mail and it must be **postmarked** by **MONTH DD, 2025**. If you do not opt-out, you will give up the right to sue and will release <<INSERT SUBCLASS RELEASE DEFS>> from the Released Claims in this lawsuit. If you do not opt-out, you may object to the Settlement by **MONTH DD, 2025**. The Long Form Notice on the Settlement Website explains how to opt-out or object. If you do nothing, you will get no Settlement Class Member Benefits, and you will be bound by the Settlement and any judgments and orders.

The Court will hold a Final Approval Hearing on **MONTH DD, 2025**, to consider whether to approve the Settlement, Class Counsel's attorneys' fees of up to 33.33% of the Settlement fund and reimbursement of costs, and any objections. You or your lawyer may attend and ask to appear at the hearing if you object, but you are not required to do so. The hearing may be held remotely, and if so, instructions will be at www.XXXXXXXXXXXXX.com.

**This notice is a summary. Learn more about the Settlement here**, or by calling toll free 1-XXX-XXX-XXXX.

# EXHIBIT 2
# (POSTCARD NOTICE)

In re Fortra Data Breach Litigation
Settlement Administrator
PO Box XXXX
Portland, OR 972XX-XXXX

**BARCODE**
**NO-PRINT**
**ZONE**

FIRST-CLASS MAIL
U.S. POSTAGE
PAID
Portland, OR
PERMIT NO.xxxx

Court-Approved Legal Notice
*In re Fortra File Transfer Software Data Security Breach Litigation*, 24-md-03090-RAR
United States District Court for the Southern District of Florida

**If your Private Information was impacted in a Data Incident in January of 2023, you may be entitled to Settlement Class Member Benefits from a Settlement.**

*A Court has authorized this notice. This is **not** a solicitation from a lawyer.*

**This notice is a summary.**
**www.XXXXXXXXXXX.com**
**1-XXX-XXX-XXXX**

<<MAIL ID>>
<<NAME 1>>
<<NAME 2>>
<<ADDRESS LINE 1>>
<<ADDRESS LINE 2>>
<<ADDRESS LINE 3>>
<<ADDRESS LINE 4>>
<<ADDRESS LINE 5>>
<<CITY, STATE ZIP>>
<<COUNTRY>>

A $26 million settlement has been reached in a class action lawsuit against Aetna, BrightLine, Community Health Elevance, Fortra, Imagine360, Intellihartx, NationsBenefits and Santa Clara ("Defendants") related to a Data Incident involving Fortra's GoAnywhere managed file transfer ("MFT") software that occurred in January of 2023. Defendants and Hatch Bank (who is not a Defendant) all used, directly or indirectly, Fortra's MFT software. The Data Incident involved a criminal attack that may have resulted in the unauthorized access to or acquisition of approximately five million individuals' Private Information, which includes some combination of names, addresses, dates of birth, telephone numbers, member identification numbers, employer names, Social Security numbers, start and end dates of health plan coverage, and health insurance information that were being stored in the Defendants' respective instances of the Fortra GoAnywhere MFT. The impacted individuals are known as "Settlement Class members."

**Who is Included?** The Settlement Class includes: All living individuals residing in the United States who were sent notice of the Data Incident indicating their Private Information may have been impacted in the Data Incident.
**Records indicate that you are a Settlement Class member** because your Private Information provided to <<INSERT SUBCLASS DEF NAME>> (who directly or indirectly was a customer of Fortra and used its file transfer services) was impacted by the Data Incident. This makes you a member of the <<INSERT SUBCLASS NAME>> which impacte the Parties being released.

**What does the Settlement Provide?** As a Settlement Class member, you can file a Claim Form online or by mail provided it is postmarked by **Month XX, 20YY,** for the following Settlement Class Member Benefits:
**Cash Payment A – Documented Losses:** You may submit a Claim Form and provide reasonable documentation for losses related to the Data Incident for up to $5,000 per Settlement Class Member. **OR**
**Cash Payment B – Alternative Cash Payment:** Instead of Cash Payment A, without providing documentation, you may submit a Claim Form to receive an alternative cash payment in the estimated amount of $85. **AND**
**Dark Web Monitoring:** In addition to Cash Payment A *or* B, you may also receive a year of Dark Web Monitoring.
**Injunctive Relief:** Defendants have implemented or will be implementing additional network security measures.
Cash Payment B – Alternative Cash Payments may be subject to a *pro rata* (a legal term meaning equal share) adjustment up or down based upon the total value of all Valid Claims received by the Settlement Administrator.

**Other Options**. If you do not want to be legally bound by the Settlement, you must opt-out of the Settlement by sending a request to opt-out by mail and it must be **postmarked** by **Month XX, 20YY**. If you do not opt-out, you will give up the right to sue and will release <<INSERT SUBCLASS RELEASE DEFS>> from the Released Claims in this lawsuit. If you do not opt-out, you may object to the Settlement by **Month XX, 20YY**. The Long Form Notice on the Settlement Website explains how to opt-out or object. If you do nothing, you will get no Settlement Class Member Benefits, and you will be bound by the Settlement and any judgments and orders. The Court will hold a Final Approval Hearing on **Month XX, 20YY**, to consider whether to approve the Settlement, Class Counsel's attorneys' fees of up to one-third of the Settlement Fund and costs, and any objections. You or your lawyer may attend and ask to appear at the hearing if you object, but you are not required to do so.

**CLAIM FORM for all Settlement Subclasses, except for the Brightline Settlement Subclass**
**Claims must be postmarked or submitted online no later than Month Day, 20YY.**

First Name: ☐☐☐☐☐☐☐☐☐☐☐  MI: ☐  Last Name: ☐☐☐☐☐☐☐☐☐☐☐☐☐

Mailing Address: ☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐

City: ☐☐☐☐☐☐☐☐☐☐☐☐  State: ☐☐  ZIP Code: ☐☐☐☐☐

**Cash Payment A – Documented Losses:** You may submit a Claim Form with reasonable documentation for losses related to the Data Incident for up to $5,000 per Settlement Class Member. You must visit the settlement website to file for a Cash Payment A.

**Cash Payment B – Alternative Cash Payment:** Instead of Cash Payment A, without providing documentation, you may submit a Claim Form to receive a payment in the estimated amount of $85. Your Cash Payment may be subject to a *pro rata* adjustment up or down based upon the value of all Valid Claims submitted to the Settlement Administrator.

☐ By checking this box, I affirm I want to receive an alternative cash payment in the estimated amount of $85 under Cash Payment B. I understand that if I select this option, I cannot claim reimbursement under Cash Payment A.

**Dark Web Monitoring:** In addition to Cash Payment A *or* B, you may also submit a Claim for one year of Dark Web Monitoring.

☐ By checking this box, I affirm I want to receive Dark Web Monitoring.

**By signing my name, I swear and affirm I am completing this Claim Form to the best of my personal knowledge.**

Signature: _____   Date: _____



BARCODE NO-PRINT ZONE

PLACE
STAMP
HERE

In re Fortra Data Breach Litigation
Settlement Administrator
PO Box XXXX
Portland, OR 97xxx-xxxx

# EXHIBIT 3
# (LONG FORM NOTICE)

# If your Private Information was impacted in a Data Incident in January of 2023, you may be entitled to Settlement Class Member Benefits from a Settlement.

*A Court authorized this Notice. This is <u>not</u> a solicitation from a lawyer.*

- A $20 million class action settlement has been reached in a lawsuit against Aetna, Brightline, Community Health, Elevance, Fortra, Imagine360, Intellihartx, NationsBenefits, and Santa Clara ("Defendants") for a Data Incident involving Fortra's file transfer services on or about January 30, 2023. Defendants and Hatch Bank (who is not a Defendant) all used, directly or indirectly, Fortra's file transfer service. The Data Incident involved a criminal attack that may have resulted in the unauthorized access to or acquisition of approximately five million individuals' names, addresses, dates of birth, telephone numbers, member identification numbers, employer names, Social Security numbers, start and end dates of health plan coverage, and health insurance information that were being stored within the Defendants' respective instances of the Fortra GoAnywhere MFT at the time of the Data Incident. The impacted individuals are called "Settlement Class members."

- The Settlement Class includes: All living individuals residing in the United States who were sent notice of the Data Incident indicating their Private Information may have been impacted in the Data Incident. You may have received notice of the Data Incident beginning in or around April 2023.

- There are also a number of Settlement subclasses of which you may be a member of one or more. Those subclasses are defined below.

- If you are a Settlement Class member, other than a Brightline Settlement Subclass member, you can file a Claim Form for the following Settlement Class Member Benefits:

  <u>**Cash Payment A – Documented Losses:**</u> You may submit Claim Form and provide reasonable documentation for losses related to the Data Incident for up to $5,000 per Settlement Class Member; <u>**or**</u>
  <u>**Cash Payment B – Alternative Cash Payment:**</u> Instead of Cash Payment A, without providing documentation, you may submit a Claim Form to receive an alternative cash payment in the estimated amount of $85; <u>**and**</u>
  <u>**Dark Web Monitoring:**</u> In addition to Cash Payment A *or* Cash Payment B, you may also submit a Claim Form to receive one year of Dark Web Monitoring.

  Cash B – Alternative Cash Payments may be subject to a *pro rata* (a legal term meaning equal share) adjustment up or down based upon the total value of all Valid Claims received by the Settlement Administrator.

  <u>**Injunctive Relief:**</u> Defendants have implemented or will be implementing additional security measures following the Data Incident.

- <u>**Brightline Settlement Subclass**</u> - The Brightline Settlement was a settlement involving some of the claims in this case arising out of the Data Incident. The Brightline Settlement was approved by the Court, and Subclass members were previously given an opportunity to submit a claim for benefits.

- If you are a Brightline Subclass Settlement member who submitted a claim in the Brightline Settlement, and you elected to receive benefits from that settlement, you may only Claim benefits from this Settlement to the extent you were not fully compensated for your damages in the Brightline Settlement. This means that you either selected Cash Payment A in the Brightline Settlement and your documented losses exceeded the compensation received from the Settlement, or you elected to receive Cash Payment B (flat payment) under the Brightline Settlement, but you have incurred Documented Losses after the date your claim was filed in the Brightline Settlement.

- If you submitted a claim in the Brightline Settlement for Cash Payment A, but have incurred additional losses since the date you filed the claim, you are entitled to make a claim for a Cash Payment A – Documented Losses Cash Payment of up to $5,000, upon presentment of Documented Losses related to the Data Incident that are in excess of the amounts received under Cash Payment A from the Brightline Settlement. If you submitted a claim for Cash Payment B in the Brightline Settlement, you may only submit a Claim for Cash Payment A – Documented Losses in this Settlement for Dcoumented Losses incurred after the date your Brightline Settlement claim was filed.

- All Brightline Settlement Subclass Member Cash Payments shall be subject to the same *pro rata* adjustments as above.

- Brightline Settlement Subclass members who did not make a claim for Credit Monitoring (as defined in the Brightline Settlement) may make a claim for one year of Dark Web Monitoring in this Settlement.

**This Notice may affect your rights. Please read it carefully.**

| Your Legal Rights & Options | | Deadline |
|---|---|---|
| **Submit a Claim Form** | The only way to get Settlement Class Member Benefits is to submit a timely and valid Claim Form. | Submitted or Postmarked by: **MONTH DD, 2025** |
| **Exclude Yourself or Opt-out** | Get no Settlement Class Member Benefits. Keep your right to file your own lawsuit against the Released Defendants and the Released Parties from the Released Claims as part of the Settlement. | Postmarked by: **MONTH DD, 2025** |
| **Object to the Settlement** | Stay in the Settlement, but tell the Court why you do not agree with the Settlement. You will still be bound by the Settlement if the Court approves it. | Filed by: **MONTH DD, 2025** |
| **Do Nothing** | Get no Settlement Class Member Benefits. Give up your legal rights. | |

- These rights and options—**and the deadlines to exercise them**—are explained in this Notice.

- The Court must decide whether to approve the Settlement and attorneys' fees and costs. No Settlement Class Member Benefits will be provided unless the Court approves the Settlement.

# BASIC INFORMATION

## 1.  Why is this Notice being provided?

A court authorized this Notice because you have the right to know about the Settlement of this class action lawsuit and about all of your rights and options before the Court decides whether to grant Final Approval to the Settlement. This Notice explains the lawsuit, the Settlement, your legal rights, what Settlement Class Member Benefits are available, who is eligible for the Settlement Class Member Benefits, and how to get them.

The Honorable Rodolfo A. Ruiz, II of the United States District Court for the Southern District of Florida is overseeing this class action. The lawsuit is known as *In re Fortra File Transfer Software Data Security Breach Litigation*, Case No. 24-md-03090-RAR ("lawsuit"). The individuals who filed this lawsuit are called the "Plaintiffs" and/or "Class Representatives" and the companies sued are Aetna, Inc. and Aetna Life Insurance Company (collectively "Aetna"), Brightline, Inc. ("Brightline"), Community Health Systems and CHSPSC, LLC (collectively "Community Health"), Elevance Health, Inc. and Anthem Insurance Companies (collectively "Elevance"), Fortra, LLC ("Fortra"), Imagine360, LLC ("Imagine360"), Intellihartx, Inc. ("Intellihartx"), NationsBenefits LLC and

Questions? Go to www.XXXXXXXXX.com or call 1-XXX-XXX-XXXX

2

NationsBenefits Holdings, LLC (collectively "NationsBenefits"), and Santa Clara Family Health Plan
("Santa Clara") ( "Defendants").

## 2.  What is this lawsuit about?

The Plaintiffs filed this lawsuit against Defendants in connection with the unauthorized access to or
acquisition of over approximately five million individuals' Private Information, which includes some
combination of: names, addresses, dates of birth, member identification numbers, telephone numbers,
employer names, Social Security numbers, start and end dates of health plan coverage, and health
insurance information that were being stored within the Defendants' respective instances of the Fortra
GoAnywhere MFT at the time of the Data Incident. The Plaintiffs allege Fortra reported to its'
customers – Aetna, Community Health, Elevance, Hatch Bank, Imagine360, Intellihartx,
NationsBenefits, and Santa Clara – that in January of 2023, as a result of the Data Incident, there was
or may have been unauthorized access to or acquisition of Settlement Class members' Private
Information as a result of unauthorized access to Defendants' respective instances of the Fortra
GoAnywhere MFT (which each of the Defendants used directly or indirectly). The Plaintiffs brought
this lawsuit against Defendants.

Plaintiffs also allege negligence, negligence per se, breach of fiduciary duty, breach of implied
contract, breach of contract third party beneficiary, unjust enrichment, and violations of various
states' consumer protection statutes by Defendants.

Defendants deny the legal claims and deny any wrongdoing or liability. The Court has not made any
determination of any wrongdoing by Defendants or that any law has been violated. Instead, the Plaintiffs
and Defendants have agreed to a settlement to avoid the risk, cost, and time of continuing the lawsuit.

## 3.  Why is there a Settlement?

The Plaintiffs and Defendants do not agree about the legal claims made in this lawsuit. The lawsuit
has not gone to trial, and the Court has not decided in favor of the Plaintiffs or Defendants. Instead,
the Plaintiffs and Defendants have agreed to settle the lawsuit. The Class Representatives,
Defendants, and their lawyers believe the Settlement is best for the Settlement Class because of the
Settlement Class Member Benefits available and the risks and uncertainty associated with continuing
the lawsuit.

## 4.  Why is this lawsuit a class action?

In a class action, one or more people (called class representatives) sue on behalf of all people who
have similar legal claims. Together, all these people are called a class or class members. One court
resolves the issues for all class members, except for those class members who timely exclude
themselves (opt-out) from the class.

# WHO IS INCLUDED IN THE SETTLEMENT?

## 5.  How do I know if I am included in the Settlement?

You are included in the Settlement Class if you are a living individual residing in the United States
and were sent notice of the Data Incident indicating your Private Information may have been impacted
in the Data Incident. You may have received notice of the Data Incident around May 2023.

You were/are a customer of or do/did business with Aetna, Brightline, Community Health, Elevance,
Hatch Bank, Imagine360, Intellihartx and/or Santa Clara, and at one time gave your Private

Information to one of those Defendants. Community Health, Imagine360, Intellihartx, and NationsBenefits all did business directly with Fortra, while Aetna, Elevance, and Santa Clara did business directly with NationsBenefits. If you were/are a customer of or do/did business with Aetna, Community Health, Elevance, Hatch Bank, Imagine360, Intellihartx, and/or Santa Clara, your Private information may have been impacted in the Data Incident and you may be a Settlement Class member and a member of that Defendant's Settlement Subclass defined hereinbelow. Hatch Bank is not a Defendant in the lawsuit; however, Hatch Bank's customers' Private Information was impacted in the Data Incident and therefore if you were/are a customer of Hatch Bank your Private Information may also have been impacted in the Data Incident and you too may be a Settlement Class member. The Settlement subclass you are in will impact the releases you will be giving if you remain a Settlement Class Member.

**Aetna Settlement Subclass** includes all living individuals residing in the United States who were sent a notice of the Data Incident from, or on behalf of, Defendant Aetna indicating their Private Information may have been impacted in the Data Incident.

**Brightline Settlement Subclass** includes all living individuals residing in the United States who were sent a notice of the Data incident from, or on behalf of, Defendant Brightline indicating their Private Information may have been impacted in the Data Incident.

**Community Health Settlement Subclass** includes all living individuals residing in the United States who were sent a notice of the Data Incident from, or on behalf of, Defendant Community Health indicating their Private Information may have been impacted in the Data Incident.

**Elevance Health Settlement Subclass** includes all living individuals residing in the United States who were sent a notice of the Data Incident from, or on behalf of, Defendant Elevance Health indicating their Private Information may have been impacted in the Data Incident.

**Fortra Settlement Subclass** includes all living individuals residing in the United States who were sent a notice of the Data Incident indicating their Private Information may have been impacted in the Data Incident. The Fortra Settlement Subclass is comprised of all members of the Settlement Class, including the NationsBenefits Settlement Subclass, the Aetna Settlement Subclass, Brightline Settlement Subclass, Community Health Settlement Subclass, Elevance Settlement Subclass, Imagine360 Settlement Subclass, Intellihartx Settlement Subclass, the Santa Clara Settlement Subclass, and Hatch Bank Settlement Subclass.

**Hatch Settlement Subclass** includes all living individuals residing in the United States who were sent a notice of the Data Incident from, or on behalf of, Hatch Bank indicating their Private Information may have been impacted in the Data Incident.

**Imagine360 Settlement Subclass** includes all living individuals residing in the United States who were sent a notice of the Data Incident from, or on behalf of, Defendant Imagine360 indicating their Private Information may have been impacted in the Data Incident.

**Intellihartx Settlement Subclass** includes all living individuals residing in the United States who were sent a notice of the Data Incident from, or on behalf of, Defendant Intellihartx indicating their Private Information may have been impacted in the Data Incident.

**NationsBenefits Settlement Subclass** includes all living individuals residing in the United States who were sent a notice of the Data Incident from, or on behalf of, Defendant NationsBenefits indicating their Private Information may been impacted in the Data Incident.

**Santa Clara Settlement Subclass** includes all living individuals residing in the United States who were sent a notice of the Data Incident from, or on behalf of, Defendant Santa Clara indicating their Private Information may have been impacted in the Data Incident.

Questions? Go to www.XXXXXXXXX.com or call 1-XXX-XXX-XXXX

4

## 6.  Are there exceptions to being included in the Settlement?

Yes. Excluded from the Settlement Class are: (1) all persons who are directors and officers of Defendant, or their respective subsidiaries and affiliated companies; (2) governmental entities; (3) the Judge assigned to the lawsuit, the Judge's immediate family, and Court staff; and (4) all Settlement Class members who submit a valid Request for Exclusion prior to the Opt-Out Deadline.

## 7.  What if I am still not sure whether I am part of the Settlement?

If you are still not sure whether you are a Settlement Class member, you may go to www.XXXXXXXXXXX.com or call toll-free 1-XXX-XXX-XXXX.

# THE SETTLEMENT BENEFITS

## 8.  What does this Settlement provide?

### ALL SETTLEMENT CLASS MEMBERS EXCEPT BRIGHTLINE SETTLEMENT SUBCLASS MEMBERS

If you are a Settlement Class Member (other than a Brightline Settlement Subclass Member) and you submit a timely and valid Claim Form, you may be eligible to receive the following Settlement Class Member Benefits:

### Cash Payment A – Documented Losses:

You may submit a Claim Form with reasonable documentation for losses related to the Data Incident for up to $5,000 per Settlement Class Member.

Examples of expenses incurred as a result of the Data Incident, include (without limitation) bank fees, long distance phone charges, cell phone charges (only charged by the minute), data charges (only if charged based on the amount of data used), postage, gasoline for local travel and fees for credit reports, credit monitoring, or other identity theft insurance products purchased between January 30, 2023, and the date of the Claim Form Deadline.

Examples of reasonable documentation include (but are not limited to): telephone records, correspondence including emails, or receipts. Personal certifications, declarations, or affidavits from the Settlement Class Member do not constitute reasonable documentation but may be included to provide clarification, context, or support for other submitted reasonable documentation. You will not be reimbursed for expenses if you have been reimbursed for the same expenses by another source.

If you do not submit reasonable documentation supporting a loss, or if your Claim Form is invalid as determined by the Settlement Administrator, and you do not cure your Claim Form, your Claim Form will be denied and your Claim Form for Cash Payment A will instead be processed as if you elected Cash Payment B.

### Cash Payment B – Alternative Cash Payment:

Instead of selecting Cash Payment A, without providing documentation, you may submit a Claim Form to receive a cash payment in the estimated amount of $85.

### Dark Web Monitoring

In addition to Cash Payment A or Cash Payment B, you may also submit a Claim Form to receive the CyEx Identity Defense Plus Dark Web Monitoring product. The Dark Web Monitoring product includes one year of: (i) real time authentication alerts; (ii) dark web scanning; (iii) high risk transaction monitoring; (iv) wallet protection; (v) victim assistance; and (vi) customer support.

Questions? Go to www.XXXXXXXXX.com or call 1-XXX-XXX-XXXX

5

**Pro Rata Adjustments to Cash Payments**

Cash B – Alternative Cash Payments may be subject to a *pro rata* (a legal term meaning equal share) adjustment increase from the Settlement Fund if the amount of timely and valid Claim Forms does not use the entire Net Settlement Fund. Alternatively, if the amount of timely and valid Claim Forms exceeds the amount of the Net Settlement Fund, your Cash B – Alternative Cash Payments may be subject to a *pro rata* reduction. The adjustment will based upon the number and amount of Valid Claims received by the Settlement Administrator. Payments will first go to pay the cost of Dark Web Monitoring, then to Cash Payment A – Documented Losses, and then to Cash Payment B – Alternative Cash Payments.

**BRIGHTLINE SETTLEMENT SUBLCASS MEMBERS**

- If you are a Brightline Settlement Subclass member, you may file a Claim Form for the above Settlement Class Member Benefits *only if* you did not submit a claim and receive benefits in the Brightline Settlement, or you were not fully compensated by the Brightline Settlement. The Brightline Settlement was a settlement involving some of the claims in this case arising out of the Data Incident. The Brightline Settlement was approved by the Court, and you were previously given an opportunity to submit a claim for benefits.

- If you are a Brightline Subclass Settlement member who submitted a claim in the Brightline Settlement, and you received benefits from that settlement, you may only Claim benefits from this Settlement to the extent you were not fully compensated for your damages in the Brightline Settlement. This means that you either selected Cash Payment A in the Brightline Settlement and your documented losses exceeded the compensation received from the Settlement, or you elected to receive Cash Payment B (flat payment) under the Brightline Settlement, but you have incurred Documented Losses after the date your claim was filed in the Brightline Settlement.

- If you submitted a claim in the Brightline Settlement for Cash Payment A, but have incurred additional losses since the date you filed the claim, you are entitled to make a claim for Cash Payment A – Documented Losses Cash Payment up to a maximum of $5,000, upon presentment of Documented Losses related to the Data Incident that are in excess of the amounts received under Cash Payment A from the Brightline Settlement. If you submitted a claim for Cash Payment B (flat cash) in the Brightline Settlement, you may only submit a Claim for Cash Payment A – Documented Losses in this Settlement for Dcoumented Losses incurred after the date of the Brightline Settlement claim was filed.

- All Brightline Settlement Subclass Member Cash Payments shall be subject to the same *pro rata* adjustments as above.

- Brightline Settlement Subclass members who did not make a claim for Credit Monitoring (as defined in the Brightline Settlement) may make a claim for Dark Web Monitoring in this Settlement.

**Injunctive Relief**

Defendants have implemented or are implementing additional security measures following the Data Incident.

| 9. | What am I giving up to receive Settlement Class Member Benefits or stay in the Settlement Class? |
| --- | --- |

Unless you exclude yourself (opt-out), you are choosing to remain in the Settlement Class. If the Settlement is approved and becomes final, all Court orders and any judgments will apply to you and legally bind you. You will not be able to sue, continue to sue, or be part of any other lawsuit against the Defendants and the Released Parties about the legal issues in this lawsuit that are released by this

Questions? Go to www.XXXXXXXXX.com or call 1-XXX-XXX-XXXX

6

Settlement. The specific rights you are giving up are called "Released Claims." The Released Defendants and the Released Parties from the Released Claims are specific as to each Defendant and Hatch Bank. To best understand who you are releasing if you remain in the Settlement, read Section XIII in the Settlement Agreement carefully. The Settlement Agreement is available at www.XXXXXXX.com.

## 10. What are the Released Claims?

Section XIV of the Settlement Agreement describes the Released Defendants and the Released Parties from the Released Claims, in necessary legal terminology. As these definitions and terms vary for each Defendant and associated Settlement Subclass, as well as for non-defendant Hatch, please read this section in the Settlement Agreement carefully. The Settlement Agreement is available at www.XXXXXXXXXXX.com.

- The **Aetna Settlement Subclass** releases the Aetna Released Parties, the NationsBenefits Released Parties, and the Fortra Released Parties.
- The **Brightline Settlement Subclass** releases the Fortra Released Parties.
- The **Elevance Settlement Subclass** releases the Elevance Released Parties, the NationsBenefits Released Parties, and the Fortra Released Parties.
- The **Community Health Settlement Subclass** releases the Community Health Released Parties and the Fortra Released Parties.
- The **Hatch Bank Settlement Subclass** releases the Fortra Released Parties.
- The **Imagine360 Settlement Subclass** releases the Imagine360 Released Parties and the Fortra Released Parties.
- The **Intellihartx Settlement Subclass** releases the Intellihartx Released Parties and the Fortra Released Parties.
- The **NationsBenefits Settlement Subclass** releases the NationsBenefits Released Parties and the Fortra Released Parties.
- The **Santa Clara Settlement Subclass** releases the Santa Clara Released Parties, the NationsBenefits Released Parties, and the Fortra Released Parties.

For questions regarding the Releases or Released Claims and what the language in the Settlement Agreement means, you can also contact Class Counsel listed below for free, or you can talk to your own lawyer at your own expense.

# HOW TO GET BENEFITS FROM THE SETTLEMENT

## 11.  How do I submit a Claim Form?

You must submit a timely and valid Claim Form to receive the Settlement Class Member Benefits. Your Claim Form must be submitted online at www.XXXXXXXX.com by **MONTH DD, 2025**, or mailed to the Settlement Administrator at the address on the Claim Form and **postmarked** no later than **Month DD, 2025**. Claim Forms are also available on the Settlement Website at www.XXXXXXXX.com, by calling 1-XXX-XXX-XXXX, or by writing to:

*In re Fortra Data Breach Litigation*
Settlement Administrator
PO Box XXXX
Portland, OR 972XX-XXXX

## 12.  What happens if my contact information changes after I submit a Claim Form?

If you change your mailing address or email address after you submit a Claim Form, it is your responsibility to inform the Settlement Administrator of your updated information. You may notify the Settlement Administrator of any changes by writing to:

*In re Fortra Data Breach Litigation*
Settlement Administrator
PO Box XXXX
Portland, OR 972XX-XXXX

### 13. When will I receive my Settlement Class Member Benefits?

If you file a timely and valid Claim Form, the Settlement Class Member Benefits will be provided after the Settlement is approved by the Court and becomes final.

It may take time for the Settlement to be approved and become final. Please be patient and check www.XXXXXXXXXXX.com for updates.

## EXCLUDE YOURSELF OR OPT-OUT OF THE SETTLEMENT

If you are a Settlement Class Member and want to keep any right you may have to sue or continue to sue the Released Defendants and the Released Parties about the Released Claims in this lawsuit on your own, then you must take steps to get out of the Settlement. This is called excluding yourself from—or "opting-out" of—the Settlement.

### 14. How do I opt-out of the Settlement?

To exclude yourself from the Settlement, you must mail a written request for exclusion, which includes the following:

1) Your name, address, telephone number, and email address (if any);
2) Your personal physical signature; and
3) A statement that you want to be excluded from the Settlement Class, such as "I hereby request to be excluded from the Settlement Class in the *In re Fortra Data Breach Litigation*."

The exclusion request must be **mailed** to the Settlement Administrator at the following address, and be **postmarked** by **MONTH DD, 2025**:

*In re Fortra Data Breach Litigation*
Settlement Administrator
PO Box XXXX
Portland, OR 972XX-XXXX

**You cannot opt-out (exclude yourself) by telephone or by email.**

"Mass" or "class" requests for exclusion filed by third parties on behalf of a "mass" or "class" of Settlement Class Members or multiple Settlement Class Members where the opt-out hasn't been signed by each and every individual Settlement Class Member will not be allowed.

### 15. If I opt-out can I still get anything from the Settlement?

No. If you opt-out, you will not be entitled to receive Settlement Class Member Benefits, and you will not be bound by the Settlement or any judgment in this lawsuit. You can only get Settlement Class Member Benefits if you stay in the Settlement and submit a timely and valid Claim Form.

**16. If I do not opt-out, can I sue the Defendants for the same thing later?**

No. Unless you opt-out, you give up any right to sue the Released Defendants and the Released Parties about the Released Claims in this lawsuit, and you will be bound by all the terms of the Settlement and by all proceedings, orders, and judgments in the lawsuit. You must opt-out of this lawsuit to start or continue with your own lawsuit or be part of any other lawsuit against the Released Defendants and the Released Parties about the Released Claims in this lawsuit. If you have a pending lawsuit, speak to your lawyer in that case immediately.

# OBJECTING TO THE SETTLEMENT

**17. How do I tell the Court I do not like the Settlement?**

If you are a Settlement Class Member, you can tell the Court you do not agree with all or any part of the Settlement and/or the Application for Attorneys' Fees and Costs.

To object, you must file written notice with the Court as provided below by **MONTH DD, 2025**, and send by U.S. mail to Lead Class Counsel, Defendants' Counsel, and the Settlement Administrator postmarked by or shipped by private courier (such as Federal Express) by **MONTH DD, 2025**, stating you object to the Settlement in *In re Fortra File Transfer Software Data Security Breach Litigation*, Case No. 24-md-03090-RAR.

To file an objection, you cannot exclude yourself from the Settlement Class. Your objection must include all of the following information:

1) Your full name, address, telephone number, and email address (if any);
2) All grounds for the objection, accompanied by any legal support for the objection known to you as the objector or your own lawyer;
3) The number of times you have objected to a class action settlement within the five (5) years preceding the date that you file the objection, the caption of each case in which you have made such objection, and a copy of any orders related to or ruling upon your prior objections that were issued by the trial and appellate courts in each listed case;
4) The identity of all lawyers representing you in connection with the objection (if any), including any former or current lawyers who may be entitled to compensation for any reason related to the objection to the Settlement and/or Application for Attorneys' Fees and Costs;
5) The number of times in which your lawyer or your lawyer's law firm have objected to a class action settlement within the five years preceding the date of the filed objection, the caption of each case in which your lawyer or the firm has made such objection and a copy of any orders related to or ruling upon your lawyer's or the lawyer's law firm's prior objections that were issued by the trial and appellate courts in each listed case in which your lawyer and/or lawyer's law firm have objected to a class action settlement within the preceding (5) years;
6) The identity of all lawyers (if any) representing you as an objector, and whether they will appear at the Final Approval Hearing;
7) A list of all persons who will be called to testify at the Final Approval Hearing in support of the objection (if any);
8) A statement confirming whether you intend to personally appear and/or testify at the Final Approval Hearing; and
9) Your signature as the objector (an attorney's signature is not sufficient).

To object, you must file timely written notice with the Court as provided below no later than **MONTH DD, 20YY**, <u>and</u> send by U.S. mail to Lead Counsel, Defendant's Counsel, and the Settlement Administrator postmarked by or shipped by private courier (such as Federal Express) by **MONTH DD, 20YY**, at the following addresses:

| COURT | LEAD CLASS COUNSEL | SETTLEMENT ADMINISTRATOR |
|---|---|---|
| Clerk<br>United States District Court for the Southern District of Florida<br>Wilkie D. Ferguson, Jr.<br>United States Courthouse<br>400 N. Miami Ave<br>Miami, FL 333128 | Jeff Ostrow<br>Kopelowitz Ostrow P.A.<br>1 West Las Olas Blvd, Suite 500<br>Fort Lauderdale, FL 33301<br><br>John Yanchunis<br>Morgan & Morgan P.A.<br>201 N. Franklin Street, 7th Floor<br>Tampa, FL 33602<br><br>James E. Cecchi<br>Carella Byrne Cecchi Brody Agnello P.C.<br>5 Becker Farm Road<br>Roseland, NJ 07068 | In re Fortra Data Breach Litigation<br>Settlement Administrator<br>PO Box XXXX<br>Portland, OR 972XX-XXXX |

| DEFENDANTS' COUNSEL | | |
|---|---|---|
| **Counsel for Fortra**<br>Lisa Ghannoum<br>Gilbert Keteltas<br>Baker & Hostetler LLP<br>127 Public Square, Suite 2000<br>Cleveland, OH 44114 | **Counsel for NationsBenefits, Aetna and Intellihartx**<br>John T. Mills<br>Joseph Salvo<br>Gordan Rees Scully Mansukhani, LLP<br>One Battery Plaza, 28th Floor<br>New York, NY 10004 | **Counsel for Community Health**<br>Jonathan O. Harris<br>Jackson Lewis P.C.<br>**611 Commerce Street,** Suite 2803<br>Nashville, TN 37203 |
| **Counsel for Imagine360**<br>Richard Haggerty<br>Mullen & Coughlin<br>309 Fellowship Rd., Suite 200<br>Mt. Laurel, NJ 08054 | **Counsel for Santa Clara**<br>Jennifer McLoone<br>Shook Hardy & Bacon L.L.P.<br>201 S. Biscayne Blvd., Suite 3200<br>Miami, FL 33131 | **Counsel For Elevance**<br>Darren Craig<br>Kandi Hidde<br>Frost Brown Todd LLP<br>111 Monument Circle, Suite 4500<br>Indianapolis, IN 46204 |

## 18. What is the difference between objecting and asking to be excluded?

Objecting is simply telling the Court that you do not like something about the Settlement. You can object only if you stay in the Settlement Class. Opting-out is telling the Court that you do not want to be part of the Settlement Class. If you opt-out, you cannot object because you are no longer part of the Settlement.

## THE LAWYERS REPRESENTING YOU

**Questions? Go to www.XXXXXXXXX.com or call 1-XXX-XXX-XXXX**

## 19. Do I have a lawyer in the lawsuit?

Yes. The Court has appointed Jeff Ostrow, John Yanchunis, and James E. Cecchi as Lead Counsel and Class Counsel and Bryan Bleichner, Brian Gudmundson, Ben Barnow, Sabita Soneji, Stuart Davidson, Ian Sloss Maureen Brady, Benjamin Johns, Mason Barney, William Federman, and Nicholas Colella as Class Counsel to represent you and the Settlement Class and the Settlement Subclasses for the purposes of this Settlement. You may hire your own lawyer at your own cost and expense if you want someone other than Class Counsel to represent you in this lawsuit.

## 20. How will Class Counsel be paid?

Class Counsel will file a motion asking the Court to award attorneys' fees of up to one-third of the $20 million Settlement Fund, plus reimbursement of costs. If awarded by the Court, the attorneys' fees and costs will be paid from the Settlement Fund. The Court may award less than this amount.

Class Counsel's Application for the Attorneys' Fees and Costs will be made available on the Settlement Website at www.XXXXXXXXXXX.com after it is filed with the Court.

# THE FINAL APPROVAL HEARING

The Court will hold a "Final Approval Hearing" to decide whether to approve the Settlement. You may attend and you may ask to speak if you file an objection by the deadline, but you do not have to.

## 21. When and where will the Court decide whether to approve the Settlement?

The Court will hold a Final Approval Hearing on **MONTH DD, 2025, at XX:XX a.m./p.m.** before the Honorable Rodolfo A. Ruiz II of the United States District Court for the Southern District of Florida, Wilkie D. Ferguson, Jr. United States Courthouse, 400 N. Miami Ave, Miami, FL 333128. At this hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate and decide whether to approve the Settlement, and Class Counsel's Application for Attorneys' Fees and Costs.

If there are objections that were filed by the deadline, the Court will consider them. If you file a timely objection, and you would like to speak at the hearing, the Court will also listen to you or your lawyer speak at the hearing, if you so request.

**Note:** The date and time of the Final Approval Hearing are subject to change without further notice to the Settlement Class. The Court may also decide to hold the hearing via video conference or by telephone. You should check the Settlement Website www.XXXXXXXXX.com to confirm the date and time of the Final Approval Hearing have not changed.

## 22. Do I have to attend the Final Approval Hearing?

No. Class Counsel will answer any questions the Court may have. However, you are welcome to attend at your own expense. If you file an objection, you do not have to attend the Final Approval Hearing to speak about it. As long as you file your written objection by the deadline, the Court will consider it.

## 23. May I speak at the Final Approval Hearing?

Yes, as long as you do not exclude yourself (opt-out) and you file a timely written objection requesting to speak at the hearing, you can (but do not have to) participate and speak for yourself at the Final Approval Hearing. This is called making an appearance. You can also have your own lawyer speak for you, but you will have to pay for the lawyer yourself.

If you want to appear, or if you want your own lawyer instead of Class Counsel to speak for you at the hearing, you must follow all of the procedures for objecting to the Settlement listed above and specifically include a statement whether you or your lawyer will appear at the Final Approval Hearing.

# GET MORE INFORMATION

| 24. How do I get more information about the Settlement? |
| --- |

This Notice summarizes the Settlement. Complete details about the Settlement are provided in the Settlement Agreement. The Settlement Agreement and other related documents are available at www.XXXXXXXXXXX.com. You may get additional information at www.XXXXXXXXXXX.com, by calling toll-free 1-XXX-XXX-XXXX, or by writing to:

*In re Fortra Data Breach Litigation*
Settlement Administrator
PO Box XXXX
Portland, OR 972XX-XXXX

**PLEASE DO NOT TELEPHONE THE COURT OR THE COURT'S CLERK OFFICE REGARDING THIS NOTICE.**

# EXHIBIT 4
# (CLAIM FORM)

**Must be postmarked or submitted online NO LATER THAN MM DD, YYYY**

IN RE FORTRA DATA BREACH LITIGATION
SETTLEMENT ADMINISTRATOR
P.O. BOX XXXX
PORTLAND, OR XXXXX - XXXX
**www. XXXXXXXX.com**

---

***In re Fortra File Transfer Software Data Security Breach Litigation***
**Case No. 24-md-03090-RAR (United States District Court for the Southern District of Florida)**

## SETTLEMENT BENEFITS – WHAT YOU MAY GET

**The easiest way to submit a Claim is online at www. XXXXXXXX.com**, or you can complete and mail this Claim Form to the mailing address above.

**You may submit a Claim Form for one or more of these Settlement Class Member Benefits**:

**Cash Reimbursement.** Use Sections 3-7 of this Claim Form to request money for one or more of the following, subject to a *pro rata* (a legal term meaning equal share) adjustment up or down based upon the total value of all Valid Claims:

1. **Cash Payment A – Documented Losses:**
   - **Compensation for Documented Losses**: You may submit a Claim Form with reasonable Documented Losses related to the Data Incident for up to $5,000 per Settlement Class Member. Examples of reasonable documentation include telephone records, correspondence including emails, or receipts. Personal certifications, declarations, or affidavits from the Settlement Class Member do not constitute reasonable documentation, but may be used to add clarity or support other submitted documentation. You will not be reimbursed for expenses if you have been reimbursed for the same expenses by another source.

   **OR**

2. **Cash Payment B – Alternative Cash Payment:** Instead of Cash Payment A, without providing documentation, you may elect to receive a cash payment in the estimated amount of $85.

   **AND**

3. **Dark Web Monitoring:** In addition to Cash Payment A or Cash Payment B, use Section 2 of this Claim Form to request Dark Web Monitoring services.

\*     \*     \*

**Claims must be submitted online or mailed and postmarked by MM DD, YYYY. Use the address at the top of this form for mailed Claim Forms.**

Please note: The Settlement Administrator may contact you to request additional documents to process your Claim Form. Cash Payment B – Alternative Cash Payments may be subject to a *pro rata* increase from the Settlement Fund in the event the amount of Valid Claims is insufficient to exhaust the entire Net Settlement Fund. Similarly, in the event the amount of Valid Claims exhausts the amount of the Net Settlement Fund, the amount of the Cash Payment B- Alternative Cash Payments may be reduced *pro rata* accordingly. For purposes of calculating the *pro rata* increase or decrease, the Settlement Administrator must distribute the funds in the Settlement Fund first for payment of Dark Web Monitoring, then for Cash Payment A – Documented Losses, and then for Cash Payment B – Alternative Cash Payment.. Any *pro rata* increases or decreases to Cash Payments will be on an equal percentage basis.

For more information and complete instructions visit www. XXXXXXXX.com.

Please note that Settlement Class Member Benefits will be distributed after the Settlement is approved by the Court and becomes final. Thank you for your patience.

## 1. Your Information

**1. NAME (REQUIRED):**

First Name

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|

MI

Last Name

| | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

**2. MAILING ADDRESS (REQUIRED):**

Street Address

| | | | | | | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

Apt. No.

| | | | | | | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

City

State   ZIP Code

**3. PHONE NUMBER:**

**4. EMAIL ADDRESS (REQUIRED):**

**5. UNIQUE ID:**

## 2. Dark Web Monitoring Services

*You may be eligible to receive free Dark Web Monitoring services.*

All Settlement Class members are eligible to claim one year of Dark Web Monitoring services.

*Please select the checkbox if you want the Dark Web Monitoring services for which you are eligible.*

☐ **Dark Web Monitoring Services:** I want to receive one year of Dark Web Monitoring services.

*If you select this option, you will be sent instructions and an activation code after the Settlement is final to the email address or home address listed above. Enrollment in this service will not subject you to marketing for additional services or any required payments.*

*Questions?* Visit **www. XXXXXXXX.com** or call **1-XXX-XXX-XXXX**                    Page **2** of **5**

02-CAXXXX
MOCKUP2 v.05

## 3.  Cash Payment A: Documented Losses

You may submit a Claim Form with reasonable documentation for losses related to the Data Incident for up to $5,000 per Settlement Class Member.

Examples of expenses incurred as a result of the Data Incident, include (without limitation) bank fees, long distance phone charges, cell phone charges (only if charged by the minute), data charges (only if charged based on the amount of data used), postage, gasoline for local travel and fees for credit reports, credit monitoring, or other identity theft insurance products purchased between January 30, 2023, and the date of the Claim Form Deadline.

Examples of reasonable documentation include (but are not limited to): telephone records, correspondence including emails, or receipts. Personal certifications, declarations, or affidavits from the Settlement Class Member do not constitute reasonable documentation but may be included to provide clarification, context, or support for other submitted reasonable documentation. **You will not be reimbursed for expenses if you have been reimbursed for the same expenses by another source.**

In order to be properly reimbursed, it is important to send documents that show what happened and how much was lost or spent.

If you do not submit reasonable documentation supporting a loss, or if your Claim Form is invalid as determined by the Settlement Administrator, and you do not cure your Claim Form, your Claim Form will be denied and your Claim Form for Cash Payment A will instead be processed as if you elected Cash Payment B.

To look up more details about how Cash Payments work, visit www. XXXXXXXX.com or call toll-free 1-XXX-XXX-XXXX.

*By filling out the boxes below, you are certifying that the money you spent doesn't relate to other data breaches.*

| Loss Type and Examples of Documents | Amount and Date | Description of Loss or Money Spent and Supporting Documents (Identify what you are attaching, and why it's related to the Data Security Incident) |
|---|---|---|
| Costs due to the Data Incident related to credit monitoring purchases/ freezing/unfreezing between January 30, 2023, and MM DD, YYYY. *Examples: Receipts, notices, or account statements reflecting payment for a credit freeze* | $ ☐☐☐☐ . ☐☐  Date: ☐☐ – ☐☐ – ☐☐☐☐  MM    DD    YYYY | _____ _____ _____ _____ |
| Costs, expenses, and losses due to identity theft, fraud, or misuse of your personal information between January 30, 2023, and MM DD, YYYY, which are fairly traceable to the Data Security Incident. *Examples: Account statement with unauthorized charges circled; police report; IRS document; FTC Identity Theft Report; letter refusing to refund fraudulent charges; receipt for your credit monitoring services purchase* | $ ☐☐☐☐ . ☐☐  Date: ☐☐ – ☐☐ – ☐☐☐☐  MM    DD    YYYY | _____ _____ _____ _____ |

Other expenses such as notary, fax, postage, copying, mileage, long-distance telephone charges, or professional fees related to the Data Security Incident.

*Examples: Phone bills, receipts, detailed list of addresses you traveled (i.e. police station, IRS office), reason why you traveled there (i.e. police report or letter from IRS re: falsified tax return) and number of miles you traveled*

$ ☐☐☐☐ . ☐☐

Date:

☐☐ – ☐☐ – ☐☐☐☐
MM    DD    YYYY

---

## 4.  Cash Payment B: Alternative Cash Payment

Settlement Class Members who do not request compensation under Cash Payment A may elect to receive an alternative cash payment in the estimated amount of $85. You may not request both compensation under Cash Payment A and the alternative payment under Cash Payment B.

☐    **I am requesting a flat payment in the estimated amount of $85. I am NOT requesting reimbursement of any documented losses.**

## 5.   How You Will Receive Your Payment

If you submit a timely and Valid Claim for payment, and if your Claim and the Settlement are finally approved, an email will be sent from [noreply@epiqpay.com] to the email you provided on this Claim Form, prompting you to elect your method of payment. Several electronic payment options will be available including Venmo, ACH, PayPal, or you can elect a check. Please allow 1-2 days for the delivery of electronic payments and 3-4 weeks for the delivery of checks.

Please ensure you have provided a current and complete email address. If you do not provide a current and valid email address, if you do not open your email, or if your electronic payment does not go through due to wrong or incomplete information, the Settlement Administrator will attempt to send you a check, relying on your physical address on file.

## 6. Signature

I affirm under the laws of the United States that the information I have supplied in this Claim Form and any copies of documents that I am sending to support my Claim are true and correct to the best of my knowledge.

I understand that I may be asked to provide more information by the Settlement Administrator before my Claim is complete.

Date: |____| |____| – |_____|
       MM      DD        YYYY

_____
**Signature**

_____
**Print Name**

# EXHIBIT 5
# (BRIGHTLINE EMAIL NOTICE)

From: EMAIL ADDRESS

To: EMAIL ADDRESS

Re: In re Fortra Court Ordered Notice of Class Action Settlement

<<Unique ID>>

United States District Court for the Southern District of Florida
*In re Fortra File Transfer Software Data Security Breach Litigation*
Case No. 24-md-03090-RAR

# If your Private Information was impacted in the Fortra Data Incident in  January of 2023, you may be entitled to Settlement Class Member Benefits from a Settlement.

*A Court authorized this Notice. This is <u>not</u> a solicitation from a lawyer.*

**You can learn more at: www.XXXXXXXXXXXX.com**

A $20 million settlement has been reached in a class action lawsuit involving Aetna, Brightline, Community Health, Elevance, Fortra, Imagine360, Intellihartx, NationsBenefits, and Santa Clara ("Defendants") related to a Data Incident involving Fortra's GoAnywhere managed file transfer ("MFT") software that occurred in January of 2023. The Defendants and Hatch Bank (who is not a Defendant), all used, directly or indirectly, Fortra's MFT software. The Data Incident involved unauthorized access to or acquisition of approximately five million individuals' Private Information, which includes some combination of names, addresses, dates of birth, telephone numbers, member identification numbers, employer names, Social Security numbers, start and end dates of health plan coverage, and health insurance information that were being stored within the Defendants' respective instances of the Fortra GoAnywhere MFT at the time of the Data Incident. The impacted individuals are called "Settlement Class members."

The purpose of this Notice is to inform you of the class action and the Settlement so you may decide whether to file a Claim Form, opt-out, object, or do nothing.

**Who's Included?** The Settlement Class includes: All living individuals residing in the United States who were sent notice of the Data Incident indicating their Private Information may have been impacted in the Data Incident. You may have received notice of the Data Incident around May 2023.

**Records indicate that you are a Settlement Class member** because your Private Information that was provided to Brightline, who was a customer of Fortra and used its file transfer services, was impacted by the Data Incident. This means you are also a member of the Brightline Settlement Subclass.

As a Brightline Settlement Subclass member, you may file a Claim Form for the above Settlement Class Member Benefits *only* to the extent that you have not been fully compensated under the prior Brightline Settlement. The Brightline Settlement was a settlement involving some of the claims in this case arising out of the Data Incident. The Brightline Settlement was approved by the Court, and you were previously given an opportunity to submit a claim for benefits.

If you are a Brightline Subclass Settlement member who submitted a claim in the Brightline Settlement, and you received benefits from that settlement, you may only Claim benefits from this Settlement to the extent you were not fully compensated for your injuries in the Brightline Settlement. This means that you either selected Cash Payment A in the Brightline Settlement and your documented losses since filing the Claim in that settlement exceed the compensation received from the Settlement, or you elected to receive Cash Payment B (flat payment) under the Brightline Settlement, but you have incurred additional Documented Losses after the date your claim was filed in the Brightline Settlement. Either way, you the most you can recover between the Brightline Settlement and this Settlement for Documented Losses if $5,000.

**What Does the Settlement Provide?** If you are a Settlement Class member, you can file a Claim Form here for the following Settlement Class Member Benefits:

- <u>**Cash Payment A – Documented Losses:**</u> If you submitted a claim in the prior Brightline Settlement for Cash Payment A or B, but have incurred additional losses since the date you filed the claim, you are entitled to make a claim for a Cash Payment A – Documented Losses Cash Payment of up to $5,000, upon presentation of Documented Losses related to the Data Incident that are in excess of the amounts received under Cash Payment A from the Brightline Settlement.; **OR**

- <u>**Cash Payment B – Alternative Cash Payment:**</u> Instead of Cash Payment A, without providing documentation, you may submit a Claim Form to receive an alternative cash payment in the estimated amount of $85 (as long as you did not file a Claim for Cash Payment A or B in the prior Brightline Settlement); **AND**

- <u>**Dark Web Monitoring:**</u> In addition to Cash Payment A *or* Cash Payment B, you may also submit a Claim Form to receive one year of Dark Web Monitoring (as long as you did not make a claim and receive Dark Web Monitoring in the prior Brightline Settlement).

<u>**Injunctive Relief:**</u> Defendants have or will implement additional security measures following the Data Incident.

Cash Payment B – Alternative Cash Payments may be subject to a *pro rata* (a legal term meaning equal share) adjustment increase from the Settlement Fund if the amount of timely and valid Claim Forms does not use the entire Net Settlement Fund. Alternatively, if the amount of timely and valid Claim Forms exceeds the amount of the Net Settlement Fund, your alternative cash payment may be subject to a *pro rata* reduction.

You must submit your Claim Form here or by mail postmarked by **MONTH DD, 2025**.

**Other Options.** If you do not want to be legally bound by the Settlement, you must opt-out of the Settlement by sending a request to opt-out by mail and it must be **postmarked** by **MONTH DD, 2025**. If you do not opt-out, you will give up the right to sue and will release <<INSERT SUBCLASS RELEASE DEFS>> from the Released Claims in this lawsuit. If you do not opt-out, you may object to the Settlement by **MONTH DD, 2025**. The Long Form Notice on the Settlement Website explains how to opt-out or object. If you do nothing, you will get no Settlement Class Member Benefits, and you will be bound by the Settlement and any judgments and orders.

The Court will hold a Final Approval Hearing on **MONTH DD, 2025**, to consider whether to approve the Settlement, Class Counsel's attorneys' fees of up to 33.33% of the Settlement fund and reimbursement of costs, and any objections. You or your lawyer may attend and ask to appear

at the hearing if you object, but you are not required to do so. The hearing may be held remotely, and if so, instructions will be at www.XXXXXXXXXXXXX.com.

**This notice is a summary. Learn more about the Settlement** [here](#), or by calling toll free 1-XXX-XXX-XXXX.

# EXHIBIT 6
# (BRIGHTLINE POSTCARD NOTICE)

Settlement Administrator
PO Box XXXX
Portland, OR 972XX-XXXX

FIRST-CLASS MAIL
U.S. POSTAGE
PAID
Portland, OR
PERMIT NO.xxxx

BARCODE
NO-PRINT
ZONE

Court-Approved Legal Notice
*In re Fortra File Transfer Software Data Security Breach Litigation*, 24-md-03090-RAR
United States District Court for the Southern District of Florida

**If your Private Information was impacted the Fortra Data Incident that occurred in January of 2023, you may be entitled to Settlement Class Member Benefits from a Settlement.**

*A Court has authorized this notice. This is **not** a solicitation from a lawyer.*

**This notice is a summary. www.XXXXXXXXXXX.com 1-XXX-XXX-XXXX**

<<MAIL ID>>
<<NAME 1>>
<<NAME 2>>
<<ADDRESS LINE 1>>
<<ADDRESS LINE 2>>
<<ADDRESS LINE 3>>
<<ADDRESS LINE 4>>
<<ADDRESS LINE 5>>
<<CITY, STATE ZIP>>
<<COUNTRY>>

A \$20 million settlement has been reached in a class action lawsuit against Aetna, Brightline, Community Health, ... imaging, GoldenState, ... Benefit ... relating to a data breach involving Fortra's file transfer services that occurred in January of 2023. The Data Incident involved unauthorized access to or acquisition of approximately five million individuals' Private Information that were being stored within Fortra's file transfer services. The impacted individuals are known as "Settlement Class members."

**Who is Included?** The Settlement Class includes: All living individuals residing in the United States who were sent notice of the Data Incident indicating their Private Information may have been impacted in the Data Incident.

**Records indicate you are a Settlement Class member** because your Private Information provided to Brightline Inc., a customer of Fortra that used its GoAnywhere managed file transfer ("MFT") software, was impacted by the Data Incident. This makes you a member of the Brightline Settlement Subclass. There was a prior settlement involving Brightline. The benefits you are entitled to in this Settlement will be based on whether you made a claim in that Settlement and whether you have incurred further losses since you made the claim.

**What does the Settlement Provide?** If you did not file a claim in the Brightline Setttlement, you can file a Claim for all of the benefits in this Settlement. If you did file a claim in the Brightline Settlement, you may only recover for new losses up to \$5000, as well as elect Dark Web Monitoring if you did not already claim credit monitoring. Your new claim must be filed online or postmarked by **Month XX, 20YY**:

**Cash Payment A – Documented Losses:** If you did not file a claim in the Brightline Settlement, you may submit a Claim Form under this section with documentation for losses related to the Data Incident up to \$5,000. If you did file a claim for Cash Payment A or Cash Payment B in the Brightline Settlement, and incurred losses since filing that claim, you can Claim up to \$5,000 in this Settlement, minus what you have already been paid, **OR**

**Cash Payment B – Alternative Cash Payment:** If you did not receive a Cash A or B Payment in the prior Brightline Settlement (and do not select a Cash Payment A now), you may submit a Claim Form with no documentation to receive a cash payment in the estimated amount of \$85; **AND**

**Dark Web Monitoring:** In addition to Cash Payment A *or* B, you may also receive one year of Dark Web Monitoring (if you did not elect credit monitoring in the prior Brightline Settlement).

**Injunctive Relief:** Defendants have implemented or will be implementing additional network security measures.

Cash Payment B – Alternative Cash Payments may be subject to a *pro rata* (a legal term meaning equal share) adjustment up or down based upon the total value of all Valid Claims received by the Settlement Administrator.

**Other Options.** If you do not want to be legally bound by the Settlement, you must opt-out by sending a request to opt-out by mail and it must be **postmarked** by **Month XX, 20YY**. If you do not opt-out, you will give up the right to sue and will release <<INSERT SUBCLASS RELEASE DEFS>> from the Released Claims in the Action. If you do not opt-out, you may object to the Settlement by **Month XX, 20YY**. The Long Form Notice on the Settlement Website explains how to opt-out or object. If you do nothing, you will get no beneits, and you will be bound by the Settlement and any judgments and orders. The Court will hold a Final Approval Hearing on **Month XX, 20YY**, to consider whether to approve the Settlement, Class Counsel's attorneys' fees of up to 33.33% of the Settlement Fund, and costs, and any objections. You or your lawyer may attend the hearing if you object, but you are not required to do so.

**Brightline Settlement Subclass Member CLAIM FORM**
**Claims must be postmarked or submitted online no later than Month Day, 20YY.**

First Name: ☐☐☐☐☐☐☐☐☐☐ MI: ☐ Last Name: ☐☐☐☐☐☐☐☐☐☐☐☐

Mailing Address: ☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐

City: ☐☐☐☐☐☐☐☐☐☐☐☐☐ State: ☐☐ ZIP Code: ☐☐☐☐☐

**Cash Payment A – Documented Losses:** If you did not claim Cash Payment A in the Brightline Settlement, you may submit a Claim Form with documentation for losses related to the Data Incident for up to $5000. If you did submit a prior claim for Cash Payment A or Cash Payment B (flat cash), you may only Claim new losses from the date of the prior claim up to $5000, minus what you have already been paid. If eligible, you must visit the Settlement Website to file for Cash Payment A; OR

**Cash Payment B – Alternative Cash Payment:** Instead of Cash Payment A, without providing documentation, you may submit a Claim Form to receive an estimated payment of $85 (if you did not claim Cash Payment B in the prior Brightline Settlement). Your alternative cash payment may be subject to a *pro rata* adjustment up or down.

☐ By checking this box, I affirm I want to receive an alternative cash payment in the estimated amount of $85 under Cash Payment B. If I select this option, I cannot claim reimbursement under Cash Payment A.

**Dark Web Monitoring:** In addition to Cash Payment A *or* B, you may also submit a Claim for one year of Dark Web Monitoring (if you did not receive credit monitoring in the prior Brightline Settlement).

☐ By checking this box, I affirm I want to receive Dark Web Monitoring.

**By signing my name, I swear and affirm I am completing this Claim Form to the best of my personal knowledge.**

Signature: ☐ Date: ☐



In re Fortra Data Breach Litigation
Settlement Administrator
PO Box XXXX
Portland, OR 97xxx-xxxx

# EXHIBIT 7
# (BRIGHTLINE CLAIM FORM)

**Must be postmarked or submitted online NO LATER THAN MM DD, YYYY**

IN RE FORTRA DATA BREACH LITIGATION
SETTLEMENT ADMINISTRATOR
P.O. BOX XXXX
PORTLAND, OR XXXXX - XXXX
**www. XXXXXXXX.com**

---

*In re Fortra File Transfer Software Data Security Breach Litigation*
**Case No. 24-md-03090-RAR (United States District Court for the Southern District of Florida)**
*Brightline Settlement SubClass Claim Form*

## SETTLEMENT BENEFITS – WHAT YOU MAY GET

**The easiest way to submit a Claim is online at www. XXXXXXXX.com**, or you can complete and mail this Claim Form to the mailing address above.

<u>**Brightline Settlement Subclass Claim Form**</u> - The Brightline Settlement was a settlement involving some of the claims in this case arising out of the Data Incident. The Brightline Settlement was approved by the Court, and Brightline subclass members were previously given an opportunity to submit a claim for benefits.

<u>**You may submit a Claim Form for one or more of these Settlement Class Member Benefits:**</u>

**Cash Reimbursement.** Use Sections 3-7 of this Claim Form to request money for one or more of the following. Cash Payment B – Alternative Cash Payments are subject to a *pro rata* (a legal term meaning equal share) adjustment up or down based upon the total value of all Valid Claims.

As a Brightline Subclass Settlement member, if you submitted a claim in the prior Brightline Settlement, and you received benefits from that Settlement, you may only Claim benefits from this Settlement to the extent you were not fully compensated for your damages in the prior Brightline Settlement. This means that you either selected Cash Payment A in the Brightline Settlement and your documented losses incurred since filing the claim exceed the compensation received from the Settlement, or you elected to receive Cash Payment B (flat payment) under the Brightline Settlement, but you have incurred Documented Losses after the date your claim was filed in the Brightline Settlement.

1. <u>**Cash Payment A – Documented Losses:**</u> If you did not submit a Clain in the prior Brightline Settlement, you may submit a Claim Form with reasonable Documented Losses related to the Data Incident for up to $5,000 per Settlement Class Member. Examples of reasonable documentation include telephone records, correspondence including emails, or receipts. Personal certifications, declarations, or affidavits from the Settlement Class Member do not constitute reasonable documentation, but may be used to add clarity or support other submitted documentation.

   If you submitted a claim in the prior Brightline Settlement for Cash Payment A or B, but have incurred additional losses since the date you filed the claim, you are entitled to make a Claim in this Settlement for Cash Payment A – Documented Losses Cash Payment of up to $5,000, upon presentment of Documented Losses related to the Data Incident that are in excess of the amounts received under Cash Payment A from the Brightline Settlement.

   **OR**

2. <u>**Cash Payment B – Alternative Cash Payment:**</u> Instead of Cash Payment A, without providing documentation, you may submit a Claim Form to receive a cash payment in the estimated amount of $85 (as long as you did not file a Claim for a Cash Payment A or B in the prior Brightline Settlement).

   **AND**

3. **Dark Web Monitoring:** In addition to Cash Payment A *or* Cash Payment B, you may also submit a Claim Form to receive one year of Dark Web Monitoring (as long as you did not make a claim and receive credit monitoring in the prior Brightline Settlement).

\*   \*   \*

**Claims must be submitted online or mailed and postmarked by MM DD, YYYY. Use the address at the top of this form for mailed Claim Forms.**

<u>Please note</u>: The Settlement Administrator may contact you to request additional documents to process your Claim Form. Cash Payment B – Alternative Cash Payments may be subject to a *pro rata* increase from the Settlement Fund in the event the amount of Valid Claims is insufficient to exhaust the entire Net Settlement Fund. Similarly, in the event the amount of Valid Claims exhausts the amount of the Net Settlement Fund, the amount of the Cash Payments may be reduced *pro rata* accordingly. For purposes of calculating the *pro rata* increase or decrease, the Settlement Administrator must distribute the funds in the Settlement Fund first for payment of Dark Web Monitoring, then for Cash Payment A – Documented Losses, and then for Cash Payment B – Alternative Cash Payments. Any *pro rata* increases or decreases to Cash Payment B – Alternative Cash Payments  will be on an equal percentage basis.

 For more information and complete instructions visit www. XXXXXXXX.com.

**Please note that Settlement Class Member Benefits will be distributed after the Settlement is approved by the Court and becomes final. Thank you for your patience.**

## 1.  Your Information

**1. NAME (REQUIRED):**

First Name

MI

Last Name

**2. MAILING ADDRESS (REQUIRED):**

Street Address

Apt. No.

City

State

ZIP Code

**3. PHONE NUMBER:**

**4. EMAIL ADDRESS (REQUIRED):**

**5. UNIQUE ID:**

## 2. Dark Web Monitoring Services

*You may be eligible to receive free Dark Web Monitoring services.*

Unless you claimed credit monitoring in the prior Brightline Settlement, all Brightline Settlement Subclass members are eligible to claim one year of Dark Web Monitoring services.

*Please select the checkbox if you want the Dark web Monitoring services for which you are eligible.*

☐ **Dark Web Monitoring Services:** I want to receive one year of Dark Web Monitoring services, and I did not receive credit monitoring Services in the prior Brightline Settlement.

*If you select this option, you will be sent instructions and an activation code after the Settlement is final to the email address or home address listed above. Enrollment in this service will not subject you to marketing for additional services or any required payments.*

48\*Questions? Visit **www. XXXXXXXX.com** or call **1-XXX-XXX-XXXX**                    Page **3** of **6**

02-CAXXXX
MOCKUP2 v.05

## 3. Cash Payment A: Documented Losses

If you did not submit a Claim in the prior Brightline Settlement, you may submit a Claim Form with reasonable documentation for losses related to the Data Incident for up to $5,000 per Settlement Class Member. As a Brightline Settlement Subclass member, if you previously submitted a claim for Cash Payment A or Cash Payment B (flat cash) you may only claim now for additional losses since the date you filed your prior claim, and only for the difference between any amount received under Cash Payment A (documented losses) or Cash Payment B (flat cash) from the Brightline Settlement and $5,000.

Examples of expenses incurred as a result of the Data Incident, include (without limitation) bank fees, long distance phone charges, cell phone charges (only charged by the minute), data charges (only if charged based on the amount of data used), postage, gasoline for local travel and fees for credit reports, credit monitoring, or other identity theft insurance products purchased between January 30, 2023, and the date of the Claim Form Deadline.

Examples of reasonable documentation include (but are not limited to): telephone records, correspondence including emails, or receipts. Personal certifications, declarations, or affidavits from the Settlement Class Member do not constitute reasonable documentation but may be included to provide clarification, context, or support for other submitted reasonable documentation. You will not be reimbursed for expenses if you have been reimbursed for the same expenses by another source.

In order to be properly reimbursed, it is important to send documents that show what happened and how much was lost or spent.

If you do not submit reasonable documentation supporting a loss, or if your Claim Form is invalid as determined by the Settlement Administrator, and you do not cure your Claim Form, your Claim Form will be denied and your Claim Form for Cash Payment A will instead be processed as if you elected Cash Payment B.

To look up more details about how Cash Payments work, visit www. XXXXXXXX.com or call toll-free 1-XXX-XXX-XXXX.

*By filling out the boxes below, you are certifying that the money you spent doesn't relate to other data breaches.*

| Loss Type and Examples of Documents | Amount and Date | Description of Loss or Money Spent and Supporting Documents (Identify what you are attaching, and why it's related to the Data Security Incident) |
|---|---|---|
| Costs related to credit monitoring purchases/ freezing/unfreezing between January 30, 2023, and MM DD, YYYY. *Examples: Receipts, notices, or account statements reflecting payment for a credit freeze* | $ [ ][ ][ ][ ] . [ ][ ]  Date: [ ][ ] – [ ][ ] – [ ][ ][ ][ ]  MM     DD     YYYY | _____ _____ _____ _____ |
| Costs, expenses, and losses due to identity theft, fraud, or misuse of your personal information between January 30, 2023, and MM DD, YYYY, which are fairly traceable to the Data Security Incident. *Examples: Account statement with unauthorized charges circled; police report; IRS document; FTC Identity Theft Report; letter refusing to refund fraudulent charges; receipt for your credit monitoring services* | $ [ ][ ][ ][ ] . [ ][ ]  Date: [ ][ ] – [ ][ ] – [ ][ ][ ][ ]  MM     DD     YYYY | _____ _____ _____ _____ |

*purchase*

| | | |
|---|---|---|
| Other expenses such as notary, fax, postage, copying, mileage, long-distance telephone charges, or professional fees related to the Data Security Incident. *Examples: Phone bills, receipts, detailed list of addresses you traveled (i.e. police station, IRS office), reason why you traveled there (i.e. police report or letter from IRS re: falsified tax return) and number of miles you traveled* | $ ☐☐☐☐ . ☐☐  Date: ☐☐ – ☐☐ – ☐☐☐☐  MM    DD    YYYY | _____  _____  _____ |

---

## 4.   Cash Payment B: Alternative Cash Payment

Settlement Class Members who do not request compensation under Cash Payment A may elect to receive an alternative cash payment in the estimated amount of $85 (as long as you did not file a Claim for Cash Payment A or B in the prior Brightline Settlement). You may not request both compensation under Cash Payment A and the alternative payment under Cash Payment B.

☐    **I am requesting a flat payment in the estimated amount of $85. I am NOT requesting reimbursement of any documented losses.**

## 5.  How You Will Receive Your Payment

If you submit a timely and Valid Claim for payment, and if your Claim and the Settlement are finally approved, an email will be sent from [noreply@epiqpay.com] to the email you provided on this Claim Form, prompting you to elect your method of payment. Several electronic payment options will be available including Venmo, ACH, PayPal, or you can elect a check. Please allow 1-2 days for the delivery of electronic payments and 3-4 weeks for the delivery of checks.

Please ensure you have provided a current and complete email address. If you do not provide a current and valid email address, if you do not open your email, or if your electronic payment does not go through due to wrong or incomplete information, the Settlement Administrator will attempt to send you a check, relying on your physical address on file.

## 6. Signature

I affirm under the laws of the United States that the information I have supplied in this Claim Form and any copies of documents that I am sending to support my Claim are true and correct to the best of my knowledge.

I understand that I may be asked to provide more information by the Settlement Administrator before my Claim is complete.

_____
**Signature**

Date: _____  _____  –  _____
         MM       DD          YYYY

_____
**Print Name**

Questions? Visit **www.XXXXXXXXX.com** or call **1-XXX-XXX-XXXX**          Page **6** of **6**

02-CAXXXX
MOCKUP2 v.05

# EXHIBIT 8
# (PRELIMINARY APPROVAL ORDER)

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| **IN RE: FORTRA FILE TRANSFER SOFTWARE DATA SECURITY BREACH LITIGATION** | Case No. 24-md-03090-RAR |
| This Document Relates to:<br><br>Defendants Fortra, LLC, NationsBenefits LLC, NationsBenefits Holdings LLC, Aetna Inc., Aetna Life Insurance Company, Anthem Insurance Companies, Brightline, Inc., Elevance Health, Inc., Santa Clara Family Health Plan, Community Health Systems, CHSPSC, Intellihartx, LLC, and Imagine360, LLC. | |

## [PROPOSED] ORDER GRANTING PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF GLOBAL SETTLEMENT AGREEMENT

**THIS CAUSE** comes before the Court on Plaintiffs' Unopposed Motion for Preliminary Approval of Settlement Agreement [ECF No. 230][1] requesting entry of an order: (i) granting Preliminary Approval of the Settlement; (ii) provisionally certifying the Settlement Class for settlement purposes; (iii) appointing Plaintiffs as Class Representatives; (iv) appointing Lead Counsel and other Class Counsel for the Settlement Class; (v) approving the form of Notices and the Notice Program; (vi) approving the Claim Form and the Claim process; (vii) appointing Epiq Class Action & Claims Solutions, Inc. as Settlement Administrator; (viii) establishing procedures for members of the Settlement Class to opt-out of or object to the Settlement; and (ix) scheduling a Final Approval Hearing on whether to grant Final Approval of the Settlement and Class Counsel's Application for Attorneys' Fees and Costs.

Having carefully reviewed the proposed Settlement and its exhibits, all relevant filings,

---

[1] All capitalized terms used herein have the same meanings as those defined in Section II of the Settlement Agreement attached to the Motion for Preliminary Approval as ***Exhibit A***.

and the record, the Court finds the proposed Settlement satisfies the criteria for preliminary approval, the proposed Settlement Class should be preliminarily certified, the proposed Notice Program and Claim Process should be approved, and Class Representatives, Lead Counsel and the other Class Counsel, and the Settlement Administrator should be appointed. Accordingly, it is hereby: **ORDERED AND ADJUDGED** that the Motion for Preliminary Approval is **GRANTED** as set forth herein.

## <u>BACKGROUND</u>

This Settlement encompasses eight of the nine putative class actions that have been centralized into MDL-3090 before this Court. The ninth case involving Defendant Brightline, Inc., previously settled and the Court granted Final Approval on February 10, 2025. [ECF No. 217].[2] Plaintiffs' Track 1-4 Complaints allege that Defendants failed to adequately protect Plaintiffs' and the Settlement Class' Private Information from unauthorized access and asserting multiple common law and statutory claims for relief. *See* Complaints [ECF Nos. 133, 150-152]. Considering the respective tracks' motions to dismiss seriatim, the Court previously ruled on the Track 1 motion to dismiss granting in part and denying in part the motion allowing a number of the causes of action common to all Complaints to survive. [ECF No. 172]. This Settlement was reached before the Court considered motions to dismiss for Tracks 2-4.

Other than Fortra, Defendants are in the healthcare business. *See* Complaints. Fortra is in the business of offering cybersecurity and automation solutions. *Id*. NationBenefits, Brightline, Community Health, Intellihartx, and Imagine360 are Fortra's customers who directly used Fortra's

---

[2] The Brightline Settlement Class Members, as defined in the Brightline Settlement Agreement [ECF No. 198-1], released Brightline, but no other Parties in this Action. Defendant Brightline is included in this Settlement, because the Brightline Settlement Subclass, which is the same class as the one in the previous settlement, is being offered Settlement Class Member Benefits from this Settlement in consideration for releasing Defendant Fortra.

GoAnywhere MFT file transfer application in connection with their businesses. *See* Tracks 1-2, 4 Complaints. Aetna, Elevance Health, and Santa Clara, are all business associates of NationsBenefits and did not have a direct relationship with Defendant Fortra, but their customers' Private Information stored on NationsBenefits' GoAnywhere environment at the time of the Data Incident. *See* Tracks 1-4 Complaints. In January of 2023, a Data Incident occurred, which involved a criminal attack by a Russian-linked ransomware group, involving a previously unknown, zero-day "remote code injection exploit" that affected certain instances of Fortra's GoAnywhere MFT, and that may have resulted in the unauthorized access to or acquisition of approximately five million individuals' Private Information. *See* Complaints. The impacted information included some combination of names, addresses, dates of birth, member identification numbers, start and end dates of health plan coverage, telephone numbers, Social Security numbers, and employer names, which data was being stored within the Defendants' respective instances of the Fortra GoAnywhere MFT at the time of the Data Incident. *Id*. Following the Data Incident, Defendants began notifying the impacted individuals, including Plaintiffs and Settlement Class members, of the unauthorized access to and exfiltration of their Private Information. *Id*.

Prior to mediating and reaching a settlement, the Parties engaged in meaningful discovery. The Parties exchanged Initial Disclosures and negotiated a Stipulated Confidentiality and Qualified Protective Order and Order Governing Production of Electronically Stored Information and Paper Documents, which the Court entered on April 22, 2024. [ECF Nos. 154, 155]. Plaintiffs also requested pre-mediation informal discovery from the Defendants, and in response Defendants produced extensive material relating to liability and damages, including, but not limited to, the number of individuals and categories of Private Information impacted by the Data Incident. The Parties also exchanged detailed mediation statements outlining their positions with respect to

3

liability, damages, and settlement.

On February 4-5, 2025, the Parties[3] participated in a two-day private mediation in Hollywood, Florida, before experienced class action mediator Michael Ungar, Esq. Although the Parties made progress at mediation, no settlement was reached at the conclusion of the second day. However, with the assistance of the mediator, the Parties continued to negotiate for the next several days, eventually agreeing to the material terms of this Settlement on February 9, 2025. The terms of the Settlement reached are memorialized in the Agreement, which was negotiated at arm's length, in good faith, and without collusion by capable and experienced counsel with full knowledge of the facts, the law, and the inherent risks in the Action, and with the active involvement of Plaintiffs and Defendants.

The Parties filed a Notice of Global Settlement with the Court on February 10, 2025. [ECF No. 213]. Over the next month, the Parties worked diligently to finalize the terms of the Agreement and ancillary documents, and the Agreement was executed on April 10, 2025. The Parties did not discuss attorneys' fees and costs until after they reached agreement on all material terms.

Specifically, the Settlement provides monetary relief that includes a non-reversionary all-cash common Settlement Fund in the amount of $20,000,000. The Settlement Fund will be funded by Defendants Fortra, NationsBenefits, Community Health, Intellihartx, and Imagine360, and Elevance Health after Preliminary Approval with the remainder to be funded by them following Final Approval. The Settlement Fund will be used to pay: (i) Settlement Class Member Benefits; (ii) any attorneys' fees and costs awarded by the Court to Class Counsel; and (iii) all Settlement Administration Costs. Once the above-listed Defendants fund the Settlement Fund, they will not

---

[3] Elevance Health did not participate in the mediation because it had reached a settlement in principle with Plaintiffs prior to the mediation. However, after the mediation, Elevance Health joined as a party to the global settlement.

be required to make any other payments to Settlement Class members under the Settlement. The Settlement also provides that prior to Final Approval, Defendants will provide Class Counsel with security attestations as to the security measures it implemented following the Data Incident. The costs of any such security measures shall be fully borne by Defendants, and under no circumstances will such costs be deducted from the Settlement Fund.

Plaintiffs now seek Preliminary Approval of the Settlement on behalf of the proposed Settlement Class. Defendants do not oppose the relief sought in the Motion for Preliminary Approval and agree the Court should grant Preliminary Approval of the Settlement and allow Notice to issue to the Settlement Class. As further discussed below, the Settlement falls within the range of judicial approval and includes comprehensive Notice Program and Claims process. As such, Preliminary Approval of the proposed Settlement is warranted.

## LEGAL STANDARD

It is well established that "[a] class may be certified solely for purposes of settlement [if] a settlement is reached before a litigated determination of the class certification issue." *Borcea v. Carnival Corp*., 238 F.R.D. 664, 671 (S.D. Fla. 2006) (cleaned up). "There is a strong judicial policy in favor of settlement, in order to conserve scarce resources that would otherwise be devoted to protracted litigation." *Id*. In deciding whether to provisionally certify a settlement class, a court must consider the same factors that it would consider in connection with a proposed litigation class—*i.e.*, all Federal Rule of Civil Procedure 23(a) factors and at least one subsection of Federal Rule of Civil Procedure 23(b) must be satisfied—except that the Court need not consider the manageability of a potential trial, since the settlement, if approved, would obviate the need for a trial. *See id*. at 671-672; *see also Diakos v. HSS Sys., LLC*, 137 F. Supp. 3d 1300, 1306 (S.D. Fla. 2015) (explaining a court evaluates whether certification of a settlement class is appropriate under

Rule 23(a) and (b)); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

Rule 23(a) requires: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. *See* Fed. R. Civ. P. 23(a)(1)–(4). Rule 23(b)(3) requires that (1) "the questions of law or fact common to class members predominate over any questions affecting only individual members" and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Eleventh Circuit also requires that the class representatives have standing to sue and that the proposed class is adequately defined and clearly ascertainable. *See Prado v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000); *Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012).

Before addressing any Rule 23 factor, however, the Court must ensure that standing under Article III is met. *See Griffin v. Dugger*, 823 F.2d 1476, 1482 (11th Cir. 1987) ("[A]ny analysis of class certification must begin with the issue of standing[.]"). To satisfy Article III standing, a plaintiff must "(1) suffer[] an injury in fact, (2) that is fairly traceable to the challenged conduct of defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

If certification of a settlement class is appropriate, a court then determines if the proposal is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). To do so, the Court considers whether the following factors are met:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

*Id.* Furthermore, the Eleventh Circuit "instruct[s] district courts to consider several additional

factors called the *Bennett* factors." *In re Equifax Inc. Customer Data Sec. Breach Litig*., 999 F.3d 1247, 1273 (11th Cir. 2021) (citing *Bennett v. Behring Corp*., 737 F.2d 982, 986 (11th Cir. 1984)). These additional factors are: (a) whether "there was no fraud or collusion in arriving at the settlement," and (b) whether the settlement was fair, adequate and reasonable, considering (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved. *Bennett*, 737 F.2d at 986 ("*Bennett* factors").

Courts have substantial discretion in approving a settlement agreement, *Bennett*, 737 F.2d at 986, and settlement negotiations that involve arm's-length, informed bargaining with the aid of experienced counsel support a preliminary finding of fairness. *See* Manual for Compl. Lit., Third, § 30.42 (West 1995) ("A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.") (cleaned up). "Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies, and the settlement falls within the range of reason." *Smith v. Wm. Wrigley Jr. Co*., No. 09-60646, 2010 WL 2401149, at *2 (S.D. Fla. June 15, 2010) (cleaned up).

## ANALYSIS

The Court finds, for settlement purposes only and conditioned on final certification of the proposed Settlement Class and entry of a Final Approval Order, that the Settlement Class and proposed Settlement satisfy the requirements of Rules 23(a), 23(b)(3), and 23(e), as well as the *Bennett* factors.

A.     **Certification Of The Settlement Class Is Appropriate.**

The Court finds, for settlement purposes only, that the Rule 23 factors are satisfied, and certification of the proposed Settlement Class is appropriate under Rule 23. The Court further finds that the Article III standing requirement is met here.

The Court therefore provisionally certifies the following Settlement Class and Settlement Class Subclasses:

**Settlement Class**: All living individuals residing in the United States who were sent a notice of the Data Incident indicating their Private Information may have been impacted in the Data Incident. [4]

**Aetna Settlement Subclass**: All living individuals residing in the United States who were sent a notice of the Data Incident from, or on behalf of, Defendant Aetna indicating their Private Information may have been impacted in the Data Incident.

**Brightline Settlement Subclass**: All living individuals residing in the United States who were sent a notice of the Data Incident from, or on behalf of, Defendant Brightline indicating their Private Information may have been impacted in the Data Incident.

**Community Health Settlement Subclass**: All living individuals residing in the United States who were sent a notice of the Data Incident from, or on behalf of, Defendant Community Health indicating their Private Information may have been impacted in the Data Incident.

**Elevance Health Settlement Subclass**: All living individuals residing in the United States who were sent a notice of the Data Incident from, or on behalf of, Defendant Elevance Health indicating their Private Information may have been impacted in the Data Incident.

**Fortra Settlement Subclass**: All living individuals residing in the United States who were sent a notice of the Data Incident indicating their Private Information may have been impacted in the Data Incident. The Fortra Settlement Subclass is comprised of all members of the Settlement Class, including the NationsBenefits Settlement Subclass, the Aetna Settlement Subclass, Brightline Settlement

---

[4] Excluded from the Settlement Class are (a) all persons who are directors and officers of Defendants, their respective subsidiaries and affiliated companies; (b) governmental entities; (c) the Judge assigned to the Action, that Judge's immediate family, and Court staff; and (d) all Settlement Class Members who submit a Valid Request for Exclusion prior to the Opt-Out Deadline

Subclass, Community Health Settlement Subclass, Elevance Health Settlement Subclass, Imagine360 Settlement Subclass, Intellihartx Settlement Subclass, Santa Clara Settlement Subclass, and Hatch Bank Settlement Subclass.

**Hatch Bank Settlement Subclass**: All living individuals residing in the United States who were sent a notice of the Data Incident from, or on behalf of, Hatch Bank indicating their Private Information may have been impacted in the Data Incident.

**Imagine360 Settlement Subclass**: All living individuals residing in the United States who were sent a notice of the Data Incident from, or on behalf of, Defendant Imagine360 indicating their Private Information may have been impacted in the Data Incident.

**Intellihartx Settlement Subclass**: All living individuals residing in the United States who were sent a notice of the Data Incident from, or on behalf of, Defendant Intellihartx indicating their Private Information may have been impacted in the Data Incident.

**NationBenefits Settlement Subclass**: All living individuals residing in the United States who were sent a notice of the Data Incident from, on or behalf of, Defendant NationsBenefits indicating their Private Information may have been impacted in the Data Incident.

**Santa Clara Settlement Subclass**: All living individuals residing in the United States who were sent a notice of the Data Incident from, or on behalf of, Defendant Santa Clara indicating their Private Information may have been impacted in the Data Incident.

The Court will address each Rule 23(a) and 23(b)(3) factor in turn.

### 1.     The Rule 23(a) Factors Are Satisfied.

#### (i)     *Rule 23(a)(1) - Numerosity*

Rule 23(a)(1) requires that the "class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The numerosity requirement is "generally a low hurdle" and, as a baseline, "less than twenty-one is inadequate . . . [and] more than forty is adequate[.]" *Vega v. T-Mobile USA, Inc*., 564 F.3d 1256, 1267 (11th Cir. 2009) (cleaned up). Here, the numerosity requirement of Rule 23(a)(1) is satisfied because the Settlement Class includes millions of individuals. *See Cox v. Am. Cast Iron Pipe Co*., 784 F.2d 1546, 1553 (11th Cir. 1986)

(numerosity generally satisfied where there are more than 40 class members); *In re Fortra File Transfer Software Data Security Breach Litig.*, No. 24-MD-03090-RAR, 2025 WL 457896, at *4 (S.D. Fla. Feb. 11, 2025); *In re Mednax Serv., Customer Data Sec. Breach Litig.*, No. 21-MD-02994-RAR, 2024 WL 1554329, at *4 (S.D. Fla. Apr. 10, 2024) The joinder of approximately five million Settlement Class members would certainly be impracticable, and thus numerosity is satisfied.

### (ii)      Rule 23(a)(2) - Commonality

Rule 23(a)(2) requires that there must be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "[C]ommonality requires the plaintiff to demonstrate that the class members have suffered the same injury," and the plaintiff's common contention "must be of such a nature that it is capable of class wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349–50 (2011) (cleaned up). The commonality requirement is a "low hurdle." *See Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1356 (11th Cir. 2009). Courts in this Circuit have previously addressed this requirement in the context of data breach class actions and found it satisfied. *See*, *e.g.*, *Fortra*, 2025 WL 457896, at *4 (commonality satisfied because claims turn on adequacy of defendants' data security to protect PII and PHI); *Mednax*, 2024 WL 1554329, at *4; *Desue v. 20/20 Eye Care Network, Inc.*, No. 21-cv-61275, 2022 WL 17477004, at *4 (S.D. Fla. Dec. 5, 2022); *see also Equifax*, 999 F.3d at 1274-75, 1277 (affirming district court's certification of class, including finding of commonality).

Here, Plaintiffs and Settlement Class members all had their Private Information impacted by the Data Incident. Plaintiffs' claims turn on whether Defendants' data security environments, or their practices or procedures related to the collection of sensitive data or selection of third parties

who are given access to that data, were adequate to protect Plaintiffs' and the Settlement Class' Private Information. These issues are common to the Settlement Class, are alleged to have injured all Settlement Class members in the same way and would generate common answers central to the viability of all claims were this case to proceed to trial. In other words, evidence to resolve said claims does not vary among Settlement Class members and can therefore be fairly resolved, for purposes of settlement, for all Settlement Class members at once. Thus, commonality is satisfied.

### (iii)     Rule 23(a)(3) - Typicality

Under Rule 23(a)(3), a class representative's claims must also be typical of the putative class they seek to represent. *See* Fed. R. Civ. P. 23(a)(3). Typicality "measures whether a significant nexus exists between the claims of the named representative and those of the class at large." *Hines v. Widnall*, 334 F.3d 1253, 1256 (11th Cir. 2003); *see also Kornberg v. Carnival Cruise Lines, Inc*., 741 F.2d 1332, 1337 (11th Cir. 1984) (typicality satisfied where claims "arise from the same event or pattern or practice and are based on the same legal theory"). "Neither the typicality nor the commonality requirement mandates that all putative class members share identical claims, and [] factual differences among the claims of the putative members do not defeat certification." *Cooper v. S. Co*., 390 F.3d 695, 714 (11th Cir. 2004) (cleaned up); *see also Ault v. Walt Disney World Co*., 692 F.3d 1212, 1216 (11th Cir. 2012). When the same course of conduct is directed at the named plaintiff and the members of the proposed class, typicality is satisfied. *See Kennedy v. Tallant*, 710 F.2d 711, 717 (11th Cir. 1983).

Here, Plaintiffs' interests are aligned with the Settlement Class in that they all were sent a notice letter indicating their Private Information may have been impacted in the Data Incident and were therefore all affected by the same purportedly inadequate security that allegedly harmed Settlement Class members. Their claims are based on the same legal theories and underlying event.

Thus, the typicality requirement is satisfied. *See Hines*, 334 F.3d at 1256; *Fortra*, 2025 WL 457896, at *5; *Mednax*, 2024 WL 1554329, at *4.

***(iv)***     ***Rule 23(a)(4) - Adequacy***

Adequacy under Rule 23(a)(4) requires that "the representative parties . . . fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Adequacy relates to (i) whether the proposed class representative has interests antagonistic to the class, and (ii) whether the proposed class counsel has the competence to undertake this litigation. *Fabricant v. Sears Roebuck*, 202 F.R.D. 310, 314–15 (S.D. Fla. 2001). The determinative factor "is the forthrightness and vigor with which the representative party can be expected to assert and defend the interests of the members of the class." *Lyons v. Georgia-Pacific Corp. Salaried Emp's Ret. Plan*, 221 F.3d 1235, 1253 (11th Cir. 2000) (cleaned up); *Mednax*, 2024 WL 1554329, at *5.

Here, like all Settlement Class members, Plaintiffs have claims against Defendants arising from the Data Incident that allegedly impacted their Private Information. Plaintiffs were similarly injured by Defendants' allegedly wrongful acts. Proof of Plaintiffs' claims would necessarily involve adjudicating the same issues of law and fact as the claims of the Settlement Class as a whole. Thus, Plaintiffs and the Settlement Class they seek to represent have the same interests in recovering damages and other relief. Further, Plaintiffs have also diligently and adequately prosecuted this action through Class Counsel by, among other things, reviewing filings, promptly providing documents and information to Class Counsel, acting in the best interest of the Settlement Class, and for those serving as Class Representatives by accepting the classwide Settlement. The Class Representatives are committed to continuing to assist Class Counsel through Final Approval.

Class Counsel "are highly qualified and have a great deal of experience litigating consumer class actions, including in the data privacy context, demonstrating their adequacy." *Fortra*, 2025

12

WL 457896, at *5 (citing *See Mednax*, 2024 WL 1554329, at *5). Class Counsel have litigated this Action and against the other MDL-3090 defendants, including evaluating the claims, preparing comprehensive pleadings, serving informal discovery, consulting with data security experts, responding to the Track 1 and Track 2 Motions to Dismiss, [ECF No. 138, 195], (which is similar to what would they would have faced in Tracks 3-4), complying with Court orders and requirements, and participating in a mediation that ultimately resulted in this Settlement. *See Fortra*, 2025 WL 457896, at *5.

Accordingly, Plaintiffs have no conflicts with the Settlement Class and have demonstrated their adequacy as Class Representatives by "(i) having a genuine personal interest in the outcome of the case; (ii) selecting well-qualified Class Counsel; (iii) producing information and documents to Class Counsel to permit investigation and development of the complaints; (iv) being available as needed throughout the litigation; and (v) monitoring the Litigation." *See Mednax*, 2024 WL 1554329, at *5. The adequacy requirement is therefore met. *See Fortra*, 2025 WL 457896, at *6 (appointing Class Counsel and plaintiffs as class representatives).

## 2. The Rule 23(b) Factors Are Satisfied.

Having found that all Rule 23(a) factors are satisfied, the Court proceeds to address at least one subsection of Rule 23(b)—namely, Rule 23(b)(3)—to ascertain whether "questions of law or fact common to class members predominate over any questions affecting only individual members," and to ensure "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). When assessing predominance and superiority, the court may consider the class will be certified for settlement purposes only, and that a showing of manageability at trial is not required. *See Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the

13

case, if tried, would present intractable management problems, . . . for the proposal is that there be no trial.").

### (i)   Predominance

The predominance inquiry looks at "the legal or factual questions that qualify each class member's case as a genuine controversy, questions that preexist any settlement." *Id.* at 623. "[C]ommon issues of fact and law predominate if they have a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief." *Carriuolo v. Gen. Motors Co*., 823 F.3d 977, 985 (11th Cir. 2016). Further, "[i]t is not necessary that all questions of law or fact be common, but only that some questions are common and that they predominate over individual questions." *In re Takata Airbag Prod. Liability Litig*., 677 F. Supp. 3d 1311, 1324 (S.D. Fla. 2023) (cleaned up). The focus on a defendant's security measures in a data breach class action "is the precise type of predominant question that makes class-wide adjudication worthwhile." *In re Anthem, Inc. Data Breach Litig*., 327 F.R.D. 299, 312 (N.D. Cal. 2018).

Here, as in other data breach cases, common questions predominate because all claims arise out of a common course of conduct by Defendants. *Id*. at 312; *Fortra*, 2025 WL 457896, at *6; *Mednax*, 2024 WL 1554329, at *5;. All Settlement Class members had their Private Information compromised in the Data Incident and the security practices at issue did not vary from person to person. "Thus, because these common questions represent a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is a clear justification for handling the dispute on a representative rather than on an individual basis." *Fortra*, 2025 WL 457896, at *6; *Mednax*, 2024 WL 1554329, at *5. The predominance requirement is therefore satisfied.

### (ii)    Superiority

To satisfy the superiority requirement of Rule 23(b)(3), a movant must show that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "The focus of the superiority analysis is on the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to plaintiffs." *Mohamed v. American Motor Co., LLC*, 320 F.R.D. 301, 316 (S.D. Fla. 2017) (cleaned up); *Mednax*, 2024 WL 1554329, at *5. Here, adjudicating individual actions would be impractical. The amount in dispute for individual class members is too small, the technical issues involved too complex, and the expert testimony and document review too costly. Further, individual claim prosecution would be prohibitively expensive, needlessly delay resolution, and may lead to inconsistent rulings. Accordingly, certification of this suit as a class action is superior to other methods to fairly, adequately, and efficiently resolve the claims asserted. *See Fortra*, 2025 WL 457896, at *6.

### 3.    The Article III Standing Requirement Is Met.

To demonstrate Article III standing Plaintiffs must establish that they each "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 578 U.S. at 338. Further, "[t]o have standing to represent a class, a party must not only satisfy the individual standing prerequisites, but must also 'be part of the class and possess the same interest and suffer the same injury as the class members.'" *Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1307 (11th Cir. 2008) (quoting *Prado*, 221 F.3d at 1279). There is no requirement that Article III standing be proved with evidentiary support at the settlement approval stage. *See Equifax*, 999 F.3d at 1261 n.8.

Standing exists when a plaintiff's sensitive personal information is allegedly accessed and

exfiltrated in a data breach. *See Desue v. 20/20 Eye Care Network, Inc.*, No. 21-cv-61275, 2022 WL 796367, at *4 (S.D. Fla. Mar. 15, 2022); *see also Desue v. 20/20 Eye Care Network, Inc.*, No. 21-cv-61275, 2022 WL 17477004, at *5 (S.D. Fla. Dec. 5, 2022); *Fortra*, 2025 WL 457896, at *6. In a similar data breach class action, this Court extensively addressed standing in data breach class actions, and subsequently relied on that analysis when preliminarily approving a class settlement in that case. *See In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, 603 F. Supp. 3d 1183, 1200-08 (S.D. Fla. 2022) (denying motion to dismiss for lack of standing, including in the context of *TransUnion LLC v. Ramirez*, 594 U.S. 2190 (2021)); *Mednax*, 2024 WL 1554329, at *4 n.2 (citing *Green-Cooper v. Brinker Int'l, Inc.*, 73 F.4th 883 (11th Cir. 2023) (citing standing analysis from motion to dismiss opinion and preliminarily approving class settlement).

To establish an imminent threat of identity theft based on a data breach, plaintiffs must show that "some misuse of class members' data" has already occurred. *Green-Cooper*, 73 F. 4th at 889 (citing *Tsao v. Captiva MVP Rest. Partners, LLC*, 986 F.3d 1332, 1343 (11th Cir. 2021)). Plaintiffs' allegations that a criminal ransomware group accessed their Private Information and published it to its data leak site, and that two Plaintiffs' Private Information is now on the dark web, supports that misuse. *See Green-Cooper*, 73 F. 4th at 890 (posting of Private Information on the dark web "establishes both a present injury . . . and a substantial risk of future injury"). Therefore, the actual misuse of and actual access to the Settlement Class' data are injuries-in-fact that plausibly give rise to a substantial risk of future harm from identity theft; emotional injury; the diminution in the value of Plaintiffs' and Settlement Class members' Private Information; and the loss of privacy. *Mednax*, 603 F. Supp. 3d at 1202-1205; *Fortra*, 2025 WL 457896, at *7.

Traceability—the causal connection between the Data Incident and the Settlement Class' injuries—also exists for Article III standing. Plaintiffs' and Settlement Class members' injuries

16

must be "fairly traceable" to Defendants' actions, but that does not mean they are required to show proximate cause, as harms flowing indirectly from the Data Incident are sufficient for standing. *See Mednax*, 603 F. Supp. 3d at 1205; *Fortra*, 2025 WL 457896, at \*7. Defendants' alleged failure to protection the Private Information, resulting in the Data Incident whereby unauthorized access was gained, preceded Plaintiffs' documented incidents of identity theft, economic losses, lost time, and emotional distress, and put them at a substantial risk of future incidents of identity theft too. *See Mednax*, 603 F. Supp. 3d at 1206; *Fortra*, 2025 WL 457896, at \*7. The Data Incident need not have provided all information necessary to inflict those harms; it is enough the Data Incident could assist give identity thieves in perpetrating them. *See Mednax*, 603 F. Supp. 3d at 1206; *Fortra*, 2025 WL 457896, at \*7.

Thus, like in *Fortra*, *Mednax* and *Desue*, "because all Plaintiffs and Settlement Class members had their Private Information impacted in the Data Incident, they have all suffered injuries in fact that are fairly traceable to the Data Incident and would likely be redressed by a favorable judgment if this case was litigated through trial, demonstrating Article III standing." The Court therefore provisionally certifies the Settlement Class. *See Fortra*, 2025 WL 457896, at \*8.

**B.      Preliminary Approval Of The Settlement Is Warranted.**

Next, the Court must preliminarily determine whether the Settlement is fair, adequate, and reasonable under Rule 23(e)(2) while also considering the *Bennett* factors. At this juncture, "the court's primary objective . . . is to establish whether to direct notice of the proposed settlement to the class, invite the class's reaction, and schedule a final fairness hearing." *Morris v. US Foods, Inc.*, No. 8:20-cv-105, 2021 WL 2954741, at \*7 (M.D. Fla. May 17, 2021) (quoting William B. Rubenstein, 4 Newberg on Class Actions § 13:10 (5th ed. Supp. 2020)). "Preliminary approval is

appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies, and the settlement falls within the range of reason." *Smith*, 2010 WL 2401149, at *2.

The Court finds the Settlement satisfies the requirements of Rule 23(e) as well as the *Bennett* factors. The Court will address each factor in turn.

### 1. Rule 23(e)(2) Is Satisfied.

#### (i) Rule 23(e)(2)(A) - Adequacy of Representation

For the same reasons that led the Court to find Lead Counsel and the other Class Counsel adequate for purposes of preliminary Settlement Class certification, Class Counsel have adequately represented the Settlement Class' interests for purposes of Preliminary Approval of the Settlement. Additionally, as the Court has found for purposes of preliminary certification, Plaintiffs' respective interests are coextensive and do not conflict with the interests of the Settlement Class, demonstrating their adequacy. Plaintiffs have the same interest in the Settlement relief as do Settlement Class members, and the absent Settlement Class members have no diverging interests. Accordingly, the first Rule 23(e)(2) factor weighs heavily in favor of granting Preliminary Approval because both Class Counsel and the Class Representative have adequately represented the Settlement Class. *See Fortra*, 2025 WL 457896, at *8; *Mednax*, 2024 WL 1554329, at *6.

#### (ii) Rule 23(e)(2)(B) - Arm's Length Negotiations

The Court finds the Settlement was reached in the absence of collusion and is the result of good faith, informed, and arm's-length negotiations between experienced attorneys who are familiar with class action litigation and with the legal and factual issues at stake. *See Fortra*, 2025 WL 457896, at *8; *Mednax*, 2024 WL 17477004 at *6.

Before discussing a potential resolution, the Parties conducted thorough factual and legal investigation including significant pre-mediation discovery, allowing them to fully understand the claims, defenses, and risks of continued litigation. The Settlement was reached after extensive legal and factual investigation by the Parties, two full days of mediation assisted by a well-respected and experienced mediator, and weeks of additional negotiations to finalize the terms of the Agreement and ancillary documents. The Parties did not discuss attorneys' fees and costs until after they had agreed on all material Settlement terms.

For these reasons and those discussed related to attorneys' fees below, there was no fraud or collusion in arriving at the Settlement. *See Bennett*, 737 F.2d at 986. Accordingly, "[t]he fact that the Settlement was achieved through well-informed, arm's-length, and neutrally supervised negotiations weighs in favor of granting preliminary approval under Rule 23(e)(2)(B)." *Mednax*, 2024 WL 17477004 at *6; *Fortra*, 2025 WL 457896, at *8.

### (iii)     Rule 23(e)(2)(C) - Adequacy of Settlement Relief

The Court finds, considering the likelihood of success at trial, the complexity, expense, and duration of the litigation, the relief provided is reasonable. While Plaintiffs believe the claims asserted in the Action are meritorious and the Settlement Class would ultimately prevail at trial, continued litigation against the Defendants poses significant risks that make any recovery for the Settlement Class uncertain. "[D]ata breach class actions are risky cases." *Mednax*, 2024 WL 1554329, at *7); *Fortra*, 2025 WL 457896, at *9; *see also Fox v. Iowa Health Sys.*, No. 3:18-cv00327, 2021 WL 826741, at *5 (W.D. Wis. Mar. 4, 2021) ("Data breach litigation is evolving; there is no guarantee of the ultimate result . . . [they] are particularly risky, expensive, and complex."); *Fulton-Green v. Accolade, Inc.*, No. 18-274, 2019 WL 4677954, at *8 (E.D. Pa. Sept. 24, 2019) (data breach class actions are "a risky field of litigation because [they] are uncertain and

class certification is rare"). And given the complexity of the claims and arguments here, a lengthy trial would likely be required before Settlement Class members could recover. Maintaining class certification through trial "is another over-arching risk" as well. *Mednax*, 2024 WL 1554329, at *7; *Fortra*, 2025 WL 457896, at *9.

"Thus, through the Settlement, Plaintiffs and Settlement Class Members gain significant benefits without having to face further risk of not receiving any relief at all," weighing heavily in favor of preliminary approval. *Id*.

Despite the risks involved with further litigation, the Settlement provides outstanding benefits, including Cash Payments, Dark Web Monitoring, and injunctive relief for all Settlement Class members. *See Equifax*, 999 F.3d at 1273 ("Settlements also save the bench and bar time, money, and headaches"). All Settlement Class members are given an equal opportunity to claim Settlement Class Member Benefits. Specifically, each Settlement Class member, excluding the Brightline Settlement Subclass, has the option to be reimbursed for documented losses up to $5,000.00, or they may elect to receive an alternative cash payment in an estimated amount of $85.00. In light of the Brightline Settlement, and to avoid impermissible double recovery for injuries alleged by members of the Brightline Settlement Subclass, Brightline Settlement Subclass Members have the opportunity to receive Settlement Class Member Benefits only to the extent they have not been fully compensated for their damages under the Brightline Settlement. Brightline Settlement  Subclass Members who submitted claims in the Brightline Settlement will not be deemed to have been fully compensated, and will be eligible to make a claim for Settlement Class Member Benefits in this Action, as provided by Section VI, if they: (1) did not make a claim under the Brightline Settlement; (2) opted-out of the Brightline Settlement; (3) elected to receive documented losses under Cash Payment A of the Brightline Settlement, and the documented losses

exceeded the amount of compensation received under the Brightline Settlement; or (4) elected to receive Cash Payment B (flat payment) under the Brightline Settlement, but have incurred documented losses after the date their claim was filed under the Brightline Settlement. Brightline Settlement Class Members who elected to receive Cash Payment B under the Brightline Settlement and do not have documented losses that occurred after the date that their Brightline Settlement Claim Form was filed, are deemed to have been fully compensated for their losses and are not eligible to receive additional compensation under this Agreement. *Id*. ¶ 125.

Brightline Settlement Subclass members may submit a claim for Documented Losses in excess of the amounts received in the Brightline Settlement. *Id.* ¶ 124. In addition, all Settlement Class members may elect Dark Web Monitoring, with the exception of Brightline Settlement Subclass Members who already elected to receive Credit Monitoring under the Brightline Settlement.

The Court further finds the Claim Process and distribution of Settlement Class Member Benefits to be fair, convenient, and effective. Settlement Class Members will promptly receive Cash Payments by electronic means or paper check issued by the Settlement Administrator and Dark Web Monitoring, if elected. The Settlement Administrator is highly qualified to manage the entire process. Thus, "[t]he method of distributing the settlement benefits will be equitable and effective." *Mednax*, 2024 WL 1554329, at *7; *Fortra*, 2025 WL 457896, at *9.

Furthermore, the attorneys' fees do not impact the other terms of the Settlement. Class Counsel intend to request up to one-third of the Settlement Fund in attorneys' fees, plus reimbursement of costs, to be paid from the Settlement Fund, subject to this Court's approval. Class Counsel and Defendants negotiated and reached agreement regarding attorneys' fees and costs only after reaching agreement on all other material Settlement terms. The Settlement,

including disbursement of the Settlement Class Member Benefits, is not contingent on approval of the attorneys' fee or costs award to Class Counsel. Finally, the Parties' agreements are all in the Agreement.

The Court therefore finds Rule 23(e)(2)(C)'s requirements are met.

### *(iv)    Bennett Factors*

The Court further finds the relevant *Bennett* factors[5] are satisfied. *See Fortra*, 2025 WL 457896, at *8-9. First, the benefits of settlement outweigh the risk of trial given the substantial relief that Settlement Class members will be afforded, including guaranteed Cash Payments, Dark Web Monitoring, and injunctive relief. Second and third, the Settlement is within the range of possible recoveries and is fair, adequate, and reasonable. *See Burrows v. Purchasing Power, LLC*, No. 1:12-CV22800, 2013 WL 10167232, at *6 (S.D. Fla. Oct. 7, 2013) (considering the second and third *Bennett* factors together). Given the likelihood of Plaintiffs' success at trial and the range of possible damages that could be recovered, the Settlement provides fair recoveries. *See Equifax*, 999 F.3d at 1274.

Fourth, continued litigation would be lengthy and expensive. As noted above, data breach litigation is often difficult and complex. Although the Parties reached a Settlement relatively early in litigation, the Settlement negotiations were hard-fought, and the Parties expended significant time and energy on this Action, allowing Plaintiffs to have sufficient information to evaluate the merits and negotiate a fair, adequate, and reasonable settlement. *See, e.g.*, *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 694 (S.D. Fla. 2014) (approving settlement where parties settled relatively early with experienced counsel who had sufficient information to evaluate merits

---

[5] The fifth *Bennett* factor—opposition to the Settlement, if any—cannot be discerned at this time because Notice has not yet been given to the Settlement Class. *See Mednax*, 2024 WL 17477004 at *7.

of the case, engaged two days of mediation, and engaged in post-mediation discovery).

Accordingly, the Court finds the Settlement is fair, reasonable, and adequately protects the interests of the Settlement Class members.

**C.    Appointment of Class Representatives and Class Counsel Is Appropriate.**

For the reasons discussed above, the Court finds that the Plaintiffs have adequately represented the Settlement Class throughout this Action. The Court therefore designates and appoints these individuals as Class Representatives.

Rule 23(g)(1)(A)'s four factors for appointing class counsel for a certified class are: (1) "the work counsel has done in identifying or investigating potential claims in the action;" (2) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;" (3) "counsel's knowledge of the applicable law;" and (4) "the resources that counsel will commit to representing the class." Federal Rule of Civil Procedure 23(g)(1)(A). The Court may also "consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." *Id.*

The Court finds proposed Class Counsel have expended a reasonable amount of time, effort, and expense investigating the Data Incident and in litigating this Action and the actions in MDL-3090. Further, it is clear from their track record of success, as outlined in their resumes, that Class Counsel are highly skilled and knowledgeable concerning class action practice. Therefore, for purposes of the Settlement only, and pursuant to Rule 23(g)(1), the Court appoints Jeff Ostrow, John Yanchunis, and James E. Cecchi as Lead Counsel and the other Class Counsel to act on behalf of the Settlement Class with respect to the Settlement. They are experienced and competent counsel and will adequately protect the interests of the Settlement Class. *See Fortra*, 2025 WL 457896, at *10.

### D. __The Notice Program Is Sufficient.__

Notice of a proposed settlement must be the "best notice practicable." Fed. R. Civ. P. 23(c)(2)(B). The best notice practicable is that which "is reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

The Court finds the form, content, and method of giving notice to the Settlement Class as described in the Notice Program, including the forms of Long Form Notice and Postcard Notice, the Settlement Website, and Settlement telephone line for frequently asked questions: (a) constitutes the best practicable notice to the Settlement Class; (b) is reasonably calculated, under the circumstances, to apprise to apprise Settlement Class members of the pendency of the Action, the terms of the Settlement, the effect of the proposed Settlement (including the Releases contained therein), and their rights under the proposed Settlement, including the right to opt-out of or to object to the proposed Settlement and appear at the Final Approval Hearing; (c) is reasonable and constitutes due, adequate, and sufficient notice to those persons entitled to receive notice; and (d) is written in plain language, uses simple terminology, and is designed to be readily understandable by Settlement Class members. *See Fortra*, 2025 WL 457896, at *10.

Rule 23(h)(1) further requires that "[n]otice of the motion [for attorneys' fees] must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner." The Notice Program satisfies the requirements of Rule 23(h)(1), as it notifies the Settlement Class that Class Counsel will apply to the Court for an award of attorneys' fees of up to one-third of the Settlement Fund, plus reimbursement of costs. *See Fortra*, 2025 WL 457896, at *11.

Accordingly, the Notice Program satisfies the requirements of Federal Rule of Civil Procedure 23(c)(2)(B) and due process and is thus approved.

## PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT

Upon preliminary review, the Court finds the proposed Settlement is fair, reasonable, and adequate; the Settlement Class should be certified for Settlement purposes; and the Notice Program satisfies the requirements of Rule 23 and due process. Accordingly, the Settlement is preliminarily approved.

### A.    Final Approval Hearing

The Court will hold a Final Approval Hearing on _____, 2025, at ___:_____ am/pm. The Final Approval Hearing will be conducted for the following purposes: (a) to determine whether the proposed Settlement, on the terms and conditions provided for in the Settlement, is fair, reasonable, and adequate, and should be approved by the Court; (b) to determine whether an order of Final Judgment should be entered dismissing the Action on the merits and with prejudice; (c) to determine whether the proposed plan of allocation and distribution of the Settlement Fund is fair and reasonable and should be approved; (d) to determine whether the requested award of attorneys' fees and costs should be approved; and (e) to consider any other matters that may properly be brought before the Court in connection with the Settlement. The Court may elect to hold the Final Approval Hearing virtually by Zoom or some other virtual application, and if it does, the instructions on how to attend shall be posted by the Settlement Administrator on the Settlement Website.

The Court will defer ruling on attorneys' fees and costs until the Final Approval Hearing when considering Class Counsel's Application for Attorneys' Fees and Costs. Plaintiffs shall file their Motion for Final Approval no later than 45 days before the original Final Approval Hearing

date. At the Final Approval Hearing, the Court will hear argument from the Parties, and in the Court's discretion, will also hear from any Settlement Class Members (or their counsel) who timely object to the Settlement or to the Application for Attorneys' Fees and Costs.

**B.      Appointment of Settlement Administrator**

As agreed by the Parties, the Court appoints Epiq Class Action & Claims Solutions, Inc. as the Settlement Administrator to supervise and administer the Notice Program and Claims process, as well as to administer the Settlement should the Court grant Final Approval. All Settlement Administration Costs will be paid out of the Settlement Fund.

**C.      Approval of Settlement Class Notice Program and Notice Forms**

The Court approves, as to form and content, the Notice Program, including the Email Notice, Postcard Notice and Long Form Notice, substantially in the forms attached as Exhibits 1-3, 5-6 to the Agreement. Non-material modifications to these exhibits may be made without further order of the Court. The Settlement Administrator is directed to carry out the Notice Program and to perform all other tasks that the Settlement requires. The date and time of the Final Approval Hearing shall be posted on the Settlement Website and included in the Email Notice, Postcard Notice and Long Form Notice, respectively, before they are emailed, mailed, or published.

**D.      Approval of Claim Form and Claims Process**

The Court approves the Claim Form and the Claims Process to be implemented by the Settlement Administrator. The Claim Form, attached to the Agreement as Exhibits 4 and 7, is straightforward and easy to complete, allowing each Settlement Class member to elect their desired Settlement Class Member Benefits. Settlement Class Members who qualify for and wish to submit a Claim Form shall do so in accordance with the requirements and procedures specified in the Settlement, including the Claim Form. Should the Court grant Final Approval to the Settlement,

Settlement Class Members shall be bound by its terms even if they though do not submit Claims.

The Court directs the Settlement Administrator to disseminate the Notices and Claim Form as approved herein. Lead Counsel and Defendants' Counsel are hereby authorized to use all reasonable procedures in connection with approval and administration of the Settlement that are not materially inconsistent with this order or the Settlement, including making, without the Court's further approval, minor form or content changes to the Notices and Claim Form they jointly agree are reasonable or necessary.

### E.     Opt-Outs from the Settlement Class

The Notice shall provide that any member of the Settlement Class who wishes to opt-out of the Settlement must request exclusion in writing within the time and manner set forth in the Notice. The Notices shall provide that opt-out requests must be sent to the Settlement Administrator and be postmarked no later than 30 days before the original date set for the Final Approval Hearing (the last day of the Opt-Out Period). The opt-out request must be personally signed by the Settlement Class member and contain the Settlement Class member's name, postal address, email address (if any), and telephone number; the name of this Action (*In Re: Fortra File Transfer Software Data Security Breach Litigation (Global Settlement)*); a brief statement identifying membership in the Settlement Class; and a statement that indicates a desire to be excluded from the Settlement Class. The letter can simply say, "I hereby elect to opt out of the Settlement in *In Re: Fortra File Transfer Software Data Security Breach Litigation (Global Settlement)* class action."  If submitted by mail, an opt-out request shall be deemed to have been submitted when posted if received with a postmark date indicated on the envelope if mailed first-class postage prepaid and addressed in accordance with the instructions. If submitted by private courier (e.g., Federal Express), an opt-out request shall be deemed to have been submitted on the

shipping date reflected on the shipping label.

Any Settlement Class member who timely and validly opts-out from the Settlement Class shall, provided the Court grants Final Approval: (a) be excluded from the Settlement Class by Order of the Court; (b) not be a Settlement Class Member; (c) not be bound by the terms of the Settlement; and (d) have no right to the Settlement Class Member Benefits. Any Settlement Class member who does not timely and validly request to opt-out shall be bound by the terms of this Settlement, including all releases and covenants therein, as well as all subsequent proceedings, orders, and judgments applicable to the Settlement Class.

     **F.**    **Objections to the Settlement**

The Notice shall also provide that any Settlement Class Member who does not opt-out from the Settlement Class may object to the Settlement and/or the Application for Attorneys' Fees and Costs. Objections must be mailed to the Settlement Administrator, Defendants' counsel, and Lead Counsel. For an objection to be considered by the Court, the objection must be submitted on behalf of a Settlement Class Member no later than 30 days before the original date set for the Final Approval Hearing (the last day of the Objection Period). When submitted by mail, an objection shall be deemed to have been submitted when posted if received with a postmark date indicated on the envelope if mailed first-class postage prepaid and addressed in accordance with the instructions. If submitted by private courier (e.g., Federal Express), an objection shall be deemed to have been submitted on the shipping date reflected on the shipping label.

For an objection to be considered by the Court, the objection must also set forth:

    a.    the objector's full name, address, email address (if any), and telephone number;

    b.    all grounds for the objection, accompanied by any legal support for the objection known to the objector or objector's counsel;

c.      the number of times the objector has objected to a class action settlement within the five years preceding the date that the objector files the objection, the caption of each case in which the objector has made such objection, and a copy of any orders related to or ruling on the objector's prior objections that were issued by the trial and appellate courts in each listed case;

d.      the identity of all counsel who represent the objector, including any former or current counsel who may be entitled to compensation for any reason related to the objection to the Settlement or Class Counsel's Application for Attorneys' Fees and Costs;

e.      the number of times in which the objector's counsel and/or counsel's law firm have objected to a class action settlement within the five years preceding the date of the filed objection, the caption of each case in which counsel or the firm has made such objection and a copy of any orders related to or ruling on counsel's or the counsel's law firm's prior objections that were issued by the trial and appellate courts in each listed case in which the objector's counsel and/or counsel's law firm have objected to a class action settlement within the preceding 5 years;

f.      any and all agreements that relate to the objection or the process of objecting— whether written or oral—between objector or objector's counsel and any other person or entity;

g.      the identity of all counsel (if any) representing the objector who will appear at the Final Approval Hearing;

h.      a list of all persons who will be called to testify at the Final Approval Hearing in support of the objection;

i.      a statement confirming whether the objector intends to personally appear and/or testify at the Final Approval Hearing; and

j.      the objector's signature (an attorney's signature is not sufficient).

Class Counsel and/or Defendants' Counsel may conduct limited discovery on any objector consistent with the Federal Rules of Civil Procedure and respond in writing to the objections prior to the Final Approval Hearing.

Any Settlement Class Member who does not make an objection in the manner provided herein shall be deemed to have waived the right to object to any aspect of the Settlement and/or to the Application for Attorneys' Fees and Costs and, if Final Judgment is entered, shall forever be barred and foreclosed from raising such objections in this or any other proceeding and from challenging or opposing, or seeking to reverse, vacate, or modify, the Final Judgment or any aspect thereof.

### G.      Termination of the Settlement and Use of this Order

If the Settlement is not finally approved by the Court, or is terminated, canceled, or fails to become effective for any reason, or the Effective Date does not occur, this order shall become null and void and shall be without prejudice to the rights of Plaintiffs, the Settlement Class members, and Defendants, all of whom shall be restored to their respective positions in the Action as provided in the Agreement.

### H.      Bar from Continued Claims

Upon the entry of this order, with the exception of Class Counsel, Defendants' Counsel, Defendants, and the Class Representatives' implementation of the Settlement and the approval process in this Action, all members of the Settlement Class shall be provisionally enjoined and barred from asserting any claims or continuing any litigation against Defendants and the Released

Parties arising out of, relating to, or in connection with the Released Claims prior to the Court's decision as to whether to grant Final Approval of the Settlement.

**I.      Jurisdiction**

For the benefit of the Settlement Class and to protect this Court's jurisdiction, this Court retains continuing jurisdiction over the Settlement proceedings to ensure effectuation thereof in accordance with the Settlement preliminarily approved herein and the related orders of this Court.

**J.      Schedule**

The Court hereby sets the following schedule of events in connection with the Settlement's administration and Final Approval Hearing:

| Event | Date |
|---|---|
| **Notice Program Begins** | No later than 30 days after Preliminary Approval |
| **Notice Program Complete** | 45 days before the initial scheduled Final Approval Hearing |
| **Deadline to File Motion for Final Approval including Application for Attorneys' Fees and Costs** | 45 days before the initial scheduled Final Approval Hearing |
| **Opt-Out Deadline** | 30 days before the initial scheduled Final Approval Hearing |
| **Objection Deadline** | 30 days before the initial scheduled Final Approval Hearing |
| **Deadline to Submit Claim Forms** | 15 days before the initial scheduled Final Approval Hearing |
| **Final Approval Hearing** | **_____, 2025, at _____am/pm** |

**SO ORDERED** this _____ day of _____, 2025.

_____
**RODOLFO A. RUIZ II**
**UNITED STATES DISTRICT JUDGE**

# EXHIBIT 9
# (FINAL APPROVAL ORDER)

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| IN RE: FORTRA FILE TRANSFER SOFTWARE DATA SECURITY BREACH LITIGATION | Case No. 24-md-03090-RAR |

This Document Relates to:

Defendants Fortra, LLC, NationsBenefits LLC, NationsBenefits Holdings LLC, Aetna Inc. Aetna Life Insurance Company, Anthem Insurance Companies, Brightline, Inc., Elevance Health, Inc., Santa Clara Family Health Plan, Community Health Systems, CHSPSC, Intellihartx, LLC, and Imagine360, LLC

## [PROPOSED] ORDER GRANTING PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF GLOBAL SETTLEMENT AND APPLICATION FOR ATTORNEYS' FEES AND COSTS

**THIS CAUSE** comes before the Court on Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement and Application for Attorneys' Fees and Costs [ECF No. ___ ],[1] filed on _____, _____ 2025, requesting entry of an order: (1) granting Final Approval to the Settlement between the above-captioned Defendants and the Plaintiffs maintaining suit against Defendants; (2) certifying the Settlement Class for settlement purposes, pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3); (3) affirming the appointments of the Plaintiffs as Class Representatives and Lead Counsel and the other Class Counsel for the Settlement Class; (4) awarding attorneys' fees and costs; (5) approving payment of the Settlement Administration Costs; (6) overruling timely objections, if any; and (7) entering final judgment dismissing the Action with prejudice as to the Defendants and reserving jurisdiction over Settlement implementation. The

---

[1] All capitalized terms used herein have the same meanings as those defined in Section II of the Settlement Agreement attached to the Motion for Final Approval as ***Exhibit A***. *See* [ECF No. ___-_].

Court held a hearing on the Motion for Final Approval on _____, _____ 2025. [ECF No. __ ].

Having already analyzed the Settlement in entering the Preliminary Approval Order, [ECF No. ___ ], and having again carefully reviewed the Motion for Final Approval, the proposed Settlement and its exhibits, all relevant filings, the record, and the argument from the Parties' counsel, the Court finds the Settlement Class should be finally certified, the Settlement satisfies the Final Approval criteria, and the Application for Attorneys' Fees and Costs should be granted. Accordingly, it is hereby:

**ORDERED AND ADJUDGED** that the Motion is **GRANTED** as set forth herein.

## BACKGROUND

The relevant procedural and factual background of this Action is detailed in the Motion for Final Approval. Below is a summary of facts pertinent to the findings and rulings in this Final Approval Order.

This Action is a putative class action that has been centralized with all other Fortra GoAnywhere MFT related cases into MDL-3090 before this Court. Plaintiffs' Complaints allege Defendants failed to adequately protect the Private Information of Plaintiffs' and the Settlement Class from unauthorized access and asserts multiple common law and statutory claims for relief. [ECF Nos. 133, 150-152].

In January of 2023, a Data Incident occurred, which involved a criminal attack by a Russian-linked ransomware group, involving a previously unknown, zero-day "remote code execution exploit" that affected certain instances of Fortra's GoAnywhere MFT, and that may have resulted in the unauthorized access to or acquisition of approximately five million individuals' Private Information. *See* Complaints.  Following the Data Incident, Defendants began notifying

2

the impacted individuals, including Plaintiffs and Settlement Class members, of the unauthorized
access to and exfiltration of their Private Information. *Id.*

Prior to negotiating, mediating, and reaching a settlement, the Parties engaged in
meaningful pre-mediation informal discovery, and in response Defendants produced extensive
material relating to liability and damages. Motion for Final Approval at ___. Plaintiffs also
consulted liability and damages experts to assist counsel in advancing the interests of the
Settlement Class. *See id.* at ___.

On February 4-5, 2025, the Parties participated in a two-day private mediation before
experienced class action mediator Michael Ungar, Esq.[2] *See id.* at ___. The Action did not resolve
that day, but the Parties continued to negotiate over the next several days, ultimately agreeing to
all material terms of the Settlement on February 9, 2025. *Id.* The Settlement terms are
memorialized in the Agreement [ECF No. ____-__], which was negotiated at arm's length, in good
faith, and without collusion by capable and experienced counsel with full knowledge of the facts,
the law, and the inherent risks in the Action, and with the active involvement of Plaintiffs and
Defendants.

The Parties filed a Notice of Settlement with the Court on February 10, 2025.  [ECF No.
213]. Over the next two months, the Parties worked diligently to finalize the Agreement and
ancillary documents, executing it on April 10, 2025. Motion for Final Approval at ___.
Specifically, the Settlement provides monetary relief that includes a non-reversionary all-cash
common Settlement Fund of $20,000,000. The Settlement Fund will be used to pay: (i) Settlement
Class Member Benefits; (ii) any attorneys' fees and costs awarded by the Court; and (iii) all

---

[2] Elevance Health did not participate in the mediation because it had reached a settlement in
principle with Plaintiffs prior to the mediation. However, after the mediation, Elevance Health
joined as a party to the global settlement.

Settlement Administration Costs. As part of the Settlement, Defendants provided Lead Counsel with security attestations confirming modifications and enhancements implemented following the Data Incident to help protect against future cybersecurity breaches.

Plaintiffs sought Preliminary Approval of the Settlement on behalf of the proposed Settlement Class and subclasses. *See* [ECF No. ___ ]. The Court entered the Preliminary Approval Order, [ECF No. ___], granting the Motion for Preliminary Approval, conditionally certifying the Settlement Class, and finding it was likely to grant Final Approval, and approving a comprehensive Notice Program and Claims Process. Following entry of the Preliminary Approval Order, the Parties and the Settlement Administrator implemented and completed the Notice Program. Motion for Final Approval at ___. The Claim filing deadline was _____, 2025. *Id*.

Having completed the Notice Program, Plaintiffs and Lead Counsel filed the Motion for Final Approval and Application for Attorneys' Fees and Costs. [ECF No. ___]. Only __ Settlement Class members have opted-out, who are identified on attached ***Exhibit A***. Those Settlement Class members will not be bound by the Settlement or release any claims against Defendants. ___ objections were submitted by members of the Settlement Class. *See* [ECF No. ___].

## LEGAL STANDARDS FOR CLASS SETTLEMENT APPROVAL

It is well established that "[a] class may be certified solely for purposes of settlement [if] a settlement is reached before a litigated determination of the class certification issue." *Borcea v. Carnival Corp*., 238 F.R.D. 664, 671 (S.D. Fla. 2006) (cleaned up). "There is a strong judicial policy in favor of settlement, in order to conserve scarce resources that would otherwise be devoted to protracted litigation." *Id*. (citing *Bennett v. Behring Corp*., 737 F.2d 982 (11th Cir. 1984)). In deciding whether to provisionally certify a settlement class, a court must consider the same factors that it would consider in connection with a proposed litigation class—*i.e.*, all Federal Rule of Civil

Procedure 23(a) factors and at least one subsection of Federal Rule of Civil Procedure 23(b) must be satisfied—except that the Court need not consider the manageability of a potential trial, since the settlement, if approved, would obviate the need for a trial. *See id*. at 672.; *see also Diakos v. HSS Sys., LLC*, 137 F. Supp. 3d 1300, 1306 (S.D. Fla. 2015) (explaining a court evaluates whether certification of a settlement class is appropriate under Rule 23(a) and (b)); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

Rule 23(a) requires: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. *See* Fed. R. Civ. P. 23(a)(1)–(4).  Rule 23(b)(3) requires that (1) "the questions of law or fact common to class members predominate over any questions affecting only individual members" and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Eleventh Circuit also requires that the class representatives have standing to sue and that the proposed class is adequately defined and clearly ascertainable. *See Little v. T-Mobile USA, Inc*., 691 F.3d 1302, 1304 (11th Cir. 2012).

Before addressing any Rule 23 factor, however, the Court must ensure that standing under Article III is met. *See Griffin v. Dugger*, 823 F.2d 1476, 1482 (11th Cir. 1987) ("[A]ny analysis of class certification must begin with the issue of standing . . . ."). To satisfy Article III standing, a plaintiff must "(1) suffer[] an injury in fact, (2) that is fairly traceable to the challenged conduct of defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citations omitted).

If certification of a settlement class is appropriate, a court then determines if the proposal is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). To do so, the Court considers whether the following factors are met:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for

the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

*Id.* Furthermore, the Eleventh Circuit "instruct[s] district courts to consider several additional factors called the *Bennett* factors." *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1273 (11th Cir. 2021) (citing *Bennett*, 737 F.2d at 986). These additional factors are:

[(a)] "there was no fraud or collusion in arriving at the settlement," and  [(b)] the settlement was fair, adequate and reasonable, considering (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.

*Bennett*, 737 F.2d at 986 (citations omitted) ("*Bennett* factors").

Courts have substantial discretion in approving a settlement agreement, *id.* at 986, and settlement negotiations that involve arm's-length, informed bargaining with the aid of experienced counsel support a preliminary finding of fairness. *See* Manual for Compl. Lit., Third, § 30.42 (West 1995) ("A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.") (cleaned up).

## ANALYSIS

The Court finds, for settlement purposes only that it should finally certify the proposed Settlement Class and Settlement subclasses and enter this Final Approval Order because the Settlement Class, Settlement subclasses, and proposed Settlement satisfy the Rule 23(a), 23(b)(3), and 23(e) requirements and the *Bennett* factors. Nothing has changed since the Court granted Preliminary Approval. Additionally, the response from the Settlement Class has been

overwhelmingly favorable.

## A.      <u>Final Certification Is Appropriate.</u>

As the Court found in the Preliminary Approval Order, when it concluded it was likely to certify the Settlement Class, the Court now finds, for settlement purposes only, that the Rule 23 factors are satisfied, and certification of the proposed Settlement Class is appropriate under Rule 23. The Court further finds that the Article III standing requirement is met here.

The Court therefore finally certifies the following Settlement Class and Settlement Subclasses[3]:

> **Settlement Class**: All living individuals residing in the United States who received notice of the Data Incident indicating that their Private Information may have been impacted in the Data Incident.

> **Brightline Settlement Subclass**: All living individuals residing in the United States who were sent a notice of the Data Incident from, or on behalf of, Defendant Brightline indicating their Private Information may have been impacted in the Data Incident.

> **Aetna Settlement Subclass**: All living individuals residing in the United States who were sent a notice of the Data Incident from, or on behalf of, Defendant Aetna indicating their Private Information may have been impacted in the Data Incident.

> **Community Health Settlement Subclass**: All living individuals residing in the United States who were sent a notice of the Data Incident from, or on behalf of, Defendant Community Health indicating their Private Information may have been impacted in the Data Incident.

> **Elevance Health Settlement Subclass**: All living individuals residing in the United States who were sent a notice of the Data Incident from, or on behalf of, Defendant Elevance Health indicating their Private Information may have been impacted in the Data Incident.

---

[3] Excluded from the Settlement Class are (a) all persons who are directors and officers of Defendants, and their respective subsidiaries and affiliated companies; (b) governmental entities; (c) the Judge assigned to the Action, that Judge's immediate family, and Court staff; and (d) all Settlement Class Members who submit a valid Request for Exclusion prior to the Opt-Out Deadline.

**Fortra Settlement Subclass**: All living individuals residing in the United States who were sent a notice of the Data Incident indicating their Private Information may have been impacted in the Data Incident. The Fortra Settlement Subclass is comprised of all members of the Settlement Class, including the NationsBenefits Settlement Subclass, the Aetna Settlement Subclass, the Brightline Settlement Subclass, Community Health Settlement Subclass, Elevance Health Settlement Subclass, Imagine360 Settlement Subclass, Intellihartx Settlement Subclass, Santa Clara Settlement Subclass, and Hatch Bank Settlement Subclass.

**Hatch Bank Settlement Subclass**: All living individuals residing in the United States who were sent a notice of the Data Incident from, or on behalf of, Hatch Bank indicating their Private Information may have been impacted in the Data Incident.

**Imagine360 Settlement Subclass**: All living individuals residing in the United States who were sent a notice of the Data Incident from, or on behalf of, Defendant Imagine360 indicating their Private Information may have been impacted in the Data Incident.

**Intellihartx Settlement Subclass**: All living individuals residing in the United States who were sent a notice of the Data Incident from, or on behalf of, Defendant Intellihartx indicating their Private Information may have been impacted in the Data Incident.

**NationsBenefits Settlement Subclass**: All living individuals residing in the United States who were sent a notice of the Data Incident from, or on behalf of, Defendant NationsBenefits indicating their Private Information may have been impacted in the Data Incident.

**Santa Clara Settlement Subclass**: All living individuals residing in the United States who were sent a notice of the Data Incident from, or on behalf of, Defendant Santa Clara indicating their Private Information may have been impacted in the Data Incident.

The Court will address each Rule 23(a) and 23(b)(3) factor in turn.

### 1.        The Rule 23(a) Factors Are Satisfied.

#### (i)        Rule 23(a)(1) - Numerosity

Rule 23(a)(1) requires the "class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The numerosity requirement is "generally a low hurdle" and, as a baseline, "less than twenty-one is inadequate . . . [and] more than forty is adequate[.]"

*Vega v. T-Mobile USA, Inc*., 564 F.3d 1256, 1267 (11th Cir. 2009) (cleaned up). Here, the numerosity requirement of Rule 23(a)(1) is satisfied because the Settlement Class includes of approximately five million individuals. *See Cox v. Am. Cast Iron Pipe Co*., 784 F.2d 1546, 1553 (11th Cir. 1986) (numerosity generally satisfied where there are more than 40 class members); *In re Fortra File Transfer Software Data Security Breach Litig.*, No. 24-MD-03090-RAR, 2025 WL 457896, at *4 (S.D. Fla. Feb. 11, 2025); *In re Mednax Serv., Customer Data Sec. Breach Litig.*, No. 21-MD-02994-RAR, 2024 WL 1554329, at *4 (S.D. Fla. Apr. 10, 2024). The joinder of approximately five million Settlement Class members would certainly be impracticable, and thus numerosity is satisfied.

### (ii)      *Rule 23(a)(2) - Commonality*

Rule 23(a)(2) requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "[C]ommonality requires the plaintiff to demonstrate that the class members have suffered the same injury," and the plaintiff's common contention "must be of such a nature that it is capable of class wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349–50 (2011) (cleaned up).

The commonality requirement is a "low hurdle." *See Williams v. Mohawk Indus., Inc*., 568 F.3d 1350, 1356 (11th Cir. 2009). Courts in this Circuit have previously addressed this requirement in the context of data breach class actions and found it satisfied. *See, e.g., Fortra*, 2025 WL 457896, at *4; *Mednax*, 2024 WL 1554329, at *4 (commonality satisfied because claims turn on adequacy of defendants' data security to protect PII and PHI); *Desue v. 20/20 Eye Care Network, Inc.*, No. 21-cv-61275, 2022 WL 17477004, at *4 (S.D. Fla. Dec. 5, 2022); *see also Equifax*, 999 F.3d at 1274-75, 1277 (affirming district court's certification of class, including finding of

commonality).

Here, Plaintiffs and Settlement Class members all had their Private Information impacted by the Data Incident. Plaintiffs' claims turn on whether Defendants' data security environments, or their practices or procedures related to the collection of sensitive data or selection of third parties who are given access to that data, was adequate to protect Plaintiffs' and the Settlement Class' Private Information. These issues are common to the Settlement Class, are alleged to have injured all Settlement Class members in the same way and would generate common answers central to the viability of all claims were this case to proceed to trial. In other words, evidence to resolve said claims does not vary among Settlement Class members and can therefore be fairly resolved, for purposes of settlement, for all Settlement Class members at once. Thus, commonality is satisfied.

### *(iii)      Rule 23(a)(3) - Typicality*

Under Rule 23(a)(3), a class representative's claims must also be typical of the putative class they seek to represent. *See* Fed. R. Civ. P. 23(a)(3). Typicality "measures whether a significant nexus exists between the claims of the named representative and those of the class at large." *Hines v. Widnall*, 334 F.3d 1253, 1256 (11th Cir. 2003); *see also Kornberg v. Carnival Cruise Lines, Inc*., 741 F.2d 1332, 1337 (11th Cir. 1984) (typicality satisfied where claims "arise from the same event or pattern or practice and are based on the same legal theory"). "Neither the typicality nor the commonality requirement mandates that all putative class members share identical claims, and [] factual differences among the claims of the putative members do not defeat certification." *Cooper v. S. Co*., 390 F.3d 695, 714 (11th Cir. 2004) (cleaned up); *see also Ault v. Walt Disney World Co*., 692 F.3d 1212, 1216 (11th Cir. 2012). When the same course of conduct is directed at the named plaintiff and the members of the proposed class, typicality is satisfied. *See Kennedy v. Tallant*, 710 F.2d 711, 717 (11th Cir. 1983).

Here, Plaintiffs' interests are aligned with the Settlement Class in that they all were sent a notice letter indicating their Private Information may have been impacted in the Data Incident and were therefore all affected by the same purportedly inadequate security that allegedly harmed Settlement Class members. Their claims are based on the same legal theories and underlying event. Thus, the typicality requirement is satisfied. *See Hines*, 334 F.3d at 1256; *Fortra*, 2025 WL 457896, at *5; *Mednax*, 2024 WL 1554329, at *4.

### (iv)     *Rule 23(a)(4) - Adequacy*

Adequacy under Rule 23(a)(4) requires that "the representative parties . . . fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Adequacy relates to (i) whether the proposed class representative has interests antagonistic to the class, and (ii) whether the proposed class counsel has the competence to undertake this litigation. *See Fabricant v. Sears Roebuck*, 202 F.R.D. 310, 314-15 (S.D. Fla. 2001). The determinative factor "is the forthrightness and vigor with which the representative party can be expected to assert and defend the interests of the members of the class." *Lyons v. Georgia-Pacific Corp. Salaried Emp's Ret. Plan*, 221 F.3d 1235, 1253 (11th Cir. 2000) (cleaned up); *Fortra*, 2025 WL 457896, at *5; *Mednax*, 2024 WL 1554329, at *5.

Here, like all Settlement Class members, Plaintiffs have claims against Defendants arising from the Data Incident that allegedly impacted their Private Information and were similarly injured by Defendants' allegedly wrongful acts. Proof of Plaintiffs' claims would necessarily involve adjudicating the same issues of law and fact as the claims of the Settlement Class as a whole. Thus, Plaintiffs and the Settlement Class have the same interests in recovering damages and other relief. Further, Plaintiffs have also diligently and adequately prosecuted this action through Class Counsel by, among other things, reviewing filings, promptly providing documents and information to Class

11

Counsel, acting in the best interest of the Settlement Class, and accepting the classwide Settlement. Plaintiffs are committed to continuing to assist Lead Counsel through Final Approval.

Class Counsel "are highly qualified and have a great deal of experience litigating consumer class actions, including in the data privacy context, demonstrating their adequacy." *Fortra*, 2025 WL 457896, at *5 (citing *Mednax*, 2024 WL 1554329, at *5). Lead Counsel have litigated this Action and settled with another defendant in this MDL, including evaluating the claims, preparing comprehensive pleadings, serving informal discovery, c5onsulting with data security experts, responding to the Track 1 and Track 2 Motions to Dismiss, [ECF No. 138, 195], (which is similar to what they would have faced in Tracks 3-4), complying with Court orders and requirements, and participating in a mediation that ultimately resulted in this Settlement. *See Fortra*, 2025 WL 457896, at *5.

Accordingly, Plaintiffs have no conflicts with the Settlement Class and have demonstrated their adequacy as Class Representatives by "(i) having a genuine personal interest in the outcome of the case; (ii) selecting well-qualified counsel; (iii) producing information and documents to counsel to permit investigation and development of the complaints; (iv) being available as needed throughout the litigation; and (v) monitoring the Litigation." *Fortra*, 2025 WL 457896, at *5 (quoting *Mednax*, 2024 WL 1554329, at *5). The adequacy requirement is therefore met, and the Court confirms its appointments of Plaintiffs as the Class Representatives and the Lead Counsel and other Class Counsel. *See Fortra*, 2025 WL 457896, at *6 (appointing Class Counsel and plaintiffs as class representatives).

### 2.    The Rule 23(b)(3) Factors Are Satisfied.

Having found all Rule 23(a) factors are satisfied, the Court proceeds to address at least one Rule 23(b) subsection—namely, Rule 23(b)(3)—to ascertain whether "questions of law or fact

common to class members predominate over any questions affecting only individual members," and to ensure "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). For predominance and superiority, the court may consider the class will be certified for settlement purposes only, and that a showing of manageability at trial is not required. *See Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, . . . for the proposal is that there be no trial.").

### (i)   *Predominance*

The predominance inquiry looks at "the legal or factual questions that qualify each class member's case as a genuine controversy, questions that preexist any settlement." *Id.* at 623. "[C]ommon issues of fact and law predominate if they have a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief." *Carriuolo v. Gen. Motors Co*., 823 F.3d 977, 985 (11th Cir. 2016) (quotation omitted).  Further, "[i]t is not necessary that all questions of law or fact be common, but only that some questions are common and that they predominate over individual questions." *In re Takata Airbag Prod. Liability Litig*., 677 F. Supp. 3d 1311, 1324 (S.D. Fla. 2023) (cleaned up). The focus on a defendant's security measures in a data breach class action "is the precise type of predominant question that makes class-wide adjudication worthwhile." *In re Anthem, Inc. Data Breach Litig*., 327 F.R.D. 299, 312 (N.D. Cal. 2018).

Here, as in other data breach cases, common questions predominate because all claims arise out of a common course of conduct by Defendants. *Id*. at 312; *Fortra*, 2025 WL 457896, at *6; *Mednax*, 2024 WL 1554329, at *5. All Settlement Class members had their Private Information compromised in the Data Incident and the security practices at issue did not vary from person to

person. "Thus, because these common questions represent a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is a clear justification for handling the dispute on a representative rather than on an individual basis." *Fortra*, 2025 WL 457896, at *6 (quoting *Mednax*, 2024 WL 1554329, at *5). The predominance requirement is therefore satisfied.

### (ii)    Superiority

To satisfy the superiority requirement of Rule 23(b)(3), a movant must show that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "The focus of the superiority analysis is on the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to plaintiffs." *Mohamed v. American Motor Co., LLC*, 320 F.R.D. 301, 316 (S.D. Fla. 2017) (quotation omitted); *Fortra*, 2025 WL 457896, at *6 (citing *Mednax*, 2024 WL 1554329, at *5). Here, adjudicating individual actions would be impractical. The amount in dispute for individual class members is too small, the technical issues involved too complex, and the expert testimony and document review too costly. Further, individual claim prosecution would be prohibitively expensive, needlessly delay resolution, and may lead to inconsistent rulings. Accordingly, certification of this suit as a class action is superior to other methods to fairly, adequately, and efficiently resolve the claims asserted. *See Fortra*, 2025 WL 457896, at *6.

### 3.    The Article III Standing Requirement Is Met.

To demonstrate Article III standing Plaintiffs must establish that they each "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 578 U.S. at 338. Further, "[t]o have standing to represent a class, a party must not only satisfy the individual standing

prerequisites, but must also 'be part of the class and possess the same interest and suffer the same injury as the class members.'" *Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1307 (11th Cir. 2008) (quoting *Prado-Steinamn ex rel. Prado v. Bush*, 221 F.3d at 1279 (11th Cir. 2000)). There is no requirement that Article III standing be proved with evidentiary support at the settlement approval stage. *See Equifax*, 999 F.3d at 1261 n.8.

"Standing exists when a plaintiff's sensitive personal information is allegedly accessed and exfiltrated in a data breach." *Fortra*, 2025 WL 457896, at *6 (citing *Desue v. 20/20 Eye Care Network, Inc.*, No. 21-cv-61275, 2022 WL 796367, at *4 (S.D. Fla. Mar. 15, 2022)); *see also Desue*, 2022 WL 17477004, at *5. In a similar data breach class action, this Court extensively addressed standing in data breach class actions, and subsequently relied on that analysis when preliminarily approving a class settlement in that case. *See In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, 603 F. Supp. 3d 1183, 1200-08 (S.D. Fla. 2022) (denying motion to dismiss for lack of standing, including in the context of *TransUnion LLC v. Ramirez*, 594 U.S. 2190 (2021)); *Mednax*, 2024 WL 1554329, at *4 n.2 (citing *Green-Cooper v. Brinker Int'l, Inc.*, 73 F.4th 883 (11th Cir. 2023) (citing standing analysis from motion to dismiss opinion and preliminarily approving class settlement)).

To establish an imminent threat of identity theft based on a data breach, plaintiffs must show that "some misuse of class members' data" has already occurred. *Green-Cooper*, 73 F. 4th at 889 (citing *Tsao v. Captiva MVP Rest. Partners, LLC*, 986 F.3d 1332, 1343 (11th Cir. 2021) (emphasis in original)). Plaintiffs' allegations that a criminal ransomware group accessed their Private Information and published it to its data leak site, and that two Plaintiffs' Private Information is now on the dark web, supports that misuse. *See Green-Cooper*, 73 F. 4th at 890 (posting of Private Information on the dark web "establishes both a present injury . . . and a

substantial risk of future injury"). Therefore, the actual misuse of and actual access to the Settlement Class's data are injuries-in-fact that plausibly give rise to a substantial risk of future harm from identity theft; emotional injury; the diminution in the value of Plaintiffs' and Settlement Class members' Private Information; and the loss of privacy. *See In re Fortra File Transfer Software Data Security Breach Litig.*, No. 24-MD-03090-RAR, 2024 WL 4547212, at *3-7 (S.D. Fla. Feb. 11, 2025) (denying motion to dismiss for lack of standing); *Mednax*, 603 F. Supp. 3d at 1202-1205;

Traceability—the causal connection between the Data Incident and the Settlement Class' injuries—also exists for Article III standing. Plaintiffs' and Settlement Class members' injuries must be "fairly traceable" to Defendants' actions, but that does not mean they are required to show proximate cause, as harms flowing indirectly from the Data Incident are sufficient for standing. *See Fortra*, 2024 WL 4547212, at *6-7; *Mednax*, 603 F. Supp. 3d at 1205. Defendants' alleged failure to protect the Private Information, resulting in the Data Incident whereby unauthorized access was gained, preceded Plaintiffs' documented incidents of identity theft, economic losses, lost time, and emotional distress, and put them at a substantial risk of future incidents of identity theft too. *See Fortra*, 2025 WL 457896, at *7; *Mednax*, 603 F. Supp. 3d at 1206. The Data Incident need not have provided all information necessary to inflict those harms; it is enough the Data Incident could assist give identity thieves in perpetrating them. *See Fortra*, 2025 WL 457896, at *7; *Mednax*, 603 F. Supp. 3d at 1206.

Thus, like in *Fortra*, *Mednax*, and *Desue*, "because all Plaintiffs and Settlement Class members had their Private Information impacted in the Data Incident, they have all suffered injuries in fact that are fairly traceable to the Data Incident and would likely be redressed by a favorable judgment if this case was litigated through trial, demonstrating Article III standing. The

Court therefore finally certifies the Settlement Class. *See Fortra*, 2025 WL 457896, at *8.

**B.**     **Final Approval of the Settlement Is Warranted.**

The Court already determined it was likely to grant Final Approval of the Settlement in the Preliminary Approval Order. Now, the Court must finally determine whether the Settlement is fair, adequate, and reasonable under Rule 23(e)(2) while also considering the *Bennett* factors, with the Settlement Class having now been given Notice of the Settlement and the opportunity to opt-out of or object to it. The Court finds the Settlement satisfies the requirements of Rule 23(e) as well as the *Bennett* factors. The Court will address each factor in turn.

**1.**     **Rule 23(e)(2)(A) – Adequacy of Representation**

For the same reasons that led the Court to find Lead Counsel and the other Class Counsel adequate to certify the Settlement Class, Lead Counsel and the other Class Counsel have adequately represented the Settlement Class' interests for purposes of Final Approval. Additionally, as the Court has found for purposes of preliminary certification, Plaintiffs' respective interests are coextensive and do not conflict with the interests of the Settlement Class, demonstrating their adequacy. Plaintiffs have the same interest in the Settlement relief as do Settlement Class members, and the absent Settlement Class members have no diverging interests. Accordingly, the first Rule 23(e)(2) factor weighs heavily in favor of granting Preliminary Approval because both Class Counsel and the Class Representatives have adequately represented the Settlement Class. *See Fortra*, 2025 WL 457896, at *8; *Mednax*, 2024 WL 1554329, at *6.

**2.**     **Rule 23(e)(2)(B) and *Bennett* Factors 5-6 – Arm's Length Negotiations**

The Court finds the Settlement was reached in the absence of collusion and is the result of good faith, informed, and arm's-length negotiations between experienced attorneys who are familiar with class action litigation and with the legal and factual issues at stake. *See Fortra*, 2025

WL 457896, at *8; *Mednax*, 2024 WL 1554329, at *6. Before discussing a potential resolution, the Parties conducted thorough factual and legal investigation including significant pre-mediation discovery, allowing them to fully understand the claims, defenses, and risks of continued litigation. Motion for Final Approval at ___. The Settlement was reached after extensive legal and factual investigation by the Parties, a full-day mediation assisted by a well-respected and experienced mediator, and weeks of additional negotiations to finalize the terms of the Agreement and ancillary documents. *Id.* at ___. The Parties did not discuss attorneys' fees and costs until after they had agreed on all material Settlement terms. *Id*.

For these reasons and those discussed related to attorneys' fees below, there was no fraud or collusion in arriving at the Settlement. *See Bennett*, 737 F.2d at 986. Accordingly, "[t]he fact that the Settlement was achieved through well-informed, arm's-length, and neutrally supervised negotiations weighs in favor of granting preliminary approval under Rule 23(e)(2)(B)." *Fortra*, 2025 WL 457896, at *8 (quoting *Mednax*, 2024 WL 1554329, at *6).

### 3.     Rule 23(e)(2)(C) and *Bennett* Factors 1-4 – Adequacy of Settlement Relief

The Court finds, considering the likelihood of success at trial, the complexity, expense, and duration of the litigation, the relief provided is reasonable. While Plaintiffs believe the claims asserted in the Action are meritorious and the Settlement Class would ultimately prevail at trial, continued litigation against Defendants poses significant risks that make any recovery for the Settlement Class uncertain. "[D]ata breach class actions are risky cases." *Fortra*, 2025 WL 457896, at *9 (quoting *Mednax*, 2024 WL 1554329, at *7) (citation omitted); *see also Fox v. Iowa Health Sys*., No. 3:18-cv00327, 2021 WL 826741, at *5 (W.D. Wis. Mar. 4, 2021) ("Data breach litigation is evolving; there is no guarantee of the ultimate result . . . [they] are particularly risky, expensive, and complex."); *Fulton-Green v. Accolade, Inc*., No. 18-274, 2019 WL 4677954, at *8

(E.D. Pa. Sept. 24, 2019) (data breach class actions are "a risky field of litigation because [they] are uncertain and class certification is rare."). And given the complexity of the claims and arguments here, a lengthy trial would likely be required before Settlement Class members could recover. Maintaining class certification through trial "is another over-arching risk" as well. *Fortra*, 2025 WL 457896, at *9 (quoting *Mednax*, 2024 WL 1554329, at *7). "Thus, through the Settlement, Plaintiffs and Settlement Class Members gain significant benefits without having to face further risk of not receiving any relief at all," weighing heavily in favor of preliminary approval. *Id*.

Despite the risks involved with further litigation, the Settlement provides outstanding benefits, including Cash Payments, Dark Web Monitoring, and injunctive relief for all Settlement Class members. *See* [ECF No. ___-_ ] at §§ 5-6. *See also Equifax*, 999 F.3d at 1273 ("Settlements also save the bench and bar time, money, and headaches") (citation omitted)). All Settlement Class members are given an equal opportunity to claim Settlement Class Member Benefits. Specifically, each Settlement Class member has the option to be reimbursed for documented losses up to $5,000.00, or they may elect to receive a flat cash payment of $85.00. *See id*. In addition, all Settlement Class members may elect Dark Web Monitoring. *Id.* In light of the Brightline Settlement, and to avoid impermissible double recovery for injuries alleged by members of the Brightline Settlement Subclass, Brightline Settlement Subclass Members have the opportunity to receive Settlement Class Member Benefits only to the extent that they have not been fully compensated for their injuries under the Brightline Settlement. Brightline Settlement Subclass Members who submitted claims in the Brightline Settlement will not be deemed to have been fully compensated, and will be eligible to make a claim for Settlement Class Member Benefits in this Action, as provided by Section VI, if they: (1) did not make a claim under the Brightline

Settlement; (2) opted-out of the Brightline Settlement; (3) elected to receive documented losses under Cash Payment A of the Brightline Settlement, and the documented losses exceeded the amount of compensation received under the Brightline Settlement; or (4) elected to receive Cash Payment B (flat payment) under the Brightline Settlement, but have incurred documented losses after the date their claim was filed under the Brightline Settlement. Brightline Settlement Class Members who elected to receive Cash Payment B under the Brightline Settlement and do not have documented losses that occurred after the date that their Brightline Settlement Claim Form was filed, are deemed to have been fully compensated for their losses and are not eligible to receive additional compensation under this Agreement. *Id*. ¶ 125.

Brightline Settlement Subclass members may submit a claim for Documented Losses in excess of the amounts received in the Brightline Settlement. *Id.* ¶ 124. In addition, all Settlement Class members may elect Dark Web Monitoring, with the exception of Brightline Settlement Subclass Members who already elected to receive Credit Monitoring under the Brightline Settlement.

Based upon the number of Claims submitted to the Settlement Administrator, the Court observes the Settlement Class has reacted favorably by submitting Claims. *See* Motion for Final Approval at ___. The Court further finds the Claim Form submission process and distribution of Settlement Class Member Benefits to be fair, convenient, and effective. Settlement Class Members will promptly receive Cash Payments by electronic means or paper check issued by the Settlement Administrator and Dark Web Monitoring, if elected. *Id*. The Settlement Administrator is highly qualified to manage the entire process. Thus, "[t]he method of distributing the settlement benefits will be equitable and effective." *Fortra*, 2025 WL 457896, at *9 (quoting *Mednax*, 2024 WL 457896, at *7).

Furthermore, the attorneys' fees do not impact the other terms of the Settlement. The request for one-third of the Settlement Fund in attorneys' fees, plus reimbursement of costs, to be paid from the Settlement Fund, is subject to this Court's approval. Lead Counsel and Defendants negotiated and reached agreement regarding attorneys' fees and costs only after reaching agreement on all other material Settlement terms. The Settlement, including disbursement of the Settlement Class Member Benefits, is not contingent on approval of the attorneys' fee or costs award. Finally, the Parties' agreements are all in the Agreement. The Court therefore finds Rule 23(e)(2)(C)'s requirements and the first four *Bennett factors* are met.

### 4.    *Rule 23(e)(2)(D)* – Equitable Treatment of Settlement Class Members

As this Court found in *Fortra*, 2025 WL 457896, at \*9, and *Mednax*, 2024 WL 1554329, at \*7, all Settlement Class members are given an equal opportunity to claim Settlement Class Member Benefits. Thus, "[t]he method of distributing the settlement benefits will be equitable and effective." *Fortra*, 2025 WL 457896, at \*9, and *Mednax*, 2024 WL 1554329, at \*7. Further, the attorneys' fees do not impact the other Settlement terms, as Lead Counsel and Defendants negotiated and reached agreement regarding attorneys' fees and costs only after agreeing on all other material Settlement terms. The Settlement, including disbursement of the Settlement Class Member Benefits, is not contingent on approval of the attorneys' fee or costs award. [ECF No. ___-_] at ¶ 65. Finally, the Parties' agreements are all in the Agreement. Motion for Final Approval at ___.

### C.    Appointment of Class Representatives and Class Counsel Is Appropriate.

For the reasons discussed above, the Court finds that the Plaintiffs have adequately represented the Settlement Class throughout this Action. The Court therefore designates and appoints the Plaintiffs as Class Representatives.

Rule 23(g)(1)(A)'s four factors for appointing class counsel for a certified class are: (1) "the work counsel has done in identifying or investigating potential claims in the action;" (2) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;" (3) "counsel's knowledge of the applicable law;" and (4) "the resources that counsel will commit to representing the class." Federal Rule of Civil Procedure 23(g)(1)(A). The Court may also "consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." *Id.*

The Court finds Class Counsel have expended a reasonable amount of time, effort, and expense investigating the Data Incident and in litigating this Action and the actions in this MDL. Further, it is clear from their track record of success, as outlined in their resumes, that Class Counsel are highly skilled and knowledgeable concerning class action practice. Therefore, for purposes of the Settlement only, and pursuant to Rule 23(g)(1), the Court appoints Lead Counsel and Class Counsel to act on behalf of the Settlement Class with respect to the Settlement. They are experienced and competent counsel and will adequately protect the interests of the Settlement Class. *See Fortra*, 2025 WL 457896, at *10.

### D.     The Notice Program Was Properly Administered.

Notice of a proposed settlement must be the "best notice practicable." Fed. R. Civ. P. 23(c)(2)(B). The best notice practicable is that which "is reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

Having consider the results of the Notice Program implementation, the Court now finds the form, content, and method of giving notice to the Settlement Class as described in the Notice

Program, including the forms of Email Notice, Postcard Notice and Long Form Notice, Settlement Website, Settlement telephone line for frequently asked questions, and Claim Form was (a) the best practicable notice to the Settlement Class; (b) reasonably calculated, under the circumstances, to apprise to apprise Settlement Class members of the pendency of the Action, the terms of the Settlement, the effect of the proposed Settlement (including the Releases contained therein), and their rights under the proposed Settlement, including the right to opt-out of or to object to the proposed Settlement and appear at the Final Approval Hearing; (c) reasonable and constituted due, adequate, and sufficient notice to those persons entitled to receive notice; and (d) written in plain language, using simple terminology, and designed to be readily understandable by Settlement Class members. Accordingly, the Notice Program satisfied the Rule 23(c)(2)(B) and due process requirements. *See Fortra*, 2025 WL 457896, at *10.

Rule 23(h)(1) further requires that "[n]otice of the motion [for attorneys' fees] must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner." The Notice Program satisfied that requirement, as it notified the Settlement Class that Lead Counsel will apply to the Court for an award of attorneys' fees of up to one-third of the Settlement Fund, plus reimbursement of costs. *See Fortra*, 2025 WL 457896, at *11.

****

Upon final review, the Court finds the proposed Settlement is fair, reasonable, and adequate; the Settlement Class is certified for Settlement purposes; and the Notice Program satisfied the requirements of Rule 23 and due process. Accordingly, Final Approval is granted.

## ATTORNEYS' FEES AND COSTS AWARD

Pursuant to the Settlement and the Notices, and consistent with recognized class action practice and procedure, the Court hereby awards $_____ for attorneys' fees, which is

equal ___% of the $20,000,000.00 Settlement Fund, and $_____ for reasonable litigation costs. Lead Counsel shall determine the allocation of attorneys' fees to all Plaintiffs' counsel.

The requested attorneys' fee award is within the range of reason under the factors listed in *Camden I Condo. Ass'n. v. Dunkle*, 946 F.2d 768 (11th Cir. 1991);[4] *See Fortra*, 2025 WL 457896, at *11. It is well established that when a representative party has conferred a substantial benefit upon a class, counsel is entitled to attorneys' fees based upon the benefit obtained. *Camden I*, 946 F.2d at 771; *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). The common benefit doctrine is an exception to the general rule that each party must bear its own litigation costs. "The doctrine serves the 'twin goals of removing a potential financial obstacle to a plaintiff's pursuit of a claim on behalf of a class and of equitably distributing the fees and costs of successful litigation among all who gained from the named plaintiff's efforts.'" *Gevaerts v. TD Bank, N.A.*, No. 11:14-cv-20744, 2015 WL 6751061, at *10 (S.D. Fla. Nov. 5, 2015) (citation omitted). "The common benefit doctrine stems from the premise that those who receive the benefit of a lawsuit without contributing to its costs are 'unjustly enriched' at the expense of the successful litigant." *Id.* (citing *Van Gemert*, 444 U.S. at 478).

"As a result, the Supreme Court, the Eleventh Circuit, and courts in this District have all recognized that '[a] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as whole.'"

---

[4] The factors include: (1) the time and labor required; (2) the novelty and difficulty of the relevant questions; (3) the skill required to properly carry out the legal services; (4) the preclusion of other employment by the attorney as a result of his acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the clients or the circumstances; (8) the results obtained, including the amount recovered for the clients; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and the length of the professional relationship with the clients; and (12) fee awards in similar cases. *Camden I*, 946 F.2d at 772 n.3.

*See Fortra*, 2025 WL 457896, at *12 (quoting *Gevaerts*, 2015 WL 6751061, at *10) (citations omitted); *see also Camden I*, 946 F.2d at 771 ("Attorneys in a class action in which a common fund is created are entitled to compensation for their services from the common fund, but the amount is subject to court approval."). Courts have also recognized that appropriate fee awards in cases such as this encourage redress for wrongs caused to entire classes of persons and deter future misconduct of a similar nature. *See Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338-39 (1980). Further, "[a]dequate compensation promotes the availability of counsel for aggrieved persons. *Millstein v. Holtz*, No. 21-CV-61179, 2022 WL 18024840, at *8 (S.D. Fla. Dec. 30, 2022) (citation omitted).

In the Eleventh Circuit, class counsel are awarded a percentage of the funds obtained through a settlement.  In *Camden I* – the controlling authority regarding attorneys' fees in common-fund class actions – the Eleventh Circuit held that "the percentage of the fund approach [as opposed to the lodestar approach] is the better reasoned in a common fund case. Henceforth in this circuit, attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class." *Camden I*, 946 F.2d at 774.

The Court has discretion in determining the appropriate fee percentage. "There is no hard and fast rule mandating a certain percentage of a common fund which may be awarded as a fee because the amount of any fee must be determined upon the facts of each case." *In re Sunbeam Sec. Litigation*,  176 F. Supp. 2d 1323, 1333 (S.D. Fla. 2001) (quoting *Camden I*, 946 F.2d at 774).

The attorneys' fee request falls within this accepted range. *See Fortra*, 2025 WL 457896, at *12 (citing *In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, No. 21-MD-02994-RAR, 2024 WL 4415214 (S.D. Fla. Oct. 5, 2024) (noting district courts in the Eleventh Circuit routinely approve fee awards of one-third of the common fund settlement)). *See also, e.g., In re*

*Checking Account Overdraft Litig.*, No. 1:09-MD-02036-JLK, 2020 WL 4586398, at *16 (S.D.
Fla. Aug. 10, 2020) (awarding a 35% fee); *Morgan v. Public Storage*, 301 F. Supp. 3d 1237, 1257-
58 (S.D. Fla. 2016) (awarding 33.33%); *Wolff v. Cash 4 Titles*, No. 03-22778-CIV, 2012 WL
5290155, at *5-6 (S.D. Fla. Sept. 26, 2012) ("The average percentage award in the Eleventh Circuit
mirrors that of awards nationwide—roughly one-third.") (citing Circuit case law and listing
Southern and Middle District of Florida attorneys' fees awards); *Waters v. Int'l Precious Metals
Corp.*, 190 F.3d 1291, 1291 (11th Cir. 1999), *cert. denied*, 530 U.S. 1289 (2000) (affirming fee
award of 33.33 % of settlement).

The litigation costs, comprised of actual out-of-pocket costs Plaintiffs' Counsel reasonably
and necessarily incurred and paid in connection with the prosecution of the Action and the
Settlement, are reasonable. "Upon submission of adequate documentation, plaintiffs' attorneys are
entitled to reimbursement of those reasonable and necessary out-of-pocket expenses incurred in
the course of activities that benefitted the class." *Morgan*, 301 F.Supp.3d at 1258. Further, pursuant
to Fed. R. Civ. P. 23(h), a trial court may award nontaxable costs that are authorized by law or the
parties' agreement. *See also Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 549 (S.D. Fla.
Jan. 8, 1988) (noting plaintiffs' counsel is entitled to be reimbursed from the class fund for
reasonable expenses incurred).

## **RELEASES, ENTRY OF FINAL JUDGMENT, AND RETENTION OF JURISDICTION**

With the exception of those listed on ***Exhibit A***, the Court adjudges that the Class
Representatives and all Settlement Class Members are bound by this Final Approval Order.

Because the Court approves the Settlement set forth in the Agreement as fair, reasonable,
and adequate, the Court authorizes and directs implementation of all terms and provisions of the
Agreement, including the payment of Valid Claims, attorneys' fees and costs, and the Settlement

Administration Costs.

Judgment shall be, and hereby is, entered dismissing the Action with prejudice, on the merits, and without taxation of costs in favor of or against any Party.

As of the Effective Date, the Releasing Parties hereby fully and irrevocably release and forever discharge the Released Parties of and from the Released Claims.

Upon the entry of this Final Approval Order, with the exception of Lead Counsel, Defendants' Counsel, Defendants, and the Class Representatives' implementation of the Settlement and the approval process in this Action, all Settlement Class Members shall be enjoined and barred from asserting any claims or continuing any litigation against Defendants and the Released Parties arising out of, relating to, or in connection with the Released Claims.

Any residual funds remaining in the Settlement Fund 240 days following the date Settlement Class members are sent an email to select their form of payment shall be distributed to the Electronic Privacy Information Center as the *cy pres* recipient, finding that its mission as a non-profit organization matches the goals of this Action, to redress and protect the privacy rights for consumers.

The Court hereby decrees that neither the Agreement, nor this Final Approval Order, nor the fact of the Settlement, is an admission or concession by Defendants or the Released Parties of any fault, wrongdoing or liability whatsoever, or as an admission of the appropriateness of class certification for trial or dispositive motion practice. This Final Approval Order is not a finding of the validity or invalidity of any of the claims asserted or defenses raised in the Action. Nothing relating to the Settlement shall be offered or received in evidence as an admission, concession, presumption, or inference against Defendants or the other Released Parties in any proceeding, other than such proceedings as may be necessary to consummate or enforce the Settlement

Agreement or to support a defense based on principles of res judicata, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense.

The Court hereby retains and reserves jurisdiction over: (a) implementation of this Settlement and any distributions from the Settlement Fund; (b) the Action, until the Effective Date, and until each and every act agreed to be performed by the Parties shall have been performed pursuant to the terms and conditions of the Settlement Agreement, including the exhibits appended thereto; and (c) all Parties, for the purpose of enforcing and administering the Settlement.

In the event the Effective Date of the Settlement Agreement does not occur, the Settlement shall be rendered null and void to the extent provided by and in accordance with the Settlement Agreement, and this Order shall be vacated. In such event, all orders entered and releases delivered in connection with the Settlement shall be null and void and the Action shall return to its status immediately prior to execution of the Settlement Agreement.

## **CONCLUSION**

For the foregoing reasons, it is **ORDERED AND ADJUDGED** that Plaintiffs' Motion for Final Approval, [ECF No. ___], is **GRANTED**. This case is **DISMISSED** *with prejudice* with respect to the Defendants herein, and no costs shall be awarded other than specified in this Order or provided by the Settlement Agreement. There being no reason for delay, the Clerk of Court is hereby directed to enter final judgment forthwith pursuant to Federal Rule of Civil Procedure 58.

**DONE AND ORDERED** in Miami, Florida this ___ day of _____, 2025.

_____
**RODOLFO A. RUIZ II**
**UNITED STATES DISTRICT JUDGE**

**EXHIBIT A**

**Opt-Out List**

1.

2.