# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| IN RE: FORTRA FILE TRANSFER SOFTWARE DATA SECURITY BREACH LITIGATION | Case No. 24-md-03090-RAR |
| This Document Relates to:<br><br>Defendants Fortra, LLC, NationsBenefits LLC, NationsBenefits Holdings LLC, Aetna Inc. Aetna Life Insurance Company, Anthem Insurance Companies, Brightline, Inc., Elevance Health, Inc., Santa Clara Family Health Plan, Community Health Systems, CHSPSC, Intellihartx, LLC, and Imagine360, LLC. | |

## PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF GLOBAL SETTLEMENT AGREEMENT AND APPLICATION FOR ATTORNEYS' FEES AND COSTS

Pursuant to Fed. R. Civ. P. 23, Plaintiffs[1] respectfully submit this Unopposed Motion for Final Approval of Global Settlement Agreement and Application for Attorneys' Fees and Costs, supported by the Joint Declaration of Lead Counsel ("Joint Decl."), attached as **Exhibit B**, and the Declaration of Cameron R. Azari, Esq. Regarding Implementation and Adequacy of Notice Program ("Admin. Decl."), attached as **Exhibit C**.

On April 15, 2025, this Court preliminarily approved the Settlement, which provides for substantial Settlement Class Member Benefits, including: (1) a non-reversionary, all cash $20,000,000.00 Settlement Fund, from which Settlement Class Members may elect to receive Cash Payments and Dark Web Monitoring; and (2) non-monetary relief consisting of comprehensive and costly cybersecurity improvements. [ECF No. 231]. The Settlement Fund will be used to pay

---

[1] All capitalized terms used herein shall have the same meanings as those defined in Section II of the Settlement Agreement, attached as **Exhibit A**.

Settlement Class Member Benefits, Settlement Administration Costs, and Court-awarded attorneys' fees and costs.

Plaintiffs and Class Counsel now move the Court for Final Approval and apply for an award of attorneys' fees and costs. The Settlement satisfies all the criteria for Final Approval. Currently, there are no objections and only 147 Settlement Class members have opted-out. This overwhelmingly positive response affirms the Court's initial conclusion that the Settlement is fair, reasonable, and adequate. Class Counsel has fully evaluated the strengths, weaknesses, and equities of the Parties' respective positions and believe the proposed Settlement fairly resolves their respective differences. For all the reasons set forth herein, the Court should grant Final Approval of the Settlement and Class Counsel's Application for Attorneys' Fees and Costs.

## I.      INTRODUCTION AND PROCEDURAL HISTORY

Defendants NationsBenefits, Aetna, Brightline, Elevance Health, Santa Clara, Community Health, Intellihartx, and Imagine360 are all in the healthcare business. *See* Consolidated Complaints [ECF Nos. 133, 150-152]. Defendant Fortra is in the business of offering cybersecurity and automation solutions. *Id*. NationsBenefits, Community Health, Intellihartx, and Imagine360 are Fortra's customers who directly used Fortra's GoAnywhere MFT file transfer application in connection with their businesses. *See* Tracks 1-2, 4 Consolidated Complaints. Aetna, Elevance Health, and Santa Clara are all business associates of NationsBenefits and did not have a direct relationship with Defendant Fortra, but their customers' Private Information was stored in NationsBenefits' GoAnywhere environment at the time of the Data Incident. *See* Tracks 1-4 Consolidated Complaints.

In January of 2023, a Data Incident occurred, which involved a criminal attack by a Russian-linked ransomware group, involving a previously unknown, zero-day "remote code

execution exploit" that affected certain instances of Fortra's GoAnywhere MFT, and that may have resulted in the unauthorized access to or acquisition of approximately six million individuals' Private Information. *See* Consolidated Complaints. The impacted information included some combination of names, addresses, dates of birth, member identification numbers, start and end dates of health plan coverage, telephone numbers, Social Security numbers, and employer names, which was being stored within the Defendants' respective instances of the Fortra Go Anywhere MFT platform. *Id*.

In or about April 2023, Defendants began notifying the impacted individuals, including Plaintiffs and Settlement Class members, of the unauthorized access to and exfiltration of their Private Information. Joint Decl. ¶ 3. Thereafter, lawsuits were filed against the Defendants in various jurisdictions around the country. *Id*. ¶ 4. On October 20, 2023, after the Defendant-specific cases were organized and the respective parties began litigating, pursuant to 28 U.S.C. § 1407, NationsBenefits, filed a Motion for Transfer and Centralization of Related Actions to the District of Minnesota, where the Fortra consolidated action was pending, requesting that all matters concerning the Data Incident be centralized for pretrial purposes. *Id*. On February 5, 2024, the Judicial Panel on Multidistrict Litigation granted the motion and ordered all matters concerning the Data Incident be transferred to and centralized in this Court. *Id*.

Following transfer and centralization of the cases, the Court created distinct tracks for the cases: Track 1: NationsBenefits; Track 2: Fortra; Track 3: NationsBenefits Spokes: Aetna, Anthem, Elevance Health, and Santa Clara; and Track 4: Fortra Spokes: Brightline, Community, Intellihartx, and Imagine360. [ECF No. 129].

Following the filing of the Track 1-4 Consolidated Complaints [ECF Nos. 133, 150-152], and responding to motions to dismiss the Consolidated Complaints in Tracks 1 and 2 [ECF Nos.

138, 158, 195, 203], the Parties decided to focus their resources on globally resolving the entire Action through negotiation with Elevance Health and a global mediation with the remainder of the Parties. Joint Decl. ¶ 6.[2]

Prior to mediating and reaching a settlement, the Parties engaged in meaningful discovery. *Id.* ¶ 7. The Parties exchanged Initial Disclosures and negotiated a Stipulated Confidentiality and Qualified Protective Order and Order Governing Production of Electronically Stored Information and Paper Documents, which the Court entered on April 22, 2024. [ECF Nos. 154, 155]. Plaintiffs also requested pre-mediation informal discovery from the Defendants, and in response Defendants produced extensive material relating to liability and damages, including, but not limited to, the number of individuals and categories of Private Information impacted by the Data Incident. Joint Decl. ¶ 8. The Parties also exchanged detailed mediation statements outlining their positions with respect to liability, damages, and settlement. *Id.* ¶ 9.

On February 4-5, 2025, the Parties participated in a two-day private mediation[3] in Hollywood, Florida, before experienced class action mediator Michael Ungar, Esq. *Id.* ¶ 11. Although the Parties made progress at mediation, no settlement was reached. *Id.* However, with the mediator's assistance, the Parties continued to negotiate for the next several days, eventually agreeing to the material terms of this Settlement on February 9, 2025. *Id.*

The Settlement includes a global resolution of all claims on a classwide basis with

---

[2] Before the Parties agreed to discuss a global resolution for the entire Action, the parties in the Brightline action had already entered into a settlement agreement related to Brightline only with the settlement class receiving benefits in consideration for releasing Defendant Brightline. Joint Decl. ¶ 12. However, as part of any global resolution of the Action, Defendant Fortra required resolution of any remaining claims that the Brightline Settlement Subclass or other co-defendants could have against Defendant Fortra. *Id.*

[3] Elevance Health did not participate in the mediation because it had reached a settlement in principle with Plaintiffs prior to the mediation. Joint Decl. ¶ 11 n.3. However, after the mediation, Elevance Health joined as a party to the global settlement. *Id.*

significant relief for approximately six million people. *Id.* ¶ 13. The benefits, more fully described below, include an all cash non-reversionary $20,000,000.00 Settlement Fund, Dark Web Monitoring, and valuable injunctive relief. *Id.* The terms were negotiated at arm's length, in good faith, and without collusion by capable and experienced counsel with full knowledge of the facts, the law, and the inherent risks in the Action, and with the Plaintiffs' and Defendants' active involvement. *Id.* ¶ 14.

The Parties filed a Notice of Global Settlement with the Court on February 10, 2025. [ECF No. 213]. *See also* Joint Decl. ¶ 15. Over the next two months, the Parties worked diligently to finalize the terms of the Agreement and ancillary documents, and the Agreement was executed on April 15, 2025. *Id.* ¶ 16. The Parties did not discuss attorneys' fees and costs until after they reached agreement on all material Settlement terms. *Id.* ¶ 17.

Plaintiffs filed their Motion for Preliminary Approval on April 10, 2025, and the Court granted the motion on April 15, 2025. [ECF No. 230, 231]. The Notice Program has now been completed in compliance with the Agreement and the Preliminary Approval Order and the Claim Process is ongoing. *See generally* Admin. Decl.; Joint Decl. ¶¶ 20-22.

## II.    SUMMARY OF THE SETTLEMENT

A.    **Settlement Class** - Plaintiffs seek Final Approval on behalf of the following Settlement Class and Settlement Subclasses:

> **Settlement Class**: All living individuals residing in the United States who were sent a notice of the Data Incident indicating their Private Information may have been impacted in the Data Incident.[4]

---

[4] Excluded from the Settlement Class are (a) all persons who are directors and officers of Defendants, their respective subsidiaries and affiliated companies; (b) governmental entities; (c) the Judge assigned to the Action, that Judge's immediate family, and Court staff; and (d) all Settlement Class Members who submit a Valid Request for Exclusion prior to the Opt-Out Deadline. Agreement ¶ 103.

**Aetna Settlement Subclass**: All living individuals residing in the United States who were sent a notice of the Data Incident from, or on behalf of, Defendant Aetna indicating their Private Information may have been impacted in the Data Incident.

**Brightline Settlement Subclass:** All living individuals residing in the United States whose were sent a notice of the Data Incident from, or on behalf of, Defendant Brightline indicating their Private Information may have been impacted in the Data Incident.

**Community Health Settlement Subclass**: All living individuals residing in the United States who were sent a notice of the Data Incident from, or on behalf of, Defendant Community Health indicating their Private Information may have been impacted in the Data Incident.

**Elevance Health Settlement Subclass**: All living individuals residing in the United States who were sent a notice of the Data Incident from, or on behalf of, Defendant Elevance Health indicating their Private Information may have been impacted in the Data Incident.

**Fortra Settlement Subclass**: All living individuals residing in the United States who were sent a notice of the Data Incident indicating their Private Information may have been impacted in the Data Incident. The Fortra Settlement Subclass is comprised of all members of the Settlement Class, including the NationsBenefits Settlement Subclass, the Aetna Settlement Subclass, Brightline Settlement Subclass, Community Health Settlement Subclass, Elevance Health Settlement Subclass, Imagine360 Settlement Subclass, Intellihartx Settlement Subclass, Santa Clara Settlement Subclass, and Hatch Bank Settlement Subclass.

**Hatch Bank Settlement Subclass**: All living individuals residing in the United States who were sent a notice of the Data Incident from, or on behalf of, Hatch Bank indicating their Private Information may have been impacted in the Data Incident.

**Imagine360 Settlement Subclass**: All living individuals residing in the United States who were sent a notice of the Data Incident from, or on behalf of, Defendant Imagine360 indicating their Private Information may have been impacted in the Data Incident.

**Intellihartx Settlement Subclass**: All living individuals residing in the United States who were sent a notice of the Data Incident from, or on behalf of, Defendant Intellihartx indicating their Private Information may have been impacted in the Data Incident.

**NationsBenefits Settlement Subclass**: All living individuals residing in the United States who were sent a notice of the Data Incident from, or on behalf of, Defendant NationsBenefits indicating their Private Information may have been impacted in

the Data Incident.

**Santa Clara Settlement Subclass**: All living individuals residing in the United States who were sent a notice of the Data Incident from, or on behalf of, Defendant Santa Clara indicating their Private Information may have been impacted in the Data Incident.

Agreement ¶¶ 103 a-j.

**B.     Settlement Fund** – The Settlement includes a non-reversionary, all cash $20,000,000 Settlement Fund. *Id.* ¶ 107. The Settlement Fund was partially funded within 15 days of Preliminary Approval and the remainder will be funded within 15 days of the Effective Date. *Id.* ¶ 113. It will be used to pay: (1) Settlement Class Member Benefits; (2) any attorneys' fees and costs awarded by the Court; and (3) all Settlement Administration Costs. *Id*. ¶ 81, 160 164. Once Defendants fully fund the Settlement Fund, Defendants will not be required to make any other payments under this Settlement. *Id*. ¶ 115.

**C.     Settlement Class Member Benefits**

**For All Settlement Class Members Except for Brightline Settlement Subclass Members**

All Settlement Class Members (except Brightline Settlement Subclass Members) may elect to receive a Cash Payment (Cash Payment A – Documented Losses or Cash Payment B – Alternative Cash Payment) and one year of Dark Web Monitoring. *Id.* ¶ 123.  Cash Payment B payments may be subject to a *pro rata* increase or decrease, depending on the value of all Valid Claims. *Id*. If a Settlement Class Member does not submit a Valid Claim, the Settlement Class Member will release his or her claims without receiving a Settlement Class Member Benefit. *Id*.

**1.     *Cash Payments*** – Settlement Class Members may elect to receive either Cash Payment A – Documented Losses or Cash Payment B – Alternative Cash Payment. Settlement Class Members who elect Cash Payment A – Documented Losses may receive compensation for Documented Losses up to $5,000.00. *Id.* ¶ 123.a. To qualify for Cash Payment

A – Documented Losses, Settlement Class Members must provide supporting documentation supporting their losses. *Id.* As an alternative to Cash Payment A – Documented Losses, Settlement Class Members may elect Cash Payment B – Alternative Cash Payment and receive a cash payment in the estimated amount of $85.00. *Id.* ¶ 123.b.

       **2.**     ***Dark Web Monitoring*** – In addition to a Cash Payment, all Settlement Class members may elect one year of Dark Web Monitoring. *Id.* ¶ 123.c. The Dark Web Monitoring will be the CyEx Identity Defense Plus product and will include: (i) real time authentication alerts; (ii) dark web scanning; (iii) high risk monitoring; (iv) wallet protection; (v) victim assistance; and (vi) customer support. *Id.*

       **3.**     ***Injunctive Relief*** – Prior to Final Approval, Defendants, Fortra, NationsBenefits, Intellihartx, Imagine360, and Community Health, will provide Class Counsel with attestations as to the security measures it implemented following the Data Incident. The costs of any such security measures shall be fully borne by Defendants, and under no circumstances will such costs be deducted from the Settlement Fund. *Id.* ¶ 127.

<strong>For Brightline Settlement Subclass Members Only</strong>

       In light of the Brightline Settlement, and to avoid impermissible double recovery for injuries alleged by members of the Brightline Settlement Subclass, Brightline Settlement Subclass Members have the opportunity to elect Settlement Class Member Benefits under Section VI only, to the extent that they have not been fully compensated for their injuries under the Brightline Settlement. Brightline Settlement Subclass Members who submitted claims in the Brightline Settlement will not be deemed to have been fully compensated, and will be eligible to make a claim for Settlement Class Member Benefits in this Action, as provided by Section VI, if they: (1) did not make a claim under the Brightline Settlement; (2) opted-out of the Brightline Settlement;

(3) elected to receive documented losses under Cash Payment A of the Brightline Settlement, and the documented losses exceeded the amount of compensation received under the Brightline Settlement; or (4) elected to receive Cash Payment B (flat payment) under the Brightline Settlement, but have incurred documented losses after the date their claim was filed under the Brightline Settlement. Brightline Settlement Class Members who elected to receive Cash Payment B under the Brightline Settlement and do not have documented losses that occurred after the date their Brightline Settlement Claim Form was filed, are deemed to have been fully compensated for their losses and are not eligible to receive additional compensation. *Id*. ¶ 125.

Eligible Brightline Settlement Subclass Members may elect the following Settlement Class Member Benefits:

1.      ***Cash Payment A – Documented Losses for Excess Documented Losses*** – Brightline Settlement Subclass Members may submit a claim for an Excess Documented Loss Payment under this section for up to $5,000.00 per Brightline Settlement Subclass Member upon presentment of Documented Losses related to the Data Incident that are in excess of the amounts received under Cash Payment A (documented losses) from the Brightline Settlement. *Id*. ¶ 126.a. Brightline Settlement Subclass Members who elected a Cash Payment B (flat cash) under the Brightline Settlement, may only submit a claim for Documented Losses up to $5,000.00 per Brightline Settlement Subclass Member related to the Data Incident for Documented Losses incurred after the date that their Brightline Settlement Claim was filed. *Id*.

2.      ***Cash Payment B – Alternative Cash Payment*** – Only Brightline Settlement Subclass Members who did not submit a Claim under the Brightline Settlement may file a Claim for Cash Payment B – Alternative Cash Payment. *Id*. ¶ 126.b.

3.      ***Dark Web Monitoring*** – In addition to Cash Payment A – Documented

Losses for Excess Documented Losses or Cash Payment B – Alternative Cash Payment, as applicable, Brightline Settlement Class Members who did not make a claim for Credit Monitoring (as defined in the Brightline Settlement Agreement), may make a Claim for one year of Dark Web Monitoring. *Id.* ¶ 126.c.

**D.**    **Release** - In exchange for the Settlement Class Member Benefits, Plaintiffs and Settlement Class Members who do not timely opt-out of the Settlement agree to be bound by the Releases that discharge the Released Parties from the Released Claims. *Id.* § XIV. The Released Claims are narrowly tailored and are only claims arising out of or relating to the Data Incident. *Id.* ¶ 96; Joint Decl. ¶ 19. The detailed Release language is found in Section XIV of the Agreement.

**E.**    **Disposition of Residual Funds -** Any funds remaining in the Settlement Fund 240 days after Settlement Class Members receive an email from the Settlement Administrator to select a form of payment, shall be distributed, upon Court approval, to Non-Profit Residual Recipient, Electronic Privacy Information Center (www.epic.org), as the *cy pres* recipient. *Id.* ¶ 158

**F.**    **Attorneys' Fees and Costs -** Pursuant to the Agreement, Plaintiffs request an attorneys' fee award of one-third of the Settlement Fund ($6,666,666.66) and $263,851.10 for reimbursement of costs. Joint Decl. ¶38. The Notices advised the Settlement Class of the amount of attorneys' fees Class Counsel intended to request at Final Approval, and currently no Settlement Class Member has objected to the amount requested. *Id.* § XIII; Joint Decl. ¶ 45.

**III.    NOTICE PROGRAM, CLAIMS, OPT-OUTS AND OJECTIONS**

*Notice Program* - The Settlement Administrator sent the CAFA Notices required by 28 U.S.C. § 1715. Admin. Decl. ¶ 20. Following receipt of the Class Lists, the Settlement Administrator implemented the Notice Program, which consisted of sending Email Notice or Postcard Notice to Settlement Class Members, depending upon the type of information the Defendants maintained,

and a Long Form Notice, which is available on the Settlement Website and which the Settlement Administrator mailed to any Settlement Class member who requested it. *Id.* ¶¶ 23-33. The Settlement Administrator's Declaration details the process followed to send Email Notices to 145,890 and Postcard Notices by first-class mail to 6,088,208 Settlement Class Members. *Id*. The Email Notice and Postcard Notices clearly and concisely summarized the Settlement and the legal rights of the Settlement Class members and directed Settlement Class members to visit the Settlement Website for additional information. *Id*. Settlement Class members who were sent Email Notices that were returned as undeliverable or that bounced back were sent a Postcard Notice, provided the physical address could be identified through the Class Lists or reasonable address traces (i.e., Lexis/Nexis database). *Id.* ¶ 27. Postcard Notices were mailed to 28,027 Settlement Class members whose Email Notice was undeliverable. *Id.* As of July 30, 2025, individual notice efforts have reached approximately 90% of the Settlement Class. *Id.* ¶ 19.

Additionally, as of July 30, 2025, Epiq mailed 3,583 Settlement packages, including the Long Form Notice and Claim Form, in response to requests via the toll-free telephone number or other means from Settlement Class members. *Id.* ¶ 30.

On May 14, 2025, the Settlement Administrator established a dedicated Settlement Website (www.FortraDataSettlement.com) for Settlement Class members to obtain detailed information about the Action and review important documents, including the Consolidated Complaints, Long Form Notice, Settlement Agreement, Claim Form, Motion for Preliminary Approval, and Preliminary Approval Order. *Id.* ¶ 31. This Motion for Final Approval will be posted upon filing. The Settlement Website also includes relevant dates, answers to frequently asked questions, opt-out and objection instructions, contact information for the Settlement Administrator, and how to obtain other case-related information. *Id.* As of July 30, 2025, there have been 109,032 unique

visitor sessions to the Settlement Website, and 563,724 web pages have been presented. *Id.*

Also, on May 14, 2025, the Settlement Administrator established a toll-free telephone number for Settlement Class members to call for Settlement information and/or to request a Long Form Notice and Claim Form. *Id.* ¶ 32. As of July 30, 2025, there have been 23,211 calls to the toll-free telephone number representing 76,380 minutes of use. *Id.*

A postal mailing address and email address were established and remain available to contact the Settlement Administrator to request additional information or ask questions. *Id.* ¶ 33.

*Claim Process -* The timing of the Claim Process was structured to ensure that all Settlement Class members had adequate time to review the Settlement terms, compile documents supporting their Claims, and decide whether to submit a Claim Form in, opt-out of, or object to, the Settlement. Settlement Class members may continue to submit Claim Forms online or by mail by the August 29, 2025 Claim Form Deadline. *Id.* ¶ 36. Settlement Class Members have the option of requesting a digital cash payment or a traditional paper check on the Claim Form. *Id.* As of July 30, 2025, Epiq has received 302,667 Claim Forms (75,481 online and 227,186 paper). *Id.* These numbers are preliminary and expected to increase. *Id.* Claim Forms are still subject to quality control review, including full assessment of each Claim's validity and a review for duplicate submissions. *Id.* Class Counsel will update the Court at the Final Approval Hearing as to the number of Claims.

**Opt-Outs and Objections** - The Objection and Opt-Out Periods end on August 15, 2025. *Id.* ¶ 34. As of July 30, 2025, the Settlement Administrator received 147 opt-out requests and zero objections. *Id.* The Parties are not aware of any objections. Joint Decl. ¶ 20.

## IV.     ARGUMENT

### A.     The Settlement Class Should Be Certified, and the Appointments of Class Representatives, Lead Counsel, Class Counsel, and the Settlement Administrator Should Be Affirmed.

The Motion for Preliminary Approval detailed the bases for certifying the Settlement Class pursuant to Fed. R. Civ. P. 23(a) and (b)(3). In compliance with Fed. R. Civ. P. 23(e), the Court's Preliminary Approval Order details its findings for why it would be likely to certify the Settlement Class at the Final Approval stage, finding the following requirements were all met: standing, ascertainability, numerosity, commonality, typicality, adequacy of representation, predominance, and superiority. [ECF No. 231 at 8-15]. Nothing has changed since Preliminary Approval was granted and the Settlement Class (including the Settlement Subclasses) was provisionally certified. Therefore, for brevity's sake, Plaintiffs do not repeat their arguments in support of Settlement Class certification and instead incorporate by reference their arguments from the Motion for Preliminary Approval. [ECF No. 230 at 15-22].

Plaintiffs' appointment as the Class Representatives should be affirmed as they remain adequate representatives. For the same reasons the Court found them adequate under Fed. R. Civ. P. 23(a)(4), the Court should also affirm the designation of Jeff Ostrow, John Yanchunis, James Cecchi as Lead Counsel and Class Counsel and Bryan Bleichner, Brian Gudmundson, Ben Barnow, Sabita Soneji, Stuart Davidson, Ian Sloss, Maureen Brady, Benjamin Johns, Mason Barney, William Federman, and Nicholas Colella as Class Counsel for the Settlement Class. Federal Rule of Civil Procedure 23(g)(1)(A)'s four factors for appointing class counsel for a certified class are (1) "the work counsel has done in identifying or investigating potential claims in the action;" (2) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;" (3) "counsel's knowledge of the applicable law;" and

(4) "the resources that counsel will commit to representing the class." The Court may also "consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class[.]" Fed. R. Civ. P. 23(g)(1)(B). Here, as the Court has observed, Class Counsel are qualified and competent leaders in the field with extensive experience prosecuting and resolving complex class actions, including data breach class actions. Joint Decl. ¶¶ 23-24. Class Counsel has devoted substantial time and resources to this Action and will continue to do so. *Id.* ¶¶ 23, 42.

Finally, the Court should confirm its appointment of Epiq as the Settlement Administrator.

**B.    The Settlement Should be Finally Approved.**

The Preliminary Approval Order found the Court would be likely to finally approve the Settlement after considering and finding the Settlement is fair, adequate, and reasonable under Fed. R. Civ. P. 23(e)(2) and the "*Bennett*" factors. [DE# 176 at 15-19].  Now, the Court should grant Final Approval considering those same factors, being able to now judge the Settlement Class' positive reaction to the Settlement with no objections and over 302,000 Claims.

The Rule 23(e)(2) factors are:

(A) the class representatives and class counsel adequately represented the class;
(B) the proposal was negotiated at arms' length;
(C) the relief provided for the class is adequate, taking into account:
   (i) the costs, risks, and delay of trial and appeal;
   (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
   (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
   (iv) any agreement required to be identified under Rule 23(e)(3); and
(D) the proposal treats class members equitably relative to each other.

The *Bennett* factors include the following: (1) the likelihood of success at trial; (2) the range of possible recoveries; (3) the point on or below the range of possible recoveries at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the

substance and degree of opposition to the settlement; and (6) the stage of the proceedings at which the settlement was achieved. *See Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984).

  ***Adequacy of Representation (Rule 23(e)(2)(A))*** - This first factor "weighs heavily in favor of granting preliminary approval because both Class Counsel and the Class Representative have adequately represented the Class." *In re Fortra File Transfer Software Data Security Breach Litig.*, No. 24-MD-03090-RAR, 2025 WL 457896, at *8 (S.D. Fla. Feb. 11, 2025) (citing *In re Mednax Services, Inc., Customer Data Sec. Breach Litig.*, No. 21-MD-02994-RAR, 2024 WL 1554329, at *6 (S.D. Fla. Apr. 10, 2024). While *Mednax* proceeded to a later stage than here before the parties agreed to settlement, Class Counsel thoroughly investigated and analyzed Plaintiffs' claims. Before MDL transfer, Defendant Fortra's prior motion to dismiss was also fully briefed. After the MDL transfer, Defendant NationsBenefits' motion to dismiss was fully briefed and decided, and Class Counsel responded to Defendant Fortra's motion to dismiss. [ECF Nos. 138, 158, 162, 172, 195, 203]. Defendant Community Health's motion to dismiss was filed before mediation. [ECF No. 199]. Class Counsel also consulted and retained several liability and damage experts enabling them to gain an understanding of the evidence related to central questions in the Action and prepared them for well-informed settlement negotiations. *See* Joint Decl. ¶¶ 10, 25; *see also Mednax*, 2024 WL 1554329 at *6. Class Counsel used informal discovery to learn what caused the Data Incident, stemming from Defendants' use of Fortra GoAnywhere MFT, and the Private Information impacted, before attending a two-day mediation session. Joint Decl. ¶¶ 8-11. Class Counsel used their experience in complex class action litigation, including similar data breach actions, and devoted substantial time and resources to vigorous litigation. *See id.*, ¶¶ 23-25

  Also, the Class Representatives have demonstrated their adequacy by (i) having a genuine personal interest in the outcome of the case; (ii) selecting well-qualified Class Counsel; (iii)

producing information and documents to Class Counsel to permit investigation and development of the complaints; (iv) being available as needed throughout the litigation; and (v) monitoring the Action. Joint Decl. ¶ 37. Plaintiffs' respective interests are coextensive and do not conflict with the interests of the Settlement Class. *Id.* ¶ 35. Plaintiffs have the same interest in the Settlement relief, and the absent Settlement Class members have no diverging interests. *Id.*

***The Settlement Was Negotiated at Arm's Length (Rule 23(e)(2)(B) and Bennett Factors 5-6)*** - The Settlement is without collusion and the result of good faith, informed, and arm's-length negotiations between experienced attorneys who are familiar with class action litigation and with the legal and factual issues at stake, and with the assistance of mediator, Michael Ungar, Esq. *Id.* ¶¶ 11, 14, 23-24. "The fact that the Settlement was achieved through well-informed, arm's-length, and neutrally supervised negotiations weighs in favor of granting preliminary approval under Rule 23(e)(2)(B)." *Fortra*, 2025 WL 457896, at *8 (quoting *Mednax*, 2024 WL 1554329 at *6). Though the Settlement was reached at any early stage, the record reflects that this Action has been thoroughly investigated by counsel experienced in data breach litigation. Moreover, Class Counsel's informal exchange of discovery and mediation with an experienced mediator has ensured a fair, reasonable, and adequate Settlement. *See, e.g., Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 694 (S.D. Fla. 2014) (approving settlement where parties settled relatively early with experienced counsel who had sufficient information to evaluate merits of the case, engaged in full-day mediation, and engaged in post-mediation discovery).

Currently there is no opposition to the Settlement and only 147 opt-outs. Lead Counsel will respond to any later filed valid objections, if any, before the Final Approval Hearing.

***The Adequacy of the Settlement Relief (Rule 23(e)(2)(C) and Bennett Factors 1-4)*** - Although Plaintiffs believe the claims asserted are meritorious and the Settlement Class would

ultimately prevail at trial, continued, complex, and expensive litigation against Defendants poses significant risks that make any recovery for the Settlement Class uncertain. Data breach class actions are risky. *Fortra*, 2025 WL 457896, at \*8; *Mednax*, 2024 WL 1554329 at \*7. The Settlement's fairness is underscored by the obstacles the Settlement Class would face in ultimately succeeding on the merits, as well as the litigation's expense and likely duration. *Id.* Given those risks, the Settlement provides outstanding benefits, including Cash Payments, Dark Web Monitoring, and injunctive relief for all Settlement Class Members. *See In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1273 (11th Cir. 2021) ("Settlements also save the bench and bar time, money, and headaches"); *FultonGreen v. Accolade, Inc.*, No. 18-274, 2019 WL 4677954, at \*8 (E.D. Pa. Sept. 24, 2019) (noting that data breach class actions are "a risky field of litigation because [they] are uncertain and class certification is rare")

The Settlement is within the range of possible recoveries and is fair, adequate, and reasonable. *See Burrows v. Purchasing Power, LLC*, No. 1:12-CV22800, 2013 WL 10167232, at \*6 (S.D. Fla. Oct. 7, 2013). In determining whether a settlement is fair and reasonable, the court must also examine the range of possible damages Plaintiffs could recover at trial and combine this with an analysis of Plaintiffs' likely success at trial to determine if the settlements fall within the range of fair recoveries. *See, e.g., Equifax*, 999 F.3d at 1274 (affirming district court's decision that settlement was "fair, reasonable, and adequate because the settlement reflects relief the Court finds is in the high range of what could have been obtained had the parties continued to litigate"). Here, Settlement Class members may elect Cash Payments and/or Dark Web Monitoring. Agreement ¶¶ 123, 126.

The following recent examples of approved data breach settlements from around the country demonstrate how the instant Settlement compares very favorably to other similar common

fund data breach settlements: *Mednax* ($6,000,000 for 2,700,000 class members); *Summers v. Sea Mar 16 Comm. College*, No. 22-2-0073-7 SEA (Super. Ct. Wash.) ($4,400,000 for 1,200,000 million class members); *Owens v. U.S. Radiology Specialists, Inc., et al.*, No. 22 CVS 17797 (Mecklenburg Cty., NC) ($5,050,000 for 1,300,000 class members); *In re Wright & Filippis, LLC Data Sec. Breach*, No. 2:22-cv-12908-SFC (E.D. Mich.) ($2,900,000 for 877,584 class members); *In re Sonic Corp. Customer Data Sec. Breach Litig.*, No. 1:17- md-2807 (N.D. Ohio) ($4,325,000 for 1.5 million class members); *Kostka v. Dickey's Barbeque Restaurants, Inc.*, No. 3:20-CV-03424-K, 2023 WL 3914266 (N.D. Tex. June 6, 2023) ($2,350,000 for 725,000 class members); *In re Lincare Holdings Inc. Data Breach Litig.*, No. 8:22-cv-04172-AAS, 2024 WL 3104286, at *4 (M.D. Fla. June 24, 2024) ($7,250,000 for 2,900,000 class members).

Also, the Claim Process and distribution of Settlement Class Member Benefits is fair, convenient, and effective. Joint Decl. ¶ 22. Settlement Class Members will promptly receive Cash Payments by electronic means or paper check and Dark Web Monitoring, if elected. The Settlement Administrator is highly qualified to manage the entire process. *Id*. "Thus, through the Settlement, Plaintiffs and Settlement Class Members gain significant benefits without having to face further risk of not receiving any relief at all." *Fortra*, 2025 WL 457896, at *9 (quoting *Mednax*, 2024 WL 1554329 at *7).

Finally, the agreements between the Plaintiffs and Defendants are all in the Agreement, except for the confidential agreement referenced in paragraph 176 of the Agreement. Joint Decl. ¶ 18.

***The Equitable Treatment of Settlement Class Members (Rule 23(e)(2)(D))*** - As this Court found in *Fortra* and *Mednax*, all Settlement Class members are given an equal opportunity to claim Settlement Class Member Benefits. *See Fortra*, 2025 WL 457896, at *9; *Mednax*, 2024 WL

1554329, at *7. Specifically, each Settlement Class member has the option to claim similar benefits, with the Parties equitably addressing the rights of Brightline Settlement Subclass Members who also had their rights to seek the benefits made available under the approved Brightline Settlement. Thus, "[t]he method of distributing the settlement benefits will be equitable and effective." *Fortra*, 2025 WL 457896, at *9 (quoting *Mednax*, 2024 WL 1554329, at *7). Further, the attorneys' fees do not impact the other Settlement terms, as Class Counsel and Defendants negotiated and reached agreement regarding attorneys' fees and costs only after agreeing on all other material Settlement terms. The Settlement, including disbursement of the Settlement Class Member Benefits, is also not contingent on approval of the attorneys' fees and costs award. Agreement ¶ 165.

Thus, the Court should find the Settlement is fair, reasonable, and adequately protects the interests of the Settlement Class members as required by the Rule 23(e)(2) and *Bennett* factors.

### C.   Notice Was Adequate and Satisfies Rule 23 and Due Process Requirements.

The Court-approved Notice Program carried out by the Settlement Administrator conforms with the procedural and substantive requirements of due process and Rule 23. *See supra* at 10-12. Settlement Class members received Notice of the settlement and have the opportunity to be heard and participate in the Action. See Fed. R. Civ. P. 23(c)(2)(B). The Court exercised its discretion to approve a reasonable Notice Program. As the Court held when granting Preliminary Approval, the Email Notice and Postcard Notice sent directly to Settlement Class Members and the Long Form Notice posted on the Settlement Website is the best notice practicable under the circumstances and constitutes due and sufficient notice to Settlement Class members. [ECF No. 231 at 24]. The best notice practicable is that which "is reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their

objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

The Notices included, among other information: a description of the Settlement's material terms; how to submit a Claim Form; the Claim Form Deadline; the last day to opt-out of the Settlement Class; the last day to object to the Settlement and/or Application for Attorneys' fees and Costs; the Final Approval Hearing date; and the Settlement Website address at which Settlement Class members may access this Agreement and other related documents and information. Admin. Decl., Attachments. The Notice Program also included a toll-free number to ask Settlement-related questions and the Settlement Website containing relevant Settlement information. Finally, the Notice Program satisfies the requirements of Rule 23(h)(1), as the Notices informed the Settlement Class that Class Counsel may apply for an award of attorneys' fees of up to one-third of the Settlement Fund, plus reimbursement of costs. *Id.*

## V.      APPLICATION FOR ATTORNEYS' FEES AND COSTS

Pursuant to the Settlement and the Notices, and consistent with recognized class action practice and procedure, Class Counsel respectfully request an award of attorneys' fees of $6,666,666.66, which is equal to one-third of the $20,000,000.00 Settlement Fund, and $263,851.10 to reimburse them for litigation costs. Joint Decl. ¶ 38. The requested amount is within the range of reason under the factors listed in *Camden I Condo. Ass'n. v. Dunkle*, 946 F.2d 768 (11th Cir. 1991).

### A.      The Law Awards Class Counsel Fees from the Common Fund Created Through Their Efforts.

It is well established that when a representative party has conferred a substantial benefit upon a class, counsel is entitled to attorneys' fees based upon the benefit obtained. *Camden I*, 946 F.2d at 771; *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Fortra*, 2025 WL 457896, at *11. The common benefit doctrine is an exception to the general rule that each party must bear its

own litigation costs. "The doctrine serves the 'twin goals of removing a potential financial obstacle to a plaintiff's pursuit of a claim on behalf of a class and of equitably distributing the fees and costs of successful litigation among all who gained from the named plaintiff's efforts.'" *Gevaerts v. TD Bank, N.A.*, No. 11:14-cv-20744, 2015 WL 6751061, at *10 (S.D. Fla. Nov. 5, 2015) (citation omitted). "The common benefit doctrine stems from the premise that those who receive the benefit of a lawsuit without contributing to its costs are 'unjustly enriched' at the expense of the successful litigant." *Id.* (citing *Van Gemert*, 444 U.S. at 478). "As a result, the Supreme Court, the Eleventh Circuit, and courts in this District [including in this MDL] have all recognized that '[a] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as whole.'" *Id.* (citations omitted); *see also Camden I*, 946 F.2d at 771 ("Attorneys in a class action in which a common fund is created are entitled to compensation for their services from the common fund, but the amount is subject to court approval."); *Fortra*, 2025 WL 457896, at *12. Courts have also recognized that appropriate fee awards in cases such as this encourage redress for wrongs caused to entire classes of persons and deter future misconduct of a similar nature. *See Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338-39 (1980). Adequate compensation promotes the availability of counsel for aggrieved persons. *Fortra*, 2025 WL 457896, at *12.

In this Circuit, class counsel are awarded a percentage of the funds obtained through a settlement. *Id.* In *Camden I* – the controlling authority regarding attorneys' fees in common-fund class actions – the Eleventh Circuit held that "the percentage of the fund approach [as opposed to the lodestar approach] is the better reasoned in a common fund case. Henceforth in this circuit, attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class." 946 F.2d at 774; *Fortra*, 2025 WL 457896, at *12.

"The Court has discretion in determining the appropriate fee percentage." *Fortra*, 2025 WL 457896, at *12. "There is no hard and fast rule mandating a certain percentage of a common fund which may be awarded as a fee because the amount of any fee must be determined upon the facts of each case." *Sunbeam*, 176 F. Supp. 2d at 1333 (quoting *Camden I*, 946 F.2d at 774). Nonetheless, "[t]he majority of common fund fee awards fall between 20 percent to 30 percent of the fund" – though "an upper limit of 50 percent of the fund may be stated as a general rule." *Sunbeam*, 176 F. Supp. 2d at 1333 (quoting *Camden I*, 946 F.2d at 774-75); *see also Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291 (11th Cir. 1999), *cert. denied*, 530 U.S. 1289 (2000) (approving fee award where the district court determined that the benchmark should be 30 percent and then adjusted the fee award higher in view of the circumstances of the case). Class Counsel's fee request falls within this accepted range and is consistent with the percentage awarded in the Brightline Settlement. *See Fortra*, 2025 WL 457896, at *11-12.

### B.    Application of the *Camden I* Factors Supports the Requested Fee.

The Eleventh Circuit has provided a set of factors the Court should use to determine a reasonable percentage to award as an attorney's fee to class counsel in class actions:

(1)    the time and labor required;
(2)    the novelty and difficulty of the relevant questions;
(3)    the skill required to properly carry out the legal services;
(4)    the preclusion of other employment by the attorney as a result of his acceptance of the case;
(5)    the customary fee;
(6)    whether the fee is fixed or contingent;
(7)    time limitations imposed by the clients or the circumstances;
(8)    the results obtained, including the amount recovered for the clients;
(9)    the experience, reputation, and ability of the attorneys;
(10)   the "undesirability" of the case;
(11)   the nature and the length of the professional relationship with the clients; and
(12)   fee awards in similar cases.

*Camden I*, 946 F.2d at 772 n.3.[5] These twelve factors are guidelines and are not exclusive. "Other pertinent factors are the time required to reach a settlement, whether there are any substantial objections by class members or other parties to the settlement terms or the fees requested by counsel, any non-monetary benefits conferred upon the class by the settlement, and the economics involved in prosecuting a class action." *Sunbeam*, 176 F. Supp. 2d at 1333 (quoting *Camden I*, 946 F.2d at 775). In addition, the Eleventh Circuit has "encouraged the lower courts to consider additional factors unique to the particular case." *Camden I*, 946 F.2d at 775.

### 1.    The Claims Against Defendants Required Substantial Time and Labor.

Prosecuting and settling these claims demanded considerable time and labor, making this fee request reasonable. Joint Decl. ¶ 42. The organization of Class Counsel ensured the work was coordinated to maximize efficiency and minimize duplication of effort. *Id*. Class Counsel devoted substantial time to investigating the claims. *Id.* Class Counsel also expended resources researching and developing the legal claims at issue. *Id.* Substantial time and resources were also dedicated to working with experts, exchanging informal discovery, consolidating and organizing the related actions, responding to three motions to dismiss, and preparing for and attending a successful mediation. *Id.* Significant time was then devoted to negotiating and drafting the Agreement, the Preliminary Approval process, and to all actions required thereafter by the Agreement and the Preliminary Approval Order. *Id*. Class Counsel spent substantial time leading up to the filing of this Motion for Final Approval, addressing the Notice Program, Claim Process, and preparing this Motion for Final Approval. *Id.* Time will also be spent preparing for and attending the Final Approval Hearing. *Id.* Finally, Class Counsel will devote substantial time to Settlement

---

[5] The seventh and eleventh factors are relatively neutral, though it has certainly been important to Class Counsel to efficiently obtain the Settlement benefits for the Settlement Class impacted by the Data Incident.

administration should Final Approval be granted to ensure Valid Claims are paid and the Settlement if fully implemented. *Id.*

Class Counsel's coordinated work paid dividends for the Settlement Class. *Id.* ¶ 43. Each of the above-described efforts was essential to achieving the Settlement. *Id.* Class Counsel's time and resources devoted to prosecuting and settling this Action justify the requested fee. *Id.*

### 2. The Novelty and Difficulty of the Relevant Questions Required Skilled and Experienced Counsel.

This Court has witnessed the quality of Class Counsel's legal work, which conferred substantial benefits on the Settlement Class in the face of significant litigation obstacles. *Id.* ¶ 44. This factor weighs heavily in support of the requested attorneys' fee award. In fact, courts routinely recognize the novelty and difficulty of the questions present in a case as a "significant factor to be considered in making a fee award." *Francisco v. Numismatic Guaranty Corp. of America*, No. 06-61677-CIV, 2008 WL 649124, at *15 (S.D. Fla. Jan. 31, 2008). Data breach class actions are notoriously risky and complex cases that present novel issues of law and fact as data security continues to develop and evolve. *See In re Sonic Corp. Customer Data Sec. Breach Litig.*, No. l:17-md-2807, 2019 WL 3773737, at *7 (N.D. Ohio Aug. 12, 2019) (recognizing that "[data breach litigation is complex and risky. This unsettled area of law often presents novel questions for courts. And of course, juries are not always predictable."); *Fox v. Iowa Health Sys.*, No. 3:18-cv-00327, 2021 WL 826741, at *5 (W.D. Wis. Mar. 4, 2021) ("Data breach litigation is evolving; there is no guarantee of the ultimate result . . . [they] are particularly risky, expensive, and complex.").

In evaluating the quality of representation by Class Counsel, the Court should also consider opposing counsel. *See Camden I*, 946 F.2d at 772 n.3. Defendants are represented by extremely capable counsel who are worthy, highly competent adversaries. Joint Decl. ¶ 29; *Walco Invs. v. Thenen*, 975 F. Supp. 1468, 1472 (S.D. Fla. 1997).

### 3.  Class Counsel Achieved a Successful Result.

Given the significant litigation risks Class Counsel faced, the Settlement represents a successful result, with $20,000,000.00 recovered for the Settlement Class, affording them meaningful Settlement benefits designed to meet the typical repercussions faced by consumers following a data breach. The risk involved is emphasized by the fact that, historically, data breach class actions face substantial hurdles in surviving the class certification stage. *See, e.g.*, *Maldini v. Marriott Int'l, Inc.*, 140 F.4th 123 (4th Cir. 2025) (decertifying data breach class); *Theus v. Brinker Int'l, Inc.*, No. 3:18-cv-686-TJC-MCR, 2025 WL 1786346 (M.D. Fla. June 27, 2025) (denying motion for class certification); *In re Blackbaud, Inc., Customer Data Breach Litig.*, No.: 3:20-mn-02972-JFA, 2024 WL 2155221 (D.S.C. May 14, 2024) (denying motion for class certification); *FultonGreen*, 2019 WL 4677954 at *8 (noting that data breach class actions are "a risky field of litigation because [they] are uncertain and class certification is rare"); *In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21 (D. Me. 2013). Further, maintaining class certification through trial is another overarching risk. Joint Decl. ¶ 33. Considering Defendants have compelling defenses, continuing to pursue this case posed a significant risk for Plaintiffs and the Settlement Class. *Id.* Therefore, Class Counsel's risks weigh in favor of Class Counsel's requested attorneys' fee.

### 4.  Class Counsel Assumed Considerable Risk to Pursue This Action on a Pure Contingency Basis and Lost Opportunity for Other Employment.

In undertaking to prosecute this case entirely on a contingent fee basis, Class Counsel assumed a significant risk of nonpayment or underpayment, while foregoing the opportunity to work on other cases. *Id.* ¶ 41. That risk warrants an appropriate fee. Indeed, "[a] contingency fee arrangement often justifies an increase in the award of attorney's fees." *Sunbeam*, 176 F. Supp. 2d at 1335 (quoting *Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 548 (S.D. Fla. 1988)).

Class Counsel remains completely uncompensated for the time invested in the Action, in addition to the substantial costs they have advanced. Joint Decl. ¶¶ 38-39. Public policy concerns—ensuring the continued availability of experienced and capable counsel to represent classes of injured plaintiffs holding small individual claims—also support the requested attorneys' fee. Joint Decl. ¶ 41. In the court's words:

> Generally, the contingency retainment must be promoted to assure representation when a person could not otherwise afford the services of a lawyer. . . . A contingency fee arrangement often justifies an increase in the award of attorney's fees. This rule helps assure that the contingency fee arrangement endures. If this "bonus" methodology did not exist, very few lawyers could take on the representation of a class client given the investment of substantial time, effort, and money, especially in light of the risks of recovering nothing.

*Behrens*, 118 F.R.D. at 548.

### 5.    The Requested Fee Comports with Fee Awards in Similar Cases.

The attorneys' fee award sought here is within the range of fees typically awarded in similar cases in the Eleventh Circuit and in the Southern District. *See Fortra*, 2025 WL 457896, at *11-12 (awarding 33.33%); *Mednax*, 2024 WL 4415214, at *5 (noting district courts in the Eleventh Circuit routinely approve fee awards of one-third of the common fund settlement). *See also, e.g.*, *In re Checking Account Overdraft Litig.*, No. 1:09-MD-02036-JLK, 2020 WL 4586398, at *16 (S.D. Fla. Aug. 10, 2020) (awarding 35%); *Morgan v. Public Storage*, 301 F. Supp. 3d 1237, 1257-58 (S.D. Fla. 2016) (awarding 33.33%); *Wolff v. Cash 4 Titles*, No. 03-22778-CIV, 2012 WL 5290155, at *5-6 (S.D. Fla. Sept. 26, 2012) ("The average percentage award in the Eleventh Circuit mirrors that of awards nationwide—roughly one-third.") (citing Circuit case law and listing Southern and Middle District of Florida attorneys' fees awards); *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291 (11th Cir. 1999) (affirming fee award of 33.33 % of settlement).

In addition to the Brightline Settlement in this MDL, examples of attorneys' fee awards of

33.33% or higher in data breach cases include: *Garza v. HealthAlliance, Inc.*, No. 72450/2023 (NY Sup. Ct., Westchester Cty.) (approving 35% of the settlement fund); *In re Planet Home Lending, LLC Data Breach*, No. 3:24-cv-127 (KAD) (D. Conn.), DE# 48 (approving 33.33% of the settlement fund); *In re CorrectCare Data Breach Litig.*, No. 5:22-319-DCR, 2024 WL 4211480, at *4 (E.D. Ky. Sept. 14, 2024) (approving one-third of the settlement fund); *Kondo, et al. v. Creative Services, Inc.,* No. 1:22-cv-10438-DJC, DE# 39 (D. Mass. Sept. 7, 2023) (same); *In re Sovos Compliance Data Security Incident Litigation*, No. 1:23-cv-12100 (D. Mass.), DE# 12 (same); *Alliance Ophthalmology, PLLC v. ECL Group, LLC*, Nos. 1:22-CV-296, 1:22-CV-468, 2024 WL 3203226, at *14-16 (M.D.N.C. June 27, 2024); *In re Lincare Holdings Inc. Data Breach Litig.*, 2024 WL 3104286, at *3 (same); *Abrams, et al. v. The Savannah College of Art and Design Inc.*, No. 1:22-cv-04297-LMM, DE# 29 (N.D. Ga. Sept. 23, 2023) (same); *Phelps, et al. v. Toyotetsu North America*, No. 6:22-cv-00106-CHB-HA, DE# 47 (E.D. Ky. Oct. 25, 2023) (same); *Kostka*, 2023 WL 3914266, at *3 (same); *In re: Forefront Data Breach Litigation*, No. 1:21-cv-000887-LA, 2023 WL 6215366, at *9 (E.D. Wis. Mar. 22, 2023) (same); and *Davidson v. Healthgrades Operating Company, Inc*., No. 1:21-cv-01250-RBJ, DE# 50 (D. Colo. Aug. 22, 2022) (same).

Class Counsel's request is also reasonable considering the market rate in the private marketplace "where attorneys typically negotiate percentage fee arrangements with their clients." *Pinto* v. *Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334, 1341 (S.D. Fla. 2007). As such, "attorneys regularly contract for contingent fees between 30% and 40% directly with their clients." *Id.* Indeed, this Court has recognized a fee of 33.33% "is at the market rate of what the Class could have negotiated with counsel...as a traditional contingency fee arrangement at the outset of the case." *Morgan v. Public Storage*, 301 F. Supp. 3d 1237, 1255 (S.D. Fla. 2016); *see also In re*

*Checking Account Overdraft Litig.,* 830 F.Supp.2d 1330, 1366 (S.D. Fla. 2011) (acknowledging class counsel's requested fee of 30% "falls on the low end of the average in the private marketplace" where contingency fees of up to 40% are customary in the private marketplace).

### 6.    *The Litigation Costs Are Reasonable.*

Class Counsel request reimbursement of $263,851.10 for litigation costs that Class Counsel incurred and paid in connection with the prosecution of the Action and the Settlement. The litigation costs include fees related to filing, service, *pro hac vice* applications, experts, mediation, and travel for pre-MDL hearings, the JPML hearing, mediation, and attendance at the Final Approval Hearing. Joint Decl. ¶ 38. Ordinary law firm overhead costs, including postage and legal research, are not included. Plaintiffs' attorneys are entitled to reimbursement of reasonable and necessary out-of-pocket expenses incurred in the course of activities benefitting the class. *Fortra*, 2025 WL 457896, at *12; *Morgan*, 301 F. Supp. 3d at 1258. Further, pursuant to Fed. R. Civ. P. 23(h), a trial court may award nontaxable costs that are authorized by law or the parties' agreement. *See also Fortra*, 2025 WL 457896, at *12 (citing *Behrens*, 118 F.R.D. at 549 (noting plaintiffs' counsel is entitled to be reimbursed from the class fund for reasonable expenses incurred)).

## V.    CONCLUSION

Plaintiffs and Class Counsel respectfully request this Court enter the  Final Approval Order: (1) granting Final Approval to the Settlement; (2) affirming certification of the Settlement Class for settlement purposes, pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3); (3) confirming the appointment of Plaintiffs as Class Representatives; Jeff Ostrow, John Yanchunis, James Cecchi as Lead Counsel and Class Counsel and Bryan Bleichner, Brian Gudmundson, Ben Barnow, Sabita Soneji, Stuart Davidson, Ian Sloss, Maureen Brady, Benjamin Johns, Mason Barney, William Federman, and Nicholas Colella as Class Counsel; and Epiq as Settlement Administrator for the

Settlement Class; (5) awarding Class Counsel $6,666,666.66 for attorneys' fees and $263,851.10 for costs; (6) approving payment of any outstanding or future Settlement Administration Costs; (7) overruling timely objections, if any; and (8) entering final judgment dismissing the Action with prejudice and reserving jurisdiction over Settlement implementation. Plaintiffs attach a proposed Final Approval Order as *Exhibit D*.

<u>**CERTIFICATE OF LOCAL RULE 7.1(a)(3) CONFERRAL**</u>

Lead Counsel certify they have conferred with Defendants' Counsel regarding the relief requested herein and Defendants, with the exception of Fortra, do not oppose the relief requested. Fortra's agreement not to oppose the relief requested in this Motion is contingent upon execution of the settlement agreement by co-defendants that participated in the Parties' global mediation.

August 1, 2025.                                 Respectfully submitted,

                                                /s/ *Jeff Ostrow*
                                                Jeff Ostrow FBN 121452
                                                **KOPELOWITZ OSTROW P.A.**
                                                1 West Las Olas Blvd., Ste. 500
                                                Fort Lauderdale, FL 33301
                                                Tel: 954.332.4200
                                                ostrow@kolawyers.com

                                                John Yanchunis FBN 324681
                                                **MORGAN & MORGAN P.A.**
                                                201 N. Franklin Street, 7th Floor
                                                Tampa, FL 33602
                                                Tel: 813.275.5272
                                                jyanchunis@forthepeople.com

                                                *MDL Co-Lead Counsel*

                                                James Cecchi (*pro hac vice*)
                                                **CARELLA, BYRNE, CECCHI,**
                                                **BRODY & AGNELLO P.C.**
                                                5 Becker Farm Road
                                                Roseland, NJ 07068
                                                Tel: 973.994.1700
                                                jcecchi@carellabyrne.com

                                                *MDL Track Coordination and*
                                                *Settlement Counsel*