# EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| IN RE: FORTRA FILE TRANSFER SOFTWARE DATA SECURITY BREACH LITIGATION | Case No. 24-md-03090-RAR |
| This Document Relates to: Defendants Fortra, LLC, NationsBenefits LLC, NationsBenefits Holdings LLC, Aetna Inc. Aetna Life Insurance Company, Anthem Insurance Companies, Brightline, Inc., Elevance Health, Inc., Santa Clara Family Health Plan, Community Health Systems, CHSPSC, Intellihartx, LLC, and Imagine360, LLC. | |

**JOINT DECLARATION OF LEAD COUNSEL IN SUPPORT OF PLAINTIFFS'
UNOPPOSED MOTION FOR FINAL APPROVAL OF GLOBAL SETTLEMENT
AGREEMENT AND APPLICATION FOR ATTORNEYS' FEES AND COSTS**

We, Jeff Ostrow, John Yanchunis and James Cecchi, declare as follows:

1. We are Lead Counsel[1] of record for Plaintiffs and Class Counsel[2] for the Settlement Class in the above-captioned matter. We submit this declaration in support of Plaintiffs' Motion for Final Approval. Unless otherwise noted, we have personal knowledge of the facts set forth in this declaration and could and would testify competently to them if called upon to do so.

**Background and Procedural History**

2. This Action arises from a Data Incident affecting the Fortra GoAnywhere MFT, which occurred in January, 2023 and affected millions of individuals whose Private Information

---

[1] The capitalized terms used herein shall have the same meanings as those defined in the Settlement Agreement, attached as Exhibit A to the Motion for Preliminary Approval.
[2] The additional proposed Class Counsel are Ben Barnow, Sabita Soneji, Bryan Bleichner, Brian Gudmundson, Stuart Davidson, Ian Sloss, Maureen Brady, Benjamin Johns, Mason Barney, William Federman, and Nicholas Colella.

was stored within certain instances of the Fortra GoAnywhere MFT at the time.

3.     In or about April, 2023, Defendants began notifying approximately six million impacted individuals, including Plaintiffs and Settlement Class members, of the unauthorized access to and exfiltration of their Private Information.

4.     Before commencing litigation, Class Counsel investigated the potential claims against Defendants, interviewed potential plaintiffs, and gathered information regarding the Data Incident. Thereafter, lawsuits were filed against the Defendants in various jurisdictions around the country. On October 20, 2023, after the Defendant-specific cases were organized and the respective parties began litigating, pursuant to 28 U.S.C. § 1407, Defendant NationsBenefits, filed a Motion for Transfer and Centralization of Related Actions to the District of Minnesota, where the consolidated action against Defendant Fortra was pending, requesting that all matters concerning the Data Incident be centralized for pretrial purposes. On February 5, 2024, the Judicial Panel on Multidistrict Litigation granted the motion and ordered all matters concerning the Data Incident be transferred to and centralized in this Court.

5.     Following transfer and centralization of the cases, the Court created distinct tracks for the cases: Track 1: NationsBenefits; Track 2: Fortra; Track 3: NationsBenefits Spokes: Aetna, Anthem, Elevance Health, and Santa Clara; and Track 4: Fortra Spokes: Brightline, Community, Intellihartx, and Imagine360.

6.     Following the filing of the Track 1-4 Complaints [ECF Nos. 133, 150-152], and responding to motions to dismiss the Complaints in Tracks 1 and 2 [ECF Nos. 138, 158, 195, 203], the Parties decided to focus their resources on globally resolving the entire Action through negotiation with Elevance Health and a global mediation with the remainder of the Parties.

7.     Prior to mediating and before reaching a settlement, the Parties engaged in

meaningful discovery, as well as conducted their own investigation outside of the discovery process. The Parties exchanged Initial Disclosures and negotiated a Stipulated Confidentiality and Qualified Protective Order and Order Governing Production of Electronically Stored Information and Paper Documents, which the Court entered on April 22, 2024.

8. Plaintiffs also requested pre-mediation informal discovery from the Defendants, and in response Defendants produced extensive material relating to liability and damages, including, but not limited to, the number of individuals and categories of Private Information impacted by the Data Incident.

9. The Parties also exchanged detailed mediation statements outlining their positions with respect to liability, damages, and settlement.

10. The information the Parties exchanged before mediation allowed Plaintiffs and Class Counsel to enter settlement negotiations with substantial information about the facts and merits of the legal claims. This information and the litigation efforts to date enabled Class Counsel to gain an understanding of the evidence related to central questions in the Action and preparing them for well-informed settlement negotiations.

11. On February 4-5, 2025, the Parties participated in a two-day private mediation[3] in Hollywood, Florida, before experienced class action mediator Michael Ungar, Esq. Although the Parties made progress at mediation, no settlement was reached at the conclusion of the second day. However, with the mediator's assistance, the Parties continued to negotiate for the next several days, eventually agreeing to the material terms of this Settlement on February 9, 2025.

12. Before the Parties agreed to discuss a global resolution for the entire Action, the

---

[3] Elevance Health did not participate in the mediation because it had reached a settlement in principle with Plaintiffs prior to the mediation. However, after the mediation, Elevance Health joined as a party to the global settlement.

parties in the Brightline action had already entered into a settlement agreement related to Defendant Brightline only with the settlement class receiving benefits in consideration for releasing Defendant Brightline. However, as part of any global resolution of the Action, Defendant Fortra required resolution of any remaining claims that the Brightline Settlement Subclass could have against Defendant Fortra.

13. The Settlement includes a global resolution of all claims on a classwide basis with significant relief for approximately five million people. The benefits includes an all cash non-reversionary $20,000,000.00 Settlement Fund, Dark Web Monitoring, and valuable injunctive relief.

14. The terms were negotiated at arm's length, in good faith, and without collusion by capable and experienced counsel with full knowledge of the facts, the law, and the inherent risks in the Action, and with the Plaintiffs' and Defendants' active involvement.

15. The Parties filed a Notice of Global Settlement with the Court on February 10, 2025.

16. Over the next two months, the Parties worked diligently to finalize the terms of the Agreement and ancillary documents, and the Agreement was executed on April 10, 2025.

17. The Parties did not discuss attorneys' fees and costs until after they reached agreement on all material Settlement terms.

18. The agreements between the Plaintiffs and Defendants are all in the Agreement, except for the confidential agreement referenced in paragraph 176 of the Agreement.

19. The Released Claims discharged against the Released Parties in the Agreement are narrowly tailored and are only claims arising out of or relating to the Data Incident.

**Facts Supporting Final Approval**

20.     The Notice Program has now been completed in compliance with the Agreement and the Preliminary Approval Order and the Claim Process is ongoing. Currently, they are no objections to the Settlement.

21.     Class Counsel have worked closely with Defendants' Counsel and the Settlement Administrator throughout the Notice Program and Claims Process.

22.     The Claim Process and distribution of Settlement Class Member Benefits is fair, convenient, and effective. Settlement Class Members will promptly receive Cash Payments by electronic means or paper check and Dark Web Monitoring, if elected. The Settlement Administrator is highly qualified to manage the entire process.

23.     Lead Counsel and the other Class Counsel are highly qualified and have a great deal of experience litigating consumer class actions, including in the data privacy context.

24.     The Court previously considered the Class Counsel's significant experience in the litigation, certification, trial, and settlement of national class actions, including substantial time and resources dedicated to past and present data breach litigation across the country, when it appointed all of them to their respective interim leadership positions (ECF No. 129).[4]

25.     Class Counsel have devoted substantial time and resources to thoroughly investigate and analyze Plaintiffs' claims, and to vigorously prosecute this Action, which efforts will continue through and after Final Approval is granted. Specifically, Class Counsel prepared comprehensive pleadings, briefed oppositions to motions to dismiss for Tracks 1 and 2, served informal discovery, consulted with and retained data security and damages experts, complied with

---

[4] If the Court requests them to aid in ruling on the Motion for Preliminary Approval, Lead Counsel will file the resumes of each of the proposed Class Counsel.

Court orders and requirements, participated in a two-day mediation and subsequent arm's length negotiations that ultimately resulted in a global settlement, and negotiated settlement terms with Defendant Elevance Health which agreed to join the global settlement. Given the number of Defendants agreeing to the Settlement, extensive negotiation and drafting was required for the Agreement, Notices, and Claim Forms. The Parties negotiated the form of the Notices and Claim Forms with the help of the Settlement Administrator.

26. The Settlement Class Member Benefits set forth in the Agreement are more than reasonable when compared to other data breach settlements when considering the type of information at issue and the class size of the class. Settlement Class members may elect Cash Payment A – Documented Losses for reimbursement of documented ordinary losses up to $5,000.00, or they may elect Cash Payment B – Alternative Cash Payment for a cash payment in the estimated amount of $85.00, and Dark Web Monitoring.

27. Brightline Settlement Subclass Members are entitled to submit a Claim for an Excess Documented Loss Payment, Cash Payment B, and Dark Web Monitoring.

28. Class Counsel are confident that the Settlement warrants the Court's Final Approval. Its terms are not only fair, reasonable, adequate, and in the best interests of the Settlement Class, but also are an extremely favorable result with substantial benefits. The Agreement provides significant and concrete benefits to millions of people.

29. Defendants' Counsel are from nationally recognized firms and are extremely capable class action litigators, making them worthily, highly competent adversaries.

30. Class Counsel and Defendants' Counsel have fully evaluated the strengths, weaknesses, and equities of the Parties' respective positions and believe the proposed settlement fairly resolves their respective differences.

31. The risks, expense, complexity, and likely duration of further litigation support Preliminary Approval. Any settlement requires the parties to balance the merits of the claims and defenses asserted against the attendant risks of continued litigation and delay.

32. Class Counsel believe the claims asserted are meritorious and that Plaintiffs would prevail if this matter proceeded to trial. However, Class Counsel is also pragmatic and understand the legal uncertainties associated with continued litigation, which would be lengthy and expensive.

33. With this MDL and *Mednax* as examples, data breach litigation is often difficult and complex. Recovery, if any, by any means other than settlement would require additional years of litigation and possibly appeals. Without the Settlement, the Parties faced the possibility of litigating this Action through the completion of fact discovery, class certification, expert discovery, summary judgment, trial, and appeals, which would be complex, time-consuming, and expensive. Continued litigation could have impeded the successful prosecution of these claims at trial and in an eventual appeal – resulting in zero benefit to the Settlement Class. Further, since the Court had not yet certified a class at the time the Agreement was executed, it is unclear whether certification would have been granted. Briefing class certification would have required the Parties to expend significant resources.

34. Although the Parties entered into a Settlement relatively early in litigation, the Settlement negotiations were hard-fought, and the Parties expended significant time and energy on this Action.

35. Like all Settlement Class members, Plaintiffs have claims against Defendants arising from the Data Incident that allegedly impacted their Private Information. Plaintiffs were similarly injured by Defendants' allegedly wrongful acts. Proof of Plaintiffs' claims would necessarily involve adjudicating the same issues of law and fact as the claims of the Settlement

Class as a whole. Plaintiffs and the Settlement Class they seek to represent have the same interests in recovering damages. Thus, Plaintiffs' respective interests are coextensive and do not conflict with the interests of the Settlement Class. Plaintiffs have the same interest in the Settlement relief, and the absent Settlement Class members have no diverging interests.

36. Plaintiffs have cooperated with Class Counsel and assisted in providing important information in the preparation of the complaints filed in this Action. Plaintiffs have also diligently and adequately prosecuted this action through Class Counsel by, among other things, reviewing filings, promptly providing documents and information to Class counsel, acting in the best interest of the Settlement Class, and accepting the classwide Settlement. Plaintiffs are committed to continue prosecuting this Action through Final Approval and protecting the interests of the Settlement Class.

37. The Class Representatives have demonstrated their adequacy by (i) having a genuine personal interest in the outcome of the case; (ii) selecting well-qualified Class Counsel; (iii) producing information and documents to Class Counsel to permit investigation and development of the complaints; (iv) being available as needed throughout the litigation; and (v) monitoring the Action.

### Facts Supporting Attorneys' Fees and Costs

38. Pursuant to the Agreement, Plaintiffs request an attorneys' fee award to Class Counsel of one-third of the $20,000,000 Settlement Fund ($6,666,666.66), and $263,851.10 for reimbursement of reasonable litigation costs. Those costs are comprised of actual out-of-pocket costs that Class Counsel reasonably and necessarily incurred and paid in connection with the prosecution of the Action and the Settlement. The costs include fees relating to filing, service, *pro*

*hac vice* applications, experts, mediation, and travel for pre-MDL hearings, the JPML hearing, mediation, and attendance at the Final Approval Hearing. A summary of the costs is below.

| Category | Amount |
|---|---|
| Filing and Court Fees | $29,665.73 |
| Service Fees | $9,002.65 |
| Mediation Fees | $56,488.93 |
| Expert Costs | $93,772.19 |
| Travel | $74,921.60 |
| **Total** | **$263,851.10** |

39. Class Counsel has not been paid for their extensive efforts in securing the Settlement Class Member Benefits for the Settlement Class and has not been reimbursed for litigation costs incurred.

40. Class Counsel took this case on a contingency basis unaware whether they would be paid for their time and costs advanced. Class Counsel assumed the risk of this engagement and worked diligently and efficiently to obtain a substantial result.

41. The retention agreements with the Plaintiffs in this Action were contingent fee agreements. No payment of attorneys' fees would occur in this case but for an attorneys' fee award in an individual or class settlement. Class Counsel took on this case with no guarantee they would receive any compensation for their work, which occupied significant resources at Class Counsel firms even before this case was filed. There was a risk of nonpayment or underpayment for Class Counsel's time, with Class Counsel foregoing the opportunity to work on other cases. Public policy is served by rewarding attorneys who assume representation on a contingent basis with an enhanced fee to compensate them for the risk they might be paid nothing at all for their work. This practice encourages attorneys to assume this risk and allows plaintiffs holding small individual claims, who would otherwise not be able to hire an attorney, to obtain competent counsel.

42. Prosecuting and settling these claims demanded considerable time and labor,

9

making this attorneys' fee request reasonable. Class Counsel's organization ensured the work was coordinated to maximize efficiency and minimize duplication of effort. Class Counsel devoted substantial time to investigating the claims. Class Counsel also expended resources researching and developing the legal claims at issue. Substantial time and resources were also dedicated to working with experts, exchanging informal discovery, consolidating and organizing the related actions, responding to three motions to dismiss, and preparing for and attending a successful mediation. Significant time was then devoted to negotiating and drafting the Agreement, the Preliminary Approval process, and to all actions required thereafter by the Agreement and the Preliminary Approval Order. Class Counsel spent substantial time leading up to the filing of this Motion for Final Approval, addressing the Notice Program, Claim Process, and preparing this Motion for Final Approval. Time will also be spent preparing for and attending the Final Approval Hearing. Finally, Class Counsel will devote substantial time to Settlement administration should Final Approval be granted to ensure Valid Claims are paid and the Settlement if fully implemented.

43. Class Counsel's coordinated work paid dividends for the Settlement Class. Each of the above-described efforts was essential to achieving the Settlement. Class Counsel's time and resources devoted to prosecuting and settling this Action justify the requested attorneys' fee.

44. This Court has witnessed the quality of Class Counsel's legal work, which conferred substantial benefits on the Settlement Class in the face of significant litigation obstacles.

45. The Notices sufficiently informed the Settlement Class about the amount of attorneys' fees that Class Counsel would be requesting at Final Approval. Not a single Settlement Class Member has objected to the request for attorneys' fees and costs. There have been only 147 opt-outs to the Settlement to date. The deadline to opt-out or object is August 15, 2025.

46. The Settlement is not contingent on approval of the requests for attorneys' fees and

costs, and if the Court grants amounts other than what was requested, the remaining provisions of the Agreement shall remain in force.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct of my own personal knowledge. Executed in Florida on August 1, 2025.

/s/ *Jeff Ostrow*
Jeff Ostrow

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct of my own personal knowledge. Executed in Florida on August 1, 2025.

/s/ *John Yanchunis*
John Yanchunis

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct of my own personal knowledge. Executed in New Jersey on August 1, 2025.

/s/ *James Cecchi*
James Cecchi